SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Samuel A. Josephs (SBN 284035)
1990 S. Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com
sam@spertuslaw.com

Attorneys for Defendant
Joel Barry Gillis

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOEL BARRY GILLIS,<br><br>Defendant. | Case No. CR 14-712-SJO<br><br>**JOINT EX PARTE APPLICATION TO CONTINUE SENTENCING FOR DEFENDANTS JOEL GILLIS AND EDWARD WISHNER; DECLARATION OF SAMUEL A. JOSEPHS** |
|---|---|

TO THIS HONORABLE COURT AND ALL PARTIES OF RECORD,

PLEASE TAKE NOTICE THAT defendant Joel Barry Gillis, by and through his attorneys of record, James W. Spertus and Samuel A. Josephs, and Edward Wishner, by and through his counsel of record, Reuven L. Cohen, hereby respectfully requests the Court to continue sentencing in this matter to December 14, 2015 at 9:00 a.m.

//
//
//
//

This *ex parte* application is based on the attached Declaration of Samuel A. Josephs.

DATED: August 12, 2015        SPERTUS, LANDES & UMHOFER, LLP

_____
James W. Spertus
Samuel A. Josephs
Attorneys for Joel Barry Gillis

DATED: August 12, 2015        DORDI WILLIAMS COHEN, LLP

/s/ *Reuven L. Cohen*
_____
Reuven L. Cohen
Attorneys for Edward Wishner

## DECLARATION OF SAMUEL A. JOSEPHS

I, SAMUEL A. JOSEPHS, hereby state and declare as follows:

1. I am an attorney duly licensed to practice before this Court and am counsel for Defendant Joel Barry Gillis. I submit this declaration in support of Mr. Gillis's *ex parte* application to continue sentencing in this matter to December 14, 2015, at 9:00 a.m.

2. On January 21, 2015, Mr. Gillis waived Indictment and pleaded guilty to a four-count Information charging him with mail and wire fraud in connection with the operation of Nationwide Automated Systems, Inc. (NASI). The parties did not enter into a plea agreement. Sentencing is currently scheduled for September 21, 2015.

3. On May 5, 2015, Mr. Gillis attended a Presentence Interview with the United States Probation Office. At that time, Mr. Gillis presented the Probation Officer with extensive mitigating information regarding the history and characteristics of the defendant, the nature and circumstances of the offense, the appropriate loss analysis in this case, and a number of reasons why a variance/departure from the Sentencing Guidelines would be appropriate in this case. In addition to providing the Probation Officer with all the requested background and relevant financial information, Mr. Gillis also provided approximately nineteen character reference letters. The purpose of providing the majority of this information was for it to be included in the Presentence Report (PSR).

4. On August 10, 2015, the Probation Officer disclosed the PSR. None of the information Mr. Gillis provided to the Probation Officer is contained in the PSR. As just one example, the PSR contains none of the facts surrounding Mr. Gillis's requests for a variance/departure based on a number of different legal theories relevant to the Sentencing Guidelines and 18 U.S.C. § 3553(a). As another

example, with respect to the nineteen character reference letters the defense provided to the Probation Officer, the Probation Officer "summarized" those letters as "express[ing] support for Gillis and speak[ing] to his good character and other positive qualities." (PSR ¶ 79.) On the other hand, the PSR quoted verbatim from eight victim impact statements the government provided. (PSR ¶ 34.) The PSR similarly does not contain any of the defense's loss analysis, but rather adopts the government's loss theories in full and without any mention of Mr. Gillis's arguments to the contrary. The PSR presents a one-sided view of Mr. Gillis's case.

5. Given the nature in which the facts have been presented to the Court through the PSR, and given Mr. Gillis's inability to cite to the PSR for facts supporting the defense's sentencing arguments, Mr. Gillis will need to spend considerable additional time presenting and proving up both objections to the PSR and arguments in the defense's sentencing position paper. Objections to the PSR are currently due August 24, 2015, and sentencing position papers are due September 7, 2015.

6. In addition, one of the issues the Court will determine at sentencing is the amount of loss pursuant to Section 2B1.1 of the Sentencing Guidelines. In anticipation of sentencing, the government has produced a spreadsheet containing the government's analysis of the loss sustained by investors in NASI. Based on an analysis of bank records comparing deposits made by individual investors into NASI's bank account with bank account withdrawals paid to those same individual investors, the government has identified approximately 1,300 individual investors it believes lost money. The government has also identified the amount of loss it believes each of those investors sustained. The government's analysis appropriately reduces loss to investors (i.e., the amount of money investors gave to NASI), by those investors' gain (i.e., the amount of money NASI returned to those investors).

7. The spreadsheet the government has produced lists only individuals; it does not list any corporations, companies, associations, firms, partnerships, or trusts. Based on my review of the discovery and investigation of the case, many individual investors invested in NASI not only on an individual basis, but also through entities such as corporations or trusts that they owned and operated. A full accounting of the loss in this case requires investor loss to be reduced not only by money paid to the individual investor, but also by money paid to that individual investor by way of any entity that individual investor owned and operated. For example, if John Smith invested with NASI, a full accounting of John Smith's losses would reflect not only payments made directly to John Smith, but also to entities John Smith owned and operated. In reviewing the government's loss spreadsheet, Mr. Gillis has identified numerous such examples.

8. Through meet and confer efforts both with government counsel and counsel for the Court-Appointed Receiver, the Receiver has agreed to make available to Mr. Gillis the investor files that would allow Mr. Gillis to identify those entities that were associated with individual investors, and that would therefore be relevant to the Court's loss calculation. Mr. Gillis is planning on travelling to the Receiver's office on August 17, 2015, and spending one week reviewing those files.

9. Finally, the defense has requested from the government certain information pertaining to the approximately 1,300 investors who were net winners. Information pertaining to net winners serves two purposes relevant to sentencing. First, as set forth above, it will help the Court in crediting against individual's net loss that individual's corporate net winnings so that the Court may calculate loss under the Guidelines. Second, it will provide the Court with a complete picture of the nature and circumstances of the offense to offset any inference that the loss sustained by investors went directly to Mr. Gillis and Mr. Wishner in the form of

profits. The government has agreed to compile some of this information, albeit not in the form the defense requested, yet has indicated it is not yet available.

10. On August 10, 2015, I spoke with Assistant United States Attorney Paul Stern about Mr. Gillis's request to visit the Receiver's office to review investor files as well as in connection with information pertaining to net winners. Mr. Stern indicated the government opposes any sentencing continuance.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing facts are true and correct. Executed this 12th day of August, 2015, at Los Angeles, California.

Dated: August 12, 2015    Respectfully submitted,

_____
Samuel A. Josephs