DECLARATION OF RANEE A. KATZENSTEIN

I, Ranee A. Katzenstein, hereby declare and state as follows:

1. I am an Assistant United States Attorney ("AUSA") for the Central District of California. In that capacity, I have been assigned, together with AUSA Paul G. Stern, the responsibility of representing the United States in United States v. Joel Barry Gillis and Edward Wishner, case number CR 14-712-SJO. I make this declaration in support of the government's partial opposition to the Renewed Joint Application, filed on August 18, 2015 (Docket No. 63), of defendant JOEL BARRY GILLIS ("defendant GILLIS") and defendant EDWARD WISHNER ("defendant WISHNER") to continue the sentencing of both defendants in this matter, currently scheduled for September 21, 2015, for three months to December 14, 2015. I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

Defendant's Prior Requests for Continuance of Sentencing Date

2. Following defendants' guilty pleas on January 13, 2015 (defendant WISHNER) and January 21, 2015 (defendant GILLIS), the Court set March 30, 2015, as the date for sentencing.

3. On February 13, 2015, pursuant to a stipulation of the parties, the Court continued the date for sentencing to July 20, 2015. (Docket Nos. 59, 61.)

4. On May 21, 2015, defendants filed their first joint ex parte application to continue the sentencing hearing for six months to December 14, 2015. (Docket No. 83.) The government did not oppose a ten-week continuance of the sentencing hearing, in order to afford defendants the opportunity to review the government's loss analysis and to formulate their own position regarding loss and other

sentencing factors.  The government opposed the defendants' request for a more lengthy continuance. (Docket No. 64.)  On May 26, 2015, the Court continued the sentencing to September 21, 2015.  (Docket No. 65.)

5.   On August 12, 2015, defendant GILLIS filed a Joint Ex Parte Application to Continue Sentencing for Defendants Joel Gillis and Edward Wishner, again seeking to continue the sentencing hearing to December 14, 2015.  (Docket No. 70.)  The government opposed the continuance, noting that "defendants have been in possession of the underlying financial records necessary for any reasonable loss calculation, as well as evidence relating to the circumstances of defendants' offense conduct, for nearly six months, and accordingly defendants have had more than ample time to formulate whatever sentencing analysis and arguments that they deem essential to a proper determination of a fair and just sentence in their respective cases." (Docket No. 71.)  On August 14, 2015, this Court denied defendants' joint application to continue the sentencing hearing. (Docket No. 73.)

Defendants' Instant Renewed Request for A Continuance

6.   On August 18, 2015, defendants filed the instant Renewed Ex Parte Application to Continue Sentencing from September 21, 2015 to December 14, 2015.  (Docket No. 74.)  In support of this renewed application, defendants cite: (1) the government's production of financial records on August 13, 2015; and (2) the fact that the government provided its loss analysis to defendants on May 29, 2015 and that the government was continuing to assist defendants in obtaining information they had requested regarding "net winners" even

though the government had explained that, in the government's view, this information was not relevant to the calculation of loss.

7.  Defendants suggest that the production of additional financial records on August 13, 2015, undercuts the government's representations in its opposition to the original Ex Parte Application to Continue Sentencing that "[d]efendants were provided with a complete set of all investor files by the end of January 2015, was well as with a complete set of all pertinent bank records by no later than April 29, 2015."  Defendants are wrong.

a.  First, defendants nowhere claim that they were not provided with all of the investor files.  Nor could they.  The government copied and produced the investor files in the Receiver's possession in January 2015.  This production comprised 80,330 pages on 7 disks.  More specifically on January 8, the government produced investor files disks 1-4 (bates nos. R00000001-R000222847); on January 13, the government produced investor files disk 5 (bates nos. R0002848-R00036452); and January 30, the government produced investor files disks 6-7 (bates nos. R00036453-R80330).

b.  Second, although defendants claim that the financial records produced on August 13 are "relevant to sentencing issues and loss analysis," the government disagrees.  The vast majority of these records are from more than five years before defendants' fraudulent scheme collapsed and thus do not affect the loss analysis.  This is because NASI paid 20% annual interest to its investors (funded by Ponzi payments) and thus any investor who invested before July 2009 (i.e., five years before NASI's collapse) would have been a net winner.  Defendants do not dispute that they have had copies of the bank records for the five years prior to NASI's collapse, i.e., when

3

investments could have resulted in losses because there was insufficient time to recoup the capital) for many months. The government copied and produced three CDs with bank records on April 24, 2015, and a fourth CD with bank records on April 29, 2015.[1]

   c. Moreover, I am informed by Jan Chiquet, the financial analyst who has been assisting with this case, that the records produced on August 13, 2015, appear to be copies of records that the Receiver had obtained in or about April 2015 from defendant WISHNER himself. In other words, although defendants complain about the allegedly late production of these records, the records were in defendant WISHNER's own possession for approximately four months after defendants were charged in this case and three months after they pled guilty.

   d. Finally, Ms. Chiquet also informs me that many of the records produced on August 13, 2015 are duplicates of records that were included in the bank records produced by the government in April (see ¶ 7(b), above).

 8. Defendants also assert that a continuance of the sentencing hearing is warranted because the government has "failed to provide" certain information that defendants contend is "highly relevant to sentencing." Again, the government respectfully disagrees with this characterization. The government has attempted to timely respond to all of defendants' requests for information.

   a. On June 2, defendants asked questions about the government's loss analysis, and the government responded on June 4.

---

[1] In the interests of producing these materials as quickly as possible to defendants, the government did not bates-stamp each page of these records; the government instead assigned a bates number to each disk (bates nos. NASI_10458-NASI_10460; NASI_10462).

4

The government also responded to defendants' follow-up questions. Defendants' questions focused on pre-2007 payments to investors; percentage of re-investments by investors; and various returns to investors, e.g., buy-backs and potential "claw-backs" by the Receiver.

        b.    In these responses, the government explained:

            i.   "Payments prior to 2007 would rarely be relevant because an investor who was receiving payments before 2007 would have, necessarily, invested before 2007 and thus would be a net winner by 2012.";

            ii.   The government's loss analysis had determined "actual, net losses suffered by investors, i.e., the amount of money paid in by each investor reduced by the amount of money paid back by NASI" and thus the "percentage of each investor's total investment [that] constituted re-investment of money previously paid to that investor" was "not necessary to determine losses";

            iii. "Every investor whose machine was bought back is, by definition, a net winner because by virtue of the buy-back itself that investor recovered his or her principal in addition to whatever interest payments that investor received."; and

            iv.  Regarding Clawbacks: "In his motion seeking authorization for clawback claims, the Receiver stated that his preliminary analysis had identified approximately $17 million paid to 20 investors and $9 million paid to 16 sales agents that could be subject to such claims.  [The prosecutors are] not aware that any clawback actions have been filed to date.  As [the prosecutors are] sure you know, the Court only authorized the Receiver to pursue clawback claims two months ago (on April 21) and, even after any such

1 claims are filed, it remains speculative whether and to what extent
2 the Receiver's actions will succeed. In any event, to the extent
3 such actions are successful and the Receiver secures investor funds
4 from net winners, such gains will be credited to reduce the
5 restitution obligation of the defendants."
6      c. In addition, the government has made efforts to
7 facilitate defendants' access to information and materials in the
8 Receiver's possession.
9     9. Defendants imply that the governments' concern about delay
10 is disingenuous because "the government waited approximately three
11 months to charge this case by way of information after [being
12 informed] that Mr. GILLIS was willing to accept responsibility." As
13 defendants well know, the parties were engaged in discussions during
14 the intervening period and there was no delay by the government.
15     10. In sum, the government believes that the reasons set forth
16 in the defendants' renewed joint <u>ex parte</u> application do not support
17 the lengthy continuance they seek.
18     <u>Conclusion</u>
19     11. For the reasons set forth above and in the government's
20 opposition to the original <u>ex parte</u> request for a continuance, the
21 government believes that the defendants will have had ample
22 opportunity to prepare for a sentencing hearing on September 21, --
23 four months since the government produced its loss analysis, and
24 eight months since defendants pleaded guilty. The victims in this
25 case should not have vindication of their rights delayed simply
26 because the government has sought scrupulously to produce in
27 discovery all financial records that come into the government's
28

possession[2] even if the government has not relied on such records in its own loss analysis.

12. Nonetheless, in view of the recent production of financial records and defendants' representation that they are not in a position to have sentencing position papers filed by September 7, 2015, the government does not object to a brief continuance of 4 weeks (i.e., to October 19, 2015), but does oppose a continuance of any greater length.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on August 19, 2015.

/s/
RANEE A. KATZENSTEIN

---

[2] In addition to the records produced on August 13, the government just received 1099s that were prepared for the investors. The government is having these records copies and will produce them to defendant today.