SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Samuel A. Josephs (SBN 284035)
1990 S. Bundy Dr., Suite 705
Los Angeles, California  90025
Telephone: (310) 826-4700
Facsimile:  (310) 826-4711
jim@spertuslaw.com
sam@spertuslaw.com

Attorneys for Defendant
Joel Barry Gillis

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 14-00712-SJO |
| Plaintiff, | **DEFENDANT JOEL BARRY GILLIS'S OBJECTIONS TO THE PRESENTENCE REPORT** |
| vs. | |
| JOEL BARRY GILLIS, | |
| Defendants. | |

Defendant Joel Barry Gillis, by and through his counsel of record, hereby respectfully submits his objections to the Presentence Report disclosed on August 10, 2015.  Mr. Gillis will file a detailed sentencing position before his sentencing hearing scheduled for November 16, 2015 at 9:00 a.m.

**The Offense Conduct**

**Paragraph 8:**  Paragraph 8 mistakenly references an Indictment, whereas Mr. Gillis waived Indictment and pleaded guilty pursuant to an Information.

**Paragraph 12:**  Mr. Gillis objects to the omission from the Presentence Report's Offense Conduct section, and specifically from Paragraph 12, of the fact that Nationwide Automated Systems, Inc., (NASI) operated as a legitimate business for its first five years.  While this information is included in Paragraphs 38 and 77, it should be included in the Offense Conduct section because it is relevant to the commencement of the instant offense.

**Required Supplement:**  The Presentence Report should include the following.  For five years, NASI conducted itself as a legitimate business that operated ATM machines.  NASI placed ATMs in locations such as convenience stores and gas stations, in exchange for paying a fee for each ATM transaction to the location's owner.  As a relatively young company, NASI was successful in securing a contract with Hilton hotels.  NASI placed ATMs in Hilton hotels, and shared a portion of ATM fees with Hilton.  Shortly after the Hilton deal, Mr. Gillis and Mr. Wishner began discussions with Starwood Hotels and Resorts, the company that operates Westin, Sheraton, St. Regis, the W Hotels, and other brands.  On behalf of NASI, Mr. Gillis and Mr. Wisher were negotiating a contract whereby NASI would become the exclusive operator of ATMs in Starwood properties.  Given the scope of the anticipated contract, which required more ATMs than NASI then-owned, NASI raised $11 million to help fund the Starwood contract.  Unfortunately, NASI's contract with Starwood failed to materialize due to Starwood's last-minute decision to partner with a NASI competitor.  NASI lost the contract, but had $11 million in investor funds that it raised in anticipation of the Starwood contract.

The offense conduct in this case—Mr. Gillis and Mr. Wishner's operation of a Ponzi scheme—was born out of their lapse of judgment when they lost the Starwood contract.  Rather than return the investor-money, Mr. Gillis was confident

he could secure a replacement contract for the $11 million investment.  Mr. Gillis was unable to secure such a contract.  NASI's investor list grew, primarily through referrals, and NASI began to pay old-investor returns with new-investor money, and a Ponzi scheme began.

**Paragraph 28:**  Mr. Gillis objects to the loss figure in Paragraph 28 of $125,063,604.62.  The government has not carried its burden of proving loss.  *See United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997).  Among other deficiencies in the loss analysis that will be fleshed out in Mr. Gillis's sentencing position, the Probation Office failed to credit against individuals' net losses those individuals' corporate net winnings that were paid to individual investors by way of entities those individual investor owned and operated.  The Presentence Report fails to identify the entities that profited from their NASI investments and that were owned and operated by individual investors alleged to be net losers.  Many of the net losers are not, in fact, net losers, and the loss should be reduced accordingly.

**Paragraph 32:**  Mr. Gillis objects to Paragraph 32 and its allegation that investor funds were used to "fund" Mr. Gillis's other business ventures and investments.

**Required Supplement:**  Paragraph 32 should note that the purpose of investing in the businesses referenced therein was to generate returns for NASI investors, not Mr. Gillis or Mr. Wishner personally.

**Offense Level Computation**

**Paragraph 45:**  Mr. Gillis objects to the loss calculation in Paragraph 45. Mr. Gillis will provide a detailed explanation in his sentencing position as to why the government has not carried its burden of proving loss.  For purposes of preserving his objection, however, Mr. Gillis notes that under *United States v. Van Alstyne*, 584 F.3d 803, 818 (9th Cir. 2009), "payments to losing investors up to the amount of their investment do not count as losses."  Therefore, as stated in his

objection to Paragraph 28, the Presentence Report fails to credit against individuals' net losses those individuals corporate net winnings that were paid to individual investors by way of any entity an individual investor owned and operated.

In addition, the Presentence Report fails to identify what percentage of each investor's total investment constituted re-investment of money previously paid to that investor through NASI returns. Such reinvestment is critical to any loss calculation because an investor's original investment reflects the amount of that investor's actual loss: an investor who re-invested proceeds from earlier investments cannot be said to have lost those proceeds.

**Paragraph 46:** Mr. Gillis objects to the loss calculation in Paragraph 46.

**Paragraph 47:** Mr. Gillis objects to the number of victims stated in Paragraph 47. Until the government accounts for the information set forth in Mr. Gillis's objection to Paragraph 45, the government has not carried its burden of proof that the offense involved 250 or more net losers.

**Paragraphs 50-52:** Mr. Gillis objects to Paragraphs 50-52 and the conclusion that the sophisticated means enhancement applies to this case. The two-level enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C) does not apply here. For the sophisticated means enhancement to apply, the offense conduct must be "especially complex or especially intricate" with respect to execution or concealment of the offense. U.S.S.G. § 2B1.1 cmt. n.9(B). The Application Notes provide that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.*

Nothing about the offense conduct here was sophisticated. Ponzi schemes, by their nature, are not complex or intricate, and NASI was a particularly primitive Ponzi scheme. It used neither fictitious entities, corporate shells, nor offshore financial accounts. Mr. Gillis and Mr. Wishner ran the entire company virtually by hand, and by themselves, with the unknowing help of their respective secretaries.

4

OBJECTIONS TO PRESENTENCE REPORT

They maintained NASI's records with no accounting or record-keeping system, such that they hand-wrote and mailed their own checks when paying investors.  As the Receiver acknowledged in its First Report and Recommendations to the Court in the SEC action, NASI "did not keep any of the following: (a) a traditional accounting system using Quickbooks or other accounting software; (b) traditional balance sheets, profit and loss statements, or other financial statements; (c) bank statements or other banking records for their accounts; or (d) a traditional database of investor accounts and contact information."  (*See* Case 2:14-cv-07249-SJO-FFM, Dkt. No. 44, at 8:9-13.)  In fact, the company's books were so basic that the Receiver has needed to rely on Mr. Gillis and Mr. Wishner to identify and notify investors regarding the receivership.  The Presentence Report acknowledges "the very primitive system of spreadhseets and lists Gillis used to track investors and their transfers to and from NASI."  (PSR ¶ 36.)  This was not a sophisticated enterprise.

**Personal and Family Data**

    **Paragraph 78:**  Mr. Gillis objects to the Probation Officer's description of his home as a "large" home "nestled in the hills" with a "locked gate in front of the house . . . overlook[ing] the mountains."  (PSR ¶ 78.)  As the attached photographs confirm, Mr. Gillis lives in a modest home inconsistent with the Probation Officer's description.  *See* Exhibit A.

**Mental and Emotional Health**

    **Paragraph 87:**  Mr. Gillis notes that Paragraph 87 incorrectly states that he occasionally attends Gamblers Anonymous (GA) meetings.  Mr. Gillis has a gambling problem that he has battled throughout his life.  He attends GA meetings regularly.

//

//

**Educational, Vocational and Special Skills**

**Paragraph 91:**  Mr. Gillis objects to the Presentence Report's failure to include his attendance at Northwestern University from 1959-1960.

**Assessment of Ability to Pay**

**Paragraph 106:**  Mr. Gillis objects to the Presentence Report's finding that he has the ability to make a payment within 90 days of sentencing of at least $250,000.  Mr. Gillis's assets have all been frozen by the Securities and Exchange Commission and he is unable to liquidate any of his assets, including his community property share of his residence.  Further, the SEC, the Receiver and the United States Attorney's Office each refused to seek a stay of a civil action brought by an investor who sought an attachment of Mr. Gillis's personal residence.  As a consequence, one investor may obtain priority over Mr. Gillis's interest in his personal residence at the expense of all other victims.  Regardless, Mr. Gillis is not destitute and has no ability to pay any fine or restitution within any foreseeable time.

**Factors that May Warrant a Departure**

**Paragraph 125:**  Mr. Gillis objects to the Presentence Report's failure to identify any factors that would warrant a departure from the applicable sentencing guideline range.  Mr. Gillis will provide a detailed explanation in his sentencing position as to the departures he believes to be appropriate in this case.  At the very least, a downward departure is warranted based on Mr. Gillis's extraordinary acceptance of responsibility, notably, Mr. Gillis's full acceptance of responsibility in the SEC action prior to the filing of any criminal charges, which enabled the government to file the charges here.

"The mere existence of section 3E1.1(a) does not preclude the sentencing court from making an additional departure in the case where the defendant manifests an extraordinary acceptance of responsibility." *United States v. Brown*, 985 F.2d

6

1   478, 482 (9th Cir. 1993); *see also United States v. Rogers*, 972 F.2d 489, 493 (2d

2   Cir. 1992) ("[A] defendant who realizes his wrongdoing and acts quickly to accept

3   culpability for his crime may deserve more favorable treatment than one who only

4   agrees to plead guilty in the face of a forcible arrest and federal prosecution.").  Mr.

5   Gillis has demonstrated extraordinary acceptance of responsibility in this case.  Well

6   before any charges were filed against Mr. Gillis, he expressed to the government a

7   complete willingness to accept responsibility and resolve this case quickly by

8   pleading guilty to whatever charges the government wished to file.  It is noteworthy

9   that this case is charged by Information, not Indictment, and Mr. Gillis promptly

10  pled guilty without even a plea agreement.  Mr. Gillis was also cooperative with the

11  SEC throughout that time, and admitted his misconduct in his Answer to the SEC

12  complaint even before the prosecutors in this case decided to file charges.  A true

13  and correct copy of Mr. Gillis's answer to the SEC complaint is being provided to

14  the Probation Office, and that Answer, filed before any criminal charges were filed,

15  provided a detailed acceptance of responsibility to enable the criminal prosecutors to

16  file an Information in this case.

17      Mr. Gillis is also hopeful the government will move for a downward

18  departure pursuant to U.S.S.G. § 5K1.1 based on Mr. Gillis's substantial assistance.

19  Mr. Gillis has cooperated extensively both with the government and with the

20  Receiver in the Receiver's efforts to recover for losing investors.

21      As to the government, Mr. Gillis, through counsel, met with the prosecutors

22  assigned to this case in September 2014.  He then personally proffered with the

23  government in January 2015 pursuant to a proffer agreement.  Mr. Gillis provided

24  extensive information, and continues to be willing to provide information to the

25  government to provide substantial assistance in the investigation of other individuals

26  Mr. Gillis has identified.  Mr. Gillis's counsel is in the process of compiling

27  additional information for the government.

28

OBJECTIONS TO PRESENTENCE REPORT

1    As to the Receiver, in his First Report and Recommendations in the SEC
2 action, the Receiver acknowledged that "Gillis and Wishner met with him and his
3 counsel and provided important information at a time when they are facing serious
4 criminal liability and have no protection for their statements.  Although a lot more
5 information is still needed, their cooperation in this regard has been helpful,
6 particularly due to the very primitive system of spreadsheets and lists Gillis used to
7 track investors and their transfers to and from NASI."  (See Case 2:14-cv-07249-
8 SJO-FFM, Dkt. No. 44, at 10:18-23.)  Mr. Gillis and his counsel subsequently
9 provided additional documents and information upon the Receiver's request, and
10 met with the Receiver at the Receiver's offices in San Diego to help the Receiver
11 identify additional investors for the Receiver's claw back litigation.
12
13 **Factors that May Warrant a Sentence Outside of the Advisory Guideline**
14 **System**
15    **Paragraph 127:**  Mr. Gillis objects to the Presentence Report's failure to
16 include additional factors that warrant a variance from the advisory Guidelines
17 range, which will be detailed in Mr. Gillis's sentencing position.  Mr. Gillis notes,
18 however, that the Presentence Report fails to capture the fact that Mr. Gillis did not
19 run the typical type of Ponzi scheme here.  Unlike the typical case, almost all of the
20 investor money in this case was used to pay investors; it was not siphoned off to Mr.
21 Gillis personally to fund a lavish lifestyle.  In fact, Mr. Gillis took a modest salary
22 and lived nothing more than an upper middle-class lifestyle.
23    Mr. Gillis's underlying motivation is, in fact, what sets this case apart from
24 the typical Ponzi scheme.  Mr. Gillis enjoyed being the person responsible for
25 making other people money, rather than using the scheme to make money for
26 himself.  It was this status that Mr. Gillis enjoyed most and that drove him to
27 continue the flow of investor money for as long as he could.  The instant offense
28 lasted as long as it did because the overwhelming majority of investor funds--$335

OBJECTIONS TO PRESENTENCE REPORT

1  million out of $355 million—went to other investors.  Since there was little

2  consumption by Mr. Gillis and Mr. Wishner, much of the invested funds may be

3  recovered by the Receiver in future claw back litigation.

4

5  Dated: September 14, 2015                Respectfully Submitted,

6

7                                          SPERTUS, LANDES & UMHOFER, LLP

8

9                        By:      /S_____
                                  James W. Spertus

10                                Samuel A. Josephs
                                  Attorneys for Joel Barry Gillis

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTIONS TO PRESENTENCE REPORT

# EXHIBIT A

EXHIBIT A











PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA           )
                              )
COUNTY OF LOS ANGELES         )

      I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action.  My business address is 1990 S. Bundy Drive, Suite 705, Los Angeles, California 90025.  On September 14, 2015, I served the foregoing documents **DEFENDANT JOEL BARRY GILLIS'S OBJECTIONS TO THE PRESENTENCE REPORT** on the interested party in this action, as follows:

Adam Sweeney
United States Probation Officer
21041 Burbank Blvd., Suite 200
Woodland Hills, CA 91367
Adam_Sweeney@cacp.uscourts.gov

| | |
|---|---|
| Ranee Katzenstein | Paul G. Stern |
| Assistant U.S. Attorney | Assistant U.S. Attorney |
| 1100 United States Courthouse | 1100 United States Courthouse |
| 312 North Spring Street | 312 North Spring Street, 12th Floor |
| Los Angeles, CA 90012 | Los Angeles, CA 90012 |
| Ranee.katzenstein@usdoj.gov | Paul.stern@usdoj.gov |

    [X ]  **(VIA MAIL)**  I placed a true copy of the foregoing document in a sealed envelope addressed to each interested party as set forth above.  I placed each such envelope, with postage thereon fully prepaid, for collection and mailing at Los Angeles, California.  I am readily familiar with the practice for collection and processing of correspondence for mailing with the United States Postal Service.  Under that practice, the correspondence would be deposited in the United States Postal Service on that same day in the ordinary course of business.

    [ ]    **(E-MAIL)** I caused a copy of the documents to be sent to the persons at the e-mail addresses listed above.

    [X]  **(FEDERAL COURT ONLY)**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

    I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 14, 2015, at Los Angeles, California.


                               /S *Eboni Lewis*
                               Eboni Lewis