SPERTUS, LANDES & UMHOFER, LLP
James W. Spertus (SBN 159825)
Samuel A. Josephs (SBN 284035)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile:  (310) 826-4711

Attorneys for Defendant Joel Barry Gillis

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOEL BARRY GILLIS,<br><br>Defendant. | CASE NO.  CR 14-00712-SJO<br><br>**DEFENDANT JOEL BARRY GILLIS'S SENTENCING POSITION; EXHIBITS 1-47, 49 (EXHIBIT 48 FILED UNDER SEAL)**<br><br>DATE:   November 16, 2015<br>TIME:   9:00 a.m. |

Defendant Joel Barry Gillis, by and through his counsel of record, hereby respectfully submits his Sentencing Brief.

Dated:  September 11, 2015          Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP


By:    /S James W. Spertus_____
       James W. Spertus
       Samuel A. Josephs
       Attorneys for Joel Barry Gillis

---

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.  INTRODUCTION ..................................................................... 1

II.  THE ADVISORY GUIDELINES RANGE ................................... 3

    A.  The Government Has Not Carried Its Burden of Proving Loss Between $65 Million and $150 Million ............................. 4

    B.  The Most Reliable Measure of Loss is Intended Loss ................... 8

    C.  The Sophisticated Means Enhancement Does Not Apply ............ 10

    D.  Prior to Departures/Variances, the Correct Total Offense Level is Level 28 ................................................................ 11

III.  THE STAUTORY SENTENCING FRAMEWORK ............................... 12

    A.  A Variance is Warranted Based on the Nature and Circumstances of the Offense ........................................ 13

    B.  A Variance is Warranted for Extraordinary Acceptance of Responsibility ................................................................ 15

    C.  A Variance is Warranted Based on Mr. Gillis's Extensive Cooperation with the Government and Receiver ........................ 16

    D.  The Need to Avoid Unwarranted Sentencing Disparities and Unwarranted Similarities ................................................. 17

    E.  A Variance is Warranted Based on Mr. Gillis's History and Characteristics ................................................................ 21

JOEL BARRY GILLIS'S SENTENCING BRIEF

1

1.     A variance is warranted given Mr. Gillis's advanced age and poor health ................................................................ 22

2

2.     A variance is also warranted based on Mr. Gillis's community support .............................................................. 24

3

4

a.     Mr. Gillis is extremely devoted to his family ............. 25

5

b.     Mr. Gillis has struggled with a gambling addiction his entire life ............................................................. 29

6

7

c.     Mr. Gillis is a loyal, caring and sincere friend, who has been involved with several charitable foundations................................................................. 31

8

9

d.     Investor perspective on Mr. Gillis ............................. 34

10

IV.    CONCLUSION.......................................................................... 35

11

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOEL BARRY GILLIS'S SENTENCING BRIEF

1

# TABLE OF AUTHORITIES

**PAGE**

2

3  ## CASES

4

5  *Gall v. United States,*
    552 U.S. 38 (2007)..................................................................... 12, 17

6

7  *Kimbrough v. United States,*
    552 U.S. 85 (2007)........................................................................ 11

8

9  *Koon v. United States,*
    518 U.S. 81 (1996)........................................................................ 21

10

11  *Pepper v. United States,*
    562 U.S. 476 (2011)...................................................................... 21

12

13  *Peugh v. United States,*
    133 S. Ct. 2072 (2013)......................................................3, 4, 11, 21

14

15  *Rita v. United States,*
    551 U.S. 338 (2007)................................................................. 11, 12

16

17  *United States v. Adelson,*
    441 F. Supp. 2d 506 (S.D.N.Y. 2006) ......................................4, 8, 18

18

19  *United States v. Augare,*
    No. 14-30131 (9th Cir. Sep. 9, 2015) ........................................... 10

20

21  *United States v. Balboa,*
    CR 12-196 (S.D.N.Y) ................................................................. 19

22

23  *United States v. Barnes,*
    125 F.3d 1287 (9th Cir. 1997) ....................................................4

24

25  *United States v. Booker,*
    543 U.S. 220 (2005)......................................................................3

26

27  *United States v. Brown,*
    985 F.2d 478 (9th Cir. 1993) ..................................................... 14

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

iii.

*United States v. Carty*,
   520 F.3d 987 (9th Cir. 2008) (en banc) ............................................ 12

*United States v. Davis*,
   CR 09-335 (S.D. Tex.) ...................................................................... 19

*United States v. Edwards*,
   595 F.3d 1004 (9th Cir. 2010) .................................................... 23, 24

*United States v. Garcia-Sanchez*,
   189 F.3d 1143 (9th Cir. 1999) ............................................................ 5

*United States v. Heldeman*,
   402 F.3d 220 (1st Cir. 2005) ............................................................ 22

*United States v. Lee*,
   725 F.3d 1159 (9th Cir. 2013) .......................................................... 21

*United States v. Mahan*,
   232 F. App'x 796 (10th Cir. 2007) ................................................... 12

*United States v. Menza*,
   137 F.3d 533 (9th Cir. 1998) .............................................................. 5

*United States v. Milne*,
   384 F. Supp. 2d 1309 (E.D. Wis. 2005) ........................................... 13

*United States v. Mohamed*,
   459 F.3d 979 (9th Cir. 2006) ............................................................ 21

*United States v. Parris*,
   573 F. Supp. 2d 744 (E.D.N.Y. 2008) .............................................. 18

*United States v. Rangel*,
   CR 10-1061-SJO ............................................................................... 17

*United States v. Ranum*,
   353 F. Supp. 2d 984 (E.D. Wis. 2005) ............................................. 13

*United States v. Restrepo*,
   946 F.2d 654 (9th Cir. 1991) (en banc) .............................................. 4

*United States v. Rogers*,
   972 F.2d 489 (2d Cir. 1992) ............................................................. 14

iv.

*United States v. Ryder*,
   414 F.3d 908 (8th Cir. 2005) ..................................................... 22

*United States v. Shaw*,
   3 F.3d 311 (9th Cir. 1993) ......................................................... 9

*United States v. Snow*,
   CR 11-42 (S.D. Ind.) ................................................................ 19

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009) ........................................................ 15

*United States v. Treadwell*,
   593 F.3d 990 (9th Cir. 2010) ..................................................... 4

*United States v. Valencia*,
   CR 10-1267-SJO ....................................................................... 17

*United States v. Van Alstyne*,
   584 F.3d 803 (9th Cir. 2009) ..................................................... 6

*United States v. Watt*,
   707 F. Supp. 2d 149 (D. Mass. 2010) ...................................... 18

*United States v. Zolp*,
   479 F.3d 715 (9th Cir. 2007) ................................................. 9, 15

*Wasman v. United States*,
   468 U.S. 559 (1984) ................................................................. 21

*Williams v. New York*,
   337 U.S. 241 (1949) ................................................................. 21

*Wisconsin v. Mitchell*,
   508 U.S. 476 (1993) ................................................................. 12

v.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

## STATUTES

18 U.S.C. § 3553(a)................................................................11, 12, 15, 24

18 U.S.C. § 3553(a)(2)(D) ................................................................23, 24

18 U.S.C. § 3553(a)(6)..........................................................................17

## OTHER AUTHORITIES

U.S.S.G. § 2B1.1 cmt. n.1 .......................................................................6

U.S.S.G. § 2B1.1 cmt. n.3 .......................................................................9

U.S.S.G. § 2B1.1 cmt. n.9(B) ................................................................10

U.S.S.G. § 2B1.1(b)(10)(C) ...................................................................10

U.S.S.G. § 3E1.1 ....................................................................................14

U.S.S.G. § 5H1.1 ....................................................................................22

U.S.S.G. § 5H1.4 ....................................................................................23

U.S.S.G. § 5K1.1 ....................................................................................15

## MISCELLANEOUS

Human Rights Watch, *Old Behind Bars – The Aging Prison Population in the United States*, at 7 (Jan. 2012) ............................................................22

Kate Stith & José A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998) ........................................................................18

U.S. Sent'g Comm'n, *2014 Sourcebook of Federal Sentencing Statistics*, tbl.27........................................................................................................18

U.S. Sentencing Comm'n, *2013 Sourcebook of Federal Sentencing Statistics*, Table 6 ...................................................................................................22

U.S. Sentencing Guidelines Manual app. C, Amendment 739 (2010)................22

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

JOEL BARRY GILLIS'S SENTENCING BRIEF

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Joel Gillis is seventy-five years old, in poor health, and poses zero risk of recidivism. He accepted responsibility for the instant offense conduct before he was ever charged with a crime, and has made every effort to assist the Court-appointed SEC Receiver in recovering assets for investors who lost money. He spent forty-plus years as a loving father, a faithful husband, and an honest businessman, and the past year doing everything we ask defendants to do to accept responsibility. He respectfully asks the Court to impose a sentence that leaves some possibility that he will be released during his lifetime.

There is no question that for thirteen years, Mr. Gillis and his former accountant and close friend Edward Wishner operated a Ponzi scheme. In the end, many investors lost money; the company could not sustain the twenty percent annual returns investors were receiving for years and had come to expect on a monthly basis. But Mr. Gillis and Mr. Wishner did not sit down one day, fourteen years ago, to hatch a plan to steal a lot of money and make themselves rich. Throughout the duration of the offense conduct, the two men paid themselves modest salaries and used the overwhelming majority of investor funds—more than 90%—to pay investors. In fact, the offense lasted as long as it did precisely because Mr. Gillis and Mr. Wishner were not taking the majority of the investors' money for themselves. Currently, the Receiver estimates that approximately 650-700 investors profited as much as $100 million. And while the government declares massive loss figures in the $125-million range, the government's loss theory is flawed in several material ways that constitute a failure to carry its burden of proof.

1.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Any modern day Ponzi case conjures up imges of Bernie Madoff.  This case is far different, however.  The single biggest differentiator between this case and the typical fraud or Ponzi-scheme case that comes before the Court is that neither Mr. Gillis nor Mr. Wishner intended to start a Ponzi scheme, and neither kept the majority of the money for themselves to live a lavish lifestyle.  What Mr. Gillis wanted was to make other people money, and for many years he did just that.

In 1996, Mr. Gillis and Mr. Wishner formed a legitimate business called Nationwide Automated Systems, Inc. (NASI).  NASI sold Automated Teller Machines (ATMs) and split the transaction fees with the owners of the locations hosting the ATMs.  Five years later, Mr. Gillis and Mr. Wishner were presented with an opportunity to partner with Starwood Hotels and Resorts.  Given the scope of the anticipated contract, NASI needed to solicit investors to purchase more ATMs.  NASI raised $11 million to fund the Starwood contract, but the contract never materialized.  Too embarrassed to let the investors know that NASI did not secure the Starwood contract, Mr. Gillis and Mr. Wishner began paying older investors with the money they had raised.  This was the beginning of the Ponzi scheme, which began in 2001.

Mr. Gillis now stands before this Court because of a quixotic lapse of judgment, not because he is evil or because he was overcome with greed.  He gambled with $11 million after losing the Starwood contract, and he fully recognizes the harm that he caused the investors, his family, his loved ones, and his community.  According to Psychotherapist Cynthia Winn, Mr. Gillis's gambling addiction and risk-taking personality led to the commission of this offense.  (*See* Ex. 36: Report of Cynthia Winn, M.A., M.F.T., dated June 14, 2015.)  Ms. Winn opined that "[Mr. Gillis's] motivation was not greed or personal financial gain, but rather he wanted to be the person who makes people money and could be the good guy/hero."  (*See* Ex. 36 at 5.)  Those who knew him well and

JOEL BARRY GILLIS'S SENTENCING BRIEF

even invested with him during the time period of the offense have said the same. As one investor wrote: "I believe there are two Joel's and neither one of them are evil. The one Joel who has many friends and a very lovely family and then the other, the business man who began the investment business correctly, deviated, and ended up digging a deeper and deeper hole for himself ending in business failure." (Ex. 27: Letter from Robert Newton to the Court, dated March 15, 2015.)

Mr. Gillis has done everything he can to accept responsibility for this offense. To put him in prison for the rest of his life, which is what a sentence anywhere close to that contemplated by the Guidelines would do, is unnecessary to achieve the goals of sentencing. In this case, deterrence and punishment can be achieved by sentencing Mr. Gillis substantially below the Guidelines range. Criminologists and corrections experts agree that, given Mr. Gillis's age, serving a sentence substantially below the Guidelines range will still be extremely difficult for Mr. Gillis and will cost the Bureau of Prisons thousands of dollars in medical care. Mr. Gillis respectfully requests that the Court sentence him to two years in prison, followed by three years of supervised release, and 1,000 hours of community service to be served during the period of supervised release.

## II.

## THE ADVISORY GUIDELINES RANGE

The Probation Officer has calculated an advisory Sentencing Guidelines range of 235 to 293 months, resulting from a total offense level of 38 and Criminal History Categoy I. Since its decision in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court has repeatedly and unequivocally held that the Guidelines are but *one* factor in the sentencing analysis the district court must undertake to arrive at a sentence that is no more than necessary to comport with the purposes of sentencing. *See Peugh v. United States*,133 S. Ct. 2072, 2080 (2013). That the Guidelines are far from the be-all and end-all at sentencing is

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

3.

especially true with respect to the fraud Guidelines, which, as discussed more fully below, courts have recognized as "patently absurd on their face [such that] a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences." *United States v. Adelson*, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006). However, since the Guidelines represent "the starting point and the initial benchmark," *Peugh*, 133 S. Ct. at 2080 (internal quotation marks omitted), Mr. Gillis addresses the Probation Officer's Guidelines calculation below.

## A.   The Government Has Not Carried Its Burden of Proving Loss Between $65 Million and 150 Million[1]

The enhancement driving the Guidelines range here is the specific offense characteristic for monetary loss. The government has the burden to prove the loss Mr. Gillis intended to result from the offense. *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997). Where a sentencing enhancement causes a disproportionate impact on the sentence, the government is required to prove that the enhancement applies by clear and convincing evidence. *United States v. Restrepo*, 946 F.2d 654, 659-60 (9th Cir. 1991) (en banc).[2] The government's burden, therefore, is to prove loss by clear and convincing evidence.

---

[1]     On April 9, 2015, the United States Sentencing Commission adopted amendments to Guidelines Section 2B1.1, which became effective November 1, 2015. (*See* Ex. 40: Apr. 9, 2015 Amendments to the Sentencing Guidelines, Proposed Amendment: Economic Crime.) Among the amendments is an adjustment to the monetary tables in Section 2B1.1 to account for inflation. Relevant to the government's analysis here, an estimated loss of $125 million now falls in the loss table between $65 and $150 million, rather than between $100 million and $200 million. A loss of $125 million also results in a 24-level enhancement, rather than a 26-level enhancement.

[2]     A base offense level of 7 results in a Guidelines range of 0-6 months. The 26-level enhancement argued for by the government disproportiantely increases Mr. Gillis's Guidelines range to 135-168 months. In *United States v. Treadwell*, 593 F.3d 990, 1000-02 (9th Cir. 2010), the court discussed when it is appropriate for the government to prove sentencing enhancements by clear and convincing

4.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

"[I]n establishing the facts, including approximations, underlying a sentence, the district court [must] utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy." *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1148 (9th Cir. 1999) (internal quotation marks omitted). "The government is obliged to present sufficient reliable evidence to support its sentencing recommendations . . . [and the Court has] an independent obligation to ensure that the sentence was supported by sufficient reliable evidence." *Id.* at 1149. This requires the government to provide more than just general records, ostensibly identifying the amount of victims' losses. *See United States v. Menza*, 137 F.3d 533, 539 (9th Cir. 1998) (holding that in determining actual loss in the restitution context "[t]he government must provide sufficient explanations (supported by evidence reflected in the record) as to how . . . invoiced losses directly relate to [the defendant's] criminal conduct").

The Presentence Report (PSR) applies a 26-level enhancement based on an estimated actual loss of $130 million.[3] The PSR provides no basis or underlying support for the loss estimate other than the conclusory statement that "[a]t the time the scheme collapsed, investors had actual losses of approximately $125 million."[4]

---

evidence, as opposed to under the preponderance of the evidence standard. While the court held that "sentencing determinations relating to the extent of a criminal conspiracy need not be established by clear and convincing evidence[,]" *id.* at 1001, it recognized that "the touchstone underlying this heightened burden of proof has always been due process," *id.* In *Treadwell*, those due process concerns were absent because the district court's amount-of-loss calculation was based on evidence presented at trial and found by a jury beyond a reasonable doubt. *Id.* Here, however, the Court is being asked to calculate loss for the first time, and without the benefit of evidence that was relied on by a jury to establish guilt beyond a reasonable doubt. Mr. Gillis is therefore entitled to the adequate procedural protections that apply when the district court is asked to find facts that will have a disproportionate impact on the sentence.

[3] Under the November 1, 2015, version of the Guidelines, an estimated loss of $130 million results in a 24-level, rather than a 26-level, enhancement.

[4] The PSR fails to credit approximately $5 million NASI returned to investors after the SEC informed Mr. Gillis and Mr. Wishner it was investigating NASI's operations.

5.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(PSR ¶ 45.)  The government, however, bases its loss estimate of $125 million on NASI bank records showing investor-money deposited into NASI's bank accounts.  This bank records analysis compares deposits made by individual investors into NASI's bank account with bank account withdrawals paid to those same individual investors.  According to this theory,  the government has identified approximately 1,300 individual investors it believes lost money.  The government's analysis appropriately reduces loss to investors (the amount of money investors gave to NASI), by those investors' gain (the amount of money NASI returned to those investors).

As the government recognizes, "payments to losing investors up to the amount of their investment do not count as losses." *United States v. Van Alstyne*, 584 F.3d 803, 818 (9th Cir. 2009) (interpreting Amendment 617 for purposes of sentencing in Ponzi scheme cases).   The government fails to credit, however, all NASI payments to losing investors up to the amount of their investment because the government fails to account for investments that individual investors made via their corporate or trust accounts. *Cf.* U.S.S.G. § 2B1.1 cmt. n.1 (defining "victim" to include any "person" who sustained actual loss and including within the definition of "person" individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies).  That is, the spreadsheet the government compiled listing investors the government considers to be "net losers" includes only individuals; it does not list any corporations, companies, associations, firms, partnerships, or trusts.  However, many individual investors invested in NASI not only on an individual basis, but also through entities such as corporations or trusts that they owned and operated.  A full accounting of the loss in this case requires investor loss to be reduced not only by money paid to the individual investor, but also by money paid to that individual investor by way of any entity that individual investor owned and operated.  For example, if John

6.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Smith invested with NASI, a full accounting of John Smith's losses would credit back to John Smith not only payments made directly to John Smith on an individual basis, but also to entities John Smith owned and operated.

Indeed, the government admits that in compiling its spreadsheet of "net losers" it did not include any investors in its loss analysis who invested more than five years ago. (Declaration of Ranee Katzenstein, at 3:21-27, 5:7-20 (Docket No. 75-1).) According to the government, any investor who invested more than five years ago is a "net winner." (*Id.*) The government fails to recognize that many of the government's purported net losers, i.e., investors who invested within the last five years, invested separately through other entities more than five years ago. Because of its faulty assumption, the government has failed to offset losses by net winnings, and its estimate of actual loss is wrong and not supported by clear and convincing evidence, or even by a preponderance of the evidence.

For example, listed among the government's net losers is Gerald Ehrens. According to the government, Mr. Ehrens and his wife Wilma lost, as individual investors, a total of $318,383.50. (*See* Ex. 41: Government's NASI Loss Analysis Spreadsheet, at 8.) However, Mr. Ehrens also owned and operated Riviera Investments LP (Riviera). Riviera acted as a broker for NASI and also purchased its own machines. The contracts entered into between NASI and Riviera were signed by Mr. Ehrens, and payments between NASI and Riviera were paid to, and on behalf of, Mr. Ehrens and his wife. (*See* Ex. 42: NASI Contract with Riviera dated July 1, 2008, and Associated Check dated July 23, 2008.) Between 2007 and 2013, NASI paid Mr. Ehrens, via Riviera, $469,360. (*See* Ex. 43: NASI Check Ledgers.) However, none of those payments are incorporated into the governemnt's loss analysis. Mr. Ehrens is therefore a net winner, whereas the government lists him to be a net loser.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

The defense has requested from the government, on numerous occasions, the list of net winners to allow Mr. Gillis to identify other examples of individual investors, like Mr. Ehrens, who received payments through companies they owned and operated. (*See* Ex. 44: Letter from Defense Counsel to Government Counsel dated June 2, 2015; Ex. 45: Letter from Defense Counsel to Government Counsel dated July 28, 2015.) The government has refused to provide that information to Mr. Gillis. Without it, however, the government's spreadsheet is inaccurate and unreliable as a means of determining actual loss in this case.

The government's loss analysis suffers from a separate flaw as well. In calculating loss, the government has included as investor "deposits" both an investor's original investment, i.e., money not derived from NASI winnings, as well as money that investors profited from NASI and then re-invested back into NASI by purchasing additional ATMs. In doing so, the government has failed to identify in its loss calculation the amount investors *actually lost* because many investors purchased ATMs with previous winnings. In response to the defense's request for a breakdown of investors' orginal investment versus money that investors re-invested, the government has simply declared that a bank records analysis shows net losses. But the government's answer does not even acknowledge the question. The government fails to recognize that many investors purchased ATMs with money they previously made from NASI. An investor cannot be said to have lost money that was never theirs to begin with. Actual loss is limited to that portion of investor deposits made with an investor's own money, not money NASI paid to that investor. By failing to distinguish between the two, the government has failed to carry its burden of proving actual loss.

## B.   The Most Reliable Measure of Loss is Intended Loss

Given the flaws in the govenrment's analysis of actual loss, intended loss should be used to calculate Mr. Gillis's Guidelines range. *See Adelson*, 441 F.

Supp. 2d at 510 (focusing on intended rather than actual loss due to the difficulty in calculating actual loss). Intended loss is also a more accurate measure of loss under the facts of this case. This case is very unusual for Ponzi scheme cases because almost all of the investor money was used to pay investors. Between September 2007 and October 2014, investors were the source of approximately $355 million of NASI funds, and received approximately $335 million from NASI. Indeed, even accounting for legitimate ATM income, financing, and other investments, 88% of NASI's *total* funds were used to pay investors. Since Mr. Gillis and Mr. Wishner intended the overwhelming majority of money to go to investors, the most reliable calculation of intended loss here is the money Mr. Gillis and Mr. Wishner personally received from their fraudulent activity.

"Intended loss" is the "pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 cmt. n.3. As the 2015 Guidelines amendments clarify, "intended loss" is a subjective inquiry into what harm the defendant purposely sought to inflict on the victims; intended loss is not an objective inquiry into the financial risk to the victims caused by the defendant's conduct. While the amendment explains precisely what "intended loss" means under the Guidelines, the subjective inquiry has been the law in this Circuit for quite some time. *See United States v. Shaw*, 3 F.3d 311, 312 (9th Cir. 1993). Thus, the question here is what harm Mr. Gillis purposely sought to inflict on investors, based on Mr. Gillis's subjective expectation, not the risk of loss to which Mr. Gillis and Mr. Wishner may have exposed the investors.

The most reliable indicator of intended loss is the money Mr. Gillis and Mr. Wishner took from investors and transferred directly to themselves: that is, their annual NASI salaries. *Cf. United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007) ("If the court is unable to determine either actual or intended loss with sufficient certainty, it may rely on the defendant's personal gain from the fraud as an

9.

1   alternate measure of loss.")  These amounts can be taken from the defendants' tax

2   returns provided to the Probation Office.  As indicated in those returns, Mr. Gillis

3   and Mr. Wishner paid themselves approximately $300,000 annually.  (PSR ¶ 105.)

4   Annual salaries of $300,000 each over the course of this thirteen-year offense

5   equals $7.8 million in intended loss, resulting in an 18-level enhancement

6   pursuant to section 2B1.1(b)(1)(J).

7   ### C.      The Sophisticated Means Enhancement Does Not Apply

8          As set forth in Mr. Gillis's objections to the PSR, the two-level

9   enhancement for sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C) does not

10  apply.  For the sophisticated means enhancement to apply, the offense conduct

11  must be "especially complex or especially intricate" with respect to execution or

12  concealment of the offense.  U.S.S.G. § 2B1.1 cmt. n.9(B).  The Application

13  Notes provide that "[c]onduct such as hiding assets or transactions, or both,

14  through the use of fictitious entities, corporate shells, or offshore financial

15  accounts also ordinarily indicates sophisticated means."  *Id.*

16         Nothing about the offense conduct at issue here was sophisticated.  Ponzi

17  schemes, by their nature, are not complex or intricate, and NASI was a

18  particularly primitive Ponzi scheme.  There were no fictitious entities, corporate

19  shells, or offshore financial accounts used in this case.  Mr. Gillis and Mr.

20  Wishner ran the entire company virtually by hand, and by themselves, with the

21  unknowing help of their respective secretaries, and they held themselves out to the

22  entire investor community as the operators of NASI and never hid behind any

23  company or any person. *See United States v. Augare*, No. 14-30131, slip. op. at 5

24  (9th Cir. Sep. 9, 2015) (affirming application of the sophisticated means

25  enhancement where the defendant hid his financial fraud by "donating" money to

26  a co-defendant at a charitable organization and then withdrawing the "donated"

27  money from the charity's bank account and depositing it into his personal

28

10.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP

1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

account).  They maintained NASI's records with no accounting or record-keeping system, such that they hand-wrote and mailed their own checks when paying investors.  (*See* Ex. 47: Photograph of Boxes of NASI Investor Files.)  Even the Receiver acknowledged in its First Report and Recommendations to the Court in the SEC action that NASI "did not keep any of the following: (a) a traditional accounting system using Quickbooks or other accounting software; (b) traditional balance sheets, profit and loss statements, or other financial statements; (c) bank statements or other banking records for their accounts; or (d) a traditional database of investor accounts and contact information."  (*See* Case 2:14-cv-07249-SJO-FFM, Dkt. No. 44, at 8:9-13.)  In fact, the company's books were so primitive and basic that the Receiver has needed to rely on Mr. Gillis and Mr. Wishner to identify and notify investors regarding the Receivership.  The Presentence Report acknowledges "the very primitive system of spreadsheets and lists Gillis used to track investors and their transfers to and from NASI."  (PSR ¶ 36.)  There are simply no facts to support a sophisticated means enhancement in this case.

### D.   Prior to Departures/Variances, the Total Offense Level is Level 28

Based on the above analyses, the total offense level, prior to any departures or variances, should be level 28:

| | |
|---|---|
| Base Offense Level: | +7 |
| Adjustment for Loss: | +18 |
| 250 or more victims: | +6 |
| Acceptance of Responsibility: | -3 |
| **Total Offense Level:** | **28** |
| **Guideline Range** | **78-97 months** |

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

### III.

### THE STAUTORY SENTENCING FRAMEWORK

Under the parsimony principle in 18 U.S.C. § 3553(a), the Court must arrive at a sentence sufficient but not greater than necessary to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a). Indeed, the Supreme Court has stressed that the parismony principle—not the Guidelines—is the most important overall factor in a court's sentencing decision. *Kimbrough v. United States*, 552 U.S. 85, 109-111 (2007). While "the Guidelines should be the starting point and the initial benchmark," the district court "must then consider the arguments of the parties and the factors set forth in § 3553(a)." *Peugh*, 133 S. Ct. at 2080 (internal quotation marks omitted). "The district court may not presume that the guideline range is reasonable." *Peugh*, 133 S. Ct. at 2080 (internal quotation marks omitted); *see also Rita v. United States*, 551 U.S. 338, 351-52 (2007). The Guidelines are not to be given more weight or consideration than any other factor in the sentencing analysis. *United States v. Carty*, 520 F.3d 987, 991 (9th Cir. 2008) (en banc).

It is also critical for the Court to understand that its charge is emphatically not to impose a "reasonable" sentence, but to impose a particularized sentence minimally sufficient to accomplish the statutory purposes of sentencing. *See Carty*, 520 F.3d at 995 ("The district court must make an individualized determination based on the facts." (citing *Gall v. United States*, 552 U.S. 38, 50 (2007))) . The question of reasonableness is for appellate review. *See Rita*, 551 U.S. at 351.

The Court is therefore duty-bound to impose the least punitive sentence that accomplishes the statutory purposes of sentencing. Thus, regardless of how the Court calculates the Guidelines here, any within-Guidelines sentence would be

12.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    inconsistent with the parsimony principle because it would be far greater than

2    necessary to achieve the goals of sentencing in this case, as applied to Mr. Gillis.

3        Of course, to arrive at a sentence consistent with the parsimony principle,

4    the Court must consider the factors set forth in 18 U.S.C. § 3553(a).  Based on

5    those factors, a variance is warranted for the following reasons: (1) the lack of a

6    malicious motive in committing the offense; (2) Mr. Gillis's extraordinary

7    acceptance of responsibility; (3) Mr. Gillis's extensive cooperation with the

8    government, Receiver, and the SEC; (4) the need to avoid unwarranted sentencing

9    disparities and sentencing similarities; (5) Mr. Gillis's advanced age, poor health,

10   and zero risk of recidivism; and (6) Mr. Gillis's community support.

11   **A.**    **A Variance is Warranted Based on the Nature and**

12         **Circumstances of the Offense**

13       A defendant's motive is highly relevant at sentencing.  *See Wisconsin v.*

14   *Mitchell*, 508 U.S. 476, 485 (1993); *United States v. Mahan*, 232 F. App'x 796,

15   799 (10th Cir. 2007) (vacating and remanding for resentencing because court

16   refused to consider the defendant's stated motive for possessing a gun); *United*

17   *States v. Milne*, 384 F. Supp. 2d 1309, 1310-11 (E.D. Wis. 2005) (granting

18   substantial variance because "defendant did not take the bank's money out of

19   greed or a desire to live a lavish lifestyle; rather, he misguidedly tried to keep a

20   sinking business afloat"); *United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D.

21   Wis. 2005) ("defendant's culpability was mitigated in that he did not act for

22   personal gain or for improper personal gain of another" and noting that emphasis

23   on loss amount in white collar cases is a poor measure of personal culpability).

24       Mr. Gillis, in no way, seeks to minimize the offense conduct in this case.

25   But not all Ponzi cases are equal, and this was not a typical Ponzi case.  When Mr.

26   Gillis and Mr. Wishner formed NASI in 1996, they opened a legitimate business,

27   and operated it that way for more than five years.  The business was successful, as

28

JOEL BARRY GILLIS'S SENTENCING BRIEF

1  it managed to secure a contract to provide ATMs to Hilton Hotels.  Through his

2  relationship with Hilton, Mr. Gillis entered into negotiations with Starwood Hotels

3  for a potential sizeable and lucrative contract.  The anticipated Starwood contract

4  led Mr. Gillis to solicit investors, for the first time.  Other than in connection to

5  the Startwood contract, NASI rarely solicited new investors; NASI grew almost

6  entirely out of referrals.

7       When the Starwood contract failed to materialize, psychotherapist Cynthia

8  Winn opines that Mr. Gillis "could not visualize alerting the investors because

9  their confidence in him would end."  (Ex. 36, Letter to the Court from C. Winn.)

10  These facts are consistent with Mr. Gillis's underlying motivation, which

11  Ms.Winn concludes, "was not greed or personal financial gain, but rather [Mr.

12  Gillis] wanted to be the person who makes people money and could be the good

13  guy/hero."  (Ex. 36, Letter to the Court from C. Winn.)

14       There is no excuse for Mr. Gillis's conduct, but it is significant to assessing

15  his underlying motivation that the overwhelming majority of investor funds—

16  more than 90%—went either to other investors, or to NASI investments Mr. Gillis

17  hoped would generate returns for NASI investors.  Mr. Gillis enjoyed being the

18  person responsible for making other people money, rather than using the scheme

19  to make money for himself.  It was this status that Mr. Gillis enjoyed most and

20  that drove him to continue the flow of investor money for as long as he could.

21       In short, this is not a case about a person who set out to defraud investors,

22  or to take advantage of thousands of people to support a lavish lifestyle.  Mr.

23  Gillis's motive was to never let his investors down.  Mr. Gillis wanted to be the

24  person responsible for delivering returns to the investors consistent with their

25  expectations.  Mr. Gillis believed, however unrealistically, that he could continue

26  to run a Ponzi scheme until one of his investments paid off.

27

28

Spertus, Landes & Unhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

14.

1

2

**B.      A Variance is Warranted for Extraordinary Acceptance of Responsibility**

3   In addition to the 3-level downward departure pursuant to U.S.S.G. § 3E1.1,

4   an additional 2-level downward departure is warranted based on Mr. Gillis's

5   extraordinary acceptance of responsibility, notably, Mr. Gillis's full acceptance of

6   responsibility in the SEC action prior to the filing of any criminal charges, which

7   enabled the government to file the charges here.  (*See* Ex. 46: Defendant Joel

8   Gillis's Answer to Plaintiff Securities and Exchange Commission's Complaint

9   dated Dec. 4, 2014.)

10   "The mere existence of section 3E1.1(a) does not preclude the sentencing

11   court from making an additional departure in the case where the defendant

12   manifests an extraordinary acceptance of responsibility."  *United States v. Brown*,

13   985 F.2d 478, 482 (9th Cir. 1993); *see also United States v. Rogers*, 972 F.2d 489,

14   493 (2d Cir. 1992) ("[A] defendant who realizes his wrongdoing and acts quickly

15   to accept culpability for his crime may deserve more favorable treatment than one

16   who only agrees to plead guilty in the face of a forcible arrest and federal

17   prosecution.").  Mr. Gillis has demonstrated extraordinary acceptance of

18   responsibility in this case.  Well before any charges were filed against Mr. Gillis,

19   he expressed to the government a complete willingness to accept responsibility

20   and resolve this case quickly by pleading guilty to whatever charges the

21   government wished to file.  It is noteworthy that this case is charged by

22   Information, not Indictment, and Mr. Gillis promptly pled guilty without even a

23   plea agreement.  Mr. Gillis was also cooperative with the SEC throughout that

24   time, and admitted his misconduct in his Answer to the SEC complaint even

25   before the prosecutors in this case decided to file charges.  Mr. Gillis's Answer to

26   the SEC Complaint provided a detailed acceptance of responsibility to enable the

27   government to file an Information in this case.

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

15.

**C.**     **A Variance is Warranted Based on Mr. Gillis's Extensive Cooperation with the Government and Receiver**

Mr. Gillis is hopeful the government will move for a downward departure pursuant to U.S.S.G. § 5K1.1 based on Mr. Gillis's substantial assistance. Regardless of the government's decision to do so, however, this Court has the discretion to grant a variance based on Mr. Gillis's cooperation efforts. *See Zolp*, 479 F.3d at 721 (holding "district court did not err by considering [defendant's] cooperation as part of its analysis under 18 U.S.C. § 3553(a) rather than as part of its advisory guidelines calculation"); *accord United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009) (disagreeing with government's conclusion that the defendant did not provide extensive cooperation and recognizing that "use of a defendant's cooperation to justify significant variances or departures from the otherwise applicable Guidelines calculations is commonplace").   Mr. Gillis has cooperated extensively both with the government and with the Receiver in the Receiver's efforts to recover for losing investors.

As to the government, Mr. Gillis, through counsel, met with the prosecutors assigned to this case in September 2014.  He then personally proffered with the government in January 2015 pursuant to a proffer agreement.  Mr. Gillis provided extensive information, and continues to be willing to provide information to the government to provide substantial assistance in the investigation of other individuals Mr. Gillis has identified.

As to the Receiver, in his First Report and Recommendations in the SEC action, the Receiver acknowledged that "Gillis and Wishner met with him and his counsel and provided important information at a time when they are facing serious criminal liability and have no protection for their statements.  Although a lot more information is still needed, their cooperation in this regard has been helpful, particularly due to the very primitive system of spreadsheets and lists Gillis used

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

16.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   to track investors and their transfers to and from NASI." (*See* Case 2:14-cv-

2   07249-SJO-FFM, Dkt. No. 44, at 10:18-23.)  Mr. Gillis and his counsel

3   subsequently provided additional documents and information upon the Receiver's

4   request, and met with the Receiver at the Receiver's offices in San Diego to help

5   the Receiver identify additional investors for the Receiver's claw back litigation.

6   Mr. Gillis has also cooperated extensively with the SEC and has stipulated in the

7   SEC's requests for a judgment against NASI, Mr. Gillis, and Mr. Wishner.

8        Mr. Gillis has done everything in his power to enable the government, the

9   SEC, and the Receiver to recover losses for investors who lost money.  The

10  extensive cooperation Mr. Gillis has demonstrated in his dealings with the

11  government, Receiver, and SEC are relevant to a number of § 3553(a) factors,

12  specifically reducing the need for the sentence imposed to rehabilitate and deter

13  Mr. Gillis from future criminal conduct.  It is also extremely rare, and consistent

14  with a defendant whose underlying motive was not greed or malevolence, but

15  rather a desire to acknolwedge his own wrongdoing and attempt to make things

16  right.

17       **D.    The Need to Avoid Unwarranted Sentencing Disparities and**

18            **Unwarranted Similarities**

19       Section 3553(a)(6) requires the Court to consider the need to avoid

20  unwarranted disparities among defendants with similar criminal histories

21  convicted of similar criminal conduct.  18 U.S.C. § 3553(a)(6).  The Court should

22  also avoid unwarranted similarites in sentencing defendants who are different in

23  ways not accounted for in the Guideline range.  *See Gall*, 552 U.S. at 55 ("need to

24  avoid unwarranted *similarities* among other co-conspirators who were not

25  similarly situated").

26       Mr. Gillis recognizes that this Court has appropriately imposed significant

27  sentences in Ponzi-type fraud cases involving large loss amounts and numerous

28

JOEL BARRY GILLIS'S SENTENCING BRIEF

victims.  The facts of those cases are far more egregious than those of the instant case, however.  For example, in *United States v. Rangel*, CR 10-1061-SJO, this Court sentenced the defendant to 264 months in a Ponzi-type real estate investment scheme involving approximately $20 million in loss to hundreds of working-class Hispanic families across Los Angeles.  The defendant in *Rangel* stole the equity from many families' homes and secretly took the titles to their properties.  (*See* CR 10-1061-SJO, Docket No. 53, at 203.)  With the proceeds of his fraud, Rangel bought himself a Lamborghini, a $2.5 million mansion, and a limousine.  (*Id.* at 7.)

In *United States v. Valencia*, CR 10-1267-SJO, this Court sentenced the defendant to 108 months in another real estate Ponzi scheme case in which Ms. Valencia "used a substantial portion of the victim investor money for her personal benefit including purchase of her personal residence, purchase of cars for herself, her friends, [and] family members."  (CR 10-1267-SJO, Docket No. 56, at 12.)

The defendants in *Rangel* and *Valencia* are typical of fraud cases involving large loss amounts where the defendant preyed upon vulnerable individuals in order to fund the defendant's own lavish lifestyle.  Mr. Gillis does not fall into that category of defendant, nor is this that type of case.  As discussed above, over 90% of NASI funds were used to pay other investors; they were not siphoned off to Mr. Gillis or Mr. Wishner personally as they were in *Rangel* and *Valencia*.

While the government estimates a significant loss to losing investors—and Mr. Gillis does not dispute that many investors lost money—the Receiver estimates a substantial gain of approximately $100 million to net winners.  Mr. Gillis does not mean to imply that net losses and net winnings offset each other, or that investors' net winnings in any way justify the loss sustained by net losers.  A singular focus on loss, however, is not appropriate here because it creates an

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

18.

JOEL BARRY GILLIS'S SENTENCING BRIEF

unwarranted similarity between Mr. Gillis and other defendants in high-loss cases sentenced under the fraud Guideline.

Due to the fraud Guideline's "fetish with abstract arithmetic," *Adelson*, 441 F. Supp. 2d at 515, a number of courts across the country have criticized the Guideline for its inability to differentiate among levels of culpability. "As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear 'objective,' tend to place great weight on putatively measurable quantities, such as . . . the amount of financial loss in fraud cases, without, however, explaining why it is appropriate to accord such huge weight to such factors." *Id.* at 509 (citing Kate Stith & José A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* 69 (1998)). Courts have, therefore, gone so far to call the ranges associated with large loss amounts "patently absurd on their face." *Id.* at 515; *see also United States v. Parris*, 573 F. Supp. 2d 744, 754 (E.D.N.Y. 2008) (describing the ranges called for by the fraud Guideline's focus on loss "a black stain on common sense" and noting "it is difficult for a sentencing judge to place much stock in a guidelines range that does not provide realistic guidance"); *United States v. Watt*, 707 F. Supp. 2d 149, 151 (D. Mass. 2010) (labeling the Guideline range "of no help" in a case involving "the largest conspiracy to commit identity theft in American history").

As a result, in fiscal year 2014, courts imposed sentences below the Guideline range in 56.7% of all fraud cases. *See* U.S. Sent'g Comm'n, *2014 Sourcebook of Federal Sentencing Statistics*, tbl.27, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2014/Table27.pdf. Many of those cases involved losses significantly larger than at issue here. *See, e.g.*, *United States v. Balboa*, CR 12-196 (S.D.N.Y) (sentencing defendant to 48 months where Guideline range was life in a case involving $390 million in loss); *United States v. Snow*, CR 11-42

19.

JOEL BARRY GILLIS'S SENTENCING BRIEF

(S.D. Ind.) (varying downward to 120 months from Guideline range of life in Ponzi scheme case involving greater than $200 million in loss to over 5,000 victims); *United States v. Davis*, CR 09-335 (S.D. Tex.) (sentence of 60 months where Guideline range was life in a $7 billion Ponzi scheme case).

The following table captures additional cases in which courts imposed sentences significantly below the applicable advisory fraud Guideline range:

| Case | Conviction | Loss | GL Range | Sentence Imposed |
| --- | --- | --- | --- | --- |
| Christian Milton, AIG Vice President (D. Conn. 2009) | Convicted at trial of various counts of fraud | | Life imprisonment | **48 months** |
| Ronald Ferguson, CEO General Reinsurance Corp. (D. Conn. 2008) | Convicted at trial of conspiracy, securities fraud, false statements to SEC, and mail fraud | **$544 million** | Life imprisonment | **24 months** |
| John Whittier, Manager, Wood River Partners (S.D.N.Y. 2007) | Pled guilty to securities fraud | **$88 million** | 188-235 months | **36 months** |
| Richard Adelson, CEO and President, Impath (S.D.N.Y. 2006) | Convicted at trial of conspiracy, securities fraud, and filing false reports with SEC | **$50-$100 million** | Life imprisonment | **42 months** |
| Stephen Richards, Sr. Vice President, Computer | Pled guilty to conspiracy to commit securities fraud and wire | **$2.2 billion** | Life imprisonment | **84 months** |

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP

1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

| | | | | |
|---|---|---|---|---|
| Associates (E.D.N.Y. 2006) | fraud, false statements to SEC, conspiracy to obstruct justice, obstruction of justice, perjury | | | |
| Raquel Kohler, Mutual Benefit Corp. (S.D. Fla. 2007) | Pled guilty to conspiracy to commit securities fraud | **$471 million** | 324-405 months | **60 months** |

### E.   A Variance is Warranted Based on Mr. Gillis's History and Characteristics

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Peugh*, 133 S. Ct. at 1239-40 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Id.* at 1240 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). In particular, the Supreme Court has "emphasized that '[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Williams*, 337 at 246)). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Id.* (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

JOEL BARRY GILLIS'S SENTENCING BRIEF

1.   <u>**A variance is warranted given Mr. Gillis's advanced age and**</u>
     <u>**poor health**</u>

A defendant's advanced age and poor health is a well-recognized ground for a variance from the Guideline range.  While the Ninth Circuit no longer differentiates between variances and departures in the post-*Booker* world, *see United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006), both the courts and the Gudelines recognize age as a basis for a sentence below the advisory Guidelines range.  *See, e.g.*, *United States v. Lee*, 725 F.3d 1159, 1169 (9th Cir. 2013) ("We agree that the district court did not give sufficient weight to the facts on which it and the prosecution agreed: that for a 72-year old woman, a 96-month sentence is likely to be the equivalent of a life sentence and thus a verdict that Lee will die in prison."); *United States v. Ryder*, 414 F.3d 908, 920 (8th Cir. 2005) (remanding for resentencing because the court believed it lacked discretion to vary based on the defendants' ill health and advanced ages); *United States v. Heldeman*, 402 F.3d 220, 224 (1st Cir. 2005) (remanding for resentencing in light of seventy-two-year-old defendant's age and poor health).  In fact, in 2010 the Sentencing Commission amended the Guidelines and reversed its prior policy of discouraging departures based on age or infirmity.  *See* U.S. Sentencing Guidelines Manual app. C, Amendment 739 (2010).  The Guidelines now encourage departures based on advanced age.  U.S.S.G. § 5H1.1 ("Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.").

This is a case where a below-Guidelines sentence is appropriate based on Mr. Gillis's advanced age and poor health.  Mr. Gillis is seventy-five years old.[5]

---

[5]     The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging."  *See* Human Rights Watch, *Old Behind Bars – The Aging Prison Population in the United States*, at 7 (Jan. 2012), *available at*

22.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

In 2006, he had carotid artery surgery to repair damage to his artery.  (PSR ¶ 86.)
While the Probation Officer notes that Mr. Gillis has not had any issues since
surgery, fifty years of smoking has taken its toll on Mr. Gillis's health.  (PSR ¶
86.)  Mr. Gillis has also been diagnosed with Chronic Obstructive Pulmonary
Disease, which results in Mr. Gillis suffering from shortness of breath and chest
pain.  (PSR ¶ 85.)  He has also been diagnosed with Glaucoma, has several
herniated discs in his back, and has suffered from kidney stones on numerous
occasions.  (PSR ¶¶ 82-84.)

For a seventy-five-year-old defendant like Mr. Gillis, a shorter period of
incarceration is sufficient, but not greater than necessary, to address the goals of
both deterrence and punishment.  Mr. Gillis is at the latter stage of his life and is
therefore both highly unlikely to reoffend, and sure to have a difficult experience
in prison due to his age and infirmity.  There is no question that removing Mr.
Gillis from his daily life, including the physicians he sees on a regular basis, will
have a considerable impact on his emotional and physical well-being.  If the Court
recalls, Mr. Gillis lost consciousness at the change of plea hearing in this case and
needed mouth to mouth resuscitation, after which he was taken to the hospital.
Mr. Gillis poses no risk of reoffending and any period of incarceration is
significant punishment for a man nearing the end of his life.

Fashioning a sentence that addresses Mr. Gillis's advanced age and poor
health is a sentencing requirement, and the ultimate sentence must provide Mr.
Gillis with needed medical care in the most effective manner.  *See* 18 U.S.C. §
3553(a)(2)(D); *see also* U.S.S.G. § 5H1.4 ("Physical condition . . . may be
relevant in determining whether a departure is warranted . . . .  [I]n the case of a

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

---

http://www.hrw.org/reports/2012/01/27/old-behind-bars-0.  Only 11.5 percent of
all federal defendants are over 50.  *See*  U.S. Sentencing Comm'n, *2013
Sourcebook of Federal Sentencing Statistics*, Table 6 (Age of Offenders in Each
Primary Offense Category).

23.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1   seriously infirm defendant, home detention may be as efficient as, and less costly

2   than, imprisonment."). In *United States v. Edwards*, 595 F.3d 1004, 1011 (9th

3   Cir. 2010), the court affirmed a probationary sentence for a sixty-three-year-old

4   defendant guilty of bankruptcy fraud and making false statements who faced a

5   Guidelines range of 27-33 months. There, the court affirmed the reasoning of the

6   district court, stating:

7           Considering the diabetes and related medical

8           complications, the district court reasoned that

9           imprisoning Edwards would simply pass the cost

10          of medical care on to taxpayers. While the district

11          court agreed with the government that the Bureau

12          of Prisons was capable of providing for Edwards's

13          medical care, it found that a sentence of probation

14          would satisfy the requirement of providing needed

15          care in the most effective manner.

16  *Edwards*, 595 F.3d at 1011 (citing 18 U.S.C. § 3553(a)(2)(D)).

17          Thus, both the case law and the Guidelines reflect the need to impose

18  below-Guidelines sentences for older defendants with significant medical needs.

19  Mr. Gillis respectfully submits that such a variance is appropriate here.

20      **2.    A variance is also warranted based on Mr. Gillis's community**

21          **support**

22          Submitted in connection with this Sentencing Position, as Exhibits 1

23  through 39, are thirty-nine character reference letters, and other supporting

24  documentation (pictures), *see* Exhibits 49-50, that describe Mr. Gillis's generous,

25  devoted and honorable character, as well as his commitment to his family, friends,

26  and his wider community. Below is just a sampling of portions of those letters

27  submitted on Mr. Gillis's behalf. Mr. Gillis respectfully requests that the Court, in

28

24.

JOEL BARRY GILLIS'S SENTENCING BRIEF

fashioning an appropriate sentence under 18 U.S.C. § 3553(a) consider Mr. Gillis's overall character, and the significant efforts he has made over his lifetime to take care of his family, his friends and devotion to various charities.

### a.   Mr. Gillis is extremely devoted to his family

*"I don't think that it is possible to judge a man without looking at his family and I know that Joel was an intricate part in the development of his daughters to the amazing people that they are today." (Ex. 7, Letter to the Court from E. Dobkin.)*

Mr. Gillis is a man who has always been devoted, loving and caring to his family, whether as a husband, father or grandfather, son-in-law, cousin, or brother. If anyone was in need, Mr. Gillis was there to support his family. This devotion to family is exemplified in the many letters describing his love for his wife and daughters. "Joel was always involved in his kids' sports, school, plays and religious activities. He was so very proud when each daughter had her Bat Mitzvah and later when each daughter got married. Joel was completely dedicated to being a good father and husband." (Ex. XX, Letter to the Court from E. Bressler.) Mr. Gillis's sister-in-law describes Mr. Gillis as "kind, loving, and extremely devoted to his family and friends. He is a wonderful husband, father, grandfather, brother, son-in-law and brother-in-law. He is always available to all who need him. Knowing and loving Joel has been a privilege. To know Joel is to love him." (Ex. 4, Letter to the Court from G. Gillis.) Ms. Gillis goes on to note:

> When I first met Joel I remember being so
> impressed by his devotion to others. His mother-
> in-law was disabled due to diabetes. Joel would go
> to his in-law's house and take her for lunch once a
> week. I thought . . . how sensitive and kind a
> person he is to make sure she had an outing to look

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

JOEL BARRY GILLIS'S SENTENCING BRIEF

1    forward to.  Joel is special that way.  He always

2    thinks of others."

3 (*Id.*)

4         Carol Gillis has been married to Joel Gillis for almost fifty years and the

5 husband that she has known is "a compassionate, loving and respectful man who

6 goes out of his way to help anyone."  (Ex. 9, Letter to the Court from C. Gillis.)

7 She goes on to describe how "he always treated me with kindness and showered

8 our children with love.  He conducted himself in the most respectable of manners.

9 I was proud to call him my husband." (*Id.*)   Mrs. Gillis describes what a

10 wonderful father Mr. Gillis is:  "He raised our children to be respectful and honest.

11 He indoctrinated them with the virtues of Judaism, respect for authority and elders

12 and commitment to the community at large."  (*Id.*)  Mrs. Gillis notes that her

13 husband "spent countless hours helping me plan events [for the Cystic Fibrosis

14 Foundation], educat[ing] the community and getting to know the families . . . .  He

15 cared deeply about the cause, as he did for anyone who was suffering." (*Id.*)

16 Suffering that occurred closer to home also touched Mr. Gillis's heart:

17    Joel was deeply affected by my mother's long

18    battle with diabetes.  Joel was there for her from

19    the day she suffered her first stroke at 52 to the day

20    she passed 24 years later. . . .  He would make her

21    laugh and smile when I knew all she wanted to do

22    was cry. . . .  He was a son to her just as he was to

23    my father.  Joel treated them both as if they were

24    his own parents, and always made them feel good.

25    Joel was this way with everyone.

26 (*Id.*)

27

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

26.

1    Mr. Gillis's oldest daughter Kim, describes her father as "a present and

2  loving father who doted on his children and wife equally" and "the embodiment of

3  goodness in this world."   (Ex. 12, Letter to the Court from K. Gillis Dobkin.)  She

4  goes on to note: "[o]ur life was not marked by extravagance, but rather by life's

5  simple pleasures-family walks, barbeques with friends, outings to the movies."

6  (*Id.*)  Mrs. Dobkin recalls her father "teaching me to be respectful, honest, and

7  kind.  My father taught me to be humble and gracious, to work hard and be

8  accountable, and to be considerate and selfless."  (*Id.*)  These lessons were taught

9  alongside the example her parents set with their involvement with the Cystic

10  Fibrosis Foundation:

11    [M]y mom devoted many of her adult years to

12    helping find a cure. . . .  My father was by her side,

13    helping to raise funds and awareness.  He would

14    bring me to fundraisers and outreach events,

15    showing me the impact that a relatively small

16    group of devoted people could make.

17  (*Id.*)

18    Eric Dobkin, Kim Gillis's husband describes his father-in-law as "a kind,

19  generous and dedicated family man and friend" and someone that "has always

20  made me feel part of the family." (Ex. 7, Letter to the Court from E. Dobkin.)  Mr.

21  Dobkin mirrors the comments of all the letters regarding Mr. Gillis's devotion to

22  his wife, daughters, grandchildren and in-laws and further notes:

23    Without hesitation, I can say my wife Kim, is one

24    of the most incredible people I have ever met.  I

25    am fortunate to spend my life with her and her

26    dynamic personality is certainly a byproduct of

27    Joel's parenting.  I don't think that it is possible to

28

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    judge a man without looking at his family and I

2    know that Joel was an intricate part in the

3    development of his daughters to the amazing

4    people that they are today.

5    (*Id.*)

6       Alison Morgan, Mr. Gillis's younger daughter, describes her father as

7    someone who has,

8       been there for me in every possible way.  He

9       cheered for me at every milestone, consoled me at

10      every setback, and guided me at every crossroad.

11      His advice was always pure and moral.  He was

12      quick to punish me for not doing the right thing,

13      and quick to reward me for doing good.  He taught

14      me right from wrong, compassion and empathy,

15      and just about every other tenet of being a

16      responsible citizen of this world.

17   (Ex. 25, Letter to the Court from A. Morgan.)  Mrs. Morgan also recalls her father

18   teaching her principled behavior through not only his words, but his actions:  "He

19   showed me what it meant to be altruistic."  (*Id.*)  Mrs. Morgan remembers what

20   her father told her as she left for college:  "he would never be disappointed in me

21   as long as my decisions were rooted in doing what was right."  Finally, Mrs.

22   Morgan concludes:  "Everyone I knew loved him, because there wasn't anything

23   in this world he wouldn't do to help someone in need. . . .  His actions do not

24   reflect the person that my father had always demonstrated himself to be."  (*Id.*)

25      Mr. Gillis's son-in-law, Jeff Morgan, echoes his wife's sentiments:

26      [T]he core of Joel Gillis is a good man, a very

27      good man!  He is someone who cares deeply about

28

Spertus, Landes & Unhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

> others and does not like to disappoint. . . .  I
> believe that is precisely the reason he finds himself
> in the position he is in today.  Rather than admit to
> his failure, in trying to find ways to continue to
> deliver joy to those who trusted in him, he just dug
> himself a deeper hole.

(Ex. 26, Letter to the Court from J. Morgan.)  Mr. Morgan recalls his own appendectomy:  "Joel was the first person to rush to the hospital to be by my side. He was there long before my own parents could arrive, and comforted me as if I were his biological son.  He has always been there for me, just as I have seen him there for so many others over the years."  (*Id.*)

      **b.**    **Mr. Gillis has struggled with a gambling addiction his entire life**

*"In my psychological assessment, Joel's motivation was not greed or personal financial gain, but rather he wanted to be the person who makes people money and could be the good guy/hero."  (Ex. 36, Letter to the Court from C. Winn.)*

In 1988, after a lifetime of gambling and after gambling away hundreds of thousands of dollars from the sale of his home, Mr. Gillis joined Gambler's Anonymous.  (PSR ¶ 87.)  Dr. Cynthia Winn, a licensed psychotherapist, has been treating Mr. Gillis since January 2015 to figure out and work through why Mr. Gillis sabotages his life through gambling and to make amends with the individuals he has hurt.  Dr. Winn opines:

> Joel has a need for novel and complex business
> experiences and will, at times in his life,
> compulsively take on social and interpersonal risks
> for the sake of the experience.  In my professional
> opinion, Joel's gambling and his consequences

29.

JOEL BARRY GILLIS'S SENTENCING BRIEF

1
2
3
4
5

> unconsciously reproduced painful and unexamined
> shame based memories with his father.  Many of
> Joel's decisions were driven by the unconscious
> drive to be finally seen as a valuable good guy and
> a hero.

6 (Ex. 36, Letter to the Court from C. Winn.)  Dr. Winn also explains how the

7 environment in which Mr. Gillis was raised informed his business judgment:

8
9
10
11
12
13

> There was a sub-culture of socially acceptable
> forms of gambling that Joel either heard of or
> witnessed growing up, which included
> questionable business arrangements.  To Joel, it
> did not seem like "gambling" but instead a way of
> doing business, making a buck and re-investing.

14 (*Id.*)

15       Gloria S. Siegel, Ph.D., is the only cousin that is older than Mr. Gillis of the

16 thirty-two cousins.  Dr. Siegel is not only a cousin, but also a psychologist who

17 has a unique perspective on Mr. Gillis's early years and how they impacted his

18 life:

19
20
21
22
23
24
25
26
27

> Joel's father was very distant, cold and even cruel to Joel.
> He was absent most of the time as far as I can remember.
> Joel was very much in need of a male figure in his life . .
> . unfortunately, my father filled in the void and became
> Joel's role model.  I say unfortunately because my father
> loved talking about "the deal" just around the corner.  He
> prided himself on his genius in making money and being
> the smartest person in the room. . . .  My father
> undermined Joel's development by his self-

28

30.

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

aggrandizement and encouragement of Joel to literally
worship him.  Despite all this, Joel has tried and tried to
redeem himself through devoted 12-step work in
Gamblers' Anonymous and a great deal of self-reflection.
I have been so proud of the way Joel became a part of
Gamblers' Anonymous and in fact sponsored many
people as they struggled with their own addictive
behavior.

(Ex. 33, Letter to the Court from G. Siegel, Ph.D.)

Dr. Jerome S. Siegel has known Mr. Gillis for over fifty-seven years and describes Mr. Gillis as "one of the kindest people I know.  He would never intentionally set out to harm another person or inflict any pain or discomfort.  Joel always made others feel good about themselves."  (Ex. 34, Letter to the Court from J. Siegel, M.D.)  Dr. Jerome Siegel also noted Mr. Gillis's early problems with gambling and how he overcame those issues with his involvement with Gamblers Anonymous:  "[Joel] devoted himself to teaching, lecturing, giving seminars and sponsoring others in an effort to help and lend support to those similarly afflicted." (*Id.*)  As another cousin has noted:  "I know Joel has struggled with his gambling addiction for a very long time. . . .  It takes a strong person to admit his addiction, and then try to help others with theirs!"  (Ex. 20, Letter to the Court from S. Jacobs.)

### c.  Mr. Gillis is a loyal, caring and sincere friend, who has been involved with several charitable foundations

"[M]y nephew suffers from Neurofibromatosis.  Joel has always been anxious and willing to support the Children's Tumor Foundation.  For that alone I will always be grateful for his support."  (Ex. 32, Letter to the Court from W. Sandler; Ex. 30, Letter to the Court from R. Sandler.)

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

31.

Mr. Gillis's friends, some of whom have known him for over sixty years, uniformly describe him as a "loyal, devoted and sincere friend" and a "devoted family man, a loving husband and a superlative grandfather to his four grandchildren." (Ex. 38, Letter to the Court from C. Zwillinger.) Numerous letters from friends discuss Mr. Gillis's unselfish devotion to the care of his mother-in-law and the family's involvement with the Cystic Fibrosis foundation:

> The Joel I know spent a great deal of time involved
> in Cystic Fibrosis . . . [t]he Joel I know unselfishly
> helped Carol in the care of her Mother who was ill
> for several years. At this time, Carol's Father is
> not well, and even during these stressful months,
> Joel is giving of himself to make Carol's Father's
> life a little easier.

(*Id.*) Longtime friend Flora Niskar notes: "Joel is the man that stood next to Carol through all the years of fundraising for Cystic Fibrosis. Joel is the man who treats his wife's parents as if they were his own." (Ex. 28, Letter to the Court from F. Niskar.) Friend for over forty-five years, Alan Zwillinger describes Mr. Gillis's charity involvement: "Throughout the many years I have known Joel, he has done some important charity work. One charity in particular is Cystic Fibrosis. He spent many years contacting sponsors, raising funds and awareness so as to hopefully eradicate this deadly disease." (Ex. 37, Letter to the Court from A. Zwillinger.) Mr. Zwillinger describes Mr. Gillis as a "person of unsurpassed integrity, honesty and compassion." (*Id.*) Steve Zwillinger describes his nearly fifty-year relationship with Mr. Gillis: "I know Joel to be an industrious, hardworking family man who is also very community and charity minded. I vividly remember all the time and involvement Joel spent volunteering for the

Spertus, Landes & Unhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

32.

Cystic Fibrosis Foundation, tirelessly working to cure this terrible disease." (Ex. 39, Letter to the Court from S. Zwilllinger.)

Leslie Lashever, has known Mr. Gillis for forty-one years as his daughter Kim's best friend and recalls "he treated me like another daughter" and "there was never a time that he didn't put a smile on my face." (Ex. 22, Letter to the Court from L. Lashever.)  She too noted Mr. Gillis's charity work and his instructions to her to surround herself with "true friends that had 'real' family values" and "people that would rather give than receive." (*Id.*)  She recalls that Mr. Gillis and his wife were "always supporting charities, especially Cystic Fibrosis . . . Carol and Joel were passionate about helping bring awareness to this disease and raise money to support the foundation." (*Id.*)  Mrs. Lashever goes on to describe Mr. Gillis as: "a kind man and a loving father . . . he is a man that bestows love and happiness to those around him." (*Id.*)

Randi Brooks is another long-time friend of his daughter Kim and she has "always known him to be kind-hearted, compassionate and gentle." (Ex. 5, Letter to the Court from R. Brooks.)  She has known Mr. Gillis for forty-one years and recalls: "I lost both my parents at a young age.  Joel and his wife Carol, were like another set of parents to me.  I spent many weekends sleeping at their home . . . he was always there for me . . . consistently demonstrating kindness, empathy and support." (*Id.*)

Leslie Thorn, recalls the sad time when her father passed and how Mr. Gillis helped her family cope: "Joel was there for us.  My family was devastated . . . Joel helped my mom handle all the necessary arrangements and piece her life back together.  His quick wit reassured us that there could still be laughter even through the tears." (Ex. 35, Letter to the Court from L. Thorn.)

//

//

JOEL BARRY GILLIS'S SENTENCING BRIEF

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

### d.  Investor perspective on Mr. Gillis

*"I believe there are two Joel's and neither one of them are evil.  The one Joel who has many friends and a very lovely family and then the other, the businessman who began the investment business correctly, deviated and ended up digging a deeper and deeper hole for himself."  (Ex. 27, Letter to the Court from R. Newton.)*

NASI investor, Robert Newton, met with Mr. Gillis before he invested and got to know Mr. Gillis and his family over the years.  During that time Mr. Newton "never detected at any time that I could identify conspicuous consumption on his part . . . he seemed to live a very patterned and average life."  (Ex. XX, Letter to the Court from R. Newton.)   While Mr. Newton is "shocked and disappointed," "puzzled" and "a bit angry" he notes:

> I feel [Mr. Gillis] now has a lot more to offer at this stage of his life by conveying his mistakes to others and hopefully preventing some foolish endeavor that a young person or business individual might try to undertake.  Greed is in all of us.  Unfortunately even we investors suffer from that malady as well.

(*Id.*)

//
//
//
//
//
//
//

34.

JOEL BARRY GILLIS'S SENTENCING BRIEF

## IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Gillis respectfully requests that the Court sentence him to two years in prison, followed by three years of supervised release, and 1,000 hours of community service to be served during the period of supervised release.

Dated:  September 11, 2015                    Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

By:    /S James W. Spertus
       James W. Spertus
       Samuel A. Josephs
       Attorneys for Joel Barry Gillis

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

JOEL BARRY GILLIS'S SENTENCING BRIEF

## Exhibits to Joel Barry Gillis's Sentencing Position

| Exhibit Number | Description |
|---|---|
| 1 | Bershin, Paul |
| 2 | Blumber, Arnold |
| 3 | Brenner, Robert |
| 4 | Bressler, Ellen |
| 5 | Brooks, Randi |
| 6 | Cooper, Barry |
| 7 | Dobkin, Eric |
| 8 | Fallas Felicia |
| 9 | Gillis, Carol |
| 10 | Gillis, Charles |
| 11 | Gillis, Gale |
| 12 | Gillis, Kim |
| 13 | Gillis, Lyle |
| 14 | Gillis, Sarah |
| 15 | Goldberg, Nancy |
| 16 | Goldberg, Ted |
| 17 | Greene, Richard |
| 18 | Helfer, Gregg |
| 19 | Helfer, Michael |
| 20 | Jacobs, Susan |
| 21 | Laffer, Lee |
| 22 | Lashever, Leslie |
| 23 | Lee, Murray |
| 24 | Marks, Dorothy |
| 25 | Morgan, Allison |
| 26 | Morgan, Jeff |
| 27 | Newton, Robert |
| 28 | Niskar, Flora |
| 29 | Pollack, Ira |
| 30 | Sandler, Bob |
| 31 | Sandler, Stephanie |
| 32 | Sandler, Wendy |
| 33 | Siegel, Gloria |
| 34 | Siegel, Jerome S. MD |
| 35 | Thorn, Niska Leslie |
| 36 | Winn, Cynthia |

### Exhibits to Joel Barry Gillis's Sentencing Position

| Exhibit Number | Description |
| --- | --- |
| 37 | Zwillinger, Alan |
| 38 | Zwillinger, Carole |
| 39 | Zwillinger, Steve |
| 40 | 2015 Sentencing Guidelines Amendments |
| 41 | Govt's NASI Loss Analysis Spreadsheet |
| 42 | NASI ATM Equipment Lease Agreement |
| 43 | NASI Check Ledgers |
| 44 | 6-2-2015 Ltr from Def counsel to Govt |
| 45 | 7-28-2015 Ltr from Def. to Govt Counsel |
| 46 | Gillis Answer to SEC Complaint |
| 47 | Pictures of Boxes |
| 48 | Family Pictures [FILED UNDER SEAL] |
| 49 | House Pictures |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

# EXHIBIT 1

**EXHIBIT 1**

PAUL JAY BERSHIN
Attorney at Law
3837 SUNSET LANE
OXNARD, CA 93035

(818) 782- 5200 Telephone

pauljaybershin@gmail.com


March 26, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012

             RE:  Joel Gillis

Honorable Judge:

Although I am currently retired I practiced law for well over forty years and officed in Van Nuys in a low economic area.  I spent a great deal of time helping people resolve their problems caused by skimping along financially and made my living handling their personal injuries.

I actually believe I attended Joel Gillis' wedding to my first cousin Carol, approximately fifty years ago.  I have shared family gatherings, dinners and holidays with Joel as well as crisis events in our lives.

Obviously Joel's in-laws were/are my aunt and uncle.  I have witnessed first hand the love, affection and companionship they shared.  He was a part of their daily lives sharing dinners, vacations and constant companionship.  They were an incredibly close knit family.  Without hesitation I can say he was a gift of a son in law to my aunt and uncle.  He was a part of their daily lives and as they aged, he watched over them and took care of them as if they were his own parents.

I personally suffered with them as my aunt became sick and passed and it came as no surprise that in my hour of need Joel was there for me as he had been for his immediate family when his mother in law passed.  He was their pillar of strength during that ordeal and became mine in my hour of need.

I was with my wife for 37 years.  Three hundred and sixty six days after her diagnosis she passed.  Prior to her death, Joel was with me with multiple weekly phone calls discussing my wife's condition and contemplating the alternatives of possible treatments.  I cannot stress enough how important his support meant to me, to have a more objective voice helping me make extremely difficult decisions.

Honorable S. James Otero
March 26, 2015
Page 2

For approximately a half a century I formulated a belief that Joel was mild mannered, caring and dedicated to family and friends. I never witnessed or heard of any behavior unbecoming of traditional business or family values. The current news is totally shocking and out of character to what I witnessed over these many years.

I phoned Joel recently and we met for a talk. He expressed considerable remorse for his deeds and the effect it is having on his family, wife, children, and grandchildren and uniquely to my 91 year old uncle. He was quiet, sullen and fearful, but what seemed to have motivated the meeting the most was his desire for me to help his family however I could.

Very truly yours,

PAUL JAY BERSHIN

PJB/pbm

# EXHIBIT 2

**EXHIBIT 2**

# STERLING
## INDUSTRIAL PROPERTIES

April 20, 2015

Honorable S. James Otero
United States District Court Judge
312 N. Spring St., Courtroom 1-2nd Floor
Los Angeles, CA 90012

Dear Judge Otero:

I am the President of my company and have been since it was established over 45 years ago.

My wife and I met Joel & Carol Gillis socially, through long time friends about 10 years ago. Since then and quite soon after, we ourselves, became good friends, saw them regularly and have vacationed 4 times with them. I personally played golf with Joel often during that period. My relationship with Joel from the start was a warm, frank and trusting one, the same as I have with maybe a dozen others. We shared common interests in playing bridge, attending the theatre and particularly discussing events in the sports world.

We both participated in belonging to several important charities and donated regularly to them and to special events held by them. There were times that Joel would purchase extra tickets for these events, inviting others to join him at his expense.

I always have felt that I, myself, am an excellent judge of a persons' character and it is important to me that my close friends have the traits which I expect and respect. Joel is one who I thought qualified with the best of them and frankly I was numbed with disbelief when details of his involvement in the pending case before you were revealed. I held Joel in the highest level of trust and reliability.

My experiences with him still make me believe in his basic honorable, caring and creditable qualities and I pray that the court will recognize this and know that he is someone who will not be in this type of criminal situation again.

Sincerely,

Arnold K. Blumberg

AKB:ab

1625 W. Olympic Blvd. Suite 735 • Los Angeles, CA 90015
Tel: (213) 483-3601 • Fax: (213) 388-0434
e-mail: info@sterling-props.com
MEMBER: AMERICAN INDUSTRIAL REAL ESTATE ASSOCIATION • THE INDUSTRIAL MULTIPLE

# EXHIBIT 3

**EXHIBIT 3**

# Law Offices of Robert A. Brenner

TELEPHONE
(818) 702-7000

21900 Burbank Boulevard, Third Floor
Woodland Hills, California 91367

FACSIMILE
(818) 999-9745

March 16, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor

Re:    **CHARACTER REFERENCE FOR MR. JOEL GILLIS**

Your Honor,

I am writing on behalf of Mr. Joel Gillis with knowledge of the charges against him.

I am a licensed attorney in the State of California practicing since 1975. I have known Joel Gillis for approximately 40 years and have maintained a relationship with him and his family over the course of those years and have socialized at many dinners and family events for both of our respective families.

I cannot begin to count the numerous social occasions that I have been at and together with Joel and his wife and/or family over the years. I have always known Joel to be honest and trustworthy as far as my relationship with him and have never heard anyone speak with ill will towards him.

Joel has always been a gentleman with a great wry sense of humor.

I have known Joel to be a loving and responsible husband, father and grandfather. I have known him to be a caring person with respect to others suffering from health issues, including other family members and friends alike, and Joel has always been there to lend support.

The charges against Joel strike me as a completely uncharacteristic aberration and one which I believe he sincerely and completely regrets. I have been completely dismayed to hear of his transgressions. As far as I know Joel has never been before the courts previously, nor do I believe it is likely again. This is an incident which he has taken responsibility for and will move on from, and I am certain he can make positive contributions to our society.

Honorable S. James Otero
March 16, 2015
Page Two


     I have known Joel for so many years, and I know he understands the wrongs that he has
done, and I also know how regretful he is for having done so.  At this stage of his life he has
acknowledged and accepted the role he has played in these wrongdoings and wishes to go
forward with his life.  In my opinion I do not think society or those who have suffered harms
from his wrongdoing would benefit from Joel serving a lengthy prison sentence.  I strongly
believe that because of Joel's age and personality that a more lenient sentence would serve the
best interests of the criminal justice system and society in general.

                         Respectfully yours,

                         Robert A. Brenner

# EXHIBIT 4

**EXHIBIT 4**

Dear Judge Otero,

I am writing you this letter on behalf of my dear cousin Joel who has been a huge part of my life. I know Joel extremely well. We are and always have been very close, and I am so deeply saddened by what has occurred. I feel it is necessary to write you this letter so that you have a better understanding of the man that he is, and not just the mistakes he has made.

We have always had a close family. Joel was the oldest boy of 32 cousins. Everyone looked up to him, including myself. He has always been the nicest, most loving person; truly someone who would give you the shirt off of his back. He married a wonderful woman Carol and has two of the most kind, genuine and goodhearted children. Joel was always involved in his kids' sports, school, plays and religious activities. He was so very proud when each daughter had her Bat Mitzvah and later when each daughter got married. Joel was completely dedicated to being a good father and husband, family traditions, and has always been very proud of his girls.

Everyone always loved Joel. He always had a kind and generous nature. Joel was extremely empathetic growing up. I can remember he had a friend named Jack who was handicapped. Other kids were cruel to Jack, but Joel took him under his wing and made him a friend. Many years later I remember Jack telling me that if it weren't for Joel, he would never have had any kind of life. I will never forget Jack's words.

At one point in my life, I moved in with Joel, his 2 brothers and his parents. I was so lonely, but Joel made me feel like I was his sister, talking me through my sadness, and helping me again find happiness. He always looked out for me. Through good times and bad times in my life, Joel has consistently been there for me and honored his promises.

Judge Otero, I sit up at night trying to understand and make sense of it all. I know him well enough to know that all he would have ever wanted to do is to make good on his promises. Unfortunately, it was probably this desire to do well by others that ultimately led to the horrible series of decisions that just dug a deeper hole. The only thing I can say is that I have known Joel my whole life (over 70 years) and I can tell you without hesitation that he has always shown himself to be a loyal, well-intentioned person. I talk to him often and try to console him. He is ashamed and full of remorse. Though I wish I never had to be in this position, I am finally able to do for Joel what he has done for me and many others throughout his life: be there for him. Your honor, I hope you can give Joel a second chance.

Thank you very much for your time,

Ellen Bressler

Ellen Bressler

# EXHIBIT 5

**EXHIBIT 5**

February 17, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012

Re: Joel Gillis

To: Honorable S. James Otero,

     I am writing this letter on behalf of Joel Gillis.  I have known Joel for 41 years, and have always known him to be kind-hearted, compassionate and gentle.  Joel's daughter Kim and I have been best friends since we were 5 years old.  We grew up in the same neighborhood and spent a tremendous amount of our childhood together.

     I lost both of my parents at a young age.  Joel and his wife, Carol, were like another set of parents to me.  I spent many weekends sleeping at their home.  Joel was always a very loving and giving father to both of his daughters.  He was always there for me as well, consistently demonstrating kindness, empathy and support.

     Joel continued to play a part in my life into adulthood.  He and Carol both attended my wedding, and the Bris of my first son.  Joel plays an active role in the lives of his grandchildren.  I witnessed the warm, special bond shared between them.  Joel is clearly part of a tight-knit, caring family.

     Joel has always supported the people he most cares about.  He is a loving man, with many friends and family.  It would be a tremendous loss if Joel could not be a part of the lives of his family, friends and community.  Joel's conviction is entirely out of character and not consistent with the values of the man who I have known - and felt so close to - for more than 40 years.

     I sincerely hope you will consider the above when sentencing Joel.

Sincerely,

Randi Brooks

# EXHIBIT 6

**EXHIBIT 6**

# Barry Cooper
# Trust Deeds

### TRUST DEEDS - BROKERAGE
### COMMERCIAL - RESIDENTIAL

17034 Ventura Boulevard, Encino, CA 91316
(323) 872-2622   -   (818) 783-3555



March 6, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012

To Honorable S. James Otero

I am writing this letter on behalf of Joel Gillis, a dear friend of mine. I've known Joel and have been his friend for approximately 10 years. We met at a local bridge club while my wife and me, and Joel and his wife were competing in a bridge tournament.

We quickly became friends, spent much time together, both individually and with our wives and with mutual friends.

I've always known him to be of good moral character and he always treated me with the utmost honesty and respect.

We belonged to a golf club together and he was always very charitable whenever he could be to both club and individuals I've seen him encounter.

I believe he has much remorse for any improper actions that he has taken and I believe that part of his life is gone forever.

I've always know him to be extremely close and loving to all of his family. I believe if consideration is shown to him he would be an asset to the community if he were given an opportunity.

He is an elderly man who is not in good health and a lengthy incarceration would not be to his or the communities benefit.

I will continue to have a relationship with his children and all of his family and would hope you will show him some consideration. I believe him to be a truly good human being in spite of contrary actions that he may have taken.

Respectfully submitted to the court by

*Barry Cooper*

Barry Cooper,
Friend of Joel Gillis

# EXHIBIT 7

**EXHIBIT 7**

August 14, 2015


Honorable S. Judge Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012


Dear Judge Otero,

It is difficult to reconcile the events of the past year. Joel is my father-in law, and I
have known him since 1992. During that time, I have known Joel to be a kind,
generous and dedicated family man and friend.

From the day that I met Joel, he has always made me feel part of the family. Joel is
very much a sports enthusiast, a passion we both share. Over the years we spent
many hours on the golf course conversing about sports and life. I value his opinion
and the Joel that I have known is kind hearted and generous. Joel has a strong sense
of humor and if you are feeling down he just knows how to make you feel better.

The oldest of three boys, Joel assumed the role of family patriarch when his father
passed away. Isabel, his mother, was living in an apartment in Encino. He always
took the time to be with his mom, taking her to lunch or dinner and making sure she
was always included in family activities. Without effort and with love, Joel took
care of his mom up to the point of her passing.    Joel was equally dedicated to his in-
laws, Marcia and Lee Laffer. He treated them with great respect and as if they were
his own parents. Marcia had been sick for years with complications from diabetes.
Shuttled from doctor to doctor, Joel was there to help his in-laws through very
difficult times. I was always impressed with Joel's dedication to his and his wife's
parents.

When our youngest son, Jonah, was born - - the first grandchild arrived and Joel was
hooked. He took the time to babysit and spend simple quality time. As our family
grew and my sister in-law had two girls, Joel divided his time well between four
grandchildren. He is adored and loved by each of them and being with them has
been his greatest pleasure.

Without hesitation, I can say my wife, Kim, is one of the most incredible people I
have ever met. I am fortunate to spend my life with her and her dynamic
personality is certainly a product of Joel's parenting. I don't think that it is possible
to judge a man without looking at his family and I know that Joel was an intricate
part in the development of his daughters to the amazing people that they are today.

With a heavy heart I write this letter. I see how Joel continues to punish himself for
his actions. There is a tremendous amount of good in Joel and my wife, my kids and

I can only hope for your leniency. Please consider Joel's extended family and the next generation of grandchildren that love him so dearly when determining his sentence.

Sincerely,

Eric Dobkin

# EXHIBIT 8

**EXHIBIT 8**

April 23, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012


Your Honor,

My name is Felicia Fallas and I am a mother of three. I have known Joel Gillis for
many years. Growing up our families spent many holidays, vacations and
celebrations together.
I was shocked to hear the charges against him. I would never have expected
this. How could this be Joel, the person I have known to be kind and generous
throughout my childhood as well as my adult life.
Joel has been at all our family functions. His positive attitude and charisma drew
people to him. Everyone enjoyed his company and no one would ever speak ill of
him.
My favorite memory of Joel is at my parents 25th anniversary party. He sang a
song that he wrote about my parents relationship throughout the years. I was
appreciative that he took the time to do this because it made all of us so happy.
Twenty five years have passed and my parents recently celebrated their 50th
anniversary. A party is not the same without Joel and his sense of humor. I am
so sad for all of this.
The Joel that I know is not someone who could have committed a crime. A
reduced sentence would serve justice in this case. Nothing in my opinion would
be gained by a long sentence.


Sincerely,

Felicia Fallas

# EXHIBIT 9

**EXHIBIT 9**

August 15, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1, 2nd Floor
Los Angeles, CA 90012


Dear Judge Otero,

My name is Carol Gillis. I have been married to Joel Gillis for almost 50 years. Together we raised two wonderful daughters, watched them marry two great son-in-laws, and saw them give birth to four precious grandchildren. Until this time last year, I thought I had achieved every woman, wife and mother's dream: a healthy family, an enduring marriage, lifelong friendships, and a legacy that I was proud of. A year later, I write to you in complete and utter shock, heartbroken and scared, and horrified about what I have learned. I struggle to understand how someone I thought I knew better than I knew myself could have acted in total contradiction to all that he had ever stood for or believed in.

The Joel that I have known for 50 years is a compassionate, loving and respectful man who goes out of his way to help anyone. He raised our children to be respectful and honest. He indoctrinated them with the virtues of Judaism, respect for authority and elders, and commitment to the community at large. He always treated me with kindness and showered our children with love. He conducted himself in the most respectable of manners. I was proud to call him my husband.

A big part of our life together was the Cystic Fibrosis Foundation. I lost my brother and sister to this disease and lived my life wanting to help others. I was the president of the guild for several years, and Joel's support was integral to my success. He spent countless hours helping me plan events, educate the community, and getting to know the families facing what I had lived through. He cared deeply about the cause, as he did for anyone who was suffering.

In the same vain, Joel was deeply affected by my mother's long battle with diabetes. Joel was there for her from the day she suffered her first stroke at 52 to the day she passed 24 years later. He would sit with her for hours on end as she received her dialysis treatments. He would make her laugh and smile when I knew all she wanted to do was cry. When she was embarrassed to go outside after her leg was amputated, Joel would show up at her doorstep twice a week to get her out of the house. He was a son to her just as he was to my father. Joel treated them both as if they were his own parents, and always made them feel good. Joel was this way with everyone.

For all the good that Joel has done over his life, it is still unthinkable to me that he would do anything that would harm another person. I know his actions suggest otherwise, but in spending this last year trying to come to terms with what he did, I can wholeheartedly tell you that his motivation was not personal gain, but instead to make good on promises he simply could not keep. His pride got in the way of his better judgment and his responsibility to investors and his own family.

As difficult as it has been for me to accept what Joel has done, my hope is that sharing what I have known and loved about him for half a century can help your honor find a way to resolve his actions with the core of who he is. Although it would appear that I am describing to two totally different people, understanding that the very same motivation that made him such a good person also drove him to make horrible decisions in trying to right his wrongs. I know this does not excuse him, but I certainly hope you can find mercy on him knowing this. Please do not take him away from the family who needs and loves him.

Respectfully,

Carol Gillis

# EXHIBIT 10

**EXHIBIT 10**

**CHARLES MICHAEL GILLIS**
**6505 RODRIGO STREET, UNIT 1**
**HOUSTON, TEXAS 77007**

May 18, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2[nd] Floor
Los Angeles, California 90012

Dear Your Honor:

My name is Charles Michael Gillis.  I am an attorney practicing law in Houston, Texas.  I have been practicing law since 1975.

I am writing this letter in support of my brother Joel Gillis.  Joel is almost 10 years older than I am so we grew up almost a generation apart.  Although I have some early recollections of Joel from my early childhood growing up in Detroit, Chicago and New York, my close relationship with Joel began when my parents moved to Los Angeles in 1967 and I enrolled as a freshman at UCLA.  I was 17 years old at this time.

Moving to Los Angeles was a very traumatic experience for me.  I had no friends and was completely without any contemporary support. My brother Joel came to my rescue.  Over a several week period, Joel drove me all around Los Angeles.  We often had lunch together and he took me to several Dodger games.  As a late blooming adolescent, he made me feel comfortable and less anxious and afraid of my new surroundings.  He encouraged me to make friends and participate in sports. Over a short period of time, I began to develop friendships and to think of Los Angeles as my new home.  My brother Joel was extremely instrumental in helping me assimilate into my new environment.

While I was in college, since my father was always traveling, I had many issues arise which required male adult consultation.  I always turned to Joel for advice.  Joel was always available for me and provided me with honest and sage guidance, always seeking to send me on the right path.

I remember one specific incident when my parents were traveling and I was staying at my parents' apartment.  I woke up in the middle of the night and thought I heard intruders.  Trembling, I quietly telephoned Joel and he came over within a matter of minutes.  Of course, there were no intruders, but knowing that Joel was only a few minutes away always made me feel more secure and safe.

Joel and I developed a friendship and bond over those years which I cherish to this day.  Even in my adult years, when I needed a sounding board or a helping hand, I often turned to Joel.  Joel's support was always given unconditionally, often with constructive criticism, but never judgmental.

Honorable S. James Otero
United States District Court Judge
May 18, 2015
Page 2

Our mother always believed that keeping our family together was the highest priority, the family unit being the center point of all of our lives.  When our mother died in 1996, Joel quickly assumed this role believing that my mother's sense of family must be carried on to existing and future generations.

Joel and his wife Carol raised two wonderful daughters (my nieces), both of whom have led exemplary lives, have two children and are engrained in the Los Angeles community. Each of my nieces is a very special person and I believe that Joel's and Carol's efforts in raising these women were instrumental in leading each of them down the right path of life.

Although Joel made some bad decisions in the direction in which his life has taken, it is my strong believe that none of such decisions was made with the willful intend to harm anyone. I do not believe that Joel would purposely inflict suffering upon others.

I love Joel very much.  He will always have my support and I will do anything in my power to make his life easier.

Very truly yours,

Charles Michael Gillis

# EXHIBIT 11

**EXHIBIT 11**

GAIL DEENA GILLIS

G/F, 63 MACDONNELL ROAD

CENTRAL, HONG KONG

+852 9561-1111

March 15, 2015

Honorable James Otero

United States District Court Judge

312 North Spring Street, Courtroom 1-2nd Floor

Los Angeles, California    90012

Dear Judge Otero:

My name is Gail Gillis and I am married to Joel's younger brother, Lyle.    I met Joel about 20 years ago before Lyle and I were married.    We have spent wonderful times together as a family ever since.    Every two years or so we have a Gillis Brother's reunion where we spend more cherished time together, and collect memories for the future.    I have also spent some time alone with Joel and Carol since having moved to Hong Kong almost 10 years ago, I go back to New York via Los Angeles and always see Joel and Carol at least three times a year.

When I first met Joel I remember being so impressed by his devotion to others.    His mother-in-law was disabled due to diabetes.    Joel would go to his in-law's house and take her for lunch once a week.    I thought to myself how sensitive and kind a person he is to make sure she had an outing to look forward to.    Joel is special that way.    He always thinks of others.

I have always known Joel to be kind, loving, and extremely devoted to his family and friends.    He is a wonderful husband, father, grandfather, brother, son-in-law and brother-in-law.    He is always available to all who need him.    Knowing and loving Joel has been a privilege.    To know Joel is to love him.

Very truly yours,

Gail Deena Gillis

# EXHIBIT 12

**EXHIBIT 12**

March 29, 2015

Honorable S. Judge Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA 90012

Dear Judge Otero,

My name is Kim Gillis and I am the oldest daughter of Joel and Carol Gillis.

I find myself in the surreal and untenable position of having to defend my father's character – character that has shaped my life in wonderful ways and guided me as a woman, a daughter, a mother, a wife and a human being -- character not represented by his destructive lapse in judgment that has put my dad's life into your hands today.

My dad raised my sister and me with kindness, love and generosity. He was a present and loving father who doted on his children and his wife equally. Our life was not marked by extravagance, but rather by life's simple pleasures – family walks, barbeques with friends, outings to the movies. I loved my childhood for how normal and ordinary it was. I remember my dad watching my ice skating performances, coaching my sports teams and playing chopsticks with me on the piano. I remember him counseling me through teenage break-ups and teaching me to be respectful, honest and kind. My father taught me to be humble and gracious, to work hard and be accountable, and to be considerate and selfless.

For most of my childhood, my parents were actively involved with the Cystic Fibrosis Foundation. Having lost a brother and sister to CF, my mom devoted many of her adult years to helping find a cure and served as chapter president. My father was by her side, helping to raise funds and awareness. He would bring me to fundraisers and outreach events, showing me the impact that a relatively small group of devoted people could make.

When I entered my collegiate years, I was confident that the principles that my parents had instilled in me would guide and protect me as I left the safe confines of my family home. That didn't stop me from growing incredibly homesick my freshman year, but my dad visited me regularly, sent me funny cards to cheer me up and assured me that the years ahead would only get better. My dad had a way of making me feel okay when no one else could. He hated to see anyone suffer and did anything he could to make things better.

I can vividly remember the way my dad cared for his mom when she fell ill. I watched him do the same for my mom's parents when they began to fail. I remember all of the time that he spent comforting my grandmothers. He made them laugh when they cried. He made them smile when no one else could. He gave them life when all semblance of living had been taken away from them. That is my dad.

I have written you this letter in hopes that I could provide you a glimpse into the life of the person whose fate now rests in your hand. For 47 years of my life, I have seen my father be the embodiment of goodness in this world, bring happiness to the lives of others and instill in his children and grandchildren the virtues that are absent from his own aberration. I now watch him tortured by the harm he has caused, incapable of forgiving himself. I understand that he will forever live with the shame and guilt that he has brought upon himself – that is his cross to bear – but I implore you to be compassionate in your judgment and to not take my dad away from my family and me for the remaining years of his life.

Very Truly Yours,

Kim Gillis Dobkin

# EXHIBIT 13

**EXHIBIT 13**

LYLE G. GILLIS
G/F, 63 MACDONNELL ROAD
CENTRAL, HONG KONG
+852 9561-1111


March 15, 2015


Honorable James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, California   90012

Dear Judge Otero:

I am writing to you regarding Joel Gillis.    Joel is my older brother, being some five years my senior.    So I guess I have known him just about as long as anyone could. That is why the current state of affairs is so strange to me.    Joel is the last person I know that I could picture in this situation.

Joel has always been the one person that I have looked up to, not because he is my older brother, but because of who he is as a human being.    Joel was always the best at everything he did; the best student, the best athlete, the first to volunteer to help others in any situation.    When I was sent to Vietnam in 1968 I could count on getting a letter from Joel at least twice a week which so helped me through a terrible year, and he would send a large care package of goodies that he insisted I share with my fellow soldiers.    He is kind, generous and loving.    He and his wife carol raised two fine daughters who cherish him, have four grandchildren that adore him, two brothers that love him, and a multitude of friends and well-wishers in the Los Angeles community.

There is no doubt in my mind that Joel will never have any problem in the future that would put him in contact with the criminal justice system.    I truly believe that in the current case, Joel started out in a legitimate business and somehow got involved in something that snowballed out of his control.    Joel could never purposely, knowingly start up something that he knew was wrong.    It is just not in his character to do so.

All of Joel's family and friends support Joel in this time of trouble, and will continue to support him until and after this affair is over.   I hope that you will take this letter and those of his other friends and family into consideration when reviewing Joel's case.

Very truly yours,

Lyle G. Gillis

# EXHIBIT 14

**EXHIBIT 14**

**SARAH HELEN GILLIS**
**6505 RODRIGO STREET, UNIT 1**
**HOUSTON, TEXAS 77007**


August 18, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, California 90012

Dear Your Honor:

I am writing this letter on behalf of my brother-in-law, Joel Gillis. I first met Joel in 1973 when I was dating his brother (and my husband to this day) Chuck. Ever since we were first introduced, I have felt a special bond with Joel.

My parents were Holocaust survivors who immigrated to the United States from Poland (by way of a displaced persons camp in Austria) in 1950 and settled in Galveston, Texas. My parents never accumulated much financial wealth (although they were rich in many other ways) and were often discriminated against by other Jews who felt a sense of superiority by virtue of either being born in the United States or having attained some semblance of financial success.

From the very beginning, Joel welcomed my family and me into the "Gillis Family" with open arms and with no conditions or qualifications. Since most of my family died in World War II, it was very important to me to be surrounded by family and Joel went out of his way to make my hope a reality. He treated me as though I were a sister to him, not simply the wife of his brother. He often told me that my parents reminded him of his European grandparents, humble people who came to the United States seeking a better life far from the discrimination they endured growing up in Eastern Europe.

Joel has always been a very caring individual who would go out of his way to help someone in need. He has been the glue who keeps his family bonded together. He is not a bad or evil person and I truly believe that Joel did not intend to harm anyone.

Because of my parents' history, I have a terrible fear of having a family member incarcerated. Joel and his entire family have suffered severely over the last year through public ridicule and self-imposed isolation. Punishing Joel at this stage of his life would serve no useful purpose, but rather showing mercy and tolerance would allow for him to atone for his past actions as he goes through the last chapters of his life.

Very truly yours,

Sarah Helen Gillis

# EXHIBIT 15

**EXHIBIT 15**

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, Ca. 90012

To the Honorable S. James Otero,
Carol and Joel Gillis, and their children and grandchildren are our extended family. As
the very closest of friends to my sister Carole, and her husband Alan Zwillinger for over
forty years, I too have known them intimately for the better part of my adult life.

We have shared holiday celebrations, travel, and the many significant occasions of our
families and mutual friends. Whether these events are celebratory or sometimes those
hard and sad life experiences, Joel is always present. By present I mean truly involved.
He can consistently be counted on to offer just the right dose of appropriate humor,
empathy, loyalty and support. Joel's friendship is one we have always cherished. He
demonstrates kindness, respectfulness and appreciation for everyone in the room. Joel is
the one who makes a point to go over to my 96 year old mother – take her hand and give
her a kiss and make her feel special as he speaks with her. I have witnessed his caring
ways for years with young and old and especially with Carol's mother, Marsha, when she
was alive. Joel's grandchildren are the beneficiaries of his devotion and attentiveness. He
regularly participates in their lives and always attends their school and extra-curricular
activities.

No one comes close to the engaging sense of humor and downright funny ways of Joel.
He can make me laugh until I cry, and it's both subtle and clever. He finds fun and
humor in the little things; not at the expense of others or in any negative way.

We have attended numerous charity events with Carol and Joel over the years, but I know
the most meaningful to the family is their involvement and tireless work for cystic
fibrosis.

My personal and our family's experiences with Joel over the course of these many years
have been so very positive. We know him to be a person of good values and good
character. It is confounding, at the very least, to grapple with this set of circumstances. I
guess the best way I can understand and make sense of it is to recognize that he is still
our beloved friend. Knowing the very best of him is who we know and love, and we
hope the court will have an understanding of the person we know.

I hope in the future Joel will be afforded the opportunity to demonstrate to the
community the many facets of goodness that make up his character. I am certain he
would do something important to benefit others.

Respectfully,

Nancy Goldberg

# EXHIBIT 16

**EXHIBIT 16**

Dear Judge Otero,

I have known Joel for many years, and it is with great sadness and disbelief that I am writing you this letter.

I married Joel's cousin Ellen many years ago. From the moment I met Joel, there was an instant connection. He immediately made me feel like family, and went out of his way to see that I was comfortable. Ellen always spoke so highly of Joel that it should have come as little surprise that he would be so welcoming and loving. In the years that followed, I have had the pleasure of spending a lot of time getting to know Joel and his family. Joel has always been the nicest, warmest, caring man.

Through good and bad times, Joel has been there for me, treating me just as he would his own blood relatives. When I was diagnosed with bladder cancer a few years ago, Joel's emotional support was unwavering. He called. He visited. He did anything he could to help ease my physical and emotional suffering. His friendship, loyalty and compassion were as critical to my recovery as the very treatments that saved my life.

At the core of Joel Gillis is a kind, empathetic, loving person. When I found out about his recent troubles, I was shocked. These acts are so out of character for the man that I know and love. I truly hope that you can see past his misdeeds and take into consideration the totality of the man that Joel is and the many people whose lives I know Joel has touched in a positive way.

Thank you,

Ted Goldberg

# EXHIBIT 17

**EXHIBIT 17**

richard green letter.docx | Download ⌄    1 of 1

March 13, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA  90012

Re:    Joel Gillis

Dear Honorable S. James Otero,

Joel and I have been friends since we met in the 9th grade, some sixty-five years ago. I have never known Joel to be anything but an honest and kind person.  One of my fondest memories of our friendship is when Joel stayed up with me all night before I was due to report in for military service. I have many other wonderful memories of Joel and I playing football, basketball and baseball together.  Never once have I ever seen him take advantage of anyone.

I was his best man at his wedding to Carol and have continued our friendship through all the years. I know that Joel has been a good husband, a good father and a wonderful grandfather to his four grandchildren, who he loves very much.

I hope that you will take the character of the man into account when you determine his sentence.


Most sincerely,

Richard Greene

# EXHIBIT 18

**EXHIBIT 18**

August 11, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street,
Courtroom 1-2nd Floor
Los Angeles, CA 90012

Dear Judge Otero:

I am writing to you on behalf of my cousin Joel Gillis who has played a very important role in my life.  I have known Joel my entire life (51 years).  During this time, I have had a close relationship with him and seen time and time again how much he has valued friendships and family.  While it is clear he has made mistakes, there is definitely an overwhelmingly caring, kind, generous and supportive side to Joel.

I grew up in the Chicago area and went to college at The University of Wisconsin-Madison.  After leaving Madison, I moved back home to work in my family's business which came to a close in 1991.  Not knowing what to do with myself at that point, I decided to move to Los Angeles with a friend.  Besides my friend, I knew no one else in the area except for Joel, his parents and his family.

Joel, absolutely went out of his way to make certain we rented an apartment in a good area, and had everything we needed to get off to a good start in a new city.  He checked in with me weekly to answer any questions I had.  He introduced me to potential job opportunities and would often call just to make certain that I was generally ok.  Moving half way across the country and knowing one other person was not the easiest thing in the world for me at that time.  Knowing Joel was there to check up on me made it all the easier.  I was included in all the family functions even though I didn't know the extended family that well.  Joel made certain that I instantly felt part of the group.

I remember Joel working constantly during that time far from where I lived and worked.  Even though that was the case, Joel made certain he saw me, in person, at least twice a month.  This, even though often times he had to make the long drive.  I remember wondering at the time why he would do this, travel close to two hours round trip to have a 45 minute dinner.  Looking back I get it.  It was because of his kindness, generosity and dedication to family and people in general.  Today this can be found in the reciprocal genuine love there is between Joel and his daughters, their husbands and his grandchildren who adore him (yes that is an understatement).

In the past months, I have visited Joel in person as I have moved back to Chicago.  I speak to both his family and him regularly.  It is impossible for me to make sense of what has transpired as I know Joel in a completely different light.  The Joel I know has been nothing but loyal, generous with his time and full of good intentions.  Joel is a loving family man.  He has on numerous occasions expressed the shame and remorse he feels for what has happened.  While what he did was wrong, I know this was the farthest from his intentions.  Because of this and the character of the Joel that I know, I hope you can help to give Joel Gillis a second chance.

Respectfully,

Gregg Helfer

# EXHIBIT 19

**EXHIBIT 19**

August 13, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street,
Courtroom 1-2nd Floor
Los Angeles, CA 90012

Dear Judge Otero:

I find myself in a situation that I was hoping that would never come to pass.  I am writing about Joel Gillis.  A man whom has touched many people in very positive ways and from what we have learned… some negative ways as well.  I have known Cousin Joel, as we call him, for my entire 48 years.  I have known him to be a loving man who is deeply committed and loyal to family and friends.

I know this first hand by seeing the strong bond and relationship he has built with my Mother (Ellen Bresler) over the years. My mother has been very close with him and has regarded him as the brother that she never had. I know that she and others have written about the countless acts of kindness as well as the kind heart that Joel has.

Although thousands of mile away, I have also felt this warmth and generosity.  In the mid 1980's when my parents were going through a difficult divorce, I remember Joel constantly reaching out to me by phone as well as personal visits. As an impressionable teenager, there was a lot of chaos and upheaval in my life. It could have gone horribly wrong for me, but Joel was there as a constant stabilizer that I could reach out to if needed… he really made a difference.

The Cousin Joel that I know is a loving husband, father, and grandfather.  Most everyone that comes into contact with him has been touched in a positive way.  I understand that isn't the case for everyone. It is very hard for me to reconcile what has happened to others with the man that I know.  I can only think that his love and passion for his family drove him to this unfortunate set of circumstances. I am hoping that because of the good that he has shown and due to the lives of so many that he has touched in a positive way that you will grant leniency to him

Respectfully,

Michael Helfer

# EXHIBIT 20

**EXHIBIT 20**

3-12-15

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, CA  90012

My name is Susan Jacobs, I am a first cousin to Joel Gillis.  I am a business owner (H&M Tool Express, Inc.) for the past 20 years in Waterford Michigan.  I have known Joel all my life, he is my oldest cousin. I have looked up to him for as long as I can remember.  He's always been a loving, caring, and supportive person to me.  Taking care of my parents for the last 15 years, Joel called me all the time and my parents to see how everyone was.  He came in to see my parents and myself, in short notice to be supportive in my long journal with the care of my parents.  I also, admired how he took care of his mother-in-law, Marcia, who was sick, for a very long time.  Now, his father-in-law, who has struggles with health issues, Joel has taken him golfing, dinners, sees him all the time.  He has been very supportive of his wife, during her time with her Mom and Dad.  Taking care of your parents, when there healthy is a struggle, when they are sick, its stressful and trying, all the support you can get, is so important, in this journey. Joel went way above his duty as a husband and son-in-law, which I found very commendable.

I know Joel has struggling with his Gambling addiction for a very long time.  He went to Gamblers Anonymous, and lectured for them.  It takes a strong person, to admit his addiction and then try to help others with theirs!

He is a loving father, to his two girls, was a very attentive, loving father and supportive.  Joel was very involved with his family, always there for them, especially to his 4 grandchildren, who love an adore him.  I found what he did is so out of character for him, not to care for others, is astounding to me, when he shows, just the opposite to his family and friends.  Besides, being so supportive to his children and grandchildren, he has been a great husband, to his wife Carol, loving, caring and very attentive to her needs.

I do believe Joel is a good man, and remorseful for what he did, and I believe in my heart he would never have any further involvement with the criminal justice system, after he serves his sentence.

Thank you for taking the time to read this letter, this comes from a heavy heart, but a loving heart towards my cousin Joel.

Thanks again.

Susan Jacobs

# EXHIBIT 21

**EXHIBIT 21**

May 8, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1, 2nd Floor
Los Angeles, CA  90012

Dear Judge Ortero,

My name is Lee Laffer.  I am 92 years old and I live in Los Angeles.  I am in the unique position of being a NASI investor for the last 13 years as well as Joel's father-in-law.  As you probably can imagine, I am very sad to write this letter.

This is the Joel that I know.  He is kind.  He is generous.  He is out-going and fun.  He loves people, especially his family.  He loves his wife and has been a very good father to Kimberly and Alison.  His four grandchildren adore their Poppy Joel.

I have not had the easiest life.  I lost two children to Cystic Fibrosis, when they were 5 and 7 years old.  My eldest daughter, Carol, was only 9 years at the time.  My wife and I were very protective of Carol so when she met Joel, he had to prove himself worthy.  It didn't take very long.  They got married, had two beautiful girls and seemed to have a happy life.  Carol became very involved with the Cystic Fibrosis charity.  She ran the Los Angeles division for many years.  Joel was very involved and always by her side.

Joel has a big heart and has always treated my wife, Marcia, and I as if we were his own parents.  What stands out the most is how he took care of my wife when she got sick.  She was only 50 years old when she had a stroke and had already been diagnosed with diabetes, which eventually led to the amputation of one of her legs.  I tell you this because she was sick for many years and he was always there.  If Marcia needed to go to the hospital, he was right there to take her.  If she needed medicine, he would pick it up.  He would spend countless hours just spending time with her.  This is how he has treated my wife and I since the day that we met him.

As an investor, I am very disappointed.  The only thing that I can say is that I truly believe that Joel didn't mean to hurt anyone.  I have tried to understand how this came to be  and the only explanation I come up with is that he got in over his head and rather than let down his investors, he made some very bad decisions that ultimately hurt them more, myself included.  I believe he is tortured by his actions and would never do anything criminal again.

Please take into consideration how much Joel is loved by his family.  I believe with all my heart that Joel is a good kind person who made a big mistake.   Please give him a second chance.

Sincerely,   *Lee Laffer*

Lee Laffer
(818) 906-7821

# EXHIBIT 22

**EXHIBIT 22**

May 1, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor Los Angeles, CA 90012

Dear Honorable S. James Otero,

My name is Leslie Lashever and I am a 46 year old, happily married mother of four children. I have grown up in the San Fernando Valley and after meeting my husband in college, have moved back to raise my family in a nearby suburb to where I grew up. I am considered an active and well respected member in our community and children's school. I am also a member of a philanthropic organization that helps various charities in the San Fernando Valley.

I have known Joel Gillis for 41 years. He was most definitely a very big part of my childhood. His daughter and I have been best friends since the age of 5, so you can well imagine that I spent a great deal of time in his home. Joel was always kind and loving. He certainly opened up his heart and gave me guidance throughout the years. Joel would always wait up for us when we came back to their house to sleep just wanting to make sure we were all safe. I remember a time when Joel caught us toilet-papering a house. He sat us down and lectured us about right from wrong, explaining the ramifications of our actions, and then drove us back to the house to clean up the mess and he made us apologize to the family.

There were many times I would come over to find Joel watching a sporting event on TV on a Saturday. Being an avid sports fan myself, I would always sit and watch with him. He invariably would engage me about my life; how I was progressing in school, and always ask how my family was. He treated me like another daughter. We both love sweets, I can remember sitting and eating ice cream or cookies and Joel would give me advice by being funny and witty which without fail made me laugh. There was never a time that he didn't put a smile on my face.

Joel's daughter and I did not go to the same college, but remained the closest of friends. On summer or winter breaks I would always make sure to go over to their home to say, "Hello". Joel would always ask about friends, relationships, and life. He would constantly tell me to surround myself with true friends that had "real" family values. He told me to surround myself with good people that would rather give than receive. He and his wife, Carol, were always supporting charities, especially Cystic Fibrosis. Carol had two siblings that were born with the disease. Both Carol and Joel were passionate about helping bring awareness to this disease and raise money to support the foundation.

Joel Gillis is a kind man and a loving father. I've chosen to explain to you how he has impacted my life. I tried to portray a man that, without knowing, gave me sound advice and wonderful memories. The man I know understands right from wrong and wouldn't ever intentionally hurt someone. We all make mistakes. Being a mom of four I am well aware that not one person is perfect. There are various degrees of mistakes that we all do. Therefore, there are a multitude of punishments. I am faced everyday with having a similar job to yours in my own home with our children. I truly feel I understand how difficult it is to attach a punishment to a "mistake". I hope that when you attach a punishment to Joel that you remember that he is not a monster. He is a kind man that has a wife, children, grandchildren and friends that love him. He is a man that bestows love and happiness to those around him. He is a gentle man. Please take into consideration that although you don't know me, I love him and ask you to be fair.

Respectfully,

Leslie Lashever
(818)523-1500

# EXHIBIT 23

**EXHIBIT 23**

April 15, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2nd Floor
Los Angeles, California 90012


I first met Joel Gillis at U.S. Sales Corp., a catalog merchandise company about 40 years ago. I was a Senior Vice President of the firm and Joel was one of our suppliers. Though we rarely interfaced at the office, we occasionally ran into each other at a number of business social functions but it wasn't until the early 90's that we finally began our 25 year close friendship.

To those who know him (including myself) Joel has always been characterized as a man of warmth, charisma and most of all a unique sense of humor. To me though, it is his dedication and love for family that is his finest quality. For Joel, his wife Carol, his two daughters, grandchildren and sons-in law are the most important people in his life. The love and support they have shown during these difficult times has been incredible. It is often rare but occasionally we get to see the emotional, sensitive side of Joel. I remember attending the funeral of his mother-in law when Joel gave the eulogy in the form of a letter. It was a moving tribute to a woman he loved and respected. Needless to say, there wasn't a dry eye in the chapel when he finished.

We all go through our lives building relationships but Joel was unique in this respect. His 70th surprise birthday party prompted a huge turnout of friends ... all of whom *wanted* to be there. Both the number of attendees and their love and respect for the man amazed me.

In spite of recent events, my faith in Joel's honesty and his dedication to being a law abiding citizen has not been shaken. We all make mistakes in life and my friend Joel certainly made a big one, one that had me and all his friends shaking their heads. This was not the Joel we knew and loved. I hope the Court sees Joel's "mistake" as a one-time event and renders an understanding and sympathetic verdict.

Sincerely,

Murray Lee
78-541 Pompeii Court
La Quinta, California 92253

# EXHIBIT 24

**EXHIBIT 24**

Dear Judge Otero –

RE: Joel Gillis

For the last 48 years Joel has felt like part of my family. Attending many functions.

As I approach my 96th birthday, I reflect on all the good Joel has done. He was always interested and respectful to me

He was most charitable to The Childrens Tumor Foundation as my 17 year old grandson suffers from Neurofibromatosis.

In closing I hope these positive remarks might benefit your decision.

Dorothy Marks
9307 Bolton Road
Los Angeles, Ca. 90034

# EXHIBIT 25

**EXHIBIT 25**

Dear Judge Otero,

Words cannot adequately describe how devastated I am to be writing this letter. Never in my life did I think I would find myself recounting how wonderful my father is to a judge, pleading for mercy on the person that I have always known to be nothing short of righteous, moral, selfless and good. I know these words seem incongruous with the case that is before you, which is why I am imploring you to consider all of his goodness, only the smallest amount of which I can share with you here, when weighing the consequences for his misdeeds.

Throughout my thirty-nine years of life, my dad has been there for me in every possible way. He cheered for me at every milestone, consoled me at every setback, and guided me at every crossroads. His advice was always pure and moral. He was quick to punish me for not doing the right thing, and quick to reward me for doing good. He taught me right from wrong, compassion and empathy, and just about every other tenet of being a responsible citizen of this world.

As a young girl, I remember my dad as being sweet and loving, but also being very principled. He led by example and took every opportunity he could to teach me morality. He showed me what it meant to be altruistic. My mom had lost a sister and a brother to Cystic Fibrosis, and had committed much of her adult life to charities in their honor. I remember my dad taking me to see my mom as she set up for different fundraisers and awareness events. He was so proud of her work and the example she was setting for me and my sister.

In high school, as some of my girlfriends experienced challenges in their own families, my dad opened our home to any friend of mine in need. He would counsel them just as he would counsel me, and then he would remind them that they needed to respect and honor their parents and take responsibility for their own actions. That was my dad's way. He was respectful and loving, but above all, honest and moral.

When I left for college, my dad moved me into my dorm, and gave me one of his long speeches about what it meant to be a responsible adult. I remember him telling me that he would never be disappointed in me as long as my decisions were rooted in doing what was right. After I graduated, we talked at length about the next phase of my life. When I told him I wanted to get my masters and become a teacher, he could not have been more proud. I always looked to him for his approval, as I knew that if he approved, I was doing something right.

I would be remiss if I did not say that I am incredibly disappointed in my father. It has taken me the better part of this last year to fully comprehend how the person who had always been the embodiment of morality and goodness could have done what he did. In his own words, he woke up one morning and made the worst decision of his life, and in trying to make things right, he just kept going down a path that only made things worse.

I see the shame and remorse that he carries around with him, and I know with all of my heart how very sorry he is and always will be. I have spent my life as a daddy's girl, but I was not alone in my affection and adoration. Everyone I knew loved him, because there wasn't anything in this world he wouldn't do to help someone in need. That is what his made this entire situation so shocking. His actions do not reflect the person that my father had always demonstrated himself to be.

Judge Otero, I am hoping that you can look at my dad as a whole and give him a chance to live his life as he had always insisted that his children live theirs. He is a beloved father, grandfather, brother and friend. He made some awful choices, but he is not by nature a mean or bad person. I truly hope with all of my heart that you can read this letter with an open mind and open heart.

Thank you,

Ali Morgan

# EXHIBIT 26

**EXHIBIT 26**

August 10, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1, 2nd Floor
Los Angeles, CA  90012

Dear Judge Otero,

I am Joel Gillis' son-in-law, married to his youngest daughter for the past 13 years and the father of Joel's two youngest grandchildren.  This past year I have borne witness to the complete and utter devastation of a family.  I have seen the trust that bound a 49-year marriage severed irreparably.  I have seen the adoring eyes of two adult daughters hollow in sadness and disbelief.  And I have seen a man once so full of life and universally loved reduced to an isolated shame-ridden shadow of his former self.

I have devoted much of this past year to helping my wife, my mother-in-law, and my sister-in-law come to terms with the heartbreaking revelations of malfeasance.  Though I have tried to provide them with comfort and strength, I have also struggled with many of the same thoughts that I've heard them espouse over and over again.  These are just not the actions of the man we have all known and loved.  This is a man whose greatest joy was bringing happiness to others.  This simply does not compute.

I remember the first time I ever met my father-in-law.  I had been dating his daughter for several months and was finally invited to meet her parents for dinner.  My wife warned me that her mother might be a little tough on me, but she also made it clear that it was her father's approval that mattered most to her.  Much to my delight, our first dinner was a success.  Whenever her mother began to probe a little too far, her father jumped in to rescue me with a softball question.  Whenever conversation slowed to a crawl, Joel would lob some sports trivia my way to ease the silence.  From that very first encounter, it was obvious to me why my wife loved her dad so much.

In the years that followed, Joel never wavered from being the person I met on that fateful first evening.  He was every bit the father-in-law that I had always hoped for.  He was there when you wanted him to be and happy to be in the background when you didn't.  When my wife and I welcomed our first child into the world, Joel stood by my side as my wife (and I) braved her birth.  To many, the concept of having your father-in-law in the delivery room would be unthinkable.  To me, it was just natural.

Several years later when I found myself in the emergency room awaiting an appendectomy, Joel was the first person to rush to the hospital to be by my side.  He was there long before my own parents could arrive, and comforted me as if I were his biological son.  He has always been there for me, just as I have seen him there for so many others over the years.

As I hope I've made apparent in this letter, the core of Joel Gillis is a good man, a very good man!  He is someone who cares deeply about others and does not like to disappoint.  As oxymoronic as this may sound, I believe that is precisely the reason he finds himself in the position he is in today.  Rather than admit to his failure, in trying to find ways to continue to deliver joy to those who trusted in him, he just dug himself a deeper hole.  While that in no way should excuse his actions, I am hopeful that it provides some solace to those who have been aggrieved and some basis for leniency in your judgment of him.

Sincerely,

Jeff Morgan

# EXHIBIT 27

**EXHIBIT 27**

March 15, 2015

Honorable S. James Otero
United States District Court Judge
312 North Sprint Street., Courtroom 1-2nd Floor
Los Angeles, CA 90012

My name is Bob Newton and I am a NASI investor of approximately 4 years. I live in a small town in Texas near Ft. Worth.

Before I initially invested in the ATM machines I flew to Los Angeles to meet Joel. I wanted to get to know the person I was investing with and not just his company. I found Joel to be friendly and welcoming; he did not try to sell or not sell me on investing. After my initial meeting and with assurances from other satisfied, business savvy investors that I personally knew, I felt secure in my decision to invest.

As time progressed he and I ended up having some very laughable moments. I always had the feeling that if he lived near us he would be a good friend. Joel and I had many phone conversations over the years. During that time Joel had plenty of opportunities to ask me to invest in more machines but that never happened.

I believe there are two Joel's and neither one of them are evil. The one Joel who has many friends and a very lovely family and then the other, the business man who began the investment business correctly, deviated, and ended up digging a deeper and deeper hole for himself ending in business failure.

My wife and I met with Joel and his wife Carol on one of our trips to L.A. We had dinner with them when I was on other business in California. At that dinner our grandson was with us and it was a wonderful evening. Through the years we kept up with Joel by email or phone and he always was very responsive to my questions. We had many laughs and I enjoyed his wit.

During the time that I have known Joel I never detected at any time that I could identify conspicuous consumption on his part. What was strange is that he seemed to live a very patterned and average life. No matter when I called he would be at the office. His secretary said if he was at lunch it was at the same small average restaurant just a few blocks away. Most people

who set out to defraud usually live a very lavish lifestyle; and through the years of knowing Joel I never saw this indulgence.

Am I shocked and disappointed? Of course, but more puzzled and certainly a bit angry. As with the other investments I have made, I feel I did my best to vet them thoroughly, but then one cannot always be right all the time no matter how diligent an investigation is done.

I feel Joel is very remorseful to the extent he would be capable and able to teach others not to make his same mistakes.

Considering Joel's duty to repay society , although I am certainly not his Judge, I would require him to speak to business groups and students about what not to do and how it can wreck one's life. If incarcerated, all he will do is cost the government money.  I think at this time in his life and considering his age Joel could be transformed into a positive asset. Forcing Joel to be active in the community and speaking about his misdeeds and how they slowly got out of hand year after year only to culminate in failure and most notably reach a point of no return would certainly be a teachable experience that needs to be conveyed to all who would listen.

I have owned my own successful construction business for 35 years and some would say I was a hard disciplinarian. But I paid my employees well and demanded much from them. If a mistake was made instead of firing I would outline very rigid goals for them to fulfill. This would be their second chance. If they complied they stayed if not they would have to go. Almost all succeeded and were thankful for a second chance.

I hope Joel has a second chance. Ironically I feel he now has a lot more to offer at this stage of his life by conveying his mistakes to others and hopefully preventing some foolish endeavor that a young person or business individual might try to undertake. Greed is in all of us. Unfortunately even we investors suffer from that malady as well.

Sincerely,   Robert Newton

Robert Newton
9802 Airpark Dr.
Granbury, Texas 76049
NASI investor

# EXHIBIT 28

**EXHIBIT 28**

May 10, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1, 2nd Floor
Los Angeles, CA 90012

Dear Judge Otero,

My name is Flora Niskar and I live in Los Angeles. Joel and I went to high school together in Detroit, and we have remained close friends ever since. My late husband, Marty, and I share many memories with Joel and Carol. We have witnessed many of life's wonderful markers… bat mitzvah's, weddings, births of our children and more recently, grandchildren. Carol and I were pregnant at the same time and we have many memories of taking our kids to Disneyland.

I remember like it was yesterday when my husband lost his job and we were going to have to move back to Detroit. I was pregnant with my first child and was so sad to leave Los Angeles. As soon as Joel heard the news, he went out of his way to help. He introduced Marty to his boss at the time and we did not have to leave. I will be forever grateful.

Joel and Carol have been there for me through many difficult times. I lost my husband, who was my very best friend, over twenty years ago and they were right there by my side. Joel and Marty were very close. Joel was the first one at the hospital to hold my hand and the last one to leave. Together, Joel and Carol have always been there for me and to this day they have been my dear friends helping me through years of battling cancer.

Joel is always a sweetheart. He loves to laugh, tells great jokes, although he is known to ruin a punch line, and is always fun to tease. He loves his family and would do anything for a good friend. He has a beautiful heart. I have had such a difficult time trying to understand what happened. I have tried to figure out why he decided to go down this road. This definitely was a mistake… a very bad decision. He is absolutely not the kind of person that would hurt someone intentionally. That is just not who he is. Joel is the man that stood right next to Carol through all the years of fundraising for Cystic Fibrosis. Joel is the man who treats his wife's parents as if they were his own. Joel is the man that sat by my side holding my hand through the years of my husband's illness and now with my own.

This has been heart-breaking for me because I love him and know in my very bones that this situation is not indicative of the man he is. It was a big mistake and he did not mean to hurt a soul. If anything, he loves people and just wanted them to love him back.

Thank you for taking the time to read my letter.

Sincerely,

Flora Niskar
(818) 980-8033

# EXHIBIT 29

**EXHIBIT 29**

# IRA B. POLLACK & ASSOCIATES, PLLC

ATTORNEYS AT LAW

118-35 Queens Boulevard  9ᵗʰ Floor
Forest Hills, New York 11375
Telephone (718) 261-7700
Cell (917) 814-4888
Fax No. (718) 709-0671
Email: iraxxxxxxx@yahoo.com

July 1, 2015

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1-2ⁿᵈ Floor
Los Angeles, CA 90012

Re: Joel Gillis

Honorable Judge Otero:

      I am an attorney, licensed to practice in the State of New York since February, 1978. Over the years, I have been very active in many of the trial bar associations, and I was the President of the Jewish Lawyers Guild, one of the largest ethnic bar associations in the country, back in the late 1990's. I have been asked to apply for a judgeship in the Housing Court, (a much lower Court), and am giving it much consideration.

      Joel is my first cousin. We have the same birthday. I was born on his Bar Mitzvah, and my mom always reminds me that she missed his Bar Mitzvah because of my birth.

      Joel and Carol have resided in California forever, it seems, and I am a New Yorker. I can't say that we see each other often, but I can say that Joel is the head of the far-flung Gillis clan and does his best to keep the family together. Family members reside in Detroit, Houston, Hong Kong and New York, just to name a few places. Joel always has time to keep in touch and organize family parties for simchas. (Happy Occasions). When I see Joel's girls, Kimberly and Allison, and I see how grounded they are, I know that Joel did a good job of raising the children and instilling in them good and wonderful character traits. Joel is the type of man who never draws attention to himself. He is self-deprecating and always has a wonderful story to tell about others, not himself. He remembers the older generation fondly, and never has a bad word to say about anyone.

I did not hear about Joel's problems from their inception. It's not something that family members want to discuss. When I learned of the basic allegations, I was, of course, appalled. I could not believe what I heard. Joel would never hurt a fly! I understand he had partners, and it would be easy to blame others, but we all must accept responsibility for our actions, good and bad, and so must he. Having spoken with Joel, I know he is devastated, and can barely look in the mirror and face his true accuser – himself. He took a bite of the forbidden apple, and couldn't spit it out fast enough. Many of us, especially those of us who practice law, must make decisions all the time for truth, what's right or wrong, and what's confidential. It's not easy. We all walk a fine line every so often.

No doubt Joel should be punished according to the law. But, part of our system provides for forgiveness and "other consideration". People are given "second chances" all the time. A "second chance" is just as much a part of our judicial system, as punishment. Joel is not getting any younger and I have seen many a defendant given alternative punishment that may be lenient yet severe. I ask this Court to consider such alternatives, and show leniency.

Thank you for your kind consideration.

Respectfully yours,

Ira B. Pollack

IBP:ia

# EXHIBIT 30

**EXHIBIT 30**

April 11 2015

Re: Joel Gillis

Dear Judge Otero,

Joel + I have known each other for forty eight years. Since I met him I have felt like one of his brothers. He has always been available to advise + support my action.

I spent many enjoyable hours with Joel + his family. There were many barbeques in Joel's back yard or mine. There were many holidays to San Diego, San Francisco, Santa Barbara with our families or just our wives. At These times Joel was always attentive and anxious to participate.

Joel was always there to support many charities, especially the Tumor Foundation. This charity is close to my heart as my nephew suffers from Neurofibromatosis.

In closing I hope these words might help you to understand how a good, man made a bad mistake.

Sincerely

Robt S____

23307 Weller Pl
Woodland Hills California 91367

# EXHIBIT 31

**EXHIBIT 31**

4/3/15

Dear Judge Otero
Regarding Joel Gillis

I have known Joel since I was
born 44 years ago. He and his
family have always been an
important part of my life.
He has always been there to
encourage my goal to become
a registered nurse which I
accomplished 20 years ago.
I always held his advice in
great regard. He is a wonderful
husband, father and grandfather.
It's obvious to me that he has
great remorse for what he has done.
And it is my belief that he will
follow the law going forward.

Stephanie Sandler RN

Stephanie Sandler RN
5357 Yolanda Ave
Tarzana, Ca 91356

# EXHIBIT 32

**EXHIBIT 32**

4/10/15

Re: Joel Gillis

Dear Judge Otero,

I have known Joel for forty eight years. During this time I have shared many wonderful & sad events that occur in a lifetime. There were many trips together with our 2 older daughters. Then there were many trips with all four of our daughters. He was a wonderful father to his daughters and felt like an uncle to my daughters. I shared countless holidays at his home where his hospitality was extremely evident. My husband and I spent at least forty New Years, Chanukahs, Memorial Days, Labor Days and Jewish holidays together.

During all these years he has been only good values in our relationship with him and his family. In our day to day lives he has always been honest and reputable, beloved and respected by every member of our family and extended family.

I know Joel has always been very charitable. Unfortunately, my nephew suffers from Neurofibromatosis. Joel has always been anxious and willing to support the Children's Tumor Foundation. For that alone I will always be grateful for his support.

I believe that Joel would never be involved in any illegal activity again as he has witnessed how devastating such actions can be for himself, for his family and for his friends.

I hope that some day in the future Joel might be able to participate in causes that could possibly be beneficial to members of our society.

Thank you for taking these words into consideration.

Sincerely,

Wendy Sandler
23307 Weller Pl.
Woodland Hills Ca.
91367

# EXHIBIT 33

**EXHIBIT 33**

# Gloria S. Siegel, Ph.D

**Adolescent and Adult Psychology**

4646 Poplar Avenue – Suite 307
Memphis, Tennessee 38117
Telephone: 901.685.2148
Fax: 901.767.3500
Email: gsiegelphd@aol.com

Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 12nd Floor
Los Angeles, CA 90012

It is with great sadness that I write this letter.  I have known Joel, my first cousin, almost all my life.  I was the first grandchild of the family and he was the second, He was born shortly after me.  My father, who was a very important figure in Joel's life, was the oldest of the nine children.  My Aunt Belle (Joel's mother) was the oldest of the girls in the family

Since I am a psychologist as well as a close relative, I have thought and thought about Joel's life. The memories of his life situation and my knowledge of him go back through these many years.  Joel is a loving person and has had many uphill struggles through the years. Joel's father was very distant, cold and even cruel to Joel. He was absent most of the time as far as I can remember.  Joel was very much in need of a male figure in his life…unfortunately my father filled in the void and became Joel's role model.  I say unfortunately because my father loved talking about "the deal" just around the corner. He prided himself on his genius in making money and being the smartest person in the room.  Joel hung on to his every word, idolizing my father, even from the time he was a young boy. Joel's father, largely absent, was often cruel to Joel when he was home.  I

April 10, 2015
Page 2

have vivid memories of Joel being required to practice the violin for hours and hours, never pleasing his father. It has always been surprising to me that Joel himself was a loving father to his children despite the emotional abuse he suffered while growing up. His deeply-rooted sense of inferiority has been his lifelong struggle. My dad was his role model. My father undermined Joel's development by his self-aggrandizement and encouragement of Joel to literally almost worship him. Despite all this, Joel has tried and tried to redeem himself through devoted 12- step work in Gamblers' Anonymous and a great deal of self reflection.

I have been so proud of the way Joel became part of Gamblers' Anonymous and in fact sponsored many people as they struggled with their own addictive behavior.

My knowledge of Joel is both from a perspective of how much I care about him and from the view of a psychologist. The mitigating circumstances are profound.

Our family is devastated. Joel's daughters, Kimberly and Alison, are wonderful young women. Joel was dedicated to their education. He knew he wanted them to have a Bat Mitzvah and also traditional weddings. Both girls have children and are married to wonderful young men. Their devotion to their father speaks well of his attempts to rise above terrible circumstances. He is greatly loved for his warmth and devotion to his family. This is nothing short of a miracle; I witnessed so many events that caused him great hardship and struggle.

Sincerely,

Gloria S. Siegel, PhD
Licensed Psychologist

# EXHIBIT 34

**EXHIBIT 34**

JEROME S SIEGEL,MD,FACP
6624 WESTMINSTER RD
MEMPHIS,TN 38120

HONORABLE S JAMES OTERO
UNITED STATES DISTRICT COURT JUDGE
312 NORTH SPRING STREET, COURTROOM1-2nd FLOOR
LOS ANGELES, CA 90012

Re: Character letter for Joel Gillis

I am a physician in Memphis, TN and have been married to Joel's 1st cousin for over fifty seven years. I have known Joel since before our wedding.

Over the years I have been impressed that he is one of the kindest people I know. He would never intentionally set out to harm another person or to inflict any pain or discomfort. Joel always made others feel good about themselves .

However, Joel had a problem in his younger years. He became addicted to gambling, an affliction which was present in several older members of his family, people whom he admired and respected. As expected this produced a good deal of pain and suffering for him and his family.

Eventually he " took the bull by the horns" and joined Gamblers Anonymous. After a long struggle he gained control and gave up gambling.

He went beyond that, however, and devoted himself to teaching,lecturing,giving seminars and sponsoring others in an effort to help and lend support to those similarly afflicted. I was at his 70 th birthday party, and he was actively engaged in this effort even then.

This recent departure from the path of helping others is totally uncharacteristic. Were he able to continue a normal life when this affair is over, he most certainly would never repeat his mistakes, but instead expend great time and effort to right as many wrongs as possible.

I hope this letter has been helpful.

Sincerely,

JEROME S SIEGEL,MD

# EXHIBIT 35

**EXHIBIT 35**

Dear Judge Ortero`

My name is Leslie Niskar Thorn. I am a wife, former fashion designer, yogi, dog rescuer, mother of an 11 year old boy and a seven year old girl.

I have known Joel Gillis since I was in the womb.  My mom went to high school with Joel in Michigan and their strong bond continued long after they both moved to Los Angeles and met their spouses.  Joel's daughter Kim and I were best of friends. Our families were together all the time and even traveled together.

I had ample opportunity to see Joel as an amazing dedicated father. The kind of dad that carried his kids on his shoulders and made it a point to always look you in the eye.

I have seen him demonstrate this same enthusiasm with his grandchildren. He and his wife Carol were effortlessly cute in their admiration for one another.

When my father died suddenly  when I was 25 , Joel was there for us. My family was devastated and to this day it is still my darkest experience. Joel helped my mom handle all the necessary arrangements and piece her life back together. His quick wit reassured us that there could still be laughter even through the tears.

When I heard about Joel's legal situation I was shocked to say the least. This doesn't compute with the man I have known all these years. I can't imagine the set of circumstances that led him  to this place. These actions are a flawed moment in the life of a wonderful man and not indicative of the husband , father and friend I have known my entire life.

Warm regards,

Leslie Thorn

# EXHIBIT 36

**EXHIBIT 36**

**Cynthia Winn, M.A., M.F.T.**                    **1910 Huntington Dr.**
**16633 Ventura Blvd., Suite 1340**               **South Pasadena, Ca 91030**
**Encino, California 91436-1890**                         **MFC #30203**
**(818) 789-3346**

Honorable S. James Otero                                June 14, 2015
United States District Court Judge
312 North Spring Street, Courtroom 1 – 2nd Floor
Los Angeles, Ca 90012

RE:  Mr. Joel Gillis

I have been a licensed psychotherapist in private practice for 23 years, with offices in Encino &

South Pasadena, California.  I have also been a clinical supervisor & adjunct faculty at Phillips Graduate

Institute & Fuller Graduate School of Psychology.  I am certified EMDR (Eye Movement Desensitization

& Reprocessing) Therapist as well as a certified Imago Couple's Therapist.  One of my specialties is

working with childhood shame-based trauma - memories that foster negative core beliefs.  These

"frozen" negative beliefs can feed into behavioral addictions and compulsions (such as impulsive

anger, sexual addictions, gambling, etc.)

EMDR is a clinical treatment method developed to treat unresolved, traumatic childhood

events that can lead to behavioral addictions as described above.  EMDR treatment targets disturbing

memories that feed into the present day impulses.  By treating these memories, the need to continue

the abusive behavior becomes desensitized.  EMDR reduces the negative emotions surrounding

memories & then installs positive beliefs and behaviors.  This has been a targeted and effective

psychotherapeutic method of treatment for my work with Mr. Joel Gillis.

Joel called my office to begin psychotherapy on January 15, 2015, stating his reasons as: "I committed a crime and made stupid decisions" and "I want to look at the root of my gambling and do something with my life."

I have seen Joel for weekly 80 minute sessions since then.  On April 1, 2015 Joel's wife Carol Gillis started to regularly join our sessions for couple's therapy.   Joel is a very bright man who is highly motivated and sincere in addressing his therapeutic goals.  My therapeutic work with Joel has been very focused and targeted due to the severity of the situation.  The primary therapeutic goal has been to figure out & work through "why do I continually sabotage my life through gambling" and to make amends with the individuals he has hurt, especially his wife Carol.

From the first session on, Joel has been 100% transparent about his thoughts, feelings, and circumstances.  There has been no minimization, or defensive postures for what he did or why.  Joel's demeanor has been one of a contrite and humbled man who was in my office to sincerely seek insight and healing within himself and with others.

Gambling profile or traits – Joel has a need for novel and complex business experiences, and will, at times in his life, compulsively take on social and interpersonal risks for the sake of the experience.  In my professional opinion, Joel's gambling and his consequences unconsciously reproduced painful and unexamined shame based memories with his father.   Many of Joel's decisions were driven by the unconscious drive to be finally seen as a valuable good guy and a hero.

2

Regarding Joel's family system, there has been a multi-generational pattern of various forms of gambling.  There was a sub-culture of socially acceptable forms of gambling that Joel either heard of or witnessed growing up, which included questionable business arrangements.   To Joel, it did not seem like "gambling" but instead a way of doing business, making a buck and re-investing.

Joel's psychological development, in particular with his father, laid the template for the unspoken family rules of "don't talk, don't feel, & don't trust".  Joel's father was a hardworking, emotionally distant and secretive man.  Joel described him as "social but anti-social," having the ability to be personable, but not able to sustain real friendships.

Joel was the first born of three boys.  Joel idealized his father and desired approval, attention, and affection from him but he cannot remember ever receiving it.  In retrieving childhood memories, Joel remembered that he did not understand why his father was distant and critical with him, often using the nickname of "meatball" instead of using his name.   As a result of these repetitive shame based experiences with his father, Joel detached from his father and began to identify with his uncles who were gamblers of all sorts.   These repeated experiences with his father lead Joel to internalize negative core beliefs about himself; "I must be doing something wrong, but I don't know what."  The chronic need to be liked, loved, or valued would set up a driving force in Joel's psycho-social development.   (Gambling unconsciously reproduces painful and unexamined aspects of childhood.)

At age 12, the family relocated to a different neighborhood and Joel gravitated to, and identified with the "wrong crowd."  (The wounded boy escapes into a world of pretense and false images.)  Joel was insightful in recalling how he used to tell stories "to puff myself up" and in finding a social group

3

that would validate and look up to Joel.  This was the beginning of developing a pseudo false self.  Shame (from Father) produces anxiety, anxiety breeds a false and adaptive self.

In treatment, Joel realized for the first time how he had conducted some of his business (dealt with the money & investments) as a form of gambling.  Unconsciously the gambling brain becomes activated by a complex problem with some risks.  Joel's method was "I'll take some chances and I will make it work."  A motto which he had lived by in doing business in the past.  "Selling was my biggest high" Joel has said.  However, in 2001 with the Starwood contract being cancelled, Joel was in a complex dilemma that he could not resolve.

With the Starwood contract, Joel ultimately was in a classic double bind; damned if he kept the $11 million from the Starwood contract and damned if he alerted the investors that the contract had fallen through.  There seemed to be no solution.  Joel was "absolutely convinced" that he would get the Starwood contract, so he raised money ahead of time, before the contract was finalized.  Joel now reflects on this time by stating, "This was the gamble – once I received the investor's money, I was sure that I could get other locations."

With contract unexpectedly falling through Joel went into other business's to try to get out of it – unfortunately, none of them panned out.  Joel could not visualize alerting the investors because their confidence in him would end.  With Joel's reputation and business relationships on the line, Joel's gambling brain took over and he decided:  "I will take some chances and make it work."   While he held onto the investor's money, he attempted to find other lucrative locations for the ATM machines, but it was too late.  He couldn't find any other opportunities and kept the money & all of his anxiety.   He

4

was stuck in a cover up.  This was a complex labyrinth that Joel could not figure out and the need to be liked/loved trumped telling the truth.

In my psychological assessment, Joel's motivation was not greed or personal financial gain, but rather he wanted to be the person who makes people money and could be the good guy/hero.   Joel has been exceptionally remorseful over his business conduct because he let all of his friends and investors down, whom he cared so deeply about.

In our sessions, Joel's rehabilitation has been driven by his immeasurable shame and regret.  Regret about "making a stupid decision that has cost me everything I had" and how it has devastated his whole life.  Regret about abandoning the truth for the sake of approval and image.  Regret has made Joel revisit and work on why he did what he did and what he should have done.  Joel has, in every session, faced head on his choices and the consequences.  Those answers and those motives have reminded Joel of the purpose of his life.  To deal with the regret and in time, forgive his failings to make amends and to return to a life of honesty & integrity

 Sincerely

Cynthia Winn, M.A., MFT

5

# EXHIBIT 37

**EXHIBIT 37**

Alan Zwillinger
25335 Prado de la Felicidad
Calabasas, California 91302

April 12, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street Courtroom 1-2nd Floor


Dear Judge  Otero,

I am writing on behalf of Joel Gillis, a close friend of mine for over forty five years.


My name is Alan Zwillinger. I have been a business man here in the Los Angeles area, for well over fifty years.   I have known Joel Gillis for the majority of that time and have always found him to be a person of unsurpassed integrity, honesty and compassion .


My wife Carole and I are very close to the Gillis family.  We have always been together for family functions, holidays, weddings and unfortunately some funerals. We have traveled together for many years. In all the years I've known Joel, he has never been the least disrespectful to anyone.  He has never shown any reason the doubt his intentions.

Throughout the many years I have known Joel, he has done some important charity work.  One charity in particular is Cystic Fibroses.  He spent many years contacting sponsors, raising funds and awareness so as to hopefully someday eradicate this deadly disease.  This is very close to the Gillis family, as Carol, Joel's wife lost a sister and a brother to the disease.


Joel has always been a wonderful family man.  He raised two terrific daughters and he now has four grandchildren who adore him.  Even during this stressful and unsettling time, Joel is present for his grandchildren.  I give him a great deal of credit for his ability to set aside his emotions that are weighing heavily on him, to have this time with the family.

I am quite distressed to know that he has taken these missteps when it comes to his business acumen, however, I have never experienced this in our relationship

It is my opinion that a minimum sentence would serve justice in this case. Joel will be seventy five years old shortly, so what really would be gained by a long prison term.

I hope that you will find this letter helpful in recognizing the character of the Joel Gillis I know.


Sincerely yours,

Alan Zwillinger

# EXHIBIT 38

**EXHIBIT 38**

**Carole Zwillinger**

25335 Prado de la Felicidad
Calabasas, California 91302

April 18, 2015

Honorable S. James Otero

United States District Court Judge

312 North Spring Street, Courtroom 1-2nd Floor

Your Honor,

I am writing this letter to give you some insight into the character of Joel Gillis. I have known Joel Gillis on a personal level for over forty eight years. During that time, we have been the closest of friends. Our families are the best of friends. Carol, Joel's wife and I are like sisters. Our children have grown up together. We have gone on countless vacations together, have celebrated birthdays and holidays together. We have consoled each other during family crisis'. I believe it is rare to have such a wonderful, caring, respectful and adoring relationship.

Joel has always been a loyal, devoted and sincere friend. He never in all the years I've known him, displayed any sort of dishonesty or underhanded behavior. The charges against him are extremely distressing as it does not fit the character of the Joel I know!

The Joel I know is a devoted family man, a loving husband and a superlative grandfather to his four grandchildren. They adore him unconditionally.

The Joel I know spent a great deal of time involved in Cystic Fibrosis, a disease that took the lives of two of Carol's siblings. He prayed that no one would have to suffer from this disease.

The Joel I know unselfishly helped Carol in the care of her Mother who was ill for several years. At this time, Carol's Father is not well, and even during these stressful months, Joel is giving of himself to make Carol's Father's life a little easier.

The Joel I know and love is not the Joel that is charged with these crimes.

Joel is extremely regretful of his actions. There is no way of turning back however, moving forward, I am hopeful that the court recognizes Joel's positive characteristics and sees how remorseful he is. He is now seventy four years old. He is certainly not a threat to society. It is my opinion that, in this case, I feel no one would benefit from Joel being incarcerated for an excessive period of time.

Sincerely yours,

Carole Zwillinger

# EXHIBIT 39

**EXHIBIT 39**

July 22, 2015


Honorable S. James Otero
United States District Court Judge
312 North Spring Street, Courtroom 1, 2nd Floor
Los Angeles, CA  90012

Dear Judge Ortero,

I am writing to urge leniency in the sentencing of my longtime family friend, Joel Gillis.  I have known Joel for almost my entire life as our families have known each other for about 50 years.  I know Joel to be an industrious, hardworking family man who is also very community and charity minded.  I vividly remember all the time and involvement Joel spent volunteering for the Cystic Fibrosis Foundation, tirelessly working to help cure this terrible disease.  I know Joel to be kind, giving and fun to be around.  He has been a good husband and loving father to his daughters and an involved grandfather to his several grandchildren.

I know that Joel has done wrong and he nor his family deny that.  However, we also recognize that he made a bad decision – he victimized folks with his behavior and I hope one day they will see their way to forgiveness.  And I know that he has already suffered extensively for his actions.

I fully understand that Joel should be punished for his behavior.  As a non-violent offender, I hope that the court will seriously consider imposing a long term community service sentence rather than a long prison sentence.  A prison sentence would not provide any benefit to our community.  I pray that you will give heartfelt consideration in making that decision and that you will take into consideration all of the good that Joel accomplished in his life.

Thank you for your time and consideration.


Respectfully,

Steve Zwillinger

# EXHIBIT 40

**EXHIBIT 40**



# Amendments to the Sentencing Guidelines (Preliminary)

## April 9, 2015

This document collects the amendments to the sentencing guidelines, policy statements, and commentary, in the unofficial, "reader-friendly" form in which they were made available at the Commission's public meeting on April 9, 2015.  As with all amendments on which a vote to promulgate has been made but not yet officially submitted to Congress and the Federal Register, authority to make technical and conforming changes may be exercised and motions to reconsider may be made.  Once submitted to Congress and the Federal Register, official text of the amendments will be posted on the Commission's website at www.ussc.gov and will be available in a forthcoming edition of the Federal Register, and an updated "reader-friendly" version of the amendments will be posted on the Commission's website at www.ussc.gov.

## TABLE OF CONTENTS

**AMENDMENT**

**1. TECHNICAL AMENDMENT**

**2. "SINGLE SENTENCE" RULE**

**3. JOINTLY UNDERTAKEN CRIMINAL ACTIVITY**

**4. INFLATIONARY ADJUSTMENTS**

**5. MITIGATING ROLE**

**6. HYDROCODONE**

**7. ECONOMIC CRIME**

The Commission specified an effective date of **November 1, 2015**, for the amendments listed above.

**PROPOSED AMENDMENT:          INFLATIONARY ADJUSTMENTS**

**Synopsis of Proposed Amendment:** *This proposed amendment adjusts monetary tables in the guidelines to account for inflation. Congress has generally mandated that agencies in the executive branch must, every four years, adjust the civil monetary penalties they impose to account for inflation. See Section 4 of the Federal Civil Penalties Inflationary Adjustment Act of 1990 (28 U.S.C. § 2461 note). The work of the Commission does not involve civil monetary penalties. It involves establishing appropriate criminal sentences for categories of offenses and offenders, including appropriate amounts for criminal fines. See, e.g., 28 U.S.C. § 994(b)(1), (a)(1)(B). While some of the monetary values in the Chapter Two offense guidelines have been revised since they were originally established in 1987 (e.g., the loss table in §2B1.1 was substantially amended in 2001), they have never been revised specifically to account for inflation. Other monetary values in the Chapter Two offense guidelines, as well as the monetary values in the fine tables for individual defendants and for organizational defendants, have never been revised.*

*Specifically, the proposed amendment sets forth an approach for amending the monetary tables in the guidelines to adjust for inflation, i.e., the tables in §§2B1.1 (Theft, Property, Destruction, and Fraud), 2B2.1 (Burglary), 2B3.1 (Robbery), 2R1.1 (Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors), 2T4.1 (Tax Table), 5E1.2 (Fines for Individual Defendants), and 8C2.4 (Base Fine). The approach is based on changes to the Bureau of Labor Statistics' Consumer Price Index and on different time frames (taking into consideration the year each monetary table was last amended).*

*For each of the seven tables, the proposed amendment adjusts the amounts in the monetary tables using a specific multiplier derived from the Consumer Price Index, and then rounds—*

> *amounts greater than $100,000,000 to the nearest multiple of $50,000,000;*
> *amounts greater than $10,000,000 to the nearest multiple of $5,000,000;*
> *amounts greater than $1,000,000 to the nearest multiple of $500,000;*
> *amounts greater than $100,000 to the nearest multiple of $50,000;*
> *amounts greater than $10,000 to the nearest multiple of $5,000;*
> *amounts greater than $1,000 to the nearest multiple of $500; and*
> *amounts of $1,000 or less to the nearest multiple of $50.*

*For the loss table in §2B1.1(b)(1) and the tax table in §2T4.1, the proposed amendment adjusts for inflation since 2001, the year both tables were last amended. According to the Consumer Price Index, $1.00 in 2001 has the same buying power as $1.34 in 2014. For the loss tables in §§2B2.1 (Burglary) and 2B3.1 (Robbery), and the fine table for individual defendants at §5E1.2(c)(3), the proposed amendment adjusts for inflation since 1989, the year these tables were last amended. The adjustments take into account that $1.00 in 1989 has the same buying power as $1.91 in 2014, according to the Consumer Price Index. For the antitrust table in §2R1.1(b)(2), the proposed amendment adjusts for inflation since 2005, the year the table was last amended. According to the Consumer Price Index, $1.00 in 2005 has the same buying power as $1.22 in 2014. And, finally, for the fine table for organizational defendants at §8C2.4(d), the proposed amendment adjusts for inflation since 1991, as the table has not been substantially amended since it was promulgated. The adjustments take into account that, according to the Consumer Price Index, $1.00 in 1991 has the same buying power as $1.74 in 2014.*

*Each of the tables shows the initial multiplier used to make the adjustments for inflation taken from the*

*Consumer Price Index.  Also, as an aid to the reader, the proposed amendment is set forth in a manner that indicates, at each level of the monetary tables, the effective amount of the multiplier that results from the rounding methodology used.  In addition, the proposed amendment includes conforming changes to other Chapter Two guidelines that refer to the monetary tables.*

*The proposed amendment also includes a special instruction to both §§5E1.2 and 8C2.4 providing that for offenses committed prior to November 1, 2015, the court should use the fine table that was set forth in the version of the corresponding guideline that was in effect on November 1, 2014, rather than the fine table as amended for inflation.*

**Proposed Amendment:**

**§2B1.1.**  **Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

\* \* \*

(b)  Specific Offense Characteristics

(1)  If the loss exceeded ~~$5,000~~$6,500, increase the offense level as follows:

| *[Multiplier Comparison to Current Table]* | | Loss (Apply the Greatest) | Increase in Level |
|---|---|---|---|
| *[1.30]* | (A) | ~~$5,000~~$6,500 or less | no increase |
| *[1.30]* | (B) | More than ~~$5,000~~$6,500 | add **2** |
| *[1.50]* | (C) | More than ~~$10,000~~$15,000 | add **4** |
| *[1.33]* | (D) | More than ~~$30,000~~$40,000 | add **6** |
| *[1.36]* | (E) | More than ~~$70,000~~$95,000 | add **8** |
| *[1.25]* | (F) | More than ~~$120,000~~$150,000 | add **10** |
| *[1.25]* | (G) | More than ~~$200,000~~$250,000 | add **12** |
| *[1.38]* | (H) | More than ~~$400,000~~$550,000 | add **14** |
| *[1.50]* | (I) | More than ~~$1,000,000~~$1,500,000 | add **16** |
| *[1.40]* | (J) | More than ~~$2,500,000~~$3,500,000 | add **18** |
| *[1.36]* | (K) | More than ~~$7,000,000~~$9,500,000 | add **20** |
| *[1.50]* | (L) | More than ~~$20,000,000~~$25,000,000 | add **22** |
| *[1.40]* | (M) | More than ~~$50,000,000~~$65,000,000 | add **24** |
| *[1.50]* | (N) | More than ~~$100,000,000~~$150,000,000 | add **26** |
| *[1.50]* | (O) | More than ~~$200,000,000~~$250,000,000 | add **28** |
| *[1.38]* | (P) | More than ~~$400,000,000~~$550,000,000 | add **30**. |

\* \* \*

**§2B1.4.**  **Insider Trading**

\* \* \*

2

(b)    Specific Offense Characteristics

(1)    If the gain resulting from the offense exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B1.5.    <u>Theft of, Damage to, or Destruction of, Cultural Heritage Resources or Paleonto-logical Resources; Unlawful Sale, Purchase, Exchange, Transportation, or Receipt of Cultural Heritage Resources or Paleontological Resources</u>**

\* \* \*

(b)    Specific Offense Characteristics

(1)    If the value of the cultural heritage resource or paleontological resource (A) exceeded ~~$2,000~~$2,500 but did not exceed ~~$5,000~~$6,500, increase by **1** level; or (B) exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B2.1.    <u>Burglary of a Residence or a Structure Other than a Residence</u>**

\* \* \*

(b)    Specific Offense Characteristics

\* \* \*

(2)    If the loss exceeded ~~$2,500~~$5,000, increase the offense level as follows:

| *[Multiplier Comparison to Current Table]* | | <u>Loss</u> (Apply the Greatest) | <u>Increase in Level</u> |
|---|---|---|---|
| *[2.00]* | (A) | ~~$2,500~~$5,000 or less | no increase |
| *[2.00]* | (B) | More than ~~$2,500~~$5,000 | add **1** |
| *[2.00]* | (C) | More than ~~$10,000~~$20,000 | add **2** |
| *[1.90]* | (D) | More than ~~$50,000~~$95,000 | add **3** |
| *[2.00]* | (E) | More than ~~$250,000~~$500,000 | add **4** |
| *[1.88]* | (F) | More than ~~$800,000~~$1,500,000 | add **5** |
| *[2.00]* | (G) | More than ~~$1,500,000~~$3,000,000 | add **6** |
| *[2.00]* | (H) | More than ~~$2,500,000~~$5,000,000 | add **7** |
| *[1.90]* | (I) | More than ~~$5,000,000~~$9,500,000 | add **8**. |

\* \* \*

3

**§2B2.3.**  **Trespass**

\* \* \*

(b) Specific Offense Characteristics

\* \* \*

(3) If (A) the offense involved invasion of a protected computer; and (B) the loss resulting from the invasion (i) exceeded $2,000$2,500 but did not exceed $5,000$6,500, increase by **1** level; or (ii) exceeded $5,000$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B3.1.**  **Robbery**

\* \* \*

(b) Specific Offense Characteristics

\* \* \*

(7) If the loss exceeded $10,000$20,000, increase the offense level as follows:

| *[Multiplier Comparison to Current Table]* | | Loss (Apply the Greatest) | Increase in Level |
|---|---|---|---|
| *[2.00]* | (A) | $10,000$20,000 or less | no increase |
| *[2.00]* | (B) | More than $10,000$20,000 | add **1** |
| *[1.90]* | (C) | More than $50,000$95,000 | add **2** |
| *[2.00]* | (D) | More than $250,000$500,000 | add **3** |
| *[1.88]* | (E) | More than $800,000$1,500,000 | add **4** |
| *[2.00]* | (F) | More than $1,500,000$3,000,000 | add **5** |
| *[2.00]* | (G) | More than $2,500,000$5,000,000 | add **6** |
| *[1.90]* | (H) | More than $5,000,000$9,500,000 | add **7**. |

\* \* \*

**§2B3.2.**  **Extortion by Force or Threat of Injury or Serious Damage**

\* \* \*

(b) Specific Offense Characteristics

4

\* \* \*

(2)      If the greater of the amount demanded or the loss to the victim exceeded $10,000$20,000, increase by the corresponding number of levels from the table in §2B3.1(b)(7).

\* \* \*

**§2B3.3.      Blackmail and Similar Forms of Extortion**

\* \* \*

(b)      Specific Offense Characteristic

(1)      If the greater of the amount obtained or demanded (A) exceeded $2,000$2,500 but did not exceed $5,000$6,500, increase by **1** level; or (B) exceeded $5,000$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B4.1.      Bribery in Procurement of Bank Loan and Other Commercial Bribery**

\* \* \*

(b)      Specific Offense Characteristics

(1)      If the greater of the value of the bribe or the improper benefit to be conferred (A) exceeded $2,000$2,500 but did not exceed $5,000$6,500, increase by **1** level; or (B) exceeded $5,000$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B5.1.      Offenses Involving Counterfeit Bearer Obligations of the United States**

\* \* \*

(b)      Specific Offense Characteristics

(1)      If the face value of the counterfeit items (A) exceeded $2,000$2,500 but did not exceed $5,000$6,500, increase by **1** level; or (B) exceeded $5,000$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B5.3.**          **Criminal Infringement of Copyright or Trademark**

\* \* \*

(b)          Specific Offense Characteristics

(1)          If the infringement amount (A) exceeded ~~$2,000~~$2,500 but did not exceed ~~$5,000~~$6,500, increase by **1** level; or (B) exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2B6.1.**          **Altering or Removing Motor Vehicle Identification Numbers, or Trafficking in Motor Vehicles or Parts with Altered or Obliterated Identification Numbers**

\* \* \*

(b)          Specific Offense Characteristics

(1)          If the retail value of the motor vehicles or parts (A) exceeded ~~$2,000~~$2,500 but did not exceed ~~$5,000~~$6,500, increase by **1** level; or (B) exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2C1.1.**          **Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions**

\* \* \*

(b)          Specific Offense Characteristics

\* \* \*

(2)          If the value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public official, or the loss to the government from the offense, whichever is greatest, exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

6

\* \* \*

**§2C1.2.**      **Offering, Giving, Soliciting, or Receiving a Gratuity**

\* \* \*

(b)      Specific Offense Characteristics

\* \* \*

(2)      If the value of the gratuity exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2C1.8.**      **Making, Receiving, or Failing to Report a Contribution, Donation, or Expenditure in Violation of the Federal Election Campaign Act; Fraudulently Misrepresenting Campaign Authority; Soliciting or Receiving a Donation in Connection with an Election While on Certain Federal Property**

\* \* \*

(b)      Specific Offense Characteristics

(1)      If the value of the illegal transactions exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

\* \* \*

**§2E5.1.**      **Offering, Accepting, or Soliciting a Bribe or Gratuity Affecting the Operation of an Employee Welfare or Pension Benefit Plan; Prohibited Payments or Lending of Money by Employer or Agent to Employees, Representatives, or Labor Organizations**

\* \* \*

(b)      Specific Offense Characteristics

\* \* \*

(2)      If the value of the prohibited payment or the value of the improper benefit to the payer, whichever is greater (A) exceeded ~~$2,000~~$2,500 but did not exceed ~~$5,000~~$6,500, increase by **1** level; or (B) exceeded ~~$5,000~~$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.

7

\* \* \*

**§2Q2.1.**     **Offenses Involving Fish, Wildlife, and Plants**

\* \* \*

(b)     Specific Offense Characteristics

\* \* \*

(3)     (If more than one applies, use the greater):

(A)     If the market value of the fish, wildlife, or plants (i) exceeded $2,000$2,500 but did not exceed $5,000$6,500, increase by **1** level; or (ii) exceeded $5,000$6,500, increase by the number of levels from the table in §2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount; or

\* \* \*

**§2R1.1.**     **Bid-Rigging, Price-Fixing or Market-Allocation Agreements Among Competitors**

\* \* \*

(b)     Specific Offense Characteristics

\* \* \*

(2)     If the volume of commerce attributable to the defendant was more than $1,000,000, adjust the offense level as follows:

| *[Multiplier Comparison to Current Table]* | | Volume of Commerce (Apply the Greatest) | Adjustment to Offense Level |
|---|---|---|---|
| *[1.00]* | (A) | More than $1,000,000 | add **2** |
| *[1.00]* | (B) | More than $10,000,000 | add **4** |
| *[1.25]* | (C) | More than $40,000,000$50,000,000 | add **6** |
| *[1.00]* | (D) | More than $100,000,000 | add **8** |
| *[1.20]* | (E) | More than $250,000,000$300,000,000 | add **10** |
| *[1.20]* | (F) | More than $500,000,000$600,000,000 | add **12** |
| *[1.20]* | (G) | More than $1,000,000,000$1,200,000,000 | add **14** |
| *[1.23]* | (H) | More than $1,500,000,000$1,850,000,000 | add **16**. |

\* \* \*

**§2T3.1.**     **Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property**

8

(a)     Base Offense Level:

    (1)     The level from §2T4.1 (Tax Table) corresponding to the tax loss, if the tax loss exceeded ~~$1,000~~$1,500; or

    (2)     **5**, if the tax loss exceeded ~~$100~~$200 but did not exceed ~~$1,000~~$1,500; or

    (3)     **4**, if the tax loss did not exceed ~~$100~~$200.

For purposes of this guideline, the "tax loss" is the amount of the duty.

\*　　\*　　\*

## §2T4.1.     Tax Table

| *[Multiplier Comparison to Current Table]* | | Tax Loss (Apply the Greatest) | Offense Level |
|---|---|---|---|
| *[1.25]* | (A) | ~~$2,000~~$2,500 or less | **6** |
| *[1.25]* | (B) | More than ~~$2,000~~$2,500 | **8** |
| *[1.30]* | (C) | More than ~~$5,000~~$6,500 | **10** |
| *[1.20]* | (D) | More than ~~$12,500~~$15,000 | **12** |
| *[1.33]* | (E) | More than ~~$30,000~~$40,000 | **14** |
| *[1.25]* | (F) | More than ~~$80,000~~$100,000 | **16** |
| *[1.25]* | (G) | More than ~~$200,000~~$250,000 | **18** |
| *[1.38]* | (H) | More than ~~$400,000~~$550,000 | **20** |
| *[1.50]* | (I) | More than ~~$1,000,000~~$1,500,000 | **22** |
| *[1.40]* | (J) | More than ~~$2,500,000~~$3,500,000 | **24** |
| *[1.36]* | (K) | More than ~~$7,000,000~~$9,500,000 | **26** |
| *[1.25]* | (L) | More than ~~$20,000,000~~$25,000,000 | **28** |
| *[1.30]* | (M) | More than ~~$50,000,000~~$65,000,000 | **30** |
| *[1.50]* | (N) | More than ~~$100,000,000~~$150,000,000 | **32** |
| *[1.25]* | (O) | More than ~~$200,000,000~~$250,000,000 | **34** |
| *[1.38]* | (P) | More than ~~$400,000,000~~$550,000,000 | **36**. |

\*　　\*　　\*

## §5E1.2.     Fines for Individual Defendants

(a)     The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.

(b)     The applicable fine guideline range is that specified in subsection (c) below.  If, however, the guideline for the offense in Chapter Two provides a specific rule for imposing a fine, that rule takes precedence over subsection (c) of this section.

(c)     (1)     The minimum of the fine guideline range is the amount shown in column

9

A of the table below.

* * *

(3)                          Fine Table

| Offense Level | A Minimum | [Multiplier Comparison to Current Table] | B Maximum | [Multiplier Comparison to Current Table] |
|---|---|---|---|---|
| 3 and below | ~~$100~~$200 | [2.00] | ~~$5,000~~$9,500 | [1.90] |
| 4-5 | ~~$250~~$500 | [2.00] | ~~$5,000~~$9,500 | [1.90] |
| 6-7 | ~~$500~~$1,000 | [2.00] | ~~$5,000~~$9,500 | [1.90] |
| 8-9 | ~~$1,000~~$2,000 | [2.00] | ~~$10,000~~$20,000 | [2.00] |
| 10-11 | ~~$2,000~~$4,000 | [2.00] | ~~$20,000~~$40,000 | [2.00] |
| 12-13 | ~~$3,000~~$5,500 | [1.83] | ~~$30,000~~$55,000 | [1.83] |
| 14-15 | ~~$4,000~~$7,500 | [1.88] | ~~$40,000~~$75,000 | [1.88] |
| 16-17 | ~~$5,000~~$10,000 | [2.00] | ~~$50,000~~$95,000 | [1.90] |
| 18-19 | ~~$6,000~~$10,000 | [1.67] | ~~$60,000~~$100,000 | [1.67] |
| 20-22 | ~~$7,500~~$15,000 | [2.00] | ~~$75,000~~$150,000 | [2.00] |
| 23-25 | ~~$10,000~~$20,000 | [2.00] | ~~$100,000~~$200,000 | [2.00] |
| 26-28 | ~~$12,500~~$25,000 | [2.00] | ~~$125,000~~$250,000 | [2.00] |
| 29-31 | ~~$15,000~~$30,000 | [2.00] | ~~$150,000~~$300,000 | [2.00] |
| 32-34 | ~~$17,500~~$35,000 | [2.00] | ~~$175,000~~$350,000 | [2.00] |
| 35-37 | ~~$20,000~~$40,000 | [2.00] | ~~$200,000~~$400,000 | [2.00] |
| 38 and above | ~~$25,000~~$50,000 | [2.00] | ~~$250,000~~$500,000. | [2.00] |

* * *

(h)    Special Instruction

  (1)    For offenses committed prior to November 1, 2015, use the applicable fine guideline range that was set forth in the version of §5E1.2(c) that was in effect on November 1, 2014, rather than the applicable fine guideline range set forth in subsection (c) above.

* * *

§8C2.4.    Base Fine

* * *

(d)          Offense Level Fine Table

| [Multiplier Comparison to Current Table] | Offense Level | Amount |
|---|---|---|
| [1.70] | **6** or less | ~~$5,000~~$8,500 |
| [2.00] | **7** | ~~$7,500~~$15,000 |

10

| | | |
|---|---|---|
| *[1.50]* | **8** | $10,000$15,000 |
| *[1.67]* | **9** | $15,000$25,000 |
| *[1.75]* | **10** | $20,000$35,000 |
| *[1.67]* | **11** | $30,000$50,000 |
| *[1.75]* | **12** | $40,000$70,000 |
| *[1.67]* | **13** | $60,000$100,000 |
| *[1.76]* | **14** | $85,000$150,000 |
| *[1.60]* | **15** | $125,000$200,000 |
| *[1.71]* | **16** | $175,000$300,000 |
| *[1.80]* | **17** | $250,000$450,000 |
| *[1.71]* | **18** | $350,000$600,000 |
| *[1.70]* | **19** | $500,000$850,000 |
| *[1.54]* | **20** | $650,000$1,000,000 |
| *[1.65]* | **21** | $910,000$1,500,000 |
| *[1.67]* | **22** | $1,200,000$2,000,000 |
| *[1.88]* | **23** | $1,600,000$3,000,000 |
| *[1.67]* | **24** | $2,100,000$3,500,000 |
| *[1.79]* | **25** | $2,800,000$5,000,000 |
| *[1.76]* | **26** | $3,700,000$6,500,000 |
| *[1.77]* | **27** | $4,800,000$8,500,000 |
| *[1.59]* | **28** | $6,300,000$10,000,000 |
| *[1.85]* | **29** | $8,100,000$15,000,000 |
| *[1.90]* | **30** | $10,500,000$20,000,000 |
| *[1.85]* | **31** | $13,500,000$25,000,000 |
| *[1.71]* | **32** | $17,500,000$30,000,000 |
| *[1.81]* | **33** | $22,000,000$40,000,000 |
| *[1.75]* | **34** | $28,500,000$50,000,000 |
| *[1.81]* | **35** | $36,000,000$65,000,000 |
| *[1.76]* | **36** | $45,500,000$80,000,000 |
| *[1.74]* | **37** | $57,500,000$100,000,000 |
| *[2.07]* | **38** or more | $72,500,000$150,000,000. |

(e)     Special Instruction

(1)     For offenses committed prior to November 1, 2015, use the offense level
fine table that was set forth in the version of §8C2.4(d) that was in effect
on November 1, 2014, rather than the offense level fine table set forth in
subsection (d) above.

* * *

11

# EXHIBIT 41

**EXHIBIT 41**

Draft as of 05/29/15

# NASI Loss Analysis

**1,300 investors lost money**
**Estimated loss = $125,063,605**

Note: NASI bank records from September 2007 to account closure/seizure were reviewed and analyzed.
LATE deposits and withdrawals occurred during the timeframe of records reviewed.
EARLY deposits were determined by reviewing the investor contracts.
EARLY withdrawals were calculated based on investors earning a conservative 30% rate of return.

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Aach, Guy | 60,000.00 | (44,046.00) | 0.00 | 0.00 | 15,954.00 |
| Aaron, Robert & Maria | 36,000.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Ackerman, Neil | 300,000.00 | 0.00 | 0.00 | 0.00 | 300,000.00 |
| Adamovic, Snezana | 39,600.00 | (20,237.50) | 0.00 | 0.00 | 19,362.50 |
| Afshar, Mozaffar & Vivian | 264,000.00 | (57,764.50) | 0.00 | 0.00 | 206,235.50 |
| Agley, Smith & Alison | 48,000.00 | (17,919.50) | 0.00 | 0.00 | 30,080.50 |
| Aguayo, Raymundo & Irene | 36,000.00 | (4,233.00) | 0.00 | 0.00 | 31,767.00 |
| Aguilar, Phyllis | 48,000.00 | (13,886.00) | 0.00 | 0.00 | 34,114.00 |
| Aiken, Bruce & Dana | 132,000.00 | (39,341.00) | 0.00 | 0.00 | 92,659.00 |
| Ake, Kathy | 48,000.00 | (19,988.00) | 0.00 | 0.00 | 28,012.00 |
| Akiti, Swetha | 19,800.00 | (3,830.00) | 0.00 | 0.00 | 15,970.00 |
| Alario, Rosalie | 59,400.00 | (23,035.50) | 0.00 | 0.00 | 36,364.50 |
| Albritton, Dorothy | 79,200.00 | (40,590.00) | 0.00 | 0.00 | 38,610.00 |
| Alchanati, Moshe, Franchesca, Parker, Camden & Lesleigh | 108,000.00 | (100,536.50) | 0.00 | 0.00 | 7,463.50 |
| Alexander, Charles & Sarah | 1,643,400.00 | (513,214.50) | 0.00 | 0.00 | 1,130,185.50 |
| Alexander, Thanaphon & Deborah | 79,200.00 | (52,928.00) | 19,800.00 | (495.00) | 45,577.00 |
| Allan, Barbara | 72,000.00 | (33,850.00) | 0.00 | 0.00 | 38,150.00 |
| Allen, Andrew | 12,000.00 | (4,653.00) | 0.00 | 0.00 | 7,347.00 |
| Allen, Christine | 60,000.00 | (23,461.00) | 0.00 | 0.00 | 36,539.00 |
| Allen, Garland & Farrokh | 19,800.00 | (7,166.50) | 0.00 | 0.00 | 12,633.50 |
| Allen, Judith | 36,000.00 | (12,280.00) | 0.00 | 0.00 | 23,720.00 |
| Allison, Peggy | 72,000.00 | (13,302.50) | 0.00 | 0.00 | 58,697.50 |
| Altshuler, Morton & Katherine | 24,000.00 | (19,409.50) | 0.00 | 0.00 | 4,590.50 |
| Ammendola, Manuela | 39,600.00 | (34,055.50) | 0.00 | 0.00 | 5,544.50 |
| Anavil, Sarita | 20,000.00 | 0.00 | 0.00 | 0.00 | 20,000.00 |
| Anderson, Belmont & Katherine | 564,000.00 | (82,316.50) | 0.00 | 0.00 | 481,683.50 |
| Anderson, Charles & Terri | 211,800.00 | (192,893.00) | 0.00 | 0.00 | 18,907.00 |
| Anderson, L.W. Buck & Carroll | 240,000.00 | (77,294.50) | 0.00 | 0.00 | 162,705.50 |
| Anderson, Robin | 36,000.00 | (13,338.50) | 0.00 | 0.00 | 22,661.50 |

Page 1 of 35

# NASI Loss Analysis

*Draft as of 05/29/15*

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Anderson, Sonja | 162,600.00 | (36,911.50) | 0.00 | 0.00 | 125,688.50 |
| Anselmo, Christopher | 192,000.00 | (133,333.50) | 0.00 | 0.00 | 58,666.50 |
| Anthony, Bryan & Renee | 372,000.00 | (341,821.50) | 24,000.00 | (4,800.00) | 49,378.50 |
| Antosh, Fredly | 19,800.00 | | | | 19,800.00 |
| Apidgian, Michael | 39,600.00 | (4,159.50) | 0.00 | 0.00 | 35,440.50 |
| Appel, Erwin & Essie | 99,000.00 | (17,192.00) | 0.00 | 0.00 | 81,808.00 |
| Appel, Sheldon & Carol | 99,000.00 | (3,340.50) | 0.00 | 0.00 | 95,659.50 |
| Arban, Christine | 132,000.00 | (91,640.50) | 0.00 | 0.00 | 40,359.50 |
| Arispe, Jacqueline Mary | 24,000.00 | (14,026.00) | 0.00 | 0.00 | 9,974.00 |
| Armstrong, D & M | 36,000.00 | | | | 36,000.00 |
| Asanti, Pat & Dragotto, Debra | 120,000.00 | (34,370.00) | 0.00 | 0.00 | 85,630.00 |
| Ashley, Sheida | 60,000.00 | (6,986.50) | 0.00 | 0.00 | 53,013.50 |
| Astor, Jay & Judith | 96,000.00 | (20,477.00) | 0.00 | 0.00 | 75,523.00 |
| Astor, Stacey & Jason | 24,000.00 | (9,994.50) | 0.00 | 0.00 | 14,005.50 |
| Atkinson, Lynn | 99,000.00 | (67,649.00) | 0.00 | 0.00 | 31,351.00 |
| Austin, Robert & Bilson, Julie | 198,000.00 | (80,292.00) | 0.00 | 0.00 | 117,708.00 |
| Aveni, Dominic & Gena | 24,000.00 | | | | 24,000.00 |
| Avila, Enriqueta | 24,000.00 | (13,990.50) | 0.00 | 0.00 | 10,009.50 |
| Axelrod, Ivan & Nancy | 144,000.00 | (30,351.00) | 0.00 | 0.00 | 113,649.00 |
| Ayarian, Dikran | 554,400.00 | (490,110.50) | 0.00 | 0.00 | 64,289.50 |
| Azadi, Sepideh | 19,800.00 | (9,136.50) | 0.00 | 0.00 | 10,663.50 |
| Bagas, Shannon | 19,800.00 | (9,900.00) | 0.00 | 0.00 | 9,900.00 |
| Bahr, Diane | 19,800.00 | (5,940.00) | 0.00 | 0.00 | 13,860.00 |
| Bahramian, Samantha | 19,800.00 | (1,026.00) | 0.00 | 0.00 | 18,774.00 |
| Bair, Julie & Loren | 120,000.00 | (40,038.00) | 0.00 | 0.00 | 79,962.00 |
| Baker, Steven & Lynda | 108,000.00 | (35,362.00) | 0.00 | 0.00 | 72,638.00 |
| Bakos, Laszlo Hugo | 216,000.00 | (55,257.00) | 0.00 | 0.00 | 160,743.00 |
| Baldwin, James & Diana | 24,000.00 | (9,873.00) | 0.00 | 0.00 | 14,127.00 |
| Balinakos, Michael & Josephine | 48,000.00 | (43,256.50) | 0.00 | 0.00 | 4,743.50 |
| Ballard, Kenneth | 24,000.00 | (10,385.00) | 0.00 | 0.00 | 13,615.00 |
| Ballenger, Phillips | 120,000.00 | | | | 120,000.00 |
| Balsillie, Gail | 118,800.00 | (85,526.00) | 39,600.00 | (990.00) | 71,884.00 |
| Bannwarth, Walter & Elissa | 24,000.00 | (8,648.00) | 0.00 | 0.00 | 15,352.00 |
| Banuelos, Ofelia | 180,000.00 | (74,946.00) | 0.00 | 0.00 | 105,054.00 |
| Barbero, Marcello | 1,068,000.00 | (1,027,889.00) | 0.00 | 0.00 | 40,111.00 |
| Barclay, Caroline | 39,600.00 | (6,590.00) | 19,800.00 | (9,900.00) | 42,910.00 |
| Barnett-Lipp, Penny | 187,693.13 | (85,982.63) | 0.00 | 0.00 | 101,710.50 |
| Barrash, Wendy | 72,000.00 | (14,410.50) | 0.00 | 0.00 | 57,589.50 |

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Barrera-Garcia, Irasema | 79,200.00 | (59,352.50) | 0.00 | 0.00 | 19,847.50 |
| Barthel, Nicholas & Lenora | 198,000.00 | (188,100.00) | 0.00 | 0.00 | 9,900.00 |
| Basmajian, Armen & Marina | 468,000.00 | (370,918.50) | 0.00 | 0.00 | 97,081.50 |
| Bassham, Carmen & Darryl | 120,000.00 | (3,361.00) | 0.00 | 0.00 | 116,639.00 |
| Batac, Emilita N. | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Beal, Mark | 36,000.00 | (25,828.00) | 0.00 | 0.00 | 10,172.00 |
| Beck, Irwin & Carole | 19,800.00 | (5,280.00) | 0.00 | 0.00 | 14,520.00 |
| Becker, Warren & Norma | 144,000.00 | (123,108.50) | 0.00 | 0.00 | 20,891.50 |
| Bee, Phyllis | 48,000.00 | (47,283.00) | 0.00 | 0.00 | 717.00 |
| Behrens, Ronald & Montague, Susan | 240,000.00 | (187,663.50) | 0.00 | 0.00 | 52,336.50 |
| Belikoff, Paul | 59,400.00 | (8,421.50) | 0.00 | 0.00 | 50,978.50 |
| Beltzman, Mark & Lubin, Beverly | 118,800.00 | (13,830.00) | 0.00 | 0.00 | 104,970.00 |
| Bemel, Shirley Ann | 12,000.00 | (3,902.00) | 0.00 | 0.00 | 8,098.00 |
| Bence, Raymond & Katherine | 240,000.00 | (39,467.50) | 0.00 | 0.00 | 200,532.50 |
| Benessere, Marie & Alario, Andrea & Nancy | 197,000.00 | (56,042.50) | 0.00 | 0.00 | 140,957.50 |
| Benkovich, John & Harriet | 180,000.00 | (13,856.00) | 0.00 | 0.00 | 166,144.00 |
| Bentley, Nancy | 396,000.00 | (304,172.00) | 0.00 | 0.00 | 91,828.00 |
| Ben-Zion, Josephine | 12,000.00 | (3,381.50) | 0.00 | 0.00 | 8,618.50 |
| Beren, Anne | 144,000.00 | (7,876.00) | 0.00 | 0.00 | 136,124.00 |
| Beresford, Michael & Henriette | 288,000.00 | (196,707.50) | 0.00 | 0.00 | 91,292.50 |
| Berg, Elizabeth | 132,000.00 | (116,774.00) | 36,000.00 | (14,400.00) | 36,826.00 |
| Berg, Richard, Joseph & Jarod | 480,000.00 | (442,970.50) | 136,600.00 | (75,540.00) | 98,089.50 |
| Bergengren, Corinne | 12,000.00 | (327.50) | 0.00 | 0.00 | 11,672.50 |
| Bergengren, Niclas | 36,000.00 | (8,836.50) | 0.00 | 0.00 | 27,163.50 |
| Berkowitz, Adam & Karen | 84,000.00 | (32,283.00) | 0.00 | 0.00 | 51,717.00 |
| Berkwits, Leland & Hall, Barbara | 435,600.00 | (62,962.00) | 0.00 | 0.00 | 372,638.00 |
| Berman, Aaron & Rita | 432,000.00 | (231,597.50) | 0.00 | 0.00 | 200,402.50 |
| Berman, David | 48,000.00 | (28,017.00) | 0.00 | 0.00 | 19,983.00 |
| Berman, Naomi | 12,000.00 | (1,856.50) | 0.00 | 0.00 | 10,143.50 |
| Berman-Rubin, Patricia | 22,000.00 | (20,176.00) | 0.00 | 0.00 | 1,824.00 |
| Bernstein, William | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Berrick, Arthur & Sharon | 2,195,750.96 | (1,555,580.00) | 396,000.00 | (9,900.00) | 1,026,270.96 |
| Beumer, Daniel & Monica | 1,752,000.00 | (51,640.00) | 0.00 | 0.00 | 1,700,360.00 |
| Beumer, Donald & Denise | 2,964,000.00 | (652,140.00) | 0.00 | 0.00 | 2,311,860.00 |
| Bickel, Raymond | 204,000.00 | (93,606.50) | 0.00 | 0.00 | 110,393.50 |
| Bigler, Robert & Debra | 420,000.00 | (309,834.00) | 0.00 | 0.00 | 110,166.00 |
| Bigler-Kehlhofer, Erika | 24,000.00 | (9,379.00) | 0.00 | 0.00 | 14,621.00 |
| Bigler-Lefort, Nichole | 24,000.00 | (9,486.50) | 0.00 | 0.00 | 14,513.50 |

*Draft as of 05/29/15*

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Bird, G. & C. | 72,000.00 | (12,122.00) | 0.00 | 0.00 | 59,878.00 |
| Black, Alma & Michael | 36,000.00 | (32,092.50) | 0.00 | 0.00 | 3,907.50 |
| Black, Dustin | 24,000.00 | (19,655.00) | 0.00 | 0.00 | 4,345.00 |
| Black, Sandra | 120,000.00 | (18,599.50) | 0.00 | 0.00 | 101,400.50 |
| Blankenburg, Judith | 67,800.00 | (38,141.00) | 0.00 | 0.00 | 29,659.00 |
| Blaser, C. Michael | 96,000.00 | (31,830.50) | 0.00 | 0.00 | 64,169.50 |
| Blotnick, Charles & Cathy | 276,000.00 | (69,432.50) | 0.00 | 0.00 | 206,567.50 |
| Blotnick, William & Alice | 288,020.00 | (251,035.00) | 0.00 | 0.00 | 36,985.00 |
| Blue, David | 120,000.00 | (74,119.50) | 0.00 | 0.00 | 45,880.50 |
| Blum, Marvin & Betty | 1,116,000.00 | (508,509.50) | 0.00 | 0.00 | 607,490.50 |
| Bodily, D. Gary & Deborah | 540,984.50 | (67,468.50) | 0.00 | 0.00 | 473,516.00 |
| Bogner, Trude & Michelle | 600,000.00 | (319,764.00) | 0.00 | 0.00 | 280,236.00 |
| Bohecker, John & Beverly | 156,000.00 | (99,861.00) | 0.00 | 0.00 | 56,139.00 |
| Bolbat, Jennifer | 19,800.00 | (3,301.50) | 0.00 | 0.00 | 16,498.50 |
| Bolomet, Pascal | 240,000.00 | (57,260.50) | 0.00 | 0.00 | 182,739.50 |
| Bolotin, Michelle | 240,000.00 | (188,608.00) | 24,000.00 | (20,400.00) | 54,992.00 |
| Bomba, Thelma | 48,000.00 | (37,305.50) | 0.00 | 0.00 | 10,694.50 |
| Bonilla, Greta | 257,400.00 | (6,781.00) | 0.00 | 0.00 | 250,619.00 |
| Bonn, Thorsten | 300,000.00 | (176,095.00) | 0.00 | 0.00 | 123,905.00 |
| Bourgeois, Paul | 144,000.00 | (37,888.00) | 0.00 | 0.00 | 106,112.00 |
| Bown, Heather | 24,000.00 | (23,364.00) | 0.00 | 0.00 | 636.00 |
| Boyer, Norman & Marina | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Boylan, Jaqueline | 12,000.00 | (7,559.50) | 0.00 | 0.00 | 4,440.50 |
| Braeunig, Renee | 192,000.00 | (114,329.50) | 0.00 | 0.00 | 77,670.50 |
| Brandes, Eytan & Susan | 72,000.00 | (50,736.00) | 0.00 | 0.00 | 21,264.00 |
| Braucher, Jeffrey | 19,800.00 | (4,938.00) | 0.00 | 0.00 | 14,862.00 |
| Brazil, Kenneth | 312,000.00 | (264,714.00) | 0.00 | 0.00 | 47,286.00 |
| Breeze, Sue | 99,000.00 | (32,380.00) | 0.00 | 0.00 | 66,620.00 |
| Brehm, Eva Marie & Robert | 348,000.00 | (264,841.00) | 0.00 | 0.00 | 83,159.00 |
| Brenneman, John & Stacia | 24,000.00 | (17,800.50) | 0.00 | 0.00 | 6,199.50 |
| Brick, Barbara | 19,800.00 | (1,980.00) | 0.00 | 0.00 | 17,820.00 |
| Brickey, David & Choomsri | 36,000.00 | (1,030.00) | 0.00 | 0.00 | 34,970.00 |
| Bridges, John & Joyce | 118,800.00 | (29,817.00) | 0.00 | 0.00 | 88,983.00 |
| Bronson, Willard | 48,000.00 | (30,820.50) | 0.00 | 0.00 | 17,179.50 |
| Brooks, Michael | 144,000.00 | (62,031.50) | 0.00 | 0.00 | 81,968.50 |
| Brookshire, Caitlin | 96,000.00 | | 0.00 | 0.00 | 96,000.00 |
| Brookshire, G. Lee & Janel Marie | 96,000.00 | (51,790.50) | 0.00 | 0.00 | 44,209.50 |
| Brotter, Arthur | 84,000.00 | (29,058.50) | 0.00 | 0.00 | 54,931.50 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Brotter, Marvin | 72,000.00 | (40,318.50) | 0.00 | 0.00 | 31,681.50 |
| Brown, Anne & Melvin | 48,000.00 | (24,673.00) | 0.00 | 0.00 | 23,327.00 |
| Brown, Jeffrey & Holly | 48,000.00 | (41,881.75) | 0.00 | 0.00 | 6,118.25 |
| Brown, John & Loretta | 84,000.00 | (28,649.00) | 0.00 | 0.00 | 55,351.00 |
| Brown, Linda | 79,200.00 | (27,855.00) | 0.00 | 0.00 | 51,345.00 |
| Browning, Kerin | 59,400.00 | (32,604.00) | 0.00 | 0.00 | 26,796.00 |
| Broyles, Robert | 24,000.00 | (9,979.50) | 0.00 | 0.00 | 14,020.50 |
| Bruegge, Howard Vorder | 79,200.00 | (4,032.50) | 0.00 | 0.00 | 75,167.50 |
| Bruno, Lisa Jean | 144,000.00 | (89,687.50) | 12,000.00 | (2,400.00) | 63,912.50 |
| Brutschy, Mason | 297,000.00 | (208,724.80) | 0.00 | 0.00 | 88,275.20 |
| Bubman, Bernard & Sydell | 276,703.00 | (164,494.00) | 0.00 | 0.00 | 112,209.00 |
| Buckley-Moskowitz, Lynn | 33,000.00 | (31,374.00) | 0.00 | 0.00 | 1,626.00 |
| Buhr, Kenneth E. | 12,000.00 | (1,442.50) | 0.00 | 0.00 | 10,557.50 |
| Burgess, Franklynn & Ursula | 48,000.00 | (25,101.00) | 0.00 | 0.00 | 22,899.00 |
| Burke, Paul & Ellie | 178,200.00 | (162,763.50) | 0.00 | 0.00 | 15,436.50 |
| Burns, James & Bobbie | 118,800.00 | (92,752.50) | 0.00 | 0.00 | 26,047.50 |
| Burns, Kenneth | 59,400.00 | (30,231.00) | 0.00 | 0.00 | 29,169.00 |
| Cadicamo, James | 48,000.00 | (22,191.50) | 0.00 | 0.00 | 25,808.50 |
| Cadicamo, Victor, Tricia & Trinette | 120,000.00 | (77,825.00) | 0.00 | 0.00 | 42,175.00 |
| Calig, Marsha | 66,000.00 | (45,649.50) | 0.00 | 0.00 | 20,350.50 |
| Cameron, William & Kimberly | 959,970.00 | (678,032.00) | 0.00 | 0.00 | 281,938.00 |
| Campbell, Ann | 36,000.00 | (27,742.50) | 0.00 | 0.00 | 8,257.50 |
| Campbell, Elizabeth Ann | 138,600.00 | (55,744.00) | 0.00 | 0.00 | 82,856.00 |
| Campbell, George | 19,800.00 | (8,580.00) | 0.00 | 0.00 | 11,220.00 |
| Candela, Joseph & Catherine | 96,000.00 | (72,077.00) | 0.00 | 0.00 | 23,923.00 |
| Canessa, George | 1,092,000.00 | (785,923.00) | 0.00 | 0.00 | 306,077.00 |
| Caplan, David | 36,000.00 | (2,124.50) | 0.00 | 0.00 | 33,875.50 |
| Caplan, Louise | 79,200.00 | (40,083.50) | 0.00 | 0.00 | 39,116.50 |
| Carafelli, David & Christine | 24,000.00 | (701.50) | 0.00 | 0.00 | 23,298.50 |
| Cardenas, Ignacio & Fidelia | 72,000.00 | (36,461.50) | 0.00 | 0.00 | 35,538.50 |
| Cardenas, Juan Javier | 36,000.00 | (8,864.00) | 0.00 | 0.00 | 27,136.00 |
| Carr, Jerine & Paul | 475,200.00 | (432,149.50) | 0.00 | 0.00 | 43,050.50 |
| Case, Bernard & Estelle | 300,000.00 | (185,559.50) | 0.00 | 0.00 | 114,440.50 |
| Casoria, Carlo & Marie | 60,000.00 | (42,181.00) | 0.00 | 0.00 | 17,819.00 |
| Cassidy, Michael & Marcia | 240,000.00 | (79,057.50) | 0.00 | 0.00 | 160,942.50 |
| Casso, Joann Arlene | 24,000.00 | (5,377.00) | 0.00 | 0.00 | 18,623.00 |
| Caswell, Pam | 60,000.00 | (24,871.00) | 0.00 | 0.00 | 35,129.00 |
| Cavota, Paul | 96,000.00 | (13,522.00) | 0.00 | 0.00 | 82,478.00 |

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Centeno, Robert & Irene | 240,000.00 | (84,709.00) | 0.00 | 0.00 | 155,291.00 |
| Cerda, George | 167,000.00 | | 0.00 | 0.00 | 167,000.00 |
| Cerda, Jorge & Victoria | 48,000.00 | (41,780.50) | 0.00 | 0.00 | 6,219.50 |
| Chalme, Albert | 60,000.00 | (30,471.00) | 0.00 | 0.00 | 29,529.00 |
| Checco, Al | 237,600.00 | (128,492.00) | 0.00 | 0.00 | 109,108.00 |
| Cherry, Lauren & Barry | 60,000.00 | (20,877.50) | 0.00 | 0.00 | 39,122.50 |
| Chesler, Michael | 24,000.00 | (2,026.50) | 0.00 | 0.00 | 21,973.50 |
| Chiles, Desiree & Ponessa, Claudia | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Chin, Fred & Sandra | 316,800.00 | (74,557.00) | 0.00 | 0.00 | 242,243.00 |
| Cho, Julie | 39,600.00 | (2,882.50) | 0.00 | 0.00 | 36,717.50 |
| Chrisman, Julie | 24,000.00 | (11,658.00) | 0.00 | 0.00 | 12,342.00 |
| Christensen, Shelley | 120,000.00 | (8,776.50) | 0.00 | 0.00 | 111,223.50 |
| Christie, Stephen | 99,000.00 | (29,318.00) | 0.00 | 0.00 | 69,682.00 |
| Chu, Bonnie | 132,000.00 | (68,377.50) | 0.00 | 0.00 | 63,622.50 |
| Chuckovich, Fred | 264,000.00 | (35,771.00) | 0.00 | 0.00 | 228,229.00 |
| Clair, Ted Fain | 19,800.00 | (8,580.00) | 0.00 | 0.00 | 11,220.00 |
| Clanton, Marlene & Chris | 19,800.00 | (12,196.50) | 0.00 | 0.00 | 7,603.50 |
| Clark, Leroy & Roberta | 120,000.00 | (2,015.00) | 0.00 | 0.00 | 117,985.00 |
| Clemo, Robert & Cristy | 24,000.00 | (19,379.50) | 0.00 | 0.00 | 4,620.50 |
| Cobb, Drew | 19,800.00 | (14,527.00) | 0.00 | 0.00 | 5,273.00 |
| Coburn, Michael | 24,000.00 | (19,104.50) | 0.00 | 0.00 | 4,895.50 |
| Cody, Doris | 12,000.00 | (5,407.00) | 0.00 | 0.00 | 6,593.00 |
| Cohen, Adam & Parness, Nicole | 12,000.00 | (1,788.50) | 0.00 | 0.00 | 10,211.50 |
| Cohen, Charles | 48,000.00 | (6,923.00) | 0.00 | 0.00 | 41,077.00 |
| Cohen, Claudia | 39,600.00 | (9,194.50) | 0.00 | 0.00 | 30,405.50 |
| Cohen-Arazi, Hay & Sarah | 283,000.00 | (55,065.50) | 0.00 | 0.00 | 227,934.50 |
| Cohn, Alison | 39,600.00 | (4,950.00) | 0.00 | 0.00 | 34,650.00 |
| Cohn, Claire | 48,000.00 | (10,461.50) | 0.00 | 0.00 | 37,538.50 |
| Coleman, Scott | 99,000.00 | (9,631.50) | 0.00 | 0.00 | 89,368.50 |
| Collins, James | 19,800.00 | (18,545.00) | 0.00 | 0.00 | 1,255.00 |
| Connolley, Jim & Minard, Peggy | 120,000.00 | (72,569.50) | 0.00 | 0.00 | 47,430.50 |
| Conrad, Robert | 36,000.00 | (1,005.00) | 0.00 | 0.00 | 34,995.00 |
| Cooper, Perry | 192,000.00 | (93,411.00) | 0.00 | 0.00 | 98,589.00 |
| Cooper, Richard & Marcia | 180,000.00 | (50,563.00) | 0.00 | 0.00 | 129,437.00 |
| Cooper, Steven | 120,000.00 | | 0.00 | 0.00 | 120,000.00 |
| Coppert, Michael & Milana | 588,000.00 | (323,389.50) | 0.00 | 0.00 | 264,610.50 |
| Cortado, Aurelio | 24,000.00 | (7,014.00) | 0.00 | 0.00 | 16,986.00 |
| Coser, Russell & Julie | 300,000.00 | (175,427.00) | 0.00 | 0.00 | 124,573.00 |

# NASI Loss Analysis



| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Cox, Jeffrey | 48,000.00 | (40,263.50) | 0.00 | 0.00 | 7,736.50 |
| Cox, Matthew | 144,000.00 | (66,515.00) | 0.00 | 0.00 | 77,485.00 |
| Cox, Michael & Frances | 72,000.00 | (39,929.00) | 0.00 | 0.00 | 32,071.00 |
| Cron, Steven | 60,500.00 | (15,574.50) | 0.00 | 0.00 | 44,925.50 |
| Crowley, Barbara | 59,400.00 | | 0.00 | 0.00 | 59,400.00 |
| Cuenca, Herman | 120,000.00 | (16,811.00) | 0.00 | 0.00 | 103,189.00 |
| Cullinane, Michael | 24,000.00 | (6,202.50) | 0.00 | 0.00 | 17,797.50 |
| Cunningham, J. Cletus | 99,000.00 | (16,762.00) | 0.00 | 0.00 | 82,238.00 |
| Curtis, Robert & Virginia | 48,000.00 | (16,505.00) | 0.00 | 0.00 | 31,495.00 |
| Curtiss, Douglas & Lucie | 138,600.00 | (9,732.00) | 0.00 | 0.00 | 128,868.00 |
| D.A. Davidson & Co. | 108,000.00 | | 0.00 | 0.00 | 108,000.00 |
| Dailey, Bill | 60,000.00 | (56,907.00) | 0.00 | 0.00 | 3,093.00 |
| Dakik, Michael, Alan & Jill | 237,600.00 | (111,205.50) | 0.00 | 0.00 | 126,394.50 |
| Daly, Carla | 12,000.00 | (948.00) | 0.00 | 0.00 | 11,052.00 |
| D'Amato, Denis | 297,000.00 | (25,818.50) | 0.00 | 0.00 | 271,181.50 |
| David, Peggy & Paul | 420,000.00 | (40,898.50) | 0.00 | 0.00 | 379,101.50 |
| Davies, John & Sharon | 150,000.00 | (116,782.00) | 0.00 | 0.00 | 33,218.00 |
| Davies, Sally | 66,000.00 | (20,343.00) | 0.00 | 0.00 | 45,657.00 |
| Davis, Christopher & Kelly | 240,000.00 | (88,722.00) | 0.00 | 0.00 | 151,278.00 |
| Davis, Kevin | 2,916,000.00 | (2,030,929.50) | 192,000.00 | (104,400.00) | 972,670.50 |
| Davis, Laura & Shiraiski, Joy | 480,000.00 | (362,822.00) | 0.00 | 0.00 | 117,178.00 |
| Davis-Hershman, Carol & Sheldon | 144,000.00 | (113,824.00) | 0.00 | 0.00 | 30,176.00 |
| Davodi, Karmen | 39,600.00 | (18,810.00) | 0.00 | 0.00 | 20,790.00 |
| Daza, Joan | 19,800.00 | (7,174.50) | 0.00 | 0.00 | 12,625.50 |
| De Bruin, Sandra | 138,600.00 | (80,786.00) | 0.00 | 0.00 | 57,814.00 |
| De la Huerta, Julio | 79,200.00 | (19,994.50) | 0.00 | 0.00 | 59,205.50 |
| De Miranda, Jay & Shirley | 1,020,000.00 | (251,171.00) | 0.00 | 0.00 | 768,829.00 |
| Del Mar Molinary Hernandez, Maria | 19,800.00 | (11,242.50) | 0.00 | 0.00 | 8,557.50 |
| Demopoulos, Stavroula | 336,510.00 | (241,070.50) | 0.00 | 0.00 | 95,439.50 |
| Denning, Terry & Jodi | 288,000.00 | (169,636.00) | 0.00 | 0.00 | 118,364.00 |
| Desipio, Richard | 277,200.00 | (162,134.00) | 0.00 | 0.00 | 115,066.00 |
| Dhari, Galia & Zvi | 24,000.00 | (9,145.00) | 0.00 | 0.00 | 14,855.00 |
| Dhoore, Daniel & Arlette | 19,800.00 | (15,180.00) | 0.00 | 0.00 | 4,620.00 |
| Di Pierro, John | 48,000.00 | (8,640.00) | 0.00 | 0.00 | 39,360.00 |
| Diamond, Arnold | 204,000.00 | (183,611.50) | 49,000.00 | (34,350.00) | 35,038.50 |
| Diamond, Sean | 24,000.00 | (14,737.00) | 0.00 | 0.00 | 9,263.00 |
| Dickinson, Brittany & Kyle | 12,000.00 | (346.50) | 0.00 | 0.00 | 11,653.50 |
| Dierickx, Steven & Mary | 192,000.00 | (130,949.00) | 0.00 | 0.00 | 61,051.00 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Digerose, Guri | 198,000.00 | (185,710.00) | 0.00 | 0.00 | 12,290.00 |
| DiMeglio, Georgia & Debra | 59,400.00 | (15,295.50) | 0.00 | 0.00 | 44,104.50 |
| DiRosario, Daniel | 336,600.00 | (140,179.50) | 0.00 | 0.00 | 196,420.50 |
| Dizon, Nerissa & Odon | 36,000.00 | (3,111.00) | 0.00 | 0.00 | 32,889.00 |
| Dodge, Randolph Hugh & Isabel | 254,600.00 | (147,432.00) | 0.00 | 0.00 | 107,168.00 |
| Dollarhyde, Jackie | 553,600.00 | (439,497.50) | 0.00 | 0.00 | 114,102.50 |
| Donato, Vincent Sr. | 24,000.00 | (642.00) | 0.00 | 0.00 | 23,358.00 |
| Dornfeld, Gary, Leilani, Benjamin & Mitchell | 79,200.00 | (61,380.00) | 0.00 | 0.00 | 17,820.00 |
| Douglas, Anna | 139,200.00 | (49,170.00) | 0.00 | 0.00 | 90,030.00 |
| Dowler, David & Darlene | 59,400.00 | (1,060.50) | 0.00 | 0.00 | 58,339.50 |
| Dowler, Mitch & In Cha | 19,800.00 | (2,156.00) | 0.00 | 0.00 | 17,644.00 |
| Drake, J. & Larry | 108,000.00 | (37,444.50) | 0.00 | 0.00 | 70,555.50 |
| Dunn, Luisa | 12,000.00 | (7,070.00) | 0.00 | 0.00 | 4,930.00 |
| Durman, John | 48,000.00 | (3,597.50) | 0.00 | 0.00 | 44,402.50 |
| Duteil, DeAnn | 79,200.00 | (69,682.50) | 0.00 | 0.00 | 9,517.50 |
| Duvall, Linnea | 59,400.00 | (11,699.50) | 0.00 | 0.00 | 47,700.50 |
| Dye, Gregory | 144,000.00 | (71,280.00) | 0.00 | 0.00 | 72,720.00 |
| Eagleton, William | 144,000.00 | (57,111.50) | 0.00 | 0.00 | 86,888.50 |
| Eaton, Dan & Jacqueline | 60,000.00 | (59,844.50) | 0.00 | 0.00 | 155.50 |
| Eberlein, Michael | 120,000.00 | (74,001.00) | 0.00 | 0.00 | 45,999.00 |
| Ebsen, Christian & Dorothy & Havel, Vince | 612,000.00 | (328,246.50) | 25,000.00 | (33,750.00) | 275,003.50 |
| Edesa, Robert & Katherine | 36,000.00 | (1,068.00) | 0.00 | 0.00 | 34,932.00 |
| Edwards, Cameron & Cheryl | 60,000.00 | (36,379.00) | 0.00 | 0.00 | 23,621.00 |
| Efron, Brian & Lisa | 84,987.50 | (29,309.00) | 0.00 | 0.00 | 55,678.50 |
| Ehrens, Gerald & Wilma | 792,000.00 | (590,616.50) | 120,000.00 | (3,000.00) | 318,383.50 |
| Ehrens, J. Scott | 720,000.00 | (530,993.50) | 0.00 | 0.00 | 189,006.50 |
| Ehrens, Jordan & Sharon | 300,000.00 | (238,145.00) | 0.00 | 0.00 | 61,855.00 |
| Einhorn, Marcel & Doris | 360,000.00 | (16,717.50) | 0.00 | 0.00 | 343,282.50 |
| Elam, Carol | 39,600.00 | (16,538.50) | 0.00 | 0.00 | 23,061.50 |
| Elden, David | 120,000.00 | (78,542.50) | 0.00 | 0.00 | 41,457.50 |
| Elggren, Craig | 396,000.00 | (87,343.00) | 0.00 | 0.00 | 308,657.00 |
| Elkind, Carol & Kernodle, Gregory | 39,600.00 | (3,996.00) | 0.00 | 0.00 | 35,604.00 |
| Elkind, Lawrence | 1,326,600.00 | (1,229,344.00) | 425,800.00 | (131,517.50) | 391,538.50 |
| Ellis, Lawrence & Irene | 144,000.00 | (75,831.50) | 0.00 | 0.00 | 68,168.50 |
| Emerick, Sylvia | 62,000.00 | (29,853.50) | 0.00 | 0.00 | 32,146.50 |
| Emerick, Thomas & Barbara | 516,000.00 | (366,203.00) | 0.00 | 0.00 | 149,797.00 |
| Emerson, Edward | 144,000.00 | (115,322.00) | 0.00 | 0.00 | 28,678.00 |
| Emley, Pamela & Donald | 19,800.00 | (17,820.00) | 0.00 | 0.00 | 1,980.00 |

Drafts as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Engle, Jerry | 120,000.00 | (23,225.50) | 0.00 | 0.00 | 96,774.50 |
| Enyart, Nancee | 24,000.00 | (9,463.00) | 0.00 | 0.00 | 14,537.00 |
| Epstein, Michael & Rhoda | 240,000.00 | (167,245.00) | 0.00 | 0.00 | 72,755.00 |
| Erickson, Julia | 39,600.00 | | 0.00 | 0.00 | 39,600.00 |
| Errico, Robert & Deborah | 312,000.00 | (208,284.50) | 0.00 | 0.00 | 103,715.50 |
| Eskanos, Irwin & Vivian | 240,000.00 | (38,824.00) | 0.00 | 0.00 | 201,176.00 |
| Eslick, Leslie Beth | 144,000.00 | (59,434.50) | 0.00 | 0.00 | 84,565.50 |
| Essig, Laura & Logan | 36,000.00 | (3,780.50) | 0.00 | 0.00 | 32,219.50 |
| Evans, Jeptha | 39,600.00 | (21,120.50) | 0.00 | 0.00 | 18,479.50 |
| Ewing, Matt | 19,800.00 | (5,955.50) | 0.00 | 0.00 | 13,844.50 |
| Faili, Lida | 36,000.00 | (4,904.00) | 0.00 | 0.00 | 31,096.00 |
| Fait, Richard & Laurel | 300,000.00 | (279,562.00) | 0.00 | 0.00 | 20,438.00 |
| Fait, Stephen & Kathleen | 144,000.00 | (85,377.00) | 0.00 | 0.00 | 58,623.00 |
| Fannon, Russell | 475,200.00 | (289,071.00) | 0.00 | 0.00 | 186,129.00 |
| Faranesh, Zahi & Abbey | 480,000.00 | (436,340.00) | 60,000.00 | (12,000.00) | 91,660.00 |
| Farling, David | 316,000.00 | (180,675.00) | 39,600.00 | (7,920.00) | 167,005.00 |
| Farmer, Kimberley | 36,000.00 | (9,969.00) | 0.00 | 0.00 | 26,031.00 |
| Fastovsky, James & Elsa | 1,924,800.50 | (1,196,188.50) | 180,000.00 | (114,000.00) | 794,612.00 |
| Fastovsky, Jeffrey & Leslie | 84,000.00 | (5,428.00) | 0.00 | 0.00 | 78,572.00 |
| Faulkerson, James & Gardiner, Bruce (Sanctorum Trust) | 684,000.00 | (397,810.50) | 0.00 | 0.00 | 286,189.50 |
| Faynsod, Uri | 84,000.00 | (43,053.00) | 0.00 | 0.00 | 40,947.00 |
| Feinberg, Stephen & Alisa | 192,000.00 | (35,431.50) | 0.00 | 0.00 | 156,568.50 |
| Feldman, David & Irene | 660,000.00 | (542,550.50) | 240,000.00 | (94,500.00) | 262,949.50 |
| Feldman, Roberta & Schrenzel, Lilyan | 144,000.00 | (94,189.50) | 0.00 | 0.00 | 49,810.50 |
| Fell, Julia | 39,600.00 | (26,554.00) | 0.00 | 0.00 | 13,046.00 |
| Fender, Marcus & Joanne | 554,400.00 | (246,694.00) | 0.00 | 0.00 | 307,706.00 |
| Fender, Nick | 990,000.00 | (357,627.50) | 0.00 | 0.00 | 632,372.50 |
| Ferdman, Sheldon | 288,000.00 | (75,728.00) | 0.00 | 0.00 | 212,272.00 |
| Ferguson, Ronnie | 168,000.00 | (70,883.00) | 0.00 | 0.00 | 97,117.00 |
| Fernandez, Paul | 99,000.00 | (74,910.00) | 0.00 | 0.00 | 24,090.00 |
| Ferranti, Anthony Jr. | 99,000.00 | (37,056.00) | 0.00 | 0.00 | 61,944.00 |
| Ferrara, Nicholas | 348,000.00 | (140,924.50) | 0.00 | 0.00 | 207,075.50 |
| Fichtner, Kymberly & William | 60,000.00 | (8,017.50) | 0.00 | 0.00 | 51,982.50 |
| Fiedler, Adrienne | 60,000.00 | (43,205.00) | 0.00 | 0.00 | 16,795.00 |
| Fiedler, Claire | 84,000.00 | (41,363.50) | 0.00 | 0.00 | 42,636.50 |
| Fielding, Susan & Jenny | 198,000.00 | (75,827.00) | 0.00 | 0.00 | 122,173.00 |
| Fifle, Micheline | 60,000.00 | (5,199.00) | 0.00 | 0.00 | 54,801.00 |
| Filling, Carolyn | 72,000.00 | (23,659.00) | 0.00 | 0.00 | 48,341.00 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Fine, Edythe | 48,000.00 | (33,506.00) | 0.00 | 0.00 | 14,494.00 |
| Fine, Leon | 120,000.00 | (31,826.00) | 0.00 | 0.00 | 88,174.00 |
| Finnazzo, Martin | 48,000.00 | (33,017.00) | 0.00 | 0.00 | 14,983.00 |
| Finney, Peter & Jennifer | 72,000.00 | (13,906.50) | 0.00 | 0.00 | 58,093.50 |
| Fisher, Laura | 192,000.00 | (187,215.50) | 0.00 | 0.00 | 4,784.50 |
| Flagg, Don Jr. | 36,000.00 | (8,973.50) | 0.00 | 0.00 | 27,026.50 |
| Fletcher, Ilene | 12,000.00 | (3,417.00) | 0.00 | 0.00 | 8,583.00 |
| Flett, Ian & Justine | 84,000.00 | (42,820.50) | 0.00 | 0.00 | 41,179.50 |
| Folkerth, Betsy | 257,400.00 | (98,058.00) | 0.00 | 0.00 | 159,342.00 |
| Fosse, Arvin & Patricia | 180,000.00 | (96,534.00) | 0.00 | 0.00 | 83,466.00 |
| Fox, Kenneth & Rosalyn | 24,000.00 | (14,724.50) | 0.00 | 0.00 | 9,275.50 |
| Francis, Tim & Julia | 168,000.00 | (166,536.30) | 0.00 | 0.00 | 1,463.70 |
| Franczak, Geraldine | 24,000.00 | (7,049.00) | 0.00 | 0.00 | 16,951.00 |
| Frank, Steven & Bonnie | 60,000.00 | (36,012.00) | 0.00 | 0.00 | 23,988.00 |
| Frank-Gerbasi, Suzanne | 891,000.00 | (237,834.00) | 0.00 | 0.00 | 653,166.00 |
| Franklin, Susan | 138,600.00 | (114,350.00) | 0.00 | 0.00 | 24,250.00 |
| Franklin, Tommie & Brenda | 120,000.00 | (40,357.50) | 0.00 | 0.00 | 79,642.50 |
| Fredman, Murray & Sherry | 108,000.00 | (43,654.50) | 0.00 | 0.00 | 64,345.50 |
| Freedman, David | 12,000.00 | (6,181.00) | 0.00 | 0.00 | 5,819.00 |
| Freeman, Blake Samuel | 12,000.00 | (321.00) | 0.00 | 0.00 | 11,679.00 |
| Freeman, Estella | 99,000.00 | (30,112.50) | 0.00 | 0.00 | 68,887.50 |
| Freeman, George | 59,400.00 | (53,790.00) | 0.00 | 0.00 | 5,610.00 |
| Freeman, Israel & Marilyn | 480,000.00 | (38,882.50) | 0.00 | 0.00 | 441,117.50 |
| Freeman, Kathleen | 48,000.00 | (18,091.00) | 0.00 | 0.00 | 29,909.00 |
| Freeman, Rodney | 360,000.00 | (29,449.50) | 0.00 | 0.00 | 330,550.50 |
| Friebertshauser, Kathleen | 72,000.00 | (51,872.50) | 0.00 | 0.00 | 20,127.50 |
| Fried, Robert & Robin | 24,000.00 | | 0.00 | 0.00 | 24,000.00 |
| Friedland, Jerome, Leon & Felicia | 816,000.00 | (651,544.00) | 0.00 | 0.00 | 164,456.00 |
| Fuqua, Donald & Janet | 36,000.00 | (991.50) | 0.00 | 0.00 | 35,008.50 |
| Fusco, Scott | 79,200.00 | (28,039.50) | 0.00 | 0.00 | 51,160.50 |
| Gaffney, Christine & Kathleen | 24,000.00 | (1,329.50) | 0.00 | 0.00 | 22,670.50 |
| Galati, Veto | 79,200.00 | (51,810.00) | 0.00 | 0.00 | 27,390.00 |
| Gallagher, Betsy | 19,800.00 | (9,696.00) | 0.00 | 0.00 | 10,104.00 |
| Gallia, Donna | 39,600.00 | (678.00) | 0.00 | 0.00 | 38,922.00 |
| Gan, Leann & Nicole | 36,000.00 | (18,073.50) | 0.00 | 0.00 | 17,926.50 |
| Ganesan, George | 36,000.00 | (24,629.00) | 0.00 | 0.00 | 11,371.00 |
| Gans-Savy, Terri | 118,800.00 | (72,766.50) | 0.00 | 0.00 | 46,033.50 |
| Ganz, Harvey | 435,600.00 | (328,570.00) | 0.00 | 0.00 | 107,030.00 |

Page 10 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Gardiner, Bruce & Nicki | 504,000.00 | (254,086.00) | 0.00 | 0.00 | 249,914.00 |
| Gardner, Andrea & Steven | 192,000.00 | (183,769.00) | 0.00 | 0.00 | 8,231.00 |
| Garren, Mark & Lori | 120,000.00 | (40,272.50) | 0.00 | 0.00 | 79,727.50 |
| Garren, Steven | 120,000.00 | (39,599.00) | 0.00 | 0.00 | 80,401.00 |
| Garth, Kevin | 288,000.00 | (23,072.50) | 0.00 | 0.00 | 264,927.50 |
| Garver, Michael | 19,800.00 | | 0.00 | 0.00 | 19,800.00 |
| Gates, Katharine | 48,000.00 | (24,446.00) | 0.00 | 0.00 | 23,554.00 |
| Gauff, Lisa | 744,000.00 | (403,972.00) | 0.00 | 0.00 | 340,028.00 |
| Gauthier, Linda | 118,800.00 | | 0.00 | 0.00 | 118,800.00 |
| Gavin, John & Kristin | 300,000.00 | (267,700.00) | 0.00 | 0.00 | 32,300.00 |
| Gayton, Richard | 372,000.00 | (99,099.00) | 0.00 | 0.00 | 272,901.00 |
| Gealy, Jennifer | 613,800.00 | (243,142.00) | 19,800.00 | (495.00) | 389,963.00 |
| Gehrke, Jeremy & Jason | 216,000.00 | (93,362.50) | 0.00 | 0.00 | 122,637.50 |
| Geller, Gail | 48,000.00 | (10,866.00) | 0.00 | 0.00 | 37,134.00 |
| Geremia, Pamela Jean | 72,000.00 | (17,660.50) | 0.00 | 0.00 | 54,339.50 |
| Ghadishah, Sherry & Babak | 72,000.00 | (6,856.00) | 0.00 | 0.00 | 65,144.00 |
| Ghishan, Peter | 36,000.00 | (10,320.00) | 0.00 | 0.00 | 25,680.00 |
| Gibbs, Dean & Marcie | 24,000.00 | (6,207.50) | 0.00 | 0.00 | 17,792.50 |
| Gilbert, Gary | 132,000.00 | (18,598.00) | 0.00 | 0.00 | 113,402.00 |
| Gill, Scott | 198,000.00 | (3,348.00) | 0.00 | 0.00 | 194,652.00 |
| Gioffre, Rocco | 19,800.00 | | 0.00 | 0.00 | 19,800.00 |
| Giordano, Anthony | 276,200.00 | (236,048.00) | 0.00 | 0.00 | 40,152.00 |
| Giordano, Lorraine | 99,000.00 | (56,392.00) | 0.00 | 0.00 | 42,608.00 |
| Gladden, Margaret | 59,400.00 | (7,707.00) | 0.00 | 0.00 | 51,693.00 |
| Glasser, Ernest & Marilyn | 120,000.00 | (77,261.50) | 34,500.00 | 0.00 | 42,738.50 |
| Glasser, Mark & Susan | 198,000.00 | (162,085.00) | 0.00 | (64,225.00) | 6,190.00 |
| Glazer, David | 240,000.00 | (152,723.50) | 0.00 | 0.00 | 87,276.50 |
| Glen, Nancy | 12,000.00 | (3,219.50) | 0.00 | 0.00 | 8,780.50 |
| Glosser, Angela | 384,000.00 | (375,651.00) | 0.00 | 0.00 | 8,349.00 |
| Glovinsky, Heather & David | 36,000.00 | (19,515.50) | 59,400.00 | 0.00 | 166,484.50 |
| Glucklick, Peter & Ross, Helen | 118,800.00 | (117,120.50) | 0.00 | (8,415.00) | 52,664.50 |
| Goldberg, Harry & Jeanette | 120,000.00 | (8,545.50) | 0.00 | 0.00 | 111,454.50 |
| Goldberg, Lewis & Carolyn | 24,000.00 | (18,851.50) | 0.00 | 0.00 | 5,148.50 |
| Goldberg, Lilyan | 108,000.00 | (97,348.00) | 11,000.00 | (20,900.00) | 752.00 |
| Goldberg, Neil & Melissa | 504,000.00 | (267,945.50) | 0.00 | 0.00 | 236,054.50 |
| Goldberg, Ross & Susan | 696,000.00 | (357,347.00) | 0.00 | 0.00 | 338,653.00 |
| Goldberg, Shellee | 12,000.00 | (11,982.00) | 0.00 | 0.00 | 18.00 |
| Goldman, Henry & Shirley | 240,000.00 | (155,888.00) | 0.00 | 0.00 | 84,112.00 |

Page 11 of 35

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Goldman, Joel K. | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Goldman, Wendy & Heath | 24,000.00 | | 0.00 | 0.00 | 24,000.00 |
| Goldstein, Denne & Anne | 1,296,000.00 | (693,492.50) | 0.00 | 0.00 | 602,507.50 |
| Goldstein, Ira, Amber & Zachary | 1,128,000.00 | (674,833.00) | 0.00 | 0.00 | 453,167.00 |
| Goldstein, Stacey | 192,000.00 | (126,785.50) | 0.00 | 0.00 | 65,214.50 |
| Golkin, Gerald & Betsy | 36,000.00 | (29,772.50) | 0.00 | 0.00 | 6,227.50 |
| Gonsalves, Mathew & Marlene | 540,000.00 | (135,894.00) | 0.00 | 0.00 | 404,106.00 |
| Gonzalez, Yolanda | 24,000.00 | (6,129.50) | 0.00 | 0.00 | 17,870.50 |
| Good, Larry & Cindi | 168,000.00 | (41,552.00) | 0.00 | 0.00 | 126,448.00 |
| Goodman, Harvey & Ann | 120,000.00 | (76,254.50) | 0.00 | 0.00 | 43,745.50 |
| Gordon, Elizabeth | 39,600.00 | (24,829.00) | 0.00 | 0.00 | 14,771.00 |
| Gore, Newton & Carol | 240,000.00 | (148,281.00) | 0.00 | 0.00 | 91,719.00 |
| Gosman, Susan | 36,000.00 | (21,142.00) | 0.00 | 0.00 | 14,858.00 |
| Gould, Gerald & Corinne | 120,000.00 | (117,215.00) | 0.00 | 0.00 | 2,785.00 |
| Graczyk, Doree & Stephan | 36,000.00 | (7,514.50) | 0.00 | 0.00 | 28,485.50 |
| Graham, Gidget | 168,000.00 | (126,889.00) | 0.00 | 0.00 | 41,111.00 |
| Gravendaal, Peggy | 48,000.00 | (14,328.00) | 0.00 | 0.00 | 33,672.00 |
| Grayson, David & Shauna | 19,800.00 | (1,175.50) | 0.00 | 0.00 | 18,624.50 |
| Grayson, Francis Joseph & Ann | 79,200.00 | (35,088.50) | 0.00 | 0.00 | 44,111.50 |
| Green, Aron, Jonah & Danielle | 72,000.00 | (32,367.50) | 0.00 | 0.00 | 39,632.50 |
| Green, Randi | 168,000.00 | (115,153.00) | 0.00 | 0.00 | 52,847.00 |
| Green, Stephen & Rhonda | 192,000.00 | (164,112.00) | 60,000.00 | (9,900.00) | 777,988.00 |
| Greenberg, Wendy | 480,000.00 | (13,238.50) | 0.00 | 0.00 | 466,761.50 |
| Greene, Bert & Phyllis | 72,000.00 | (23,427.00) | 0.00 | 0.00 | 48,573.00 |
| Greenlund, Joyce & Shimerka, Letha | 24,000.00 | (20,224.00) | 0.00 | 0.00 | 3,776.00 |
| Greenlund, Larry & Joyce | 528,000.00 | (304,653.50) | 0.00 | 0.00 | 223,346.50 |
| Greenman, Geraldine & Herbert | 456,000.00 | (350,891.50) | 0.00 | 0.00 | 105,108.50 |
| Greenwood, Roger & Carolyn | 72,000.00 | (59,853.50) | 0.00 | 0.00 | 12,146.50 |
| Grey, Howard & Marcia | 648,000.00 | (464,873.50) | 0.00 | 0.00 | 183,126.50 |
| Grey, Jason, Bonnie & Matthew | 132,000.00 | (22,562.00) | 0.00 | 0.00 | 109,438.00 |
| Griffis, Melora | 59,400.00 | (15,191.00) | 0.00 | 0.00 | 44,209.00 |
| Grimshaw, Michael & Susan | 336,000.00 | (237,030.50) | 0.00 | 0.00 | 98,969.50 |
| Gross, Stanley & Marion | 120,000.00 | (55,380.50) | 0.00 | 0.00 | 64,619.50 |
| Gubler, Michael & Rachel | 24,000.00 | (13,866.00) | 0.00 | 0.00 | 10,134.00 |
| Gullihur, Charles & Aileen | 600,000.00 | (91,782.50) | 0.00 | 0.00 | 508,217.50 |
| Gunsch, Dorothy | 48,000.00 | (26,244.00) | 0.00 | 0.00 | 21,756.00 |
| Gutierrez, Caroline | 120,000.00 | (6,780.50) | 0.00 | 0.00 | 113,219.50 |
| Guzzo, Marie | 39,600.00 | (24,753.00) | 0.00 | 0.00 | 14,847.00 |

Page 12 of 35

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Habeck, Gerald & Sullivan, Pat | 144,000.00 | (68,624.00) | 0.00 | 0.00 | 75,376.00 |
| Hackbarth, Dennis, Michelle & Keith | 684,000.00 | (682,314.50) | 0.00 | 0.00 | 1,685.50 |
| Hackney, Michael | 84,000.00 | (19,789.00) | 0.00 | 0.00 | 64,211.00 |
| Hageman, Susan | 132,000.00 | (62,499.00) | 0.00 | 0.00 | 69,501.00 |
| Hahn, Sylvia | 36,000.00 | (8,719.50) | 0.00 | 0.00 | 27,280.50 |
| Halasi, Shon | 108,900.00 | (36,027.00) | 0.00 | 0.00 | 72,873.00 |
| Haliczer, Arthur | 36,000.00 | (4,008.50) | 0.00 | 0.00 | 31,991.50 |
| Hamlin, Donald & Anne | 79,200.00 | (49,245.00) | 0.00 | 0.00 | 29,955.00 |
| Hampton, Jeannine | 48,000.00 | (40,235.00) | 12,000.00 | (10,200.00) | 9,565.00 |
| Han, Hwi Woon | 99,000.00 | | | | 99,000.00 |
| Hanke, Radim | 99,000.00 | (75,047.00) | 59,400.00 | (29,700.00) | 53,653.00 |
| Hanna, Richard Paul | 36,000.00 | (5,219.50) | 0.00 | 0.00 | 30,780.50 |
| Hanson, Christopher | 39,600.00 | | 0.00 | 0.00 | 39,600.00 |
| Hanson, Jonathan | 79,200.00 | (70,991.50) | 0.00 | 0.00 | 8,208.50 |
| Harabedian, Rob | 108,000.00 | (98,973.00) | 0.00 | 0.00 | 9,027.00 |
| Harbrecht, Ryan & Katie | 24,000.00 | (11,763.00) | 0.00 | 0.00 | 12,237.00 |
| Hardesty, David & Cheryle | 120,000.00 | (16,216.00) | 0.00 | 0.00 | 103,784.00 |
| Haria, Girish | 237,600.00 | (185,336.00) | 0.00 | 0.00 | 52,264.00 |
| Harner, Linda | 99,000.00 | (71,108.00) | 0.00 | 0.00 | 27,892.00 |
| Harner, Robert Jr. | 277,200.00 | (252,710.00) | 0.00 | 0.00 | 24,490.00 |
| Harrell, Glenn | 435,600.00 | (329,751.50) | 0.00 | 0.00 | 105,848.50 |
| Harrell, Rhonda | 118,800.00 | (102,630.00) | 0.00 | 0.00 | 16,170.00 |
| Harris, Jeffrey | 600,000.00 | (9,947.50) | 0.00 | 0.00 | 590,052.50 |
| Harris, Jenni | 594,000.00 | (278,422.50) | 0.00 | 0.00 | 315,577.50 |
| Harris, Ronald & Ellen | 660,000.00 | (8,151.50) | 0.00 | 0.00 | 651,848.50 |
| Hartinger, Dennis | 36,000.00 | (3,916.50) | 0.00 | 0.00 | 32,083.50 |
| Haskell, William | 120,000.00 | (81,415.50) | 0.00 | 0.00 | 38,584.50 |
| Hass, Carol | 36,000.00 | (23,093.50) | 0.00 | 0.00 | 12,906.50 |
| Hasson, Joseph & Marlene | 36,000.00 | (7,297.50) | 0.00 | 0.00 | 28,702.50 |
| Hasson, Ronald & Sharon | 60,000.00 | (20,354.50) | 0.00 | 0.00 | 39,645.50 |
| Havel, Dawn | 24,000.00 | (11,547.50) | 0.00 | 0.00 | 12,452.50 |
| Havel, Simone | 48,000.00 | (28,264.50) | 0.00 | 0.00 | 19,735.50 |
| Havel, Vanessa | 48,000.00 | (33,717.50) | 0.00 | 0.00 | 14,282.50 |
| Hawkins, Brenda | 79,200.00 | (35,096.16) | 0.00 | 0.00 | 44,103.84 |
| Hazan, Gary & Brooke | 228,000.00 | (149,695.50) | 0.00 | 0.00 | 78,304.50 |
| Hebda, Jeremy | 72,000.00 | (36,693.00) | 0.00 | 0.00 | 35,307.00 |
| Hedjazi, Hossein | 180,000.00 | (83,206.00) | 0.00 | 0.00 | 96,794.00 |
| Hefti, Paul & Denise | 435,600.00 | (23,299.50) | 0.00 | 0.00 | 412,300.50 |

Page 13 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Hein, Debby | 297,000.00 | (242,320.00) | 0.00 | 0.00 | 54,680.00 |
| Heller, Diane | 178,200.00 | (92,160.00) | 0.00 | 0.00 | 86,040.00 |
| Heller, Kenneth & Barbara | 48,000.00 | | 0.00 | 0.00 | 48,000.00 |
| Heller, Terry | 144,000.00 | (31,894.50) | 0.00 | 0.00 | 112,105.50 |
| Hellman, Bud & Nat | 48,000.00 | (7,895.00) | 0.00 | 0.00 | 40,105.00 |
| Hendrixson, Douglas & Kathy | 72,000.00 | (63,066.50) | 0.00 | 0.00 | 8,933.50 |
| Herbertson, Tyrus | 12,000.00 | (6,351.00) | 0.00 | 0.00 | 5,649.00 |
| Herzlich, Lisa | 168,000.00 | (167,737.50) | 0.00 | 0.00 | 262.50 |
| Hess, Damon | 24,000.00 | (13,153.00) | 0.00 | 0.00 | 10,847.00 |
| Hess, Gary & Rose | 60,000.00 | (1,694.00) | 0.00 | 0.00 | 58,306.00 |
| Hewett, Martin & Marie | 240,196.50 | (111,887.50) | 19,800.00 | (33,165.00) | 114,944.00 |
| Hicks, Bryan | 59,400.00 | (46,205.50) | 0.00 | 0.00 | 13,194.50 |
| Hicks, Hilliard & Sherdell | 39,600.00 | (26,040.00) | 0.00 | 0.00 | 13,560.00 |
| Hilden, Diane | 19,800.00 | (2,494.00) | 0.00 | 0.00 | 17,306.00 |
| Hillier, Shawn & Meri | 72,000.00 | (9,935.00) | 0.00 | 0.00 | 62,065.00 |
| Himathongkom, Pomsak Juan | 192,000.00 | (26,452.00) | 0.00 | 0.00 | 165,348.00 |
| Hofert, Marilyn | 36,000.00 | (961.00) | 0.00 | 0.00 | 35,039.00 |
| Holland, Kenneth & Jean | 79,200.00 | (72,930.00) | 0.00 | 0.00 | 6,270.00 |
| Homan, Carolyn & Lawrence | 144,000.00 | (34,731.00) | 0.00 | 0.00 | 109,269.00 |
| Homan, Nate & Melody | 12,000.00 | (2,493.50) | 0.00 | 0.00 | 9,506.50 |
| Hooks, Amy | 108,000.00 | (50,820.00) | 0.00 | 0.00 | 57,180.00 |
| Horowitz, Eric & Bonnie | 84,000.00 | (13,528.50) | 0.00 | 0.00 | 70,471.50 |
| Horowitz, Steven & Eileen | 24,000.00 | (2,903.50) | 0.00 | 0.00 | 21,096.50 |
| Hosta, Daryl & Susan | 1,718,000.00 | (402,320.50) | 0.00 | 0.00 | 1,315,679.50 |
| Houck, Janice | 192,000.00 | (51,531.50) | 0.00 | 0.00 | 140,468.50 |
| Howard, Ralph & Kay | 168,000.00 | (157,069.50) | 0.00 | 0.00 | 10,930.50 |
| Howarth, George | 24,000.00 | (1,220.00) | 0.00 | 0.00 | 22,780.00 |
| Huffman, Dennis | 24,000.00 | | 0.00 | 0.00 | 24,000.00 |
| Huggard, Michael | 12,000.00 | (373.00) | 0.00 | 0.00 | 11,627.00 |
| Hugh, Rebecca | 120,000.00 | (113,652.00) | 0.00 | 0.00 | 6,348.00 |
| Hughes, John & Shulman, Gloria | 99,000.00 | | 0.00 | 0.00 | 99,000.00 |
| Hunt, Deanna | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Hunt, Gavin & Kay | 138,600.00 | (57,644.50) | 0.00 | 0.00 | 80,955.50 |
| Hunt-Yates, Dawn | 59,400.00 | (6,930.00) | 0.00 | 0.00 | 52,470.00 |
| Hurst, William | 325,114.50 | (257,435.00) | 0.00 | 0.00 | 67,679.50 |
| Hurtado, Virginia | 36,000.00 | (4,852.00) | 0.00 | 0.00 | 31,148.00 |
| Hyatt, Gordon & Carole | 360,000.00 | (201,943.50) | 0.00 | 0.00 | 158,056.50 |
| Hyman, John & Rice, Anthea | 96,000.00 | (31,994.50) | 0.00 | 0.00 | 64,005.50 |

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Hyman, Martin, Edith & Eileen | 612,000.00 | (146,104.50) | 0.00 | 0.00 | 465,895.50 |
| Hyman, Sidney (deceased) & Marvin | 19,800.00 | (14,985.00) | 0.00 | 0.00 | 4,815.00 |
| Ignon, Roger & Jacqueline | 144,000.00 | (45,713.50) | 0.00 | 0.00 | 98,286.50 |
| Iimura, Keiko | 261,400.00 | (141,236.50) | 0.00 | 0.00 | 120,163.50 |
| Ilbeig, Shahin | 84,000.00 | (48,204.50) | 0.00 | 0.00 | 35,795.50 |
| Inglese, Paul & Madelyn | 59,400.00 | (41,910.00) | 0.00 | 0.00 | 17,490.00 |
| Jackson, Sonja | 39,600.00 | (5,490.00) | 0.00 | 0.00 | 34,110.00 |
| Jacobson, Alan & Mattson, June | 108,000.00 | (61,524.00) | 0.00 | 0.00 | 46,476.00 |
| Jacobson, Jeffrey & Karen | 84,000.00 | (25,068.50) | 0.00 | 0.00 | 58,931.50 |
| Jacobson, Martin & James | 60,000.00 | (15,336.50) | 0.00 | 0.00 | 44,663.50 |
| Jacobson, Merle | 432,000.00 | (136,260.00) | 0.00 | 0.00 | 295,740.00 |
| Jafamia, Kamal | 48,000.00 | (17,377.50) | 0.00 | 0.00 | 30,622.50 |
| Jaffe, Jonathan | 396,000.00 | (267,815.50) | 0.00 | 0.00 | 128,184.50 |
| Jaffee, Shirley | 50,400.00 | (42,246.50) | 0.00 | 0.00 | 8,153.50 |
| James, Barbara | 79,200.00 | (40,920.00) | 0.00 | 0.00 | 38,280.00 |
| James, Kamala & Claude | 72,000.00 | (65,431.50) | 0.00 | 0.00 | 6,568.50 |
| James, Wayne, Brennan & Ivy | 444,000.00 | (333,328.00) | 0.00 | 0.00 | 110,672.00 |
| Jayanti, Amber | 118,800.00 | (83,162.00) | 0.00 | 0.00 | 35,638.00 |
| Jefferies, Dianne | 72,000.00 | (29,038.50) | 0.00 | 0.00 | 42,961.50 |
| Jeffery, Alan | 96,000.00 | (32,671.00) | 0.00 | 0.00 | 63,329.00 |
| Jensen, Kristine | 744,000.00 | (213,843.00) | 0.00 | 0.00 | 530,157.00 |
| Jerome, George, Susan & Evelyn | 480,000.00 | (22,947.50) | 0.00 | 0.00 | 457,052.50 |
| Jiles, Daria | 19,800.00 | (13,868.00) | 0.00 | 0.00 | 5,932.00 |
| Jipatina, Yubolrat | 19,800.00 | (1,525.50) | 0.00 | 0.00 | 18,274.50 |
| Johnson, Corliss | 36,000.00 | (26,443.00) | 0.00 | 0.00 | 9,357.00 |
| Johnson, Gail | 48,000.00 | (13,501.50) | 0.00 | 0.00 | 34,498.50 |
| Johnson, Glenn & Vivien | 588,000.00 | (291,038.50) | 0.00 | 0.00 | 296,961.50 |
| Johnson, Janette | 39,600.00 | (23,430.00) | 0.00 | 0.00 | 16,170.00 |
| Johnson, Joan | 72,000.00 | (18,946.00) | 0.00 | 0.00 | 53,054.00 |
| Johnson, Justyne | 36,000.00 | (25,012.00) | 0.00 | 0.00 | 10,988.00 |
| Johnson, Roland & Susan | 336,000.00 | (93,656.50) | 0.00 | 0.00 | 242,343.50 |
| Johnston, James & Susan | 120,000.00 | (56,587.50) | 0.00 | 0.00 | 63,412.50 |
| Johnstone, Muirl & Margaret Joyce | 36,000.00 | (12,272.50) | 0.00 | 0.00 | 23,727.50 |
| Johnstone, Neil | 12,000.00 | (3,344.50) | 0.00 | 0.00 | 8,655.50 |
| Jones, H. Gilbert | 480,000.00 | (321,559.00) | 0.00 | 0.00 | 158,441.00 |
| Josephson, Brent | 24,000.00 | (16,133.00) | 0.00 | 0.00 | 7,867.00 |
| Judd, Grant & Susan | 138,600.00 | (119,790.00) | 0.00 | 0.00 | 18,810.00 |
| Jutard, Eric | 19,800.00 | (12,938.00) | 0.00 | 0.00 | 6,862.00 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Kadian, Edward & Leah | 12,000.00 | (1,299.50) | 0.00 | 0.00 | 10,700.50 |
| Kagan, Murray & Claire | 139,460.00 | (91,425.00) | 0.00 | 0.00 | 48,035.00 |
| Kakiuchi, Hiroki, Toshio & Shigeko | 324,000.00 | (56,753.50) | 0.00 | 0.00 | 267,246.50 |
| Kalamaras, John | 120,000.00 | (32,936.50) | 0.00 | 0.00 | 87,063.50 |
| Kamei, Susan | 79,200.00 | (9,997.50) | 0.00 | 0.00 | 69,202.50 |
| Kamionski, Sabrina & Hillel | 24,000.00 | (1,302.00) | 0.00 | 0.00 | 22,698.00 |
| Kaniel, Ben | 120,000.00 | | 0.00 | 0.00 | 120,000.00 |
| Kanter, Mark & Allison | 168,000.00 | (65,350.00) | 0.00 | 0.00 | 102,650.00 |
| Karlsberg, Ronald | 480,000.00 | (32,988.50) | 0.00 | 0.00 | 447,011.50 |
| Karpf, Douglas | 1,080,000.00 | (49,660.00) | 0.00 | 0.00 | 1,030,340.00 |
| Kasower, Adam Jay | 3,220,000.00 | (685,668.50) | 0.00 | 0.00 | 2,534,331.50 |
| Kateb, Afshin & Mina | 60,000.00 | (1,658.00) | 0.00 | 0.00 | 58,342.00 |
| Katz, Susan | 252,000.00 | (100,606.50) | 0.00 | 0.00 | 151,393.50 |
| Kaveh, Maryam | 600,000.00 | (231,771.00) | 0.00 | 0.00 | 368,229.00 |
| Kaye, Allan Lewis & Sheila Joyce | 120,000.00 | (9,925.00) | 0.00 | 0.00 | 110,075.00 |
| Kaye, Karla | 48,000.00 | | 0.00 | 0.00 | 48,000.00 |
| Keays, Edward & Barbara | 600,000.00 | (480,784.00) | 0.00 | 0.00 | 119,216.00 |
| Keenan, Mary | 300,000.00 | (247,473.50) | 0.00 | 0.00 | 52,526.50 |
| Keller, Robert | 96,000.00 | (12,000.50) | 0.00 | 0.00 | 83,999.50 |
| Kelley, Timothy | 39,600.00 | (27,060.00) | 0.00 | 0.00 | 12,540.00 |
| Kelly, Shannon | 178,200.00 | (2,991.00) | 0.00 | 0.00 | 175,209.00 |
| Kennedy, Larry & Rhonda | 2,112,000.00 | (1,595,422.00) | 0.00 | 0.00 | 516,578.00 |
| Kerner, Eric & Judith | 144,000.00 | (55,008.00) | 0.00 | 0.00 | 88,992.00 |
| Kerns, Vincent | 24,000.00 | (658.50) | 0.00 | 0.00 | 23,341.50 |
| Kessler, Edward | 144,000.00 | (101,973.50) | 0.00 | 0.00 | 42,026.50 |
| Ketterer, Karl | 19,800.00 | (9,570.00) | 0.00 | 0.00 | 10,230.00 |
| Khalatian, Ursula | 59,400.00 | (49,513.50) | 0.00 | 0.00 | 9,886.50 |
| Khawja, Aamar | 39,580.00 | (23,984.00) | 0.00 | 0.00 | 15,596.00 |
| Kheel, Joshua | 84,000.00 | (16,533.00) | 0.00 | 0.00 | 67,467.00 |
| Kheyrolomour, Fatemeh | 156,000.00 | (10,205.50) | 0.00 | 0.00 | 145,794.50 |
| Khovash, Piruz & Madiha | 60,000.00 | (3,256.50) | 0.00 | 0.00 | 56,743.50 |
| Kibbey, Paul | 19,800.00 | (10,890.00) | 0.00 | 0.00 | 8,910.00 |
| Kim, Julia | 24,000.00 | (15,354.00) | 0.00 | 0.00 | 8,646.00 |
| King, Brian | 72,000.00 | (47,701.00) | 0.00 | 0.00 | 24,299.00 |
| King, Geoffrey & Jana | 132,000.00 | (66,796.00) | 0.00 | 0.00 | 65,204.00 |
| King, Margorie | 789,400.00 | (106,736.50) | 0.00 | 0.00 | 682,663.50 |
| Kipper, Judith | 288,000.00 | (138,749.50) | 0.00 | 0.00 | 149,250.50 |
| Kishner, Daniel | 12,000.00 | (1,193.00) | 0.00 | 0.00 | 10,807.00 |

Page 16 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Kishner, Sofia | 240,000.00 | (46,040.50) | 0.00 | 0.00 | 193,959.50 |
| Kleban, Helene | 396,000.00 | (83,522.00) | 0.00 | 0.00 | 312,478.00 |
| Klein, A. John | 108,000.00 | | 0.00 | 0.00 | 108,000.00 |
| Kleinman, Melvin & Claire | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Kleinman, Toby | 60,000.00 | (16,551.00) | 0.00 | 0.00 | 43,449.00 |
| Kleven, David & Cherina | 36,000.00 | (9,350.00) | 0.00 | 0.00 | 26,650.00 |
| Klingensmith, Lee & Adrienne | 84,000.00 | (37,439.00) | 0.00 | 0.00 | 46,561.00 |
| Knerr, Gary | 119,100.00 | (72,309.00) | 0.00 | 0.00 | 46,791.00 |
| Knox, Andrea | 24,000.00 | (6,956.00) | 0.00 | 0.00 | 17,044.00 |
| Knox, Carolyn | 24,000.00 | (7,728.50) | 0.00 | 0.00 | 16,271.50 |
| Koblick, Mark & Janice | 60,000.00 | (57,750.50) | 0.00 | 0.00 | 2,249.50 |
| Kokaliari, Efi & Volpe, Elena | 99,000.00 | (2,678.00) | 0.00 | 0.00 | 96,322.00 |
| Kokubun, Kerry | 39,600.00 | (26,753.00) | 0.00 | 0.00 | 12,847.00 |
| Kolar, Kouy & Novice, Ken | 99,000.00 | (45,648.50) | 0.00 | 0.00 | 53,351.50 |
| Kominsky, Norabelle | 24,000.00 | (7,462.50) | 0.00 | 0.00 | 16,537.50 |
| Koobation, Jon | 96,000.00 | (86,623.50) | 0.00 | 0.00 | 9,376.50 |
| Koppekin, Stephen & Toby | 120,000.00 | (22,048.50) | 0.00 | 0.00 | 97,951.50 |
| Kornblum, Dorothy & Dolph | 1,764,000.00 | (1,249,342.50) | 0.00 | 0.00 | 514,657.50 |
| Kornblum, Ellen | 12,000.00 | (5,573.50) | 0.00 | 0.00 | 6,426.50 |
| Kornblum, Irving | 12,000.00 | (5,663.00) | 0.00 | 0.00 | 6,337.00 |
| Kornblum, Jean | 24,000.00 | (11,046.00) | 0.00 | 0.00 | 12,954.00 |
| Kosloff, Laura | 252,639.50 | (209,064.00) | 0.00 | 0.00 | 43,575.50 |
| Kosloff, Stephen & Debra | 48,000.00 | (7,744.50) | 0.00 | 0.00 | 40,255.50 |
| Koszegi, Clara | 118,890.00 | (47,553.00) | 59,400.00 | (70,290.00) | 60,447.00 |
| Koughan, Roger & Donna | 24,000.00 | (2,904.00) | 0.00 | 0.00 | 21,096.00 |
| Krause, James & Janet | 138,600.00 | (62,039.50) | 0.00 | 0.00 | 76,560.50 |
| Krischer, Joel & Sharon | 120,000.00 | (13,036.50) | 0.00 | 0.00 | 106,963.50 |
| Krogulecki, Kenneth | 60,000.00 | (11,051.00) | 0.00 | 0.00 | 48,949.00 |
| Kronemeyer, Kay & Parness, Alan | 215,400.00 | (39,360.00) | 0.00 | 0.00 | 176,040.00 |
| Kruyer, AnnaLee | 60,000.00 | | 0.00 | 0.00 | 60,000.00 |
| Kuchta, Karl | 96,000.00 | (65,953.50) | 0.00 | 0.00 | 30,046.50 |
| Kuhn, Franklin | 48,000.00 | (3,433.50) | 0.00 | 0.00 | 44,566.50 |
| Kutnick, Steven | 120,000.00 | (60,996.50) | 0.00 | 0.00 | 59,003.50 |
| Kuttler, Dennis & Sandra | 24,000.00 | (1,388.50) | 0.00 | 0.00 | 22,611.50 |
| LaBarca, Annette | 156,000.00 | (110,618.00) | 0.00 | 0.00 | 45,382.00 |
| Lagreid, Patrick | 24,000.00 | (11,585.50) | 0.00 | 0.00 | 12,414.50 |
| Lambert, Patricia | 72,000.00 | (10,104.00) | 0.00 | 0.00 | 61,896.00 |
| Lanchman, Bart & Theresa | 96,000.00 | (32,629.00) | 0.00 | 0.00 | 63,371.00 |

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Lang, Alice | 59,400.00 | (40,260.00) | 0.00 | 0.00 | 19,140.00 |
| Lang, Eugene | 120,000.00 | (87,422.50) | 0.00 | 0.00 | 32,577.50 |
| Lannin, John & Weber, Pamela | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Lape, Rebecca Lynn | 12,000.00 | (4,755.50) | 0.00 | 0.00 | 7,244.50 |
| Largo-Lewis, Carly | 60,000.00 | (31,403.00) | 0.00 | 0.00 | 28,597.00 |
| Latini, Peggy & Leo | 240,000.00 | (129,316.50) | 0.00 | 0.00 | 110,683.50 |
| Lavian, Isaac & Hanna | 277,200.00 | (204,722.50) | 0.00 | 0.00 | 72,477.50 |
| Lavian, Naser | 118,800.00 | (48,518.50) | 0.00 | 0.00 | 70,281.50 |
| Lavian, Shahram H. & Sioun | 277,200.00 | (124,361.50) | 0.00 | 0.00 | 152,838.50 |
| Lawrence, Erin | 39,600.00 | (20,088.00) | 0.00 | 0.00 | 19,512.00 |
| Layman, Ann | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Layman, David & Carl | 217,164.50 | (132,963.00) | 0.00 | 0.00 | 84,201.50 |
| Lazar, Elaine | 277,200.00 | (137,416.50) | 0.00 | 0.00 | 139,783.50 |
| Learnihan, Bari | 144,000.00 | (85,931.00) | 0.00 | 0.00 | 58,069.00 |
| LeBowe, Kirk | 138,600.00 | (85,048.00) | 0.00 | 0.00 | 53,552.00 |
| LeBoy, Lori | 475,200.00 | (466,791.00) | 0.00 | 0.00 | 8,409.00 |
| LeBoy, Sally & Bauer, Michael | 178,200.00 | (148,500.00) | 0.00 | 0.00 | 29,700.00 |
| Lee, Corliss | 72,000.00 | (1,395.00) | 0.00 | 0.00 | 70,605.00 |
| Lee, Katherine & Stephanie | 108,000.00 | (73,492.50) | 0.00 | 0.00 | 34,507.50 |
| Leeson, Mark Wesley | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Leff, Howard | 48,000.00 | (37,683.50) | 0.00 | 0.00 | 10,316.50 |
| Legg, Sidney & Mary | 36,000.00 | (7,008.50) | 0.00 | 0.00 | 28,991.50 |
| Leitinger, Jane | 336,086.50 | (108,150.00) | 0.00 | 0.00 | 227,936.50 |
| Lemoine, Melissa & Todd | 24,000.00 | (13,829.50) | 0.00 | 0.00 | 10,170.50 |
| Lentz, Phillip & La Ree | 504,000.00 | (410,421.00) | 0.00 | 0.00 | 93,579.00 |
| Leonard, J. Pearse & Eileen | 59,400.00 | (22,929.00) | 0.00 | 0.00 | 36,471.00 |
| Lerner, Chad & Herrera, Rebecca | 132,000.00 | (27,633.00) | 0.00 | 0.00 | 104,367.00 |
| Leshin, Laurence | 19,800.00 | (1,982.00) | 0.00 | 0.00 | 17,818.00 |
| Levi, Alain | 99,000.00 | (80,850.00) | 0.00 | 0.00 | 18,150.00 |
| Levine, Alvin & Merry | 72,000.00 | (1,955.00) | 0.00 | 0.00 | 70,045.00 |
| Levine, Stanley & Maxine | 984,000.00 | (880,975.00) | 0.00 | 0.00 | 103,025.00 |
| Levine, Sue | 48,000.00 | (22,615.50) | 0.00 | 0.00 | 25,384.50 |
| Levy, Aaron & Evelyn | 720,000.00 | (431,373.50) | 0.00 | 0.00 | 288,626.50 |
| Levy, Leo & Betty | 360,000.00 | (356,430.50) | 0.00 | 0.00 | 3,569.50 |
| Lewis, Andrew & Mary Suzan | 36,000.00 | (22,078.50) | 0.00 | 0.00 | 13,921.50 |
| Lewis, Cecil & Cabrera, Indiana | 36,000.00 | (22,675.50) | 0.00 | 0.00 | 13,324.50 |
| Lewis, Jeffrey & Karen | 84,000.00 | (78,537.50) | 12,000.00 | (2,400.00) | 15,062.50 |
| Ley, Chandler | 36,000.00 | (5,129.50) | 0.00 | 0.00 | 30,870.50 |

Page 18 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Librot, Toby | 36,000.00 | (2,847.50) | 0.00 | 0.00 | 33,152.50 |
| Licata, Susan | 240,000.00 | (43,894.50) | 0.00 | 0.00 | 196,105.50 |
| Liles, Charles & Carol | 36,000.00 | (21,875.00) | 0.00 | 0.00 | 14,125.00 |
| Lindberg, Gary & Marice | 96,000.00 | (23,167.50) | 0.00 | 0.00 | 72,832.50 |
| Lindsey, Erin & Harold | 132,000.00 | (36,068.50) | 0.00 | 0.00 | 95,931.50 |
| LiPaz, Michael & Monica | 184,000.00 | (73,370.00) | 0.00 | 0.00 | 110,630.00 |
| LiPaz, Ron Asher | 48,000.00 | (32,210.00) | 0.00 | 0.00 | 15,790.00 |
| Litman, Beatryce | 108,000.00 | (57,692.00) | 0.00 | 0.00 | 50,308.00 |
| Litzer, Louis & Marion | 36,000.00 | (2,958.00) | 0.00 | 0.00 | 33,042.00 |
| Liu, Ting | 108,000.00 | (27,787.50) | 0.00 | 0.00 | 80,212.50 |
| Livian, Ryan, Tracy, Alexander & Andre | 312,000.00 | (212,451.50) | 0.00 | 0.00 | 99,548.50 |
| Lokos, Allan & Weiss, Susanna | 120,000.00 | (7,117.50) | 0.00 | 0.00 | 112,882.50 |
| Long, William | 19,800.00 | (5,657.50) | 0.00 | 0.00 | 14,142.50 |
| Longeway, John | 60,000.00 | (24,195.50) | 0.00 | 0.00 | 35,804.50 |
| Loober, Deborah | 59,400.00 | (48,510.00) | 0.00 | 0.00 | 10,890.00 |
| Looie, Payam | 39,600.00 | (18,480.00) | 0.00 | 0.00 | 21,120.00 |
| Lott, Chris & Diane | 240,000.00 | (146,984.00) | 0.00 | 0.00 | 93,016.00 |
| Lott, Curtis & Cynthia | 12,000.00 | (6,587.00) | 0.00 | 0.00 | 5,413.00 |
| Lott, Jeff | 600,000.00 | (427,358.00) | 0.00 | 0.00 | 172,642.00 |
| Lott, John & Kristen | 48,000.00 | (37,925.00) | 0.00 | 0.00 | 10,075.00 |
| Lott, Michael & Rosemary | 36,000.00 | (33,681.00) | 0.00 | 0.00 | 2,319.00 |
| Lott, Milton & Shirley | 120,000.00 | (83,322.00) | 0.00 | 0.00 | 36,678.00 |
| Lott, Thomas & Nancy | 120,000.00 | (5,153.00) | 0.00 | 0.00 | 114,847.00 |
| Love, Scott & Dorothy | 12,000.00 | (4,128.00) | 0.00 | 0.00 | 7,872.00 |
| Lowenbach, Dena | 216,000.00 | (130,187.00) | 0.00 | 0.00 | 85,813.00 |
| Lownds, Eli | 19,800.00 | (1,320.00) | 0.00 | 0.00 | 18,480.00 |
| Lownds, Peter & Theresa | 59,400.00 | (10,049.00) | 0.00 | 0.00 | 49,351.00 |
| Loya, George Sr. | 120,000.00 | (69,498.00) | 0.00 | 0.00 | 50,502.00 |
| Ludvigson, Jeffrey & Dianne | 72,000.00 | (10,609.00) | 0.00 | 0.00 | 61,391.00 |
| Luloff, Jerrold & Susan | 60,000.00 | (14,685.50) | 0.00 | 0.00 | 45,314.50 |
| Lumas, Leonard | 138,600.00 | (40,572.00) | 0.00 | 0.00 | 98,028.00 |
| Lyman, Stanley & Ann | 12,000.00 | (3,825.50) | 0.00 | 0.00 | 8,174.50 |
| Lynch, Timothy & Pamela | 12,000.00 | (2,828.00) | 0.00 | 0.00 | 9,172.00 |
| Lyster, Lori | 99,000.00 | (64,520.50) | 0.00 | 0.00 | 34,479.50 |
| Lytle, James | 24,000.00 | (5,895.50) | 0.00 | 0.00 | 18,104.50 |
| MacDonald, Thomas & Georgeann | 36,000.00 | (10,572.50) | 0.00 | 0.00 | 25,427.50 |
| Mack, Frederick | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Maclaskey, Katie | 36,000.00 | (12,208.00) | 0.00 | 0.00 | 23,792.00 |

Page 19 of 35

# NASI Loss Analysis

Drafts of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Madison, John | 108,000.00 | (27,222.00) | 0.00 | 0.00 | 80,778.00 |
| Madison, Thomas | 360,000.00 | (158,043.00) | 0.00 | 0.00 | 201,957.00 |
| Maga, Gary | 39,600.00 | (10,376.00) | 0.00 | 0.00 | 29,224.00 |
| Maga, Gilbert & Donna | 79,200.00 | (21,125.00) | 0.00 | 0.00 | 58,075.00 |
| Maga, Ronald | 257,400.00 | (154,269.50) | 0.00 | 0.00 | 103,130.50 |
| Maglaya, Alma Bella | 39,600.00 | (23,635.00) | 0.00 | 0.00 | 15,965.00 |
| Mahmoudi, Homa & Massoud | 60,000.00 | (14,153.50) | 0.00 | 0.00 | 45,846.50 |
| Maio, Juliana | 39,600.00 | (22,469.50) | 0.00 | 0.00 | 17,130.50 |
| Maisch, Leonard & JoAnn | 48,000.00 | (10,449.00) | 0.00 | 0.00 | 37,551.00 |
| Maji, Jim & June | 12,000.00 | (2,770.00) | 0.00 | 0.00 | 9,230.00 |
| Malinak, Joseph & Antoinette | 396,000.00 | (132,167.50) | 0.00 | 0.00 | 263,832.50 |
| Mantell, Mel | 99,000.00 | (58,412.50) | 0.00 | 0.00 | 40,587.50 |
| Manzo, Bartolomeo & Beverly | 158,400.00 | (56,354.50) | 0.00 | 0.00 | 102,045.50 |
| Manzo, Phil & Marlene | 19,800.00 | (5,395.00) | 0.00 | 0.00 | 14,405.00 |
| Marangola, Joseph & Nina | 96,000.00 | (60,328.00) | 0.00 | 0.00 | 35,672.00 |
| Marble, Cameron | 12,000.00 | (1,240.50) | 0.00 | 0.00 | 10,759.50 |
| Marinaccio, Mary & John | 59,400.00 | (7,822.00) | 0.00 | 0.00 | 51,578.00 |
| Markey, Janis | 144,000.00 | (58,216.50) | 0.00 | 0.00 | 85,783.50 |
| Markham, Ellen | 19,800.00 | (15,180.00) | 0.00 | 0.00 | 4,620.00 |
| Markovits, Liraz, Yair, Menahem & Lea | 107,972.00 | (59,222.50) | 0.00 | 0.00 | 48,749.50 |
| Marr, Candice & Caffarel, Rebecca | 72,000.00 | (40,601.00) | 0.00 | 0.00 | 31,399.00 |
| Marrack, John & Stephanie | 120,000.00 | (64,649.50) | 0.00 | 0.00 | 55,350.50 |
| Marsilio, Steven | 72,000.00 | (26,020.00) | 0.00 | 0.00 | 45,980.00 |
| Marston, Joseph, Harvey & Janet | 138,600.00 | (5,947.50) | 0.00 | 0.00 | 132,652.50 |
| Martin, Michael | 96,000.00 | (2,724.00) | 0.00 | 0.00 | 93,276.00 |
| Martinis, Marilyn & Tony | 19,800.00 | (2,742.00) | 0.00 | 0.00 | 17,058.00 |
| Marvin, Paul & Hustead, Judy | 36,000.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Mashiach, Ora | 79,200.00 | (18,413.50) | 0.00 | 0.00 | 60,786.50 |
| Mason, Jay & Elaine | 240,000.00 | (124,697.50) | 0.00 | 0.00 | 115,302.50 |
| Masse, Julien & Etienne | 144,000.00 | (22,654.50) | 0.00 | 0.00 | 121,345.50 |
| Massoth LaFlamme Family | 120,000.00 | 0.00 | 0.00 | 0.00 | 120,000.00 |
| Massumi, Farnaz | 360,000.00 | (176,070.50) | 0.00 | 0.00 | 183,929.50 |
| Mattei, Irene & Frank | 138,600.00 | (95,906.50) | 0.00 | 0.00 | 42,693.50 |
| Matthiesen, Ludwig & Caroline | 144,000.00 | (20,380.00) | 0.00 | 0.00 | 123,620.00 |
| Mattingly-Kovacs, Lynn | 96,000.00 | (20,573.50) | 0.00 | 0.00 | 75,426.50 |
| Maurer, George | 60,000.00 | (6,594.50) | 0.00 | 0.00 | 53,405.50 |
| Maurice, Thomas | 180,000.00 | (70,565.00) | 0.00 | 0.00 | 109,435.00 |
| May, Dan | 118,800.00 | (79,866.50) | 0.00 | 0.00 | 38,933.50 |

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Mayo, Miranda | 12,000.00 | (8,969.00) | 0.00 | 0.00 | 3,031.00 |
| Mazmanian, Charles & Linda | 118,800.00 | (12,263.00) | 0.00 | 0.00 | 106,537.00 |
| Mazmanian, Marius | 138,600.00 | (64,801.50) | 0.00 | 0.00 | 73,798.50 |
| Mazmanian, Mark & Michele | 118,800.00 | (12,787.00) | 0.00 | 0.00 | 106,013.00 |
| Mazur, Irwin & Jacelyn | 300,000.00 | (245,676.50) | 0.00 | 0.00 | 54,323.50 |
| Mazur, John | 24,000.00 | 0.00 | 0.00 | 0.00 | 24,000.00 |
| Mazza, Raffaello | 99,335.00 | (33,287.50) | 0.00 | 0.00 | 66,047.50 |
| McBride, Larry & Courtney | 360,000.00 | (232,913.50) | 0.00 | 0.00 | 127,086.50 |
| McCammon, Edward | 799,068.00 | (265,681.00) | 0.00 | 0.00 | 533,387.00 |
| McCann, Patricia | 360,000.00 | (101,225.00) | 0.00 | 0.00 | 258,775.00 |
| McCormick, Edward & Carole | 540,000.00 | (35,221.50) | 0.00 | 0.00 | 504,778.50 |
| McCormick, Rodney | 59,400.00 | (43,560.00) | 0.00 | 0.00 | 15,840.00 |
| McCrink, Jim & Linda | 4,260,630.00 | (2,620,630.00) | 0.00 | 0.00 | 1,639,370.00 |
| McCrink, Laurel | 1,896,000.00 | (1,359,641.50) | 0.00 | 0.00 | 536,358.50 |
| McDaniel, David & Donna | 504,000.00 | (351,500.00) | 0.00 | 0.00 | 152,500.00 |
| McDonald, Alister | 19,800.00 | (990.00) | 0.00 | 0.00 | 18,810.00 |
| McFarland, Mary | 19,800.00 | (7,270.50) | 0.00 | 0.00 | 12,529.50 |
| McKenna, Alina | 58,600.00 | (6,632.00) | 0.00 | 0.00 | 51,968.00 |
| McLatcher, Robert & Gail | 60,000.00 | (27,246.50) | 0.00 | 0.00 | 32,753.50 |
| McLinn, Brian | 118,800.00 | (96,392.00) | 0.00 | 0.00 | 22,408.00 |
| McNeill, Ann & T. Cycle | 36,000.00 | (15,467.50) | 0.00 | 0.00 | 20,532.50 |
| McQuillan, Samantha | 36,000.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| McWhirter, Jodi | 336,600.00 | (139,754.50) | 0.00 | 0.00 | 196,845.50 |
| Mederos-Rubio, Isabel | 12,000.00 | (9,155.50) | 0.00 | 0.00 | 2,844.50 |
| Meek, Steven & Magdalena | 99,000.00 | (1,651.00) | 0.00 | 0.00 | 97,349.00 |
| Meiss, Lou & Sylvia | 240,000.00 | (183,113.50) | 0.00 | 0.00 | 56,886.50 |
| Mendez, Javier | 24,000.00 | (2,962.50) | 0.00 | 0.00 | 21,037.50 |
| Mercurio, Salvatore & Rosemarie | 36,000.00 | (16,005.00) | 0.00 | 0.00 | 19,995.00 |
| Merriam, Steven & Dana | 240,000.00 | (132,646.00) | 0.00 | 0.00 | 107,354.00 |
| Merriman, Penelope & William | 19,800.00 | (5,940.00) | 0.00 | 0.00 | 13,860.00 |
| Metke, Julie & Norman | 48,000.00 | (31,093.00) | 0.00 | 0.00 | 16,907.00 |
| Metz, David & Michael | 672,000.00 | (238,766.50) | 0.00 | 0.00 | 433,233.50 |
| Metz, Elaine | 192,000.00 | (65,380.50) | 0.00 | 0.00 | 126,619.50 |
| Metzger, Daniel, Nancy, Lisa & Sarah | 360,000.00 | (239,998.00) | 0.00 | 0.00 | 120,002.00 |
| Meyer, Howard & Marlene | 24,000.00 | (10,642.50) | 0.00 | 0.00 | 13,357.50 |
| Meyer, Karle & Barbara | 120,779.50 | (77,872.50) | 0.00 | 0.00 | 42,907.00 |
| Meyer, Richard & Susan | 60,000.00 | (42,360.50) | 0.00 | 0.00 | 17,639.50 |
| Micheel, Bruce & Kathleen | 192,000.00 | (148,632.00) | 0.00 | 0.00 | 43,368.00 |

Page 21 of 35

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Mickalian, Harry & Paula | 36,000.00 | (29,916.50) | 0.00 | 0.00 | 6,083.50 |
| Miles, John & Marlene | 252,000.00 | (245,459.50) | 36,000.00 | (27,000.00) | 15,540.50 |
| Miller, Cecilia | 12,000.00 | (11,908.50) | 0.00 | 0.00 | 91.50 |
| Miller, Jane | 12,331.50 | (6,679.50) | 0.00 | 0.00 | 5,652.00 |
| Miller, Jane & Greenlund, Joyce | 72,000.00 | (61,744.50) | 0.00 | 0.00 | 10,255.50 |
| Miller, Keith & Carol | 216,000.00 | (155,325.00) | 0.00 | 0.00 | 60,675.00 |
| Millington, Manuela | 12,000.00 | (757.00) | 0.00 | 0.00 | 11,243.00 |
| Mills, Cheryl & Richard | 24,000.00 | (16,826.50) | 0.00 | 0.00 | 7,173.50 |
| Minn, Robert & Elyssa | 19,800.00 | (14,200.00) | 0.00 | 0.00 | 5,600.00 |
| Mitchell, Beth | 178,200.00 | (8,530.00) | 0.00 | 0.00 | 169,670.00 |
| Mitchell, Chris & Stephanie | 36,000.00 | (18,294.00) | 0.00 | 0.00 | 17,706.00 |
| Mitchell, David | 19,800.00 | (11,550.00) | 0.00 | 0.00 | 8,250.00 |
| Mitchell, Joanie | 59,400.00 | (34,810.50) | 0.00 | 0.00 | 24,589.50 |
| Miyao, Joanne | 39,600.00 | (19,470.00) | 0.00 | 0.00 | 20,130.00 |
| Moir, Thomas & Susan | 198,000.00 | (178,691.50) | 0.00 | 0.00 | 19,308.50 |
| Molinary de la Cruz, Jose | 238,261.50 | (210,938.00) | 39,600.00 | (40,095.00) | 26,828.50 |
| Monis, Ron, Alyssa & Deborah | 84,000.00 | (54,292.00) | 0.00 | 0.00 | 29,708.00 |
| Moore, David | 19,800.00 | (14,190.00) | 0.00 | 0.00 | 5,610.00 |
| Moran, Ruth | 79,200.00 | (63,046.50) | 0.00 | 0.00 | 16,153.50 |
| Morris, Kenneth & Patricia | 60,000.00 | (34,920.50) | 0.00 | 0.00 | 25,079.50 |
| Morris, Steven | 840,000.00 | (378,019.00) | 0.00 | 0.00 | 461,981.00 |
| Moskowitz, Dina | 19,800.00 | (15,180.00) | 0.00 | 0.00 | 4,620.00 |
| Moss, Martin | 240,000.00 | (41,036.00) | 0.00 | 0.00 | 198,964.00 |
| Moyse, Gary & Terry | 168,000.00 | (124,023.50) | 0.00 | 0.00 | 43,976.50 |
| Muller, Irene | 12,000.00 | (2,986.50) | 0.00 | 0.00 | 9,013.50 |
| Muller, Sigfrid & Jane | 96,000.00 | (24,114.50) | 0.00 | 0.00 | 71,885.50 |
| Mullins, Mark & Gwen | 60,000.00 | (41,733.00) | 0.00 | 0.00 | 18,267.00 |
| Mulroy, Peter | 99,000.00 | (61,730.00) | 0.00 | 0.00 | 37,270.00 |
| Murillo, Richard & Daniel | 396,902.50 | (261,179.00) | 0.00 | 0.00 | 135,723.50 |
| Musolf, Robert & Cinda | 96,000.00 | (48,011.50) | 0.00 | 0.00 | 47,988.50 |
| Nachman, William & Madeline | 132,000.00 | (115,629.50) | 0.00 | 0.00 | 16,370.50 |
| Nairn, Robert & Daryl | 96,000.00 | (80,083.50) | 0.00 | 0.00 | 15,916.50 |
| Nalayeh, Ahmed & Deha | 19,800.00 | (4,469.50) | 0.00 | 0.00 | 15,330.50 |
| Nantais, Ralph & Ellie | 48,000.00 | (7,462.00) | 0.00 | 0.00 | 40,538.00 |
| Naphtal, Doris & Wayne | 72,000.00 | (49,327.00) | 0.00 | 0.00 | 22,673.00 |
| Nassi, Albert | 240,000.00 | (35,846.50) | 0.00 | 0.00 | 204,153.50 |
| Natividad, Linabelle & Anthony | 24,000.00 | (1,261.00) | 0.00 | 0.00 | 22,739.00 |
| Nava, Bernardo & Maria | 48,000.00 | (20,849.00) | 0.00 | 0.00 | 27,151.00 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Navon, Virginia Araya | 12,000.00 | (3,014.50) | 0.00 | 0.00 | 8,985.50 |
| Naylor, Robert | 36,000.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Neary, Brian | 96,000.00 | 0.00 | 0.00 | 0.00 | 96,000.00 |
| Nelson, Diane | 24,000.00 | (19,696.50) | 0.00 | 0.00 | 4,303.50 |
| Nelson, James | 204,000.00 | (21,264.50) | 0.00 | 0.00 | 182,735.50 |
| Nelson, Joel | 297,000.00 | (75,217.00) | 0.00 | 0.00 | 221,783.00 |
| Nesbitt, Robert & Kathleen | 277,200.00 | (104,167.00) | 0.00 | 0.00 | 173,033.00 |
| Nestler, Ian & Barbara | 720,000.00 | (228,630.00) | 0.00 | 0.00 | 491,370.00 |
| Netter, Francoise | 138,600.00 | (35,735.00) | 0.00 | 0.00 | 102,865.00 |
| Newell, Tim & Lisa | 144,000.00 | (12,315.50) | 0.00 | 0.00 | 131,684.50 |
| Newton, Robert & Bonnie | 432,000.00 | (424,195.50) | 0.00 | 0.00 | 7,804.50 |
| Nguyen, Steve | 36,000.00 | (15,030.00) | 0.00 | 0.00 | 20,970.00 |
| Nichols, Arthur | 96,000.00 | (14,105.00) | 0.00 | 0.00 | 81,895.00 |
| Nichols, Carl | 48,000.00 | (4,593.00) | 0.00 | 0.00 | 43,407.00 |
| Nichols, Elizabeth | 39,600.00 | (38,508.50) | 19,800.00 | (7,425.00) | 13,466.50 |
| Nikolakakos, Meropi | 24,000.00 | (7,659.00) | 0.00 | 0.00 | 16,341.00 |
| Nisley, Richard & Cynthia | 158,400.00 | (17,514.00) | 0.00 | 0.00 | 140,886.00 |
| Noland, Kris & Sue | 684,000.00 | (449,648.50) | 0.00 | 0.00 | 234,351.50 |
| Norris, Antonio | 39,600.00 | (36,236.00) | 0.00 | 0.00 | 3,364.00 |
| Norris, Sherry & Carol | 132,000.00 | (80,713.00) | 0.00 | 0.00 | 51,287.00 |
| Nothman, Sam & Nancy | 60,000.00 | (10,152.50) | 0.00 | 0.00 | 49,847.50 |
| Novack, Linda | 79,200.00 | (47,532.00) | 0.00 | 0.00 | 31,668.00 |
| Novak, Peter & Lynne | 96,000.00 | (93,695.50) | 0.00 | 0.00 | 2,304.50 |
| O'Brian, Hugh | 120,000.00 | (93,713.50) | 0.00 | 0.00 | 26,286.50 |
| Oedekerk, Gary & Judy | 60,000.00 | (22,022.50) | 0.00 | 0.00 | 37,977.50 |
| O'Keeffe, Vera | 24,000.00 | (9,366.00) | 0.00 | 0.00 | 14,634.00 |
| Olbes, Estrellita | 24,000.00 | (7,690.50) | 0.00 | 0.00 | 16,309.50 |
| Olbrich, Regina | 158,400.00 | (75,565.50) | 0.00 | 0.00 | 82,834.50 |
| Olive, Marla | 72,000.00 | (26,986.00) | 0.00 | 0.00 | 45,014.00 |
| Oliver, Robert | 48,000.00 | (9,214.00) | 0.00 | 0.00 | 38,786.00 |
| O'Neil, Francis | 59,400.00 | (47,984.00) | 0.00 | 0.00 | 11,416.00 |
| O'Neil, William Donald | 59,400.00 | (4,435.50) | 0.00 | 0.00 | 54,964.50 |
| O'Neill, Brian & Lisa | 12,000.00 | 0.00 | 0.00 | 0.00 | 12,000.00 |
| Ordaz, David & Devine, Jean | 198,000.00 | (185,110.50) | 0.00 | 0.00 | 12,889.50 |
| O'Rourke, Thomas & Trebia | 99,000.00 | (13,622.50) | 0.00 | 0.00 | 85,377.50 |
| Opelli, Crescent | 59,400.00 | (43,495.00) | 19,800.00 | (12,870.00) | 22,835.00 |
| Ort, Beverly | 84,000.00 | (53,491.50) | 0.00 | 0.00 | 30,508.50 |
| Ortwein, Barbara | 60,000.00 | (6,306.00) | 0.00 | 0.00 | 53,694.00 |

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Osterfeld, Mel & Marilyn | 84,000.00 | (29,720.50) | 0.00 | 0.00 | 54,279.50 |
| Ostheimer, John & Shirley | 276,000.00 | (268,538.00) | 0.00 | 0.00 | 7,462.00 |
| Ostler, Sally & Devere | 60,000.00 | (46,677.00) | 0.00 | 0.00 | 13,323.00 |
| Ostrow, Leora & Marlee | 96,000.00 | (85,759.50) | 0.00 | 0.00 | 10,240.50 |
| Overman, Susan | 98,500.00 | (47,040.00) | 0.00 | 0.00 | 51,460.00 |
| Owen, Lisa & Larry | 59,400.00 | (11,616.50) | 0.00 | 0.00 | 47,783.50 |
| Oxley, Mark | 99,000.00 | (12,047.50) | 0.00 | 0.00 | 86,952.50 |
| Oxley, Phil | 99,000.00 | (7,831.00) | 0.00 | 0.00 | 91,169.00 |
| Packard, Donna | 84,000.00 | (28,459.00) | 0.00 | 0.00 | 55,541.00 |
| Pahls, Douglas | 120,000.00 | | 0.00 | 0.00 | 120,000.00 |
| Paialli, Shelly | 36,000.00 | | 0.00 | 0.00 | 31,693.00 |
| Palermo, Luca | 59,400.00 | (8,593.50) | 0.00 | 0.00 | 50,806.50 |
| Pancino, Cheryl & Jamie | 19,800.00 | (3,588.00) | 0.00 | 0.00 | 16,212.00 |
| Paris, Woodrow Jr. & Judith | 39,600.00 | (19,800.00) | 0.00 | 0.00 | 19,800.00 |
| Pariser, Leonard & Sandra | 288,000.00 | (161,824.50) | 0.00 | 0.00 | 126,175.50 |
| Parker, Franklin & Nirintron | 540,000.00 | (405,087.50) | 0.00 | 0.00 | 134,912.50 |
| Parsons, Brent | 36,000.00 | (9,282.50) | 0.00 | 0.00 | 26,717.50 |
| Parsons, Larry & Marcia | 48,000.00 | (31,607.50) | 0.00 | 0.00 | 16,392.50 |
| Parsons, Maureen & Kenneth | 36,000.00 | (1,042.00) | 0.00 | 0.00 | 34,958.00 |
| Parsons, Sanford | 36,000.00 | (1,340.00) | 0.00 | 0.00 | 34,660.00 |
| Patterson, Deborah Kay | 237,600.00 | (216,288.50) | 118,800.00 | (111,870.00) | 228,241.50 |
| Patton, Jimmy & Carol | 180,000.00 | (59,286.50) | 0.00 | 0.00 | 120,713.50 |
| Pavelik, Michael & Carolynn | 12,000.00 | (1,206.50) | 0.00 | 0.00 | 10,793.50 |
| Payne, John & Catherine | 180,000.00 | (59,379.00) | 0.00 | 0.00 | 120,621.00 |
| Payne, Michael & Lori | 780,000.00 | (488,368.50) | 0.00 | 0.00 | 291,631.50 |
| Pedraja, Alma & Beatriz | 24,000.00 | (15,145.00) | 0.00 | 0.00 | 8,855.00 |
| Penn, Esther | 36,000.00 | (1,312.50) | 0.00 | 0.00 | 34,687.50 |
| Penn, Gary | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Perkins, Isabel | 19,800.00 | (9,900.00) | 0.00 | 0.00 | 9,900.00 |
| Perkinson, Peter & Dixie | 120,000.00 | (51,613.50) | 0.00 | 0.00 | 68,386.50 |
| Perlin, Michael | 72,000.00 | (5,880.00) | 0.00 | 0.00 | 66,120.00 |
| Perry, Barbara Ann | 24,000.00 | (7,766.00) | 0.00 | 0.00 | 16,234.00 |
| Perry, Ryan & Kristina | 48,000.00 | (17,388.00) | 0.00 | 0.00 | 30,612.00 |
| Persky, Jeffrey | 48,000.00 | (31,764.00) | 0.00 | 0.00 | 16,236.00 |
| Peterson, David | 36,000.00 | (4,239.00) | 0.00 | 0.00 | 31,761.00 |
| Peterson, Gary & Catherine | 39,600.00 | (32,514.00) | 0.00 | 0.00 | 7,086.00 |
| Peterson, Glenda & H. | 36,000.00 | (6,029.00) | 0.00 | 0.00 | 29,971.00 |
| Peterson, Shirley | 19,800.00 | (1,650.00) | 0.00 | 0.00 | 18,150.00 |

# NASI Loss Analysis

Drafts as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Petruna, Darlene | 84,000.00 | (36,503.50) | 0.00 | 0.00 | 47,496.50 |
| Petti, Joseph | 48,000.00 | (39,591.50) | 0.00 | 0.00 | 8,408.50 |
| Phelps, Yvonne | 79,200.00 | (74,580.00) | 0.00 | 0.00 | 4,620.00 |
| Phillips, Barbara Anne | 178,200.00 | (76,359.50) | 0.00 | 0.00 | 101,840.50 |
| Phillips, Charles | 204,000.00 | (5,507.50) | 0.00 | 0.00 | 198,492.50 |
| Phillips, Duane | 120,000.00 | | 0.00 | 0.00 | 120,000.00 |
| Phillips, Jason | 316,800.00 | (74,703.50) | 0.00 | 0.00 | 242,096.50 |
| Piccolo, Winnifred | 24,000.00 | (9,569.00) | 0.00 | 0.00 | 14,431.00 |
| Pierce, Franklin | 144,000.00 | | 0.00 | 0.00 | 144,000.00 |
| Pinto, John & Clare | 72,000.00 | (48,439.00) | 0.00 | 0.00 | 23,561.00 |
| Pisanis, John & Cornelia | 132,000.00 | (85,091.00) | 0.00 | 0.00 | 46,909.00 |
| Piumarta, Ian | 39,600.00 | (18,660.00) | 0.00 | 0.00 | 20,940.00 |
| Plymell, Maria & Nathan | 132,000.00 | (9,272.00) | 0.00 | 0.00 | 122,728.00 |
| Podpora, Marian & Krystyna | 67,200.00 | (21,012.50) | 0.00 | 0.00 | 46,187.50 |
| Polacheck, Steven | 180,000.00 | | 0.00 | 0.00 | 180,000.00 |
| Polis, David & Eric | 960,000.00 | (643,207.00) | 0.00 | 0.00 | 316,793.00 |
| Polis, Jerry | 9,918,653.00 | (5,605,277.00) | 0.00 | 0.00 | 4,313,376.00 |
| Pomerantz, Jacob & Manya | 72,000.00 | (32,608.50) | 0.00 | 0.00 | 39,391.50 |
| Pomerantz, Reuben & Susan | 576,000.00 | (487,368.00) | 0.00 | 0.00 | 88,632.00 |
| Pomerantz, Wendy | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Porter, Richard & Virginia | 192,207.00 | (160,393.00) | 0.00 | 0.00 | 31,814.00 |
| Powell, Lisa Ann | 192,000.00 | (90,450.00) | 0.00 | 0.00 | 101,550.00 |
| Pregerson, Bernard | 217,800.00 | (172,590.00) | 0.00 | 0.00 | 45,210.00 |
| Pregerson, Rhoda & Smith, Riley | 316,800.00 | (7,263.50) | 118,800.00 | (184,140.00) | 244,196.50 |
| Provisors, Jon & Lisa | 132,000.00 | | 0.00 | 0.00 | 132,000.00 |
| Puente, Stormie | 59,400.00 | (32,685.50) | 0.00 | 0.00 | 26,714.50 |
| Pushkin, David | 228,000.00 | (74,246.00) | 0.00 | 0.00 | 153,754.00 |
| Pushkin, Irvin & Gertrude | 780,000.00 | (553,376.50) | 0.00 | 0.00 | 226,623.50 |
| Pushkin, Moreen | 120,000.00 | (44,847.50) | 0.00 | 0.00 | 75,152.50 |
| Putnam, Kay | 60,000.00 | (39,591.50) | 0.00 | 0.00 | 20,408.50 |
| Putnam, Kelly | 96,000.00 | (91,561.50) | 0.00 | 0.00 | 4,438.50 |
| Quist, Del | 140,375.53 | (58,492.03) | 0.00 | 0.00 | 81,883.50 |
| Rabin, Burt | 336,000.00 | (139,052.50) | 0.00 | 0.00 | 196,947.50 |
| Rabin, Eric | 48,000.00 | (15,933.50) | 0.00 | 0.00 | 32,066.50 |
| Rabin, Jami | 36,000.00 | (9,251.00) | 0.00 | 0.00 | 26,749.00 |
| Rabin, Marilyn | 48,000.00 | (44,260.00) | 0.00 | 0.00 | 3,740.00 |
| Rabin, Phyllis | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Rabins, Bernard & Sherma | 24,000.00 | (15,640.50) | 0.00 | 0.00 | 8,359.50 |

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Rado, Felix & Lucy | 36,000.00 | (9,924.50) | 0.00 | 0.00 | 26,075.50 |
| Rainey, Michael & Gaye | 48,000.00 | (5,369.00) | 0.00 | 0.00 | 42,631.00 |
| Ramey, R. Grant | 158,400.00 | (91,655.50) | 0.00 | 0.00 | 66,744.50 |
| Ramphal, Reuben & Galatia | 60,000.00 | (3,416.50) | 0.00 | 0.00 | 56,583.50 |
| Rangel, Douglas | 119,985.00 | (106,285.00) | 0.00 | 0.00 | 13,700.00 |
| Rappaport, Jerry & Lillian | 60,000.00 | (54,210.50) | 0.00 | 0.00 | 5,789.50 |
| Rayes, Mary | 118,800.00 | (77,283.00) | 0.00 | 0.00 | 41,517.00 |
| Reardon, Jean | 60,000.00 | (35,726.50) | 0.00 | 0.00 | 24,273.50 |
| Reardon, John | 384,000.00 | (220,277.00) | 0.00 | 0.00 | 163,723.00 |
| Rearick, Pilar | 216,000.00 | (196,541.00) | 0.00 | 0.00 | 19,459.00 |
| Reeves, Jennifer | 138,600.00 | (55,650.00) | 0.00 | 0.00 | 82,950.00 |
| Register, Diane | 19,800.00 | (8,794.50) | 0.00 | 0.00 | 11,005.50 |
| Rehklau, Peter | 1,008,000.00 | (609,108.00) | 0.00 | 0.00 | 398,892.00 |
| Ress, Andrew & Jeannine | 514,800.00 | (144,509.00) | 0.00 | 0.00 | 370,291.00 |
| Reusser, Alexis | 24,000.00 | (12,099.50) | 0.00 | 0.00 | 11,900.50 |
| Rezac, Frank & Diane | 72,000.00 | (23,441.00) | 0.00 | 0.00 | 48,559.00 |
| Rhodes, Jennifer | 59,400.00 | (41,507.50) | 0.00 | 0.00 | 17,892.50 |
| Rich, Shirley Blair | 85,000.00 | (24,419.50) | 0.00 | 0.00 | 60,580.50 |
| Richards-Carson, Janet | 59,400.00 | (5,579.00) | 0.00 | 0.00 | 53,821.00 |
| Richman, Naomi | 12,000.00 | (4,822.00) | 0.00 | 0.00 | 7,178.00 |
| Ricken, Donald & Virginia | 216,000.00 | (129,239.50) | 0.00 | 0.00 | 86,760.50 |
| Riferro, Richard Jr. | 96,000.00 | (35,602.50) | 0.00 | 0.00 | 60,397.50 |
| Rinkovsky, Paula | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Ritter, Ira & Donna | 24,000.00 | (5,112.50) | 0.00 | 0.00 | 18,887.50 |
| Roberts, Cindy | 59,400.00 | (27,858.00) | 0.00 | 0.00 | 31,542.00 |
| Roberts, Irwin, Lloyd & Adele | 300,000.00 | (215,152.50) | 0.00 | 0.00 | 84,847.50 |
| Roberts, Judith | 72,000.00 | (58,938.00) | 0.00 | 0.00 | 13,062.00 |
| Roberts, Louise & Michael | 36,000.00 | (34,497.50) | 0.00 | 0.00 | 1,502.50 |
| Roberts, Tyler & Leatrice | 524,700.00 | (417,169.50) | 79,200.00 | (64,350.00) | 122,380.50 |
| Robins, Florence | 240,000.00 | (200,310.50) | 0.00 | 0.00 | 39,689.50 |
| Robins, Lisa | 19,800.00 | (660.00) | 0.00 | 0.00 | 19,140.00 |
| Rockenbach, Lisandre | 118,800.00 | (68,202.00) | 19,800.00 | (23,760.00) | 46,638.00 |
| Roditi, Alan | 59,400.00 | (45,210.00) | 0.00 | 0.00 | 14,190.00 |
| Rodoni, Chiara | 39,600.00 | (3,305.50) | 0.00 | 0.00 | 36,294.50 |
| Roedel, Jaimie | 19,800.00 | (1,320.00) | 0.00 | 0.00 | 18,480.00 |
| Rolland, Daniel | 60,000.00 | (57,909.00) | 0.00 | 0.00 | 2,091.00 |
| Romero, Ruben | 24,000.00 | (19,479.00) | 0.00 | 0.00 | 4,521.00 |
| Rosato, Vincent | 36,000.00 | (29,504.50) | 0.00 | 0.00 | 6,495.50 |

# NASI Loss Analysis

Drafts as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Rose, Kimberly | 39,600.00 | (17,382.00) | 0.00 | 0.00 | 22,218.00 |
| Rose, Marshall & Heidi | 288,000.00 | (281,956.50) | 0.00 | 0.00 | 6,043.50 |
| Rosee Entertainment, LLC | 92,170.82 | 0.00 | 0.00 | 0.00 | 92,170.82 |
| Rosenberg, Gayle | 48,000.00 | (6,396.00) | 0.00 | 0.00 | 41,604.00 |
| Rosenberg, Karen | 72,000.00 | (58,790.50) | 0.00 | 0.00 | 13,209.50 |
| Rosenberg, Ted | 72,024.00 | (43,062.50) | 0.00 | 0.00 | 28,961.50 |
| Rosenberger, Thomas & William | 39,600.00 | (2,203.50) | 0.00 | 0.00 | 37,396.50 |
| Rosenthal, Allan | 19,800.00 | | 0.00 | 0.00 | 19,800.00 |
| Rosenthal, Jennifer & Jeffrey | 84,000.00 | (25,880.50) | 0.00 | 0.00 | 58,119.50 |
| Rosenthal, Jonathan & Waldo, Patricia | 128,300.00 | (39,568.00) | 0.00 | 0.00 | 88,732.00 |
| Rosequist, Benjamin & Lindsay | 84,000.00 | (24,185.50) | 0.00 | 0.00 | 59,814.50 |
| Rosequist, Carma & Dennis | 96,000.00 | (20,783.50) | 0.00 | 0.00 | 75,216.50 |
| Rosequist, Joseph, Emily, Jared, Layne, Phil & Karen | 3,443,975.00 | (1,740,104.50) | 0.00 | 0.00 | 1,703,870.50 |
| Rosequist, Litany & Daniel | 84,000.00 | (39,664.50) | 0.00 | 0.00 | 44,335.50 |
| Rosequist, Ryan | 60,000.00 | (12,948.50) | 0.00 | 0.00 | 47,051.50 |
| Roser, Glen & Sherry | 265,390.00 | (169,384.50) | 0.00 | 0.00 | 96,005.50 |
| Ross, Cathy Jane | 36,000.00 | (15,580.00) | 0.00 | 0.00 | 20,420.00 |
| Ross, Gina | 158,400.00 | (76,916.50) | 0.00 | 0.00 | 81,483.50 |
| Rothblum, Joanne | 24,000.00 | (16,566.00) | 0.00 | 0.00 | 7,434.00 |
| Routh, Dyanne | 297,000.00 | (103,625.50) | 0.00 | 0.00 | 193,374.50 |
| Rowack, Richard & Karen | 480,000.00 | (170,655.50) | 0.00 | 0.00 | 309,344.50 |
| Rowack, Steven | 108,000.00 | (72,769.00) | 0.00 | 0.00 | 35,231.00 |
| Rowell, Todd & Penny | 24,000.00 | (2,085.50) | 0.00 | 0.00 | 21,914.50 |
| Roy, Rise | 60,000.00 | (17,226.50) | 0.00 | 0.00 | 42,773.50 |
| Rubin, Steve | 180,000.00 | (157,364.00) | 0.00 | 0.00 | 22,636.00 |
| Ruby, Steven & Lisa | 120,000.00 | (47,549.00) | 0.00 | 0.00 | 72,451.00 |
| Rudinski, Edward & Sandra | 72,000.00 | (42,884.00) | 0.00 | 0.00 | 29,116.00 |
| Rudnick, Joyce | 96,000.00 | (61,571.50) | 0.00 | 0.00 | 34,428.50 |
| Rudnick, Randy | 180,000.00 | (42,643.50) | 0.00 | 0.00 | 137,356.50 |
| Russell, George | 574,200.00 | (433,791.00) | 0.00 | 0.00 | 140,409.00 |
| Russell, Ralph | 19,800.00 | (1,980.00) | 0.00 | 0.00 | 17,820.00 |
| Russo, Samuel & Theresa | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Ruttenberg, Alan | 240,000.00 | (225,170.50) | 0.00 | 0.00 | 14,829.50 |
| Ryan, Elizabeth & Jane | 240,000.00 | (72,276.50) | 0.00 | 0.00 | 167,723.50 |
| Ryan, Terry | 504,000.00 | (266,062.00) | 0.00 | 0.00 | 237,938.00 |
| Saari, Mike & Susan | 36,000.00 | (19,954.50) | 0.00 | 0.00 | 16,045.50 |
| Sadeghi, Sunny | 36,000.00 | (1,091.50) | 0.00 | 0.00 | 34,908.50 |
| Sadey, Bill | 108,000.00 | (27,047.00) | 0.00 | 0.00 | 80,953.00 |

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Sadownik, Nathan & Sharyn | 240,000.00 | (36,770.50) | 0.00 | 0.00 | 203,229.50 |
| Sailar, Joshua | 19,800.00 | | 0.00 | 0.00 | 19,800.00 |
| Salgado, Carol, Gary & Irene | 444,000.00 | (80,734.00) | 0.00 | 0.00 | 363,266.00 |
| Salke, Taraneh | 216,000.00 | (95,853.00) | 0.00 | 0.00 | 120,147.00 |
| Sanchez, Edgar & Yang, Tai-Ying | 39,600.00 | (25,665.45) | 0.00 | 0.00 | 13,934.55 |
| Sanchez, Maria | 59,400.00 | (20,874.50) | 0.00 | 0.00 | 38,525.50 |
| Sanders, Robert & Ruth | 108,000.00 | (36,687.50) | 0.00 | 0.00 | 71,312.50 |
| Santoro, Jeffrey & Cathryn | 360,000.00 | (53,880.50) | 0.00 | 0.00 | 306,119.50 |
| Sanzo, Richard & Muriel | 144,000.00 | (68,160.50) | 0.00 | 0.00 | 75,839.50 |
| Saravasi, Supachai | | (2,542.50) | 0.00 | 0.00 | 3,457.50 |
| Sarf, Jack & Bonnie | 6,000.00 | | 0.00 | 0.00 | 3,457.50 |
| Sarf, Jack & Bonnie | 1,536,000.00 | (198,931.50) | 0.00 | 0.00 | 1,337,068.50 |
| Sato, Kimihiro | 420,000.00 | (271,277.50) | 0.00 | 0.00 | 148,722.50 |
| Sauter, Cameron | 600,000.00 | (584,610.00) | 0.00 | 0.00 | 15,390.00 |
| Scaletta, Frank & Rosemarie | 36,000.00 | (2,904.00) | 0.00 | 0.00 | 33,096.00 |
| Scano, Steven & Andra | 132,000.00 | (41,291.00) | 0.00 | 0.00 | 90,709.00 |
| Scarpidis, Omer & Ilona | 228,000.00 | (61,488.00) | 0.00 | 0.00 | 166,512.00 |
| Schick, Ben & Christine | 118,800.00 | (57,955.00) | 0.00 | 0.00 | 60,845.00 |
| Schieda, Anna & Domenico | 72,000.00 | (4,006.50) | 0.00 | 0.00 | 67,993.50 |
| Schiff, Amy | 24,000.00 | (1,977.50) | 0.00 | 0.00 | 22,022.50 |
| Schiff, Michael & Marsha | 300,000.00 | (235,414.00) | 0.00 | 0.00 | 64,586.00 |
| Schindelheim, Barry & Carol | 216,000.00 | (37,079.00) | 0.00 | 0.00 | 178,921.00 |
| Schipper, Leon & Elise | 96,000.00 | (57,403.50) | 0.00 | 0.00 | 38,596.50 |
| Schmidt, Susan | 277,200.00 | (87,505.00) | 0.00 | 0.00 | 189,695.00 |
| Schnair, Robert & Marilyn | 240,000.00 | (158,501.50) | 0.00 | 0.00 | 81,498.50 |
| Schneider, Paul | 48,000.00 | (10,209.50) | 0.00 | 0.00 | 37,790.50 |
| Schneider, Thomas & Arlene | 480,000.00 | (294,971.00) | 0.00 | 0.00 | 185,029.00 |
| Schofield, Kenneth & Shelly | 475,200.00 | (306,022.00) | 0.00 | 0.00 | 169,178.00 |
| Schrag, EJ Peter & Michael | 96,000.00 | (26,067.50) | 0.00 | 0.00 | 69,932.50 |
| Schulman, Irwin | 240,000.00 | (238,098.50) | 24,000.00 | (8,400.00) | 17,501.50 |
| Schultz, David | 118,800.00 | (13,466.00) | 0.00 | 0.00 | 105,334.00 |
| Schwartz, Eugene & Margaret | 708,000.00 | (474,739.50) | 0.00 | 0.00 | 233,260.50 |
| Schwartz, James | 240,000.00 | (226,950.00) | 0.00 | 0.00 | 13,050.00 |
| Schwartz, Steven | 60,000.00 | (39,562.50) | 0.00 | 0.00 | 20,437.50 |
| Schwartzberg, Debra | 1,200,000.00 | (531,575.00) | 0.00 | 0.00 | 668,425.00 |
| Schweiger, Ronald & Charlotte | 120,000.00 | (57,284.50) | 0.00 | 0.00 | 62,715.50 |
| Scott, Claudia | 60,000.00 | (22,476.00) | 0.00 | 0.00 | 37,524.00 |
| Scott, Richard & McElroy, Shirley | 144,000.00 | (120,608.00) | 0.00 | 0.00 | 23,392.00 |
| Selden, James | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |

Page 28 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Sell, Wendell & Judith | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Selleck, Alan | 360,000.00 | (151,774.50) | 0.00 | 0.00 | 208,225.50 |
| Selva, Gerald & Rose | 420,000.00 | (276,393.50) | 0.00 | 0.00 | 143,606.50 |
| Semler, Lucas | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Seplow, Alan & Barbara | 297,000.00 | (45,153.00) | 0.00 | 0.00 | 251,847.00 |
| Seskind, Sandra | 48,000.00 | (6,450.00) | 0.00 | 0.00 | 41,550.00 |
| Shadi, Jonathan & Nena | 59,400.00 | (29,301.50) | 0.00 | 0.00 | 30,098.50 |
| Shadrow, Danielle | 96,000.00 | (39,739.50) | 0.00 | 0.00 | 56,260.50 |
| Shafer, Lauren | 36,000.00 | (25,648.00) | 0.00 | 0.00 | 10,352.00 |
| Shah, Jayeshkumar & Priti | 297,000.00 | (105,005.00) | 0.00 | 0.00 | 191,995.00 |
| Shah, Kavita, Tushar & Nayna | 79,200.00 | (39,832.00) | 0.00 | 0.00 | 39,368.00 |
| Shahery, Louise | 39,600.00 | (23,879.50) | 0.00 | 0.00 | 15,720.50 |
| Shapiro, Linda | 144,000.00 | (46,803.50) | 0.00 | 0.00 | 97,196.50 |
| Shaughnessy, John & Annette | 12,000.00 | | 0.00 | 0.00 | 12,000.00 |
| Shaw, Randall | 492,000.00 | (14,056.50) | 0.00 | 0.00 | 477,943.50 |
| Sheffield, Gary | 39,600.00 | (9,324.00) | 0.00 | 0.00 | 30,276.00 |
| Shelton, Brian | 24,000.00 | (2,732.50) | 0.00 | 0.00 | 21,267.50 |
| Shepard-Johnson, Lori | 108,000.00 | (12,977.00) | 0.00 | 0.00 | 95,023.00 |
| Shere, Jane | 60,000.00 | (3,220.00) | 0.00 | 0.00 | 56,780.00 |
| Sherman, Alan & Beverly | 24,000.00 | (18,171.50) | 0.00 | 0.00 | 5,828.50 |
| Sherman, Carol | 36,000.00 | (4,901.00) | 0.00 | 0.00 | 31,099.00 |
| Sherwood-Brock, Mary | 39,600.00 | (24,576.00) | 0.00 | 0.00 | 15,024.00 |
| Shoji, David, Mary, Erik & Kawika | 312,000.00 | (191,056.50) | 0.00 | 0.00 | 120,943.50 |
| Short, Ted | 240,000.00 | (15,258.50) | 0.00 | 0.00 | 224,741.50 |
| Shultz, Jessica | 12,000.00 | (7,150.50) | 0.00 | 0.00 | 4,849.50 |
| Shultz, Joanna | 12,000.00 | (6,833.50) | 0.00 | 0.00 | 5,166.50 |
| Shultz, Mark | 120,000.00 | (49,861.50) | 0.00 | 0.00 | 70,138.50 |
| Siegrist, Gene | 59,400.00 | (2,721.00) | 0.00 | 0.00 | 56,679.00 |
| Silverman, Barry | 180,000.00 | (16,216.00) | 0.00 | 0.00 | 163,784.00 |
| Silvers, Arlene & Norman | 96,000.00 | (20,180.00) | 505,000.00 | (385,750.00) | 75,820.00 |
| Simmons, Leon & Sharyn | 1,548,000.00 | (1,369,192.00) | 0.00 | 0.00 | 298,058.00 |
| Simmons, Louis & Maureen | 180,000.00 | (35,158.00) | 0.00 | 0.00 | 144,842.00 |
| Simpson, Candace | 24,000.00 | (9,361.50) | 0.00 | 0.00 | 14,638.50 |
| Simpson, Deborah | 96,000.00 | (33,744.50) | 0.00 | 0.00 | 62,255.50 |
| Simpson, Robert | 120,000.00 | (46,483.50) | 0.00 | 0.00 | 73,516.50 |
| Singer, Dennis | 79,200.00 | (64,587.00) | 0.00 | 0.00 | 14,613.00 |
| Sirott, Robert & Marianne | 48,000.00 | | 0.00 | 0.00 | 48,000.00 |
| Skepner, Robert & Rennie | 504,000.00 | (462,210.50) | 0.00 | 0.00 | 41,789.50 |

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Skudder, Warden Neil | 39,600.00 | (8,151.50) | 0.00 | 0.00 | 31,448.50 |
| Slavin, Matthew & Elan | 803,000.00 | (672,653.50) | 0.00 | 0.00 | 130,346.50 |
| Smith, CJ & Wayne | 192,000.00 | (126,930.50) | 0.00 | 0.00 | 65,069.50 |
| Smith, Daniel & Maureen | 297,000.00 | (8,317.50) | 0.00 | 0.00 | 288,682.50 |
| Smith, Guy & Roseanna | 237,600.00 | (50,975.00) | 0.00 | 0.00 | 186,625.00 |
| Smith, Harold, Jonathan & Deborah | 540,000.00 | (178,689.00) | 0.00 | 0.00 | 361,311.00 |
| Smith, Steve & Mackenzie | 132,000.00 | (97,737.00) | 0.00 | 0.00 | 34,263.00 |
| Smith, Stuart & Lisa | 99,000.00 | (41,004.00) | 0.00 | 0.00 | 57,996.00 |
| Smollar, Andrea | 372,000.00 | (260,453.50) | 0.00 | 0.00 | 111,546.50 |
| Snyder, Lawrence, Marian, Robin & Barbara | 416,400.00 | (221,651.00) | 39,600.00 | (33,660.00) | 200,689.00 |
| Sobelman, Ian | 24,000.00 | (6,345.00) | 0.00 | 0.00 | 17,685.00 |
| Sobelman, Lisa | 12,000.00 | (6,879.00) | 0.00 | 0.00 | 5,121.00 |
| Solis, Jose | 96,000.00 | (34,695.50) | 0.00 | 0.00 | 61,304.50 |
| Sollami, Paul | 19,800.00 | 0.00 | 0.00 | 0.00 | 19,800.00 |
| Solom, Allen | 204,000.00 | (126,846.00) | 0.00 | 0.00 | 77,154.00 |
| Soloman, Kathy | 39,600.00 | (30,770.50) | 19,800.00 | (21,780.00) | 6,849.50 |
| Sorensen, Lorayne & Kaj | 192,000.00 | (26,068.00) | 0.00 | 0.00 | 165,932.00 |
| Soss, Clifford & Sandra | 24,000.00 | (13,033.00) | 0.00 | 0.00 | 10,967.00 |
| Soss, Glen & Audrey | 12,000.00 | (6,352.50) | 0.00 | 0.00 | 5,647.50 |
| Sourek, Charles Jr. & Joann | 192,000.00 | (43,289.00) | 0.00 | 0.00 | 148,711.00 |
| Spangler, Judith & Norbert Jr. | 12,000.00 | (4,629.00) | 0.00 | 0.00 | 7,371.00 |
| Spector, Rodney & Ramona | 36,000.00 | (1,039.50) | 0.00 | 0.00 | 34,960.50 |
| Speranza, Giuseppe | 79,200.00 | (11,414.50) | 0.00 | 0.00 | 67,785.50 |
| Spicer, William & Gruber, Lynda | 237,600.00 | (63,039.00) | 0.00 | 0.00 | 174,561.00 |
| Spindler, Justin | 19,800.00 | (7,620.50) | 0.00 | 0.00 | 12,179.50 |
| Srebnik, Jane | 48,000.00 | (1,332.50) | 0.00 | 0.00 | 46,667.50 |
| Sreenan, Mary & Leighton, Michael | 118,800.00 | (80,548.00) | 0.00 | 0.00 | 38,252.00 |
| St. Clair, Richard | 120,000.00 | (30,754.00) | 0.00 | 0.00 | 89,246.00 |
| St. John, Christopher & David | 276,000.00 | (102,883.00) | 0.00 | 0.00 | 173,117.00 |
| Staeck, Paul | 384,000.00 | (330,431.00) | 0.00 | 0.00 | 53,569.00 |
| Staeger, Gregory & Bernadine | 144,000.00 | (95,304.50) | 0.00 | 0.00 | 48,695.50 |
| Stahl, Sandra | 24,000.00 | (12,687.00) | 0.00 | 0.00 | 11,313.00 |
| Stanton, Valerie | 60,000.00 | (31,425.00) | 0.00 | 0.00 | 28,575.00 |
| Starks, Robert & Carol | 84,000.00 | (4,973.50) | 0.00 | 0.00 | 79,026.50 |
| Starnes, Lisa, Byron, Justin & Cory | 96,000.00 | (50,779.00) | 0.00 | 0.00 | 45,221.00 |
| Stazel, Brian, Steve & Jennifer | 168,000.00 | (80,540.50) | 0.00 | 0.00 | 87,459.50 |
| Stefanek, Kasia | 24,000.00 | (18,191.00) | 0.00 | 0.00 | 5,809.00 |
| Stein, Ronald & Phyllis | 84,000.00 | (45,137.00) | 0.00 | 0.00 | 38,863.00 |

Drafts of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Steinbacher, Carolyn & Paul | 118,800.00 | (19,220.50) | 0.00 | 0.00 | 99,579.50 |
| Steinberg, Jared | 84,000.00 | (16,782.50) | 0.00 | 0.00 | 67,217.50 |
| Steinberg, Robert | 804,000.00 | (300,230.50) | 0.00 | 0.00 | 503,769.50 |
| Steinberg, Stanley, Ashley & Susan | 348,000.00 | (267,448.00) | 0.00 | 0.00 | 80,552.00 |
| Sterling, Christopher | 96,000.00 | | 0.00 | 0.00 | 96,000.00 |
| Sternfeld, Earl & Janet | 36,000.00 | (4,627.00) | 0.00 | 0.00 | 31,373.00 |
| Stevens, Rusty | 48,000.00 | (22,510.00) | 0.00 | 0.00 | 25,490.00 |
| Stiebel, Shelley & Kathryn | 144,000.00 | (49,775.50) | 0.00 | 0.00 | 94,224.50 |
| Stone, Larry | 96,000.00 | (31,086.00) | 0.00 | 0.00 | 64,914.00 |
| Stoup, Glenn & M. Deborah | 48,000.00 | (29,153.50) | 0.00 | 0.00 | 18,846.50 |
| Stoup, Penelope | 60,000.00 | (43,187.00) | 0.00 | 0.00 | 16,813.00 |
| Sukosolvisit, Nipon | 12,000.00 | (309.00) | 0.00 | 0.00 | 11,691.00 |
| Sullivan, Gregory & Shari | 24,000.00 | | 0.00 | 0.00 | 24,000.00 |
| Summerson, Deborah | 120,000.00 | (59,759.50) | 0.00 | 0.00 | 60,240.50 |
| Summerson, Johnnye & Philip | 780,000.00 | (581,662.50) | 355,000.00 | (449,500.00) | 103,837.50 |
| Sumpter, Martin & Lorraine | 120,000.00 | (47,225.50) | 0.00 | 0.00 | 72,774.50 |
| Sun, Stanley | 24,000.00 | | 0.00 | 0.00 | 24,000.00 |
| Susson, Irving | 144,000.00 | (99,092.00) | 0.00 | 0.00 | 44,908.00 |
| Sutter, Petra | 130,800.00 | (82,950.50) | 0.00 | 0.00 | 47,849.50 |
| Suzuki, Wanas | 370,000.00 | (127,333.00) | 0.00 | 0.00 | 242,667.00 |
| Swan, Matthew | 1,080,000.00 | (757,839.50) | 0.00 | 0.00 | 322,160.50 |
| Sylvester, George & Ruth | 144,000.00 | (102,673.50) | 0.00 | 0.00 | 41,326.50 |
| Taddeo, Christopher & Elena | 24,000.00 | (10,157.00) | 0.00 | 0.00 | 13,843.00 |
| Talamantes, Gil & Kathleen | 99,000.00 | (22,921.50) | 0.00 | 0.00 | 76,078.50 |
| Tamboury, Anastasia | 36,000.00 | (24,570.50) | 0.00 | 0.00 | 11,429.50 |
| Tamillo, Ronald & Cynthia | 192,000.00 | (34,873.50) | 0.00 | 0.00 | 157,126.50 |
| Tarnol, Jason & Kristen | 48,000.00 | (11,459.00) | 0.00 | 0.00 | 36,541.00 |
| Taylor, Adam | 79,200.00 | (19,573.00) | 0.00 | 0.00 | 59,627.00 |
| Taylor, Jeanette | 138,600.00 | (49,617.00) | 0.00 | 0.00 | 88,983.00 |
| Tenbrink, Charlene | 19,800.00 | (4,620.00) | 0.00 | 0.00 | 15,180.00 |
| Terry, Nancy | 181,663.00 | (45,024.50) | 0.00 | 0.00 | 136,638.50 |
| Testa, Kathleen | 103,200.00 | (50,222.00) | 0.00 | 0.00 | 52,978.00 |
| Thompson, James & Darilene | 1,080,000.00 | (580,950.00) | 0.00 | 0.00 | 499,050.00 |
| Tiano, Jack | 204,000.00 | (10,066.50) | 0.00 | 0.00 | 193,933.50 |
| Tieber, Angela | 24,000.00 | (3,392.50) | 0.00 | 0.00 | 20,607.50 |
| Tieber, Kenneth | 24,000.00 | (14,368.00) | 0.00 | 0.00 | 9,632.00 |
| Tilchin, Anne | 132,000.00 | (66,775.00) | 0.00 | 0.00 | 65,225.00 |
| Tilman, Rayburn & Christine | 99,000.00 | (1,692.00) | 0.00 | 0.00 | 97,308.00 |

Page 31 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Timmons, Benjamin & Bello, Pamella | 36,000.00 | (4,448.00) | 0.00 | 0.00 | 31,552.00 |
| Tobiano, Yaccov Jacov | 19,800.00 | (2,310.00) | 0.00 | 0.00 | 17,490.00 |
| Toran, Anthony & Leroy | 792,000.00 | (767,075.50) | 0.00 | 0.00 | 24,924.50 |
| Torrey, Thomas | 144,000.00 | (90,397.00) | 0.00 | 0.00 | 53,603.00 |
| Trabolsi, Nicolas & Ilene | 192,000.00 | (32,136.00) | 0.00 | 0.00 | 159,864.00 |
| Travalena, Cory & Lois | 36,000.00 | (2,964.00) | 0.00 | 0.00 | 33,036.00 |
| Trejo, Alejandro & Sonia | 297,000.00 | (139,871.50) | 0.00 | 0.00 | 157,128.50 |
| Tribby, Nathan & Karen | 120,000.00 | (8,561.00) | 0.00 | 0.00 | 111,439.00 |
| Trice, Javon | 12,000.00 | (9,729.00) | 0.00 | 0.00 | 2,271.00 |
| Tritz, Gayle & Vincent | 96,000.00 | (40,134.50) | 0.00 | 0.00 | 55,865.50 |
| Trom, Stephen & Janet | 120,000.00 | (68,248.00) | 0.00 | 0.00 | 51,752.00 |
| Tsai, Bryan, Joseph & Carrie | 2,304,000.00 | (1,096,539.50) | 0.00 | 0.00 | 1,207,460.50 |
| Tucker, William | 120,000.00 | (53,952.50) | 0.00 | 0.00 | 66,047.50 |
| Turcotte, Christiane | 60,000.00 | (56,812.00) | 0.00 | 0.00 | 3,188.00 |
| Turell, Dana | 48,000.00 | (36,231.50) | 0.00 | 0.00 | 11,768.50 |
| Turner, Kent & Nancy | 96,000.00 | (45,547.00) | 0.00 | 0.00 | 50,453.00 |
| Tury, James | 331,623.00 | (193,601.50) | 0.00 | 0.00 | 138,021.50 |
| Ugarte, Gregory | 12,000.00 | (1,353.00) | 0.00 | 0.00 | 10,647.00 |
| Unterman, Ellen | 257,400.00 | (183,855.00) | 0.00 | 0.00 | 73,545.00 |
| Utsunomia, George, Fumiko & Cheryl | 144,000.00 | (23,298.00) | 0.00 | 0.00 | 120,702.00 |
| Vakil, Manodnya & Joyen | 312,000.00 | (231,088.00) | 0.00 | 0.00 | 80,912.00 |
| Valdman, Boris & Lilya | 240,000.00 | (47,296.00) | 0.00 | 0.00 | 192,704.00 |
| Van Horst, Carol & Shindeldecker, Nancy | 72,000.00 | (36,947.50) | 0.00 | 0.00 | 35,052.50 |
| Vanderwater, Jason | 39,600.00 | (33,660.00) | 0.00 | 0.00 | 5,940.00 |
| Vargas, Rod | 48,000.00 | (11,022.50) | 0.00 | 0.00 | 36,977.50 |
| Velazquez, Jose & Suzana | 1,008,000.00 | (597,203.00) | 0.00 | 0.00 | 410,797.00 |
| Vera, Joe | 39,600.00 | (36,300.00) | 0.00 | 0.00 | 3,300.00 |
| Verboncover, Gayle | 237,600.00 | (167,940.50) | 0.00 | 0.00 | 69,659.50 |
| Verville, Robert | 312,000.00 | (147,362.50) | 0.00 | 0.00 | 164,637.50 |
| Vesterman, Semyon & Svetlana | 118,800.00 | (74,272.50) | 0.00 | 0.00 | 44,527.50 |
| Vidor, Emerson | 132,000.00 | (44,643.00) | 0.00 | 0.00 | 87,357.00 |
| Vignola, James | 376,200.00 | (155,244.50) | 0.00 | 0.00 | 220,955.50 |
| Vilane, Linda | 12,000.00 | (2,360.00) | 0.00 | 0.00 | 9,640.00 |
| Vogrich, Robert | 120,000.00 | (101,647.50) | 0.00 | 0.00 | 18,352.50 |
| Voisine, Christopher | 300,000.00 | (95,182.00) | 0.00 | 0.00 | 204,818.00 |
| Volesky, Nancy | 36,000.00 | (6,449.50) | 0.00 | 0.00 | 29,550.50 |
| Vrbas, Michael Duane | 24,000.00 | (2,184.00) | 0.00 | 0.00 | 21,816.00 |
| Wagar, Kenneth | 372,000.00 | (238,095.50) | 0.00 | 0.00 | 133,904.50 |

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Wagar, Margaret | 36,000.00 | (14,131.50) | 0.00 | 0.00 | 21,868.50 |
| Wagg, Peter | 36,000.00 | (1,939.50) | 0.00 | 0.00 | 34,060.50 |
| Wagoner, Matthew & Marlene | 1,080,000.00 | (597,599.50) | 0.00 | 0.00 | 482,400.50 |
| Wain, Matthew | 12,000.00 | (3,623.00) | 0.00 | 0.00 | 8,377.00 |
| Wain-Menzer, Diana | 36,000.00 | (11,492.00) | 0.00 | 0.00 | 24,508.00 |
| Waite, Monique | 19,800.00 | (675.50) | 0.00 | 0.00 | 19,124.50 |
| Walbaum, Alan | 48,000.00 | | 0.00 | 0.00 | 48,000.00 |
| Waldman, Marvin | 300,000.00 | (135,366.00) | 0.00 | 0.00 | 164,634.00 |
| Waldman, Michael | 24,000.00 | (2,778.00) | 0.00 | 0.00 | 21,222.00 |
| Walker, Patrick | 48,000.00 | (22,161.00) | 0.00 | 0.00 | 25,839.00 |
| Walkup, Karen | 24,000.00 | (2,847.00) | 0.00 | 0.00 | 21,153.00 |
| Wallace, Tal | 96,000.00 | (40,955.00) | 0.00 | 0.00 | 55,045.00 |
| Walton, Anne | 59,400.00 | (21,015.50) | 0.00 | 0.00 | 38,384.50 |
| Ward, Jomarie & Moss, H. David | 39,600.00 | (34,035.50) | 0.00 | 0.00 | 5,564.50 |
| Warner, Andrea & Steve | 96,000.00 | (92,651.00) | 0.00 | 0.00 | 3,349.00 |
| Warner, Lawrence & Dona | 138,600.00 | (88,311.00) | 0.00 | 0.00 | 50,289.00 |
| Warner, Robert & Elizabeth | 633,600.00 | (495,324.50) | 0.00 | 0.00 | 138,275.50 |
| Warner, Serena | 120,000.00 | (67,557.00) | 0.00 | 0.00 | 52,443.00 |
| Warr, Katalin | 84,000.00 | (3,237.00) | 0.00 | 0.00 | 80,763.00 |
| Warr, Russell & Jamie | 264,000.00 | (32,515.50) | 0.00 | 0.00 | 231,484.50 |
| Warren, Dennis | 168,000.00 | (91,353.00) | 0.00 | 0.00 | 76,647.00 |
| Warschaw, Arthur & Helayne | 144,000.00 | (29,848.00) | 0.00 | 0.00 | 114,152.00 |
| Washington, Donald | 36,000.00 | | 0.00 | 0.00 | 36,000.00 |
| Wathen, Colleen | 96,000.00 | (20,379.00) | 0.00 | 0.00 | 75,621.00 |
| Wayne, Elise, Phyllis & Sarah | 24,000.00 | (17,062.00) | 0.00 | 0.00 | 6,938.00 |
| Webb, Gordon | 722,000.00 | (614,642.50) | 0.00 | 0.00 | 107,357.50 |
| Weber, Terry & Sheryl | 60,000.00 | (15,352.00) | 0.00 | 0.00 | 44,648.00 |
| Webster, Amie & Jonathan | 48,000.00 | (19,750.00) | 0.00 | 0.00 | 28,250.00 |
| Wedeking, Horst & Anita | 288,000.00 | (13,263.50) | 0.00 | 0.00 | 274,736.50 |
| Weems, Carole | 12,000.00 | (2,270.00) | 0.00 | 0.00 | 9,730.00 |
| Weisberg, Michael & Stephanie | 144,000.00 | (70,626.50) | 0.00 | 0.00 | 73,373.50 |
| Weiss, Jayne | 36,000.00 | (13,948.00) | 0.00 | 0.00 | 22,052.00 |
| Weiss, Jonathon & Jody | 348,000.00 | (42,460.00) | 0.00 | 0.00 | 305,540.00 |
| Weiss, Peter & Pamela | 204,000.00 | (144,329.50) | 0.00 | 0.00 | 59,670.50 |
| Weissman, Jerry & Claire | 48,000.00 | (12,258.00) | 0.00 | 0.00 | 35,742.00 |
| Welchons, Dan & Jannene | 360,000.00 | (210,255.00) | 0.00 | 0.00 | 149,745.00 |
| Welk, Earl | 180,000.00 | (115,633.50) | 0.00 | 0.00 | 64,366.50 |
| Wermes, Leonard | 72,000.00 | (30,598.50) | 0.00 | 0.00 | 41,401.50 |

Page 33 of 35

# NASI Loss Analysis

Draft as of 05/29/15

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Werner, Michael & Cheryl | 72,000.00 | (50,182.50) | 0.00 | 0.00 | 21,817.50 |
| West, Clive Robert | 48,000.00 | (25,100.00) | 0.00 | 0.00 | 22,900.00 |
| West, David & Kimberly | 48,000.00 | (21,047.50) | 0.00 | 0.00 | 26,952.50 |
| Wetterlind, Karen & Amy | 768,000.00 | (149,446.50) | 0.00 | 0.00 | 618,553.50 |
| Wetzel, Henry | 79,200.00 | (68,159.00) | 0.00 | 0.00 | 11,041.00 |
| Whitson, Chuck | 48,000.00 | (2,522.00) | 0.00 | 0.00 | 45,478.00 |
| Wilcox, Roger | 19,800.00 | | 0.00 | 0.00 | 19,800.00 |
| Wilkerson, Sherry | 22,700.00 | (4,620.00) | 0.00 | 0.00 | 18,080.00 |
| Wilkinson, Cassie | 84,000.00 | (27,452.00) | 0.00 | 0.00 | 56,548.00 |
| Wilks, Teri Appel | 39,600.00 | (17,692.50) | 0.00 | 0.00 | 21,907.50 |
| Williams, Jerry | 396,000.00 | (118,800.00) | 0.00 | 0.00 | 277,200.00 |
| Wilson, Herbert & Gloria | 396,000.00 | (355,933.50) | 99,000.00 | (37,125.00) | 99,941.50 |
| Wilson, Michael | 297,000.00 | (255,814.50) | 0.00 | 0.00 | 41,185.50 |
| Wilson, Richard Scott | 19,800.00 | (10,278.50) | 0.00 | 0.00 | 9,521.50 |
| Wilson, Stoney, Pamela & Daren | 276,000.00 | (186,011.50) | 0.00 | 0.00 | 89,988.50 |
| Wineberg, Mark | 36,000.00 | (4,250.00) | 0.00 | 0.00 | 31,750.00 |
| Winski, Czeslawa | 48,000.00 | (24,851.00) | 0.00 | 0.00 | 23,149.00 |
| Winski, Veronika | 36,000.00 | (27,566.50) | 0.00 | 0.00 | 8,433.50 |
| Wisch, Henry & Michele | 118,800.00 | (22,624.00) | 0.00 | 0.00 | 96,176.00 |
| Wohlman, Gary | 307,131.80 | (64,497.50) | 0.00 | 0.00 | 242,634.30 |
| Wolfe, Barry | 120,000.00 | (27,150.00) | 0.00 | 0.00 | 92,850.00 |
| Wolff, Paul | 118,800.00 | (37,246.50) | 0.00 | 0.00 | 81,553.50 |
| Wolfington, Lynn Wood | 118,800.00 | (87,120.00) | 0.00 | 0.00 | 31,680.00 |
| Wong, Darin | 72,000.00 | (26,010.00) | 0.00 | 0.00 | 45,990.00 |
| Wong, Gloria | 168,000.00 | (97,481.00) | 0.00 | 0.00 | 70,519.00 |
| Woodson, Walter | 242,600.00 | (224,070.00) | 0.00 | 0.00 | 18,530.00 |
| Wotton, Grigsby | 138,600.00 | (72,024.50) | 0.00 | 0.00 | 66,575.50 |
| Wright, Alexander | 120,000.00 | (40,237.50) | 0.00 | 0.00 | 79,762.50 |
| Wright, Marcus & Megan | 96,000.00 | (18,061.50) | 0.00 | 0.00 | 77,938.50 |
| Wynne, Karyn & Orgell, Richard | 59,400.00 | (57,017.00) | 0.00 | 0.00 | 2,383.00 |
| Xin, Diana | 72,000.00 | | 0.00 | 0.00 | 72,000.00 |
| Xin, Li | 138,600.00 | (119,460.00) | 0.00 | 0.00 | 19,140.00 |
| Xue, Hui | 226,117.00 | (117,153.00) | 0.00 | 0.00 | 108,964.00 |
| Yang, Tai-Ying & Sung-Shou | 604,700.00 | (326,143.50) | 0.00 | 0.00 | 278,556.50 |
| Yavelow, Andrew | 99,000.00 | (60,509.00) | 0.00 | 0.00 | 38,491.00 |
| Yedor, Cyril & Judith | 336,000.00 | (254,441.50) | 0.00 | 0.00 | 81,558.50 |
| Yee, Sang & Lye | 36,000.00 | (26,565.50) | 0.00 | 0.00 | 9,434.50 |
| Yost, Dennis | 84,000.00 | (39,518.50) | 0.00 | 0.00 | 44,481.50 |

Page 34 of 35

Draft as of 05/29/15

# NASI Loss Analysis

| Investor Name | AFTER 09/2007 Deposits | AFTER 09/2007 Withdrawals | BEFORE 09/2007 Deposits | BEFORE 09/2007 Withdrawals | Grand Total |
|---|---|---|---|---|---|
| Yost, Vivian | 60,000.00 | (35,566.50) | 0.00 | 0.00 | 24,433.50 |
| Young, Robert | 120,000.00 | (33,957.50) | 0.00 | 0.00 | 86,042.50 |
| Young, Victoria & Zeyher, Debbie | 24,000.00 | (18,646.00) | 0.00 | 0.00 | 5,354.00 |
| Yuter, Arthur | 96,000.00 | (48,322.00) | 0.00 | 0.00 | 47,678.00 |
| Zadourian, Hamlet & Anoosh | 600,000.00 | (110,447.50) | 0.00 | 0.00 | 489,352.50 |
| Zare, Parsia | 12,000.00 | (1,570.00) | 0.00 | 0.00 | 10,430.00 |
| Zarky, Ella | 252,000.00 | (194,090.00) | 12,000.00 | (4,500.00) | 65,410.00 |
| Zarrello, Michael | 99,000.00 | (41,782.50) | 0.00 | 0.00 | 57,217.50 |
| Zauderer, Jean & Helene | 120,000.00 | (14,928.50) | 0.00 | 0.00 | 105,071.50 |
| Zeal, Gary & Jill | 48,000.00 | (39,208.50) | 0.00 | 0.00 | 8,791.50 |
| Zeal, Mark & Marilyn | 24,000.00 | (14,075.50) | 0.00 | 0.00 | 9,924.50 |
| Zeal, Steven | 204,000.00 | (202,403.50) | 0.00 | 0.00 | 1,596.50 |
| Zebofsky, Elaine & Arthur | 192,000.00 | (13,135.50) | 0.00 | 0.00 | 178,864.50 |
| Zebrack, Allen | 72,000.00 | (22,753.00) | 0.00 | 0.00 | 49,247.00 |
| Zukow, Arnold & Rosalind | 132,000.00 | (94,365.50) | 0.00 | 0.00 | 37,634.50 |
| Zuzelo, Paul & Suzanne | 1,440,000.00 | (1,228,556.50) | 0.00 | 0.00 | 211,443.50 |
| Zwerdling, Belle | 19,800.00 | (3,711.00) | 0.00 | 0.00 | 16,089.00 |
| Totals | 247,880,716.24 | (124,373,634.12) | 4,450,600.00 | (1,942,748.33) | 125,063,604.62 |

Page 35 of 35

# EXHIBIT 42

**EXHIBIT 42**

# NATIONWIDE AUTOMATED SYSTEMS, INC.

22048 SHERMAN WAY,  SUITE 111
CANOGA PARK, CA 91303
818-716-6790
FAX: 818-673-1945

## ATM EQUIPMENT LEASE AGREEMENT

This agreement ("Agreement") is made as of _JULY 1_____, 20_08_ by and between NATIONWIDE AUTOMATED SYSTEMS, INC. ("NASI") and _RIVIERA INVESTMENTS, L.P._____ ("Lessor").

## RECITALS

A.      NASI is in the business of placing, operating and maintaining automated teller machines ("ATMs").

B.      Lessor is the owner of the ATM(s) listed and described on Schedule A attached hereto.

C.      NASI desires to lease from Lessor the ATM(s) listed and described on Schedule A on the terms and conditions set forth herein.

D.      Lessor desires to lease such ATM(s) to NASI on such terms and conditions.

NOW, THEREFORE, with respect to the foregoing recitals and in consideration of the following, the parties hereto represent, acknowledge and agree as follows:

1.      **Lease of Equipment.**  Lessor hereby leases to NASI, and NASI hereby leases from Lessor, the ATM(s) listed and described on Schedule A attached hereto and incorporated herein by reference.

2.  **Term.**  The initial term of this Agreement shall be for a period of ten (10) years commencing on the date first written above.  The Agreement shall be automatically renewed for additional three (3) year periods thereafter unless the lessor provides written notice at least sixty (60) days prior to the end of the initial term or any subsequent renewal term of its desire to terminate this Agreement.

Nationwide Automated Systems, Inc.

## ADDENDUM TO OWNER LEASE AGREEMENT

1)  If at anytime the owner's ATM machine fails to make enough transactions
    To pay the owner a monthly check equivalent to a twenty (20%) percent
    Annual return on the owner's investment of $12,000. Nationwide Automated
    Systems, Inc. guarantees to pay owner the difference between what the
    Owner has received and $2,400. This is based on a rental fee of $.50
    Per transaction. This is done on an annual basis calculating from the
    installation month.

2)  At anytime after the first two years of ownership, should the owner wish to
.... Sell his or her ATM's, N.A.S.I guarantees it will purchase said ATM's from
    Owner for the original sales price of $12,000.


Nationwide Automated Systems, Inc.

By _Joel Teller 7-1-08_____

    Owner

By X _Gooligs 7-16-08_
    RIVIERA INVESTMENTS LP

R00042162

set forth above.

**NATIONWIDE AUTOMATED SYSTEMS, INC.**
**A California Corporation**

By: _Joel Keller_

Title: _President_

**LESSOR:**

By: X _Jcoffin_

Title: _MANAGING PARTNER OF_
_RIVIERA INVESTMENTS LP_

-6-

R00042163

# NATIONWIDE AUTOMATED SYSTEMS, INC.

22048 SHERMAN WAY, SUITE 111
CANOGA PARK, CA 91303
818-716-6790
FAX: 818-673-1945

## ATM EQUIPMENT PURCHASE AGREEMENT

_JULY 1_____, 20 _08_

This undersigned, as BUYER, hereby agrees to purchase from NATIONWIDE AUTOMATED SYSTEMS, INC., ("SELLER"), the automated teller machine(s) ("ATMs") listed and described on Schedule A attached hereto and incorporated herein by reference.

The total purchase price to be paid by BUYER to SELLER for the ATMs shall be as follows:

| NUMBER OF ATMs | PRICE PER ATM | |
|---|---|---|
| _10_ | _$12,000_ | _$ 120,000_ |

| | |
|---|---|
| TOTAL PURCHASE PRICE: | _$ 120,000_ |
| LESS:  BUYER'S DEPOSIT | _$ 120,000_ |
| BALANCE DUE ON SIGNING: | _$ =0=_ |

SELLER shall deliver the ATM(s) to location written on Exhibit A within sixty (60) days of the date hereof.  If SELLER fails to make delivery of the ATM(s) within said sixty (60) day period, BUYER shall be entitled to cancel this contract and to receive a refund of the monies previously paid to SELLER, without interest thereon or deduction therefrom.  The refund of BUYER's payments to SELLER shall be BUYER's sole and exclusive remedy hereunder.

SELLER hereby warrants that the ATM(s) purchased by BUYER shall, at the time of delivery, be free and clear of all liens, claims, debts, encumbrances, security interests, or other charges.

R00042164

　　　　IN WITNESS WHEREOF the parties have executed this Agreement on the date first set forth above.

**NATIONWIDE AUTOMATED SYSTEMS, INC.**
**A California Corporation**

By: _Joel Gillis_

Title: _President_

By: _____

Title: _____

**BUYER:**

By: X _____

Title: _MANAGING PARTNER OF RIVIERA INVESTMENTS LP_

_10924 PINE MEADOWS CT._
**(Address)**
_LAS VEGAS, NV. 89134_

_702 - 228-8795_
**(Telephone Number)**
**Social Security Number:** _ _ _ _ _ _ _ _ _
_TAX ID #51-0471287_

-2-



R00042166

GERALD L. EHRENS
WILMA S. EHRENS
10924 PINE MEADOWS CT.
LAS VEGAS, NV 89134

2158

94-7074/3212 1863
6362473821

Date 7/23/08

Pay to the
Order of   NATIONWIDE PERFORM ATED SYSTEMS   $ 20,000.00

One hundred twenty thousand 00/100   Dollars

WELLS FARGO
Wells Fargo Bank, N.A.
Nevada
wellsfargo.com

For 10 - ATM MACHINES   Gee Ehrens
FOR CUVELA INSURANCE LA

⑆3212707421⑆ 6632473821⑈ 02158

# EXHIBIT 43

**EXHIBIT 43**

## Summary Trial Balance

1/1/2007 To 12/31/2007

| Acct# | Account Name | Total Debit | Total Credit |
|-------|--------------|-------------|--------------|
| 6-0001 | 356 Family Part/Avery Waisbren | $2,273.00 | $0.00 |
| 6-0002 | Abby Gore | $2,247.75 | $0.00 |
| 6-0003 | Adriana Kapeller | $34,320.00 | $0.00 |
| 6-0004 | Afsaneh Moshgboo | $6,937.50 | $0.00 |
| 6-0005 | Albert Katz | $154,991.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,382.25 | $0.00 |
| 6-0007 | Alfred Bonadies | $3,960.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0009 | Allan Schwartz | $9,748.50 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,328.00 | $0.00 |
| 6-0011 | Amir Ghavami | $9,455.00 | $0.00 |
| 6-0012 | Amy Gale | $13,937.00 | $0.00 |
| 6-0013 | Amy Krakover Trust | $4,689.50 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $6,993.25 | $0.00 |
| 6-0018 | Ada Grillo | $6,076.00 | $0.00 |
| 6-0019 | Alice Vidor | $13,558.50 | $0.00 |
| 6-0021 | Arlene Levand ttee | $15,843.50 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $14,033.00 | $0.00 |
| 6-0023 | Arnold Diamond | $7,119.00 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $55,646.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $25,148.00 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0027 | Arthur Irvin | $4,540.50 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $11,560.50 | $0.00 |
| 6-0029 | Barbara Adler | $39,600.00 | $0.00 |
| 6-0030 | Barbara Berg Decadents Trust | $73,671.50 | $0.00 |
| 6-0031 | Barbara Cushner Trust | $6,894.00 | $0.00 |
| 6-0032 | Barbara Koun | $11,550.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $65,559.50 | $0.00 |
| 6-0034 | Barbara Robbins | $17,222.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0036 | Bart &  Brenda Jacobs Family | $2,314.00 | $0.00 |
| 6-0037 | Berg 1990 Irrevocable Trust | $189,615.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $266,678.50 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0040 | Barry Wishengrad | $3,569.50 | $0.00 |
| 6-0041 | Bette Klein | $11,680.00 | $0.00 |
| 6-0042 | Bill LaRose | $6,730.00 | $0.00 |
| 6-0043 | Bradley Turell | $23,269.00 | $0.00 |
| 6-0044 | Brenda Jacobs | $2,381.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $7,590.00 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $38,007.00 | $0.00 |
| 6-0048 | Business Funds, Inc. | $11,760.00 | $0.00 |
| 6-0049 | Cal Sunshine | $45,017.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,153.00 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $13,200.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |

| 6-0457 | Alexander Bien | $4,290.00 | $0.00 |
| 6-0459 | Aron Rappoport | $2,085.50 | $0.00 |
| 6-0460 | Adam Rappoport | $2,081.50 | $0.00 |
| 6-0461 | Allen E. Botney, TTEE | $6,361.00 | $0.00 |
| 6-0462 | Charles Kaufman | $53,544.50 | $0.00 |
| 6-0463 | Allan or Mellissa Galeano | $4,194.00 | $0.00 |
| 6-0464 | Andrew C. Matthiesen, TTEE | $35,760.00 | $0.00 |
| 6-0465 | Anthony Cravitz | $4,683.75 | $0.00 |
| 6-0466 | Anthony Gambucci | $3,960.00 | $0.00 |
| 6-0467 | Artemio Diaz & Juana Diaz | $10,560.00 | $0.00 |
| 6-0468 | Avery Waisbren | $2,263.50 | $0.00 |
| 6-0469 | Patrick /Betty FitzWill/BRIBET | $31,575.50 | $0.00 |
| 6-0470 | Bryan Anthony | $16,958.50 | $0.00 |
| 6-0471 | Cameron King | $2,062.50 | $0.00 |
| 6-0472 | Celia HInshaw & David Shaffer | $3,960.00 | $0.00 |
| 6-0473 | Craig M. Stephen, TTEE | $5,148.50 | $0.00 |
| 6-0474 | D.R. & C.L. Lewis FLP | $22,110.50 | $0.00 |
| 6-0475 | David Farling | $7,260.00 | $0.00 |
| 6-0476 | Dawn Famiglietti | $7,340.50 | $0.00 |
| 6-0477 | Elaine Waisbren | $2,093.00 | $0.00 |
| 6-0478 | Gaylan King Frederic, TTEE | $8,429.00 | $0.00 |
| 6-0479 | Geoffrey A. Rappoport | $2,121.50 | $0.00 |
| 6-0480 | Jeffrey H. & Karen Lewis | $2,129.00 | $0.00 |
| 6-0481 | Jeffrey E. Allen | $57,177.50 | $0.00 |
| 6-0482 | Jennifer Klein | $8,496.00 | $0.00 |
| 6-0483 | Jim Hartinger | $29,554.00 | $0.00 |
| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $27,431.00 | $0.00 |
| 6-0485 | Judith Bailey | $4,289.00 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $12,187.00 | $0.00 |
| 6-0487 | Ken Lee | $2,062.50 | $0.00 |
| 6-0488 | Kimberly G. Allen | $4,276.50 | $0.00 |
| 6-0489 | Kim Fernandez | $19,800.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $15,865.00 | $0.00 |
| 6-0491 | Lawrence Elkind | $44,550.00 | $0.00 |
| 6-0492 | Leonard Kalina | $5,280.00 | $0.00 |
| 6-0493 | Lisa Bruno | $2,088.00 | $0.00 |
| 6-0494 | Liza Molinary | $5,280.00 | $0.00 |
| 6-0495 | Lori Staff | $6,930.00 | $0.00 |
| 6-0496 | Lydia Matthews | $3,630.00 | $0.00 |
| 6-0497 | Marc Giamo | $18,150.00 | $0.00 |
| 6-0498 | Michael Czysz | $6,499.50 | $0.00 |
| 6-0499 | Monica Lambert | $2,235.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $5,221.50 | $0.00 |
| 6-0501 | Murray Kaplan Trust | $15,953.00 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $3,260.50 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $8,910.00 | $0.00 |
| 6-0504 | Ralph Garren | $46,418.00 | $0.00 |
| 6-0505 | Robert Hopper | $10,890.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $4,336.50 | $0.00 |
| 6-0507 | Romy Friedman | $3,630.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,170.50 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $15,750.00 | $0.00 |
| 6-0510 | Shirley Reisman | $2,030.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $10,378.00 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $55,318.00 | $0.00 |
| 6-0513 | Stephen Green | $9,325.00 | $0.00 |

9/3/2015                                    MYOB / Excel                                    12:47 PM

## Summary Trial Balance

### 1/1/2008 To 12/31/2008

| Acct# | Account Name | Total Debit | Total Credit |
|---|---|---|---|
| 6-0001 | 356 Family Part/Avery Waisbren | $2,272.50 | $0.00 |
| 6-0002 | Abby Gore | $3,003.50 | $0.00 |
| 6-0003 | Adriana Kapeller | $31,680.00 | $0.00 |
| 6-0005 | Albert Katz | $166,085.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,097.50 | $0.00 |
| 6-0007 | Alfred Bonadies | $3,960.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,409.00 | $0.00 |
| 6-0011 | Amir Ghavami | $12,075.50 | $0.00 |
| 6-0012 | Amy Gale | $13,591.00 | $0.00 |
| 6-0013 | Amy Krakover Trust | $4,657.00 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $8,534.00 | $0.00 |
| 6-0018 | Ada Grillo | $7,179.50 | $0.00 |
| 6-0019 | Alice Vidor | $14,273.00 | $0.00 |
| 6-0021 | Arlene Levand ttee | $18,775.00 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $18,397.00 | $0.00 |
| 6-0023 | Arnold Diamond | $9,420.50 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $55,397.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $24,757.00 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0027 | Arthur Irvin | $4,516.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $11,665.50 | $0.00 |
| 6-0029 | Barbara Adler | $47,520.00 | $0.00 |
| 6-0030 | Barbara Berg Decedants Trust | $74,600.50 | $0.00 |
| 6-0031 | Barbara Cushner Trust | $2,827.00 | $0.00 |
| 6-0032 | Barbara Koun | $13,200.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $64,264.50 | $0.00 |
| 6-0034 | Barbara Robbins | $18,556.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0036 | Bart &  Brenda Jacobs Family | $2,357.00 | $0.00 |
| 6-0037 | Berg 1990 Irrevocable Trust | $190,937.50 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $304,918.50 | $610.50 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0040 | Barry Wishengrad | $5,876.00 | $0.00 |
| 6-0041 | Bette Klein | $14,516.50 | $0.00 |
| 6-0042 | Bill LaRose | $9,415.00 | $0.00 |
| 6-0043 | Bradley Turell | $22,549.50 | $0.00 |
| 6-0044 | Brenda Jacobs | $2,495.00 | $0.00 |
| 6-0045 | Brenda Jilajian | $7,920.00 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $37,491.00 | $0.00 |
| 6-0048 | Business Funds, Inc. | $14,729.00 | $0.00 |
| 6-0049 | Cal Sunshine | $46,626.00 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,130.00 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $16,830.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $83,969.50 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $7,213.50 | $0.00 |
| 6-0056 | Carolyn Maxwell | $3,960.00 | $0.00 |
| 6-0057 | Caryn Lucas | $28,261.50 | $0.00 |
| 6-0058 | Cathy Fox | $11,880.00 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $27,720.00 | $0.00 |
| 6-0061 | Charlene Stevens | $24,750.00 | $0.00 |
| 6-0062 | Charles Andrew Homan, TTEE | $21,014.50 | $0.00 |

| | | | |
|---|---|---|---|
| 6-0461 | Allen E. Botney, TTEE | $11,037.50 | $0.00 |
| 6-0462 | Charles Kaufman | $68,464.00 | $0.00 |
| 6-0463 | Allan or Mellissa Galeano | $22,799.50 | $0.00 |
| 6-0464 | Andrew C. Matthiesen, TTEE | $42,997.00 | $0.00 |
| 6-0465 | Anthony Cravitz | $4,585.25 | $0.00 |
| 6-0466 | Anthony Gambucci | $4,950.00 | $0.00 |
| 6-0467 | Artemio Diaz & Juana Diaz | $15,840.00 | $0.00 |
| 6-0468 | Avery Waisbren | $2,235.50 | $0.00 |
| 6-0469 | Patrick /Betty FitzWill/BRIBET | $54,133.50 | $0.00 |
| 6-0470 | Bryan Anthony | $21,377.50 | $0.00 |
| 6-0471 | Cameron King | $2,292.50 | $0.00 |
| 6-0472 | Celia HInshaw & David Shaffer | $3,960.00 | $0.00 |
| 6-0473 | Craig M. Stephen, TTEE | $6,748.50 | $0.00 |
| 6-0475 | David Farling | $7,920.00 | $0.00 |
| 6-0476 | Dawn Famiglietti | $7,920.00 | $0.00 |
| 6-0477 | Elaine Waisbren | $2,969.00 | $0.00 |
| 6-0478 | Gaylan King Frederic, TTEE | $9,446.00 | $0.00 |
| 6-0479 | Geoffrey A. Rappoport | $2,369.50 | $0.00 |
| 6-0480 | Jeffrey H. & Karen Lewis | $1,839.00 | $0.00 |
| 6-0481 | Jeffrey E. Allen | $88,080.50 | $0.00 |
| 6-0482 | Jennifer Klein | $10,162.50 | $0.00 |
| 6-0483 | Jim Hartinger | $46,704.00 | $0.00 |
| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $40,775.00 | $0.00 |
| 6-0485 | Judith Bailey | $8,086.00 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $12,199.50 | $0.00 |
| 6-0487 | Ken Lee | $2,271.00 | $0.00 |
| 6-0488 | Kimberly G. Allen | $4,634.50 | $0.00 |
| 6-0489 | Kim Fernandez | $19,800.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $23,286.50 | $0.00 |
| 6-0491 | Lawrence Elkind | $82,500.00 | $0.00 |
| 6-0492 | Leonard Kalina | $8,910.00 | $0.00 |
| 6-0493 | Lisa Bruno | $4,224.00 | $0.00 |
| 6-0494 | Liza Molinary | $9,240.00 | $0.00 |
| 6-0495 | Lori Staff | $11,880.00 | $0.00 |
| 6-0496 | Lydia Matthews | $3,960.00 | $0.00 |
| 6-0497 | Marc Giamo | $19,800.00 | $0.00 |
| 6-0498 | Michael Czysz | $6,671.00 | $0.00 |
| 6-0499 | Monica Lambert | $4,079.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $4,522.50 | $0.00 |
| 6-0501 | Murray Kaplan Trust | $32,424.50 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $4,671.00 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $11,880.00 | $0.00 |
| 6-0504 | Ralph Garren | $88,771.50 | $0.00 |
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $4,408.50 | $0.00 |
| 6-0507 | Romy Friedman | $3,960.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,462.00 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $55,181.00 | $0.00 |
| 6-0510 | Shirley Reisman | $2,364.00 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $13,945.00 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $65,655.00 | $0.00 |
| 6-0513 | Stephen Green | $12,101.50 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $11,427.00 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $17,160.00 | $0.00 |
| 6-0516 | Tammy Hill | $54,232.00 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0518 | Tracy St. John | $26,400.00 | $0.00 |
| 6-0520 | Tim Faracy | $31,680.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $23,551.50 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $27,361.50 | $0.00 |
| 6-0523 | Jeanine Anderson | $3,960.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $2,225.00 | $0.00 |

9/3/2015                                      MYOB / Excel                                    12:55 PM

## Summary Trial Balance
### 1/1/2009 To 12/31/2009

| Acct# | Account Name | Total Debit | Total Credit |
|-------|--------------|------------:|-------------:|
| 6-0001 | 356 Family Part/Avery Waisbren | $1,940.00 | $0.00 |
| 6-0002 | Abby Gore | $4,107.50 | $0.00 |
| 6-0003 | Adriana Kapeller | $31,680.00 | $0.00 |
| 6-0005 | Albert Katz | $157,830.00 | $0.00 |
| 6-0006 | Alexander Bleecker | $968.25 | $0.00 |
| 6-0007 | Alfred Bonadies | $3,960.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,066.00 | $0.00 |
| 6-0011 | Amir Ghavami | $23,692.00 | $0.00 |
| 6-0012 | Amy Gale | $12,506.00 | $0.00 |
| 6-0013 | Amy Krakover Trust | $3,988.00 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0016 | Janet Price | $7,590.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $8,071.00 | $0.00 |
| 6-0018 | Ada Grillo | $6,301.50 | $0.00 |
| 6-0019 | Alice Vidor | $12,349.00 | $0.00 |
| 6-0020 | Ziba Daneshi | $9,161.00 | $0.00 |
| 6-0021 | Arlene Levand ttee | $17,443.75 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $19,050.50 | $0.00 |
| 6-0023 | Arnold Diamond | $8,858.50 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $59,760.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $22,958.50 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0027 | Arthur Irvin | $4,034.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $12,988.00 | $0.00 |
| 6-0029 | Barbara Adler | $65,340.00 | $0.00 |
| 6-0030 | Barbara Berg Decedants Trust | $58,016.50 | $0.00 |
| 6-0032 | Barbara Koun | $18,480.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $67,152.50 | $0.00 |
| 6-0034 | Barbara Robbins | $19,462.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0036 | Bart &  Brenda Jacobs Family | $883.00 | $0.00 |
| 6-0037 | Berg 1990 Irrevocable Trust | $167,672.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $446,595.00 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0040 | Barry Wishengrad | $1,539.00 | $0.00 |
| 6-0041 | Bette Klein | $12,809.50 | $0.00 |
| 6-0042 | Bill LaRose | $6,194.00 | $0.00 |
| 6-0043 | Bradley Turell | $20,956.00 | $0.00 |
| 6-0044 | Brenda Jacobs | $928.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $7,920.00 | $0.00 |
| 6-0046 | David Polis | $8,659.00 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $34,970.00 | $0.00 |
| 6-0048 | Business Funds, Inc. | $9,530.00 | $0.00 |
| 6-0049 | Cal Sunshine | $38,947.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |

| | | | |
|---|---|---|---|
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $3,975.50 | $0.00 |
| 6-0507 | Romy Friedman | $330.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,049.00 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $77,603.00 | $0.00 |
| 6-0510 | Shirley Reisman | $2,203.00 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $6,835.00 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $73,639.00 | $0.00 |
| 6-0513 | Stephen Green | $11,599.50 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $9,955.50 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $19,800.00 | $0.00 |
| 6-0516 | Tammy Hill | $64,067.50 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0518 | Tracy St. John | $21,450.00 | $0.00 |
| 6-0520 | Tim Faracy | $31,680.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $20,087.50 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $31,260.50 | $0.00 |
| 6-0523 | Jeanine Anderson | $3,960.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $2,229.50 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $10,025.00 | $0.00 |
| 6-0527 | Sean Sullivan& Meghan Boustany | $7,906.50 | $0.00 |
| 6-0528 | Sean Sullivan & Molly Robotti | $8,023.00 | $0.00 |
| 6-0529 | Sean Sullivan & Sean FSullivan | $8,099.00 | $0.00 |
| 6-0530 | H.B.H., Inc. | $12,681.00 | $0.00 |
| 6-0532 | Rebecca Koblick | $10,735.00 | $0.00 |
| 6-0533 | Travis Henning | $7,920.00 | $0.00 |
| 6-0534 | Sunshine Living Trust | $1,698.00 | $0.00 |
| 6-0535 | Bruce Langhorne | $1,320.00 | $0.00 |
| 6-0536 | D. Robert Lewis | $50,838.00 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $7,920.00 | $0.00 |
| 6-0539 | Andrea Byers Kaplan | $11,563.00 | $0.00 |
| 6-0540 | Andrea Kopald | $6,900.00 | $0.00 |
| 6-0541 | Anthony & Treva Lewis | $39,600.00 | $0.00 |
| 6-0542 | Joel Nelson, Trustee | $3,960.00 | $0.00 |
| 6-0543 | Ken & Shelly Schofield | $1,980.00 | $0.00 |
| 6-0544 | Beatrice Jaffe | $31,350.00 | $0.00 |
| 6-0545 | Beverly Rosenthal | $15,390.50 | $0.00 |
| 6-0546 | BONNIE LAMIE SCHULMAN | $4,003.00 | $0.00 |
| 6-0547 | Brian Chase&Heather Gravendaal | $12,200.00 | $0.00 |
| 6-0548 | Brian Nelson | $15,615.00 | $0.00 |
| 6-0549 | Bruce Brennan | $28,050.00 | $0.00 |
| 6-0550 | Buona Vita Venture Capital,LLC | $5,970.50 | $0.00 |
| 6-0551 | Carol Roles | $16,500.00 | $0.00 |
| 6-0554 | Clark Vautier | $4,950.00 | $0.00 |
| 6-0555 | Craig & Michelle Covello | $68,325.00 | $0.00 |
| 6-0556 | Deborah Alexander | $3,960.00 | $0.00 |
| 6-0560 | Edna McCaffrey | $3,960.00 | $0.00 |
| 6-0561 | Ellen Jane Bright/BOYSTER KIM | $38,280.00 | $0.00 |
| 6-0562 | Al Checco | $4,620.00 | $0.00 |
| 6-0563 | Gail Balsillie | $7,920.00 | $0.00 |
| 6-0564 | George King | $4,534.50 | $0.00 |
| 6-0565 | Alberta Batenburg | $5,280.00 | $0.00 |
| 6-0566 | Gregory Nelson | $6,455.00 | $0.00 |
| 6-0567 | THE,  Investments | $77,000.00 | $0.00 |

## Summary Trial Balance

### 1/1/2010 To 12/31/2010

| Acct# | Account Name | Total Debit | Total Credit |
|---|---|---|---|
| 6-0001 | 356 Family Part/Avery Waisbren | $2,348.50 | $0.00 |
| 6-0002 | Abby Gore | $4,857.50 | $0.00 |
| 6-0003 | Adriana Kapeller | $31,680.00 | $0.00 |
| 6-0005 | Albert Katz | $184,727.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,108.25 | $0.00 |
| 6-0007 | Alfred Bonadies | $3,960.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,391.00 | $0.00 |
| 6-0011 | Amir Ghavami | $32,775.50 | $0.00 |
| 6-0012 | Amy Gale | $23,183.50 | $0.00 |
| 6-0013 | Amy Krakover Trust | $5,131.00 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0016 | Janet Price | $15,840.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $9,257.00 | $0.00 |
| 6-0018 | Ada Grillo | $4,970.50 | $0.00 |
| 6-0019 | Alice Vidor | $16,115.00 | $0.00 |
| 6-0020 | Ziba Daneshi | $13,049.50 | $0.00 |
| 6-0021 | Arlene Levand ttee | $21,858.00 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $26,263.50 | $0.00 |
| 6-0023 | Arnold Diamond | $10,673.00 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $70,510.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $25,048.50 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0027 | Arthur Irvin | $4,499.50 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $21,775.50 | $0.00 |
| 6-0029 | Barbara Adler | $38,610.00 | $0.00 |
| 6-0032 | Barbara Koun | $20,130.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $70,287.50 | $0.00 |
| 6-0034 | Barbara Robbins | $23,674.50 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0037 | Berg 1990 Irrevocable Trust | $187,582.50 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $717,005.50 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0040 | Barry Wishengrad | $214.00 | $0.00 |
| 6-0041 | Bette Klein | $2,176.00 | $0.00 |
| 6-0043 | Bradley Turell | $27,355.00 | $0.00 |
| 6-0045 | Brenda Jilajian | $7,920.00 | $0.00 |
| 6-0046 | David Polis | $48,762.50 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $37,013.50 | $0.00 |
| 6-0049 | Cal Sunshine | $32,087.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,111.00 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $19,800.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $111,783.00 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $7,473.00 | $0.00 |

MYOB / Excel

| | | | |
|---|---|---|---|
| 6-0463 | Allan or Mellissa Galeano | $2,219.00 | $0.00 |
| 6-0464 | Andrew C. Matthiesen, TTEE | $67,651.00 | $0.00 |
| 6-0465 | Anthony Cravitz | $4,627.75 | $0.00 |
| 6-0466 | Anthony Gambucci | $11,880.00 | $0.00 |
| 6-0467 | Artemio Diaz & Juana Diaz | $15,840.00 | $0.00 |
| 6-0468 | Avery Waisbren | $2,279.50 | $0.00 |
| 6-0469 | Patrick /Betty FitzWill/BRIBET | $51,472.00 | $0.00 |
| 6-0470 | Bryan Anthony | $29,645.50 | $0.00 |
| 6-0471 | Cameron King | $2,303.50 | $0.00 |
| 6-0472 | Celia HInshaw & David Shaffer | $3,960.00 | $0.00 |
| 6-0473 | Craig M. Stephen, TTEE | $7,543.00 | $0.00 |
| 6-0474 | David Farling | $18,150.00 | $0.00 |
| 6-0476 | Dawn Famiglietti | $7,920.00 | $0.00 |
| 6-0477 | Elaine Waisbren | $4,446.00 | $0.00 |
| 6-0478 | Gaylan King Frederic, TTEE | $17,684.00 | $0.00 |
| 6-0479 | Geoffrey A. Rappoport | $2,337.00 | $0.00 |
| 6-0480 | Jeffrey H. & Karen Lewis | $7,996.50 | $0.00 |
| 6-0481 | Jeffrey E. Allen | $148,063.00 | $0.00 |
| 6-0482 | Jennifer Klein | $12,963.50 | $0.00 |
| 6-0483 | Jim Hartinger | $54,081.50 | $0.00 |
| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $66,787.50 | $0.00 |
| | | | |
| 6-0485 | Judith Bailey | $9,099.50 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $12,279.00 | $0.00 |
| 6-0487 | Ken Lee | $2,293.50 | $0.00 |
| 6-0489 | Kim Fernandez | $23,760.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $41,084.50 | $0.00 |
| 6-0491 | Lawrence Elkind | $164,340.00 | $0.00 |
| 6-0492 | Leonard Kalina | $12,870.00 | $0.00 |
| 6-0493 | Lisa Bruno | $5,486.00 | $0.00 |
| 6-0494 | Liza Molinary | $7,920.00 | $0.00 |
| 6-0495 | Lori Staff | $12,870.00 | $0.00 |
| 6-0496 | Lydia Matthews | $3,960.00 | $0.00 |
| 6-0497 | Marc Giamo | $19,800.00 | $0.00 |
| 6-0498 | Michael Czysz | $13,127.50 | $0.00 |
| 6-0499 | Monica Lambert | $13,033.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $8,728.00 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $7,633.00 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $13,860.00 | $0.00 |
| 6-0504 | Ralph Garren | $158,997.50 | $0.00 |
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $5,761.50 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,249.00 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $42,116.00 | $0.00 |
| 6-0510 | Shirley Reisman | $2,774.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $5,225.00 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $106,557.50 | $0.00 |
| | | | |
| 6-0513 | Stephen Green | $13,251.50 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $11,542.00 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $18,810.00 | $0.00 |
| 6-0516 | Tammy Hill | $80,260.50 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0518 | Tracy St. John | $15,510.00 | $0.00 |
| 6-0520 | Tim Faracy | $31,680.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $22,993.00 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $44,212.00 | $0.00 |
| | | | |
| 6-0523 | Jeanine Anderson | $3,960.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $9,388.00 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $11,715.00 | $0.00 |

## Summary Trial Balance

### 1/1/2011 To 12/31/2011

| Acct# | Account Name | Total Debit | Total Credit |
|-------|--------------|-------------|--------------|
| 6-0001 | 356 Family Part/Avery Waisbren | $2,585.00 | $0.00 |
| 6-0002 | Abby Gore | $5,076.00 | $0.00 |
| 6-0003 | Adriana Kapeller | $31,680.00 | $0.00 |
| 6-0005 | Albert Katz | $204,478.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,252.25 | $0.00 |
| 6-0007 | Alfred Bonadies | $2,310.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,525.00 | $0.00 |
| 6-0011 | Amir Ghavami | $31,832.50 | $0.00 |
| 6-0012 | Amy Gale | $36,579.00 | $0.00 |
| 6-0013 | Amy Krakover Trust | $1,269.50 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0016 | Janet Price | $15,840.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $11,647.50 | $0.00 |
| 6-0019 | Alice Vidor | $22,874.50 | $0.00 |
| 6-0020 | Ziba Daneshi | $61,278.50 | $0.00 |
| 6-0021 | Arlene Levand ttee | $30,244.50 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $29,364.00 | $0.00 |
| 6-0023 | Arnold Diamond | $17,816.50 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $76,223.50 | $0.00 |
| 6-0025 | Arshak Petrosyan | $27,580.50 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0027 | Arthur Irvin | $5,053.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $23,198.50 | $0.00 |
| 6-0029 | Barbara Adler | $50,179.50 | $0.00 |
| 6-0032 | Barbara Koun | $23,828.50 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $76,592.00 | $0.00 |
| 6-0034 | Barbara Robbins | $26,853.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $861,693.50 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0043 | Bradley Turell | $25,110.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $7,920.00 | $0.00 |
| 6-0046 | David Polis | $71,894.50 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $41,124.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,255.75 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $19,800.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $113,846.50 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $12,881.00 | $0.00 |
| 6-0056 | Carolyn Maxwell | $3,960.00 | $0.00 |
| 6-0057 | Caryn Lucas | $30,911.50 | $0.00 |
| 6-0058 | Cathy Fox | $11,880.00 | $0.00 |
| 6-0059 | Dennis Singer | $13,392.00 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $49,049.00 | $0.00 |

| | | | |
|---|---|---|---|
| 6-0470 | Bryan Anthony | $32,966.50 | $0.00 |
| 6-0471 | Cameron King | $2,595.50 | $0.00 |
| 6-0472 | Celia HInshaw & David Shaffer | $3,960.00 | $0.00 |
| 6-0473 | Craig M. Stephen, TTEE | $7,811.00 | $0.00 |
| 6-0475 | David Farling | $24,830.00 | $0.00 |
| 6-0476 | Dawn Famiglietti | $7,920.00 | $0.00 |
| 6-0477 | Elaine Waisbren | $4,893.50 | $0.00 |
| 6-0478 | Gaylan King Frederic, TTEE | $20,932.00 | $0.00 |
| 6-0479 | Geoffrey A. Rappoport | $2,803.50 | $0.00 |
| 6-0480 | Jeffrey H. & Karen Lewis | $10,066.00 | $0.00 |
| 6-0481 | Jeffrey E. Allen | $162,116.00 | $0.00 |
| 6-0482 | Jennifer Klein | $13,121.50 | $0.00 |
| 6-0483 | Jim Hartinger | $58,984.00 | $0.00 |
| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $63,256.50 | $0.00 |
| 6-0485 | Judith Bailey | $14,153.50 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $13,063.50 | $0.00 |
| 6-0487 | Ken Lee | $2,608.50 | $0.00 |
| 6-0489 | Kim Fernandez | $23,760.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $42,717.50 | $0.00 |
| 6-0491 | Lawrence Elkind | $196,232.00 | $0.00 |
| 6-0492 | Leonard Kalina | $15,840.00 | $0.00 |
| 6-0493 | Lisa Bruno | $7,000.50 | $0.00 |
| 6-0494 | Liza Molinary | $11,513.00 | $0.00 |
| 6-0495 | Lori Staff | $11,880.00 | $0.00 |
| 6-0496 | Lydia Matthews | $3,960.00 | $0.00 |
| 6-0497 | Marc Giamo | $19,800.00 | $0.00 |
| 6-0498 | Michael Czysz | $14,407.50 | $0.00 |
| 6-0499 | Monica Lambert | $20,988.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $28,140.00 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $11,990.50 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $19,800.00 | $0.00 |
| 6-0504 | Ralph Garren | $166,601.00 | $0.00 |
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $5,203.50 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,436.50 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $43,079.50 | $0.00 |
| 6-0510 | Shirley Reisman | $2,560.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $5,275.50 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $134,897.00 | $0.00 |
| 6-0513 | Stephen Green | $12,999.50 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $12,813.50 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $11,880.00 | $0.00 |
| 6-0516 | Tammy Hill | $93,781.00 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0520 | Tim Faracy | $31,680.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $25,287.50 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $63,573.00 | $0.00 |
| 6-0523 | Jeanine Anderson | $4,958.50 | $0.00 |
| 6-0524 | Laurie Moskowitz | $23,187.00 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $12,858.50 | $0.00 |
| 6-0527 | Sean Sullivan& Meghan Boustany | $9,977.50 | $0.00 |
| 6-0528 | Sean Sullivan & Molly Robotti | $10,167.00 | $0.00 |
| 6-0530 | H.B.H., Inc. | $29,297.50 | $0.00 |
| 6-0532 | Rebecca Koblick | $12,997.50 | $0.00 |
| 6-0533 | Travis Henning | $23,934.50 | $0.00 |
| 6-0536 | D. Robert Lewis | $69,826.00 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $7,920.00 | $0.00 |

9/3/2015                                     MYOB / Excel                                      1:17 PM

## Summary Trial Balance
### 1/1/2012 To 12/31/2012

| Acct# | Account Name | Total Debit | Total Credit |
|-------|-------------|-------------|--------------|
| 6-0001 | 356 Family Part/Avery Waisbren | $2,575.50 | $0.00 |
| 6-0002 | Abby Gore | $5,139.00 | $0.00 |
| 6-0003 | Adriana Kapeller | $63,404.50 | $0.00 |
| 6-0005 | Albert Katz | $207,285.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,292.75 | $0.00 |
| 6-0007 | Alfred Bonadies | $1,980.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $2,636.00 | $0.00 |
| 6-0011 | Amir Ghavami | $31,049.00 | $0.00 |
| 6-0012 | Amy Gale | $36,209.50 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $55,200.00 | $0.00 |
| 6-0016 | Janet Price | $15,840.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $28,538.50 | $0.00 |
| 6-0019 | Alice Vidor | $20,046.50 | $0.00 |
| 6-0020 | Ziba Daneshi | $119,431.50 | $0.00 |
| 6-0021 | Arlene Levand ttee | $13,967.50 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $35,337.00 | $0.00 |
| 6-0023 | Arnold Diamond | $44,528.00 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $78,159.50 | $0.00 |
| 6-0025 | Arshak Petrosyan | $28,594.00 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $24,883.50 | $0.00 |
| 6-0029 | Barbara Adler | $64,537.00 | $0.00 |
| 6-0032 | Barbara Koun | $23,760.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $77,780.50 | $0.00 |
| 6-0034 | Barbara Robbins | $36,400.50 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $1,113,778.50 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0043 | Bradley Turell | $25,805.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $11,880.00 | $0.00 |
| 6-0046 | David Polis | $86,803.50 | $0.00 |
| 6-0047 | Buckthorn Lease/Denver T.Dale | $60,391.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,287.25 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $19,800.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $112,589.00 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $23,131.50 | $0.00 |
| 6-0056 | Carolyn Maxwell | $3,960.00 | $0.00 |
| 6-0057 | Caryn Lucas | $31,068.00 | $0.00 |
| 6-0058 | Cathy Fox | $9,900.00 | $0.00 |
| 6-0059 | Dennis Singer | $16,201.50 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $51,990.00 | $0.00 |
| 6-0061 | Charlene Stevens | $43,560.00 | $0.00 |

| | | | |
|---|---|---|---|
| 6-0478 | Gaylan King Frederic, TTEE | $21,010.50 | $0.00 |
| 6-0479 | Geoffrey A. Rappoport | $2,606.50 | $0.00 |
| 6-0480 | Jeffrey H. & Karen Lewis | $12,910.50 | $0.00 |
| 6-0481 | Jeffrey E. Allen | $164,864.00 | $0.00 |
| 6-0482 | Jennifer Klein | $12,813.00 | $0.00 |
| 6-0483 | Jim Hartinger | $71,175.50 | $0.00 |
| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $64,492.50 | $0.00 |
| | | | |
| 6-0485 | Judith Bailey | $20,183.00 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $14,061.00 | $0.00 |
| 6-0487 | Ken Lee | $2,617.50 | $0.00 |
| 6-0489 | Kim Fernandez | $23,760.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $55,560.50 | $0.00 |
| 6-0491 | Lawrence Elkind | $222,936.50 | $0.00 |
| 6-0492 | Leonard Kalina | $18,480.00 | $0.00 |
| 6-0493 | Lisa Bruno | $9,313.00 | $0.00 |
| 6-0494 | Liza Molinary | $18,591.50 | $0.00 |
| 6-0495 | Lori Staff | $11,880.00 | $0.00 |
| 6-0496 | Lydia Matthews | $3,960.00 | $0.00 |
| 6-0497 | Marc Giamo | $18,150.00 | $0.00 |
| 6-0498 | Michael Czysz | $12,808.00 | $0.00 |
| 6-0499 | Monica Lambert | $29,617.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $51,336.50 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $13,582.50 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $19,800.00 | $0.00 |
| 6-0504 | Ralph Garren | $223,385.00 | $0.00 |
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $5,193.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,430.50 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $75,976.50 | $0.00 |
| 6-0510 | Shirley Reisman | $2,469.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $5,215.50 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $155,412.00 | $0.00 |
| | | | |
| 6-0513 | Stephen Green | $13,033.00 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $15,153.50 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $11,880.00 | $0.00 |
| 6-0516 | Tammy Hill | $93,183.50 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0520 | Tim Faracy | $34,700.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $25,837.00 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $81,456.00 | $0.00 |
| | | | |
| 6-0523 | Jeanine Anderson | $7,922.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $22,037.50 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $13,013.50 | $0.00 |
| 6-0527 | Sean Sullivan& Meghan Boustany | $853.00 | $0.00 |
| | | | |
| 6-0528 | Sean Sullivan & Molly Robotti | $10,370.50 | $0.00 |
| 6-0530 | H.B.H., Inc. | $45,090.00 | $0.00 |
| 6-0532 | Rebecca Koblick | $12,667.50 | $0.00 |
| 6-0533 | Travis Henning | $23,854.00 | $0.00 |
| 6-0536 | D. Robert Lewis | $75,696.00 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $7,920.00 | $0.00 |
| 6-0539 | Andrea Byers Kaplan | $13,055.50 | $0.00 |
| 6-0540 | Andrea Kopald | $7,779.50 | $0.00 |
| 6-0541 | Anthony & Treva Lewis | $39,600.00 | $0.00 |
| 6-0542 | Joel Nelson, Trustee | $11,880.00 | $0.00 |
| 6-0543 | Ken & Shelly Schofield | $76,153.50 | $0.00 |
| 6-0544 | Beatrice Jaffe | $19,800.00 | $0.00 |
| 6-0545 | Beverly Rosenthal | $23,127.50 | $0.00 |

## Summary Trial Balance

### 1/1/2013 To 12/31/2013

| Acct# | Account Name | Total Debit | Total Credit |
|-------|--------------|-------------|--------------|
| 6-0001 | 356 Family Part/Avery Waisbren | $1,753.00 | $0.00 |
| 6-0002 | Abby Gore | $7,022.00 | $0.00 |
| 6-0003 | Adriana Kapeller | $75,620.00 | $0.00 |
| 6-0005 | Albert Katz | $212,295.00 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,806.50 | $0.00 |
| 6-0007 | Alfred Bonadies | $1,980.00 | $0.00 |
| 6-0008 | Alice Ward | $3,960.00 | $0.00 |
| 6-0010 | All States Office Machines Inc | $870.00 | $0.00 |
| 6-0011 | Amir Ghavami | $32,389.00 | $0.00 |
| 6-0012 | Amy Gale | $36,651.50 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $11,880.00 | $0.00 |
| 6-0015 | Ann Noel | $53,766.00 | $0.00 |
| 6-0016 | Janet Price | $15,840.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $45,556.00 | $0.00 |
| 6-0019 | Alice Vidor | $14,915.00 | $0.00 |
| 6-0020 | Ziba Daneshi | $127,264.50 | $0.00 |
| 6-0021 | Arlene Levand ttee | $13,990.00 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $42,723.00 | $0.00 |
| 6-0023 | Arnold Diamond | $51,127.50 | $0.00 |
| 6-0024 | Arnold Laven - Steven Gardener | $79,959.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $28,762.50 | $0.00 |
| 6-0026 | Arthur Brownstein | $3,960.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $27,788.50 | $0.00 |
| 6-0029 | Barbara Adler | $64,199.50 | $0.00 |
| 6-0032 | Barbara Koun | $23,760.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $83,431.00 | $0.00 |
| 6-0034 | Barbara Robbins | $41,476.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $7,920.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $1,187,900.00 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $7,920.00 | $0.00 |
| 6-0043 | Bradley Turell | $25,796.00 | $0.00 |
| 6-0045 | Brenda Jilajian | $11,880.00 | $0.00 |
| 6-0046 | David Polis | $89,299.50 | $0.00 |
| 6-0050 | Camille Lievense | $7,920.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,449.25 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $19,800.00 | $0.00 |
| 6-0053 | Carole Angermeir | $3,960.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $118,976.50 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $38,141.50 | $0.00 |
| 6-0056 | Carolyn Maxwell | $3,960.00 | $0.00 |
| 6-0057 | Caryn Lucas | $32,115.50 | $0.00 |
| 6-0059 | Dennis Singer | $16,171.00 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $63,575.00 | $0.00 |
| 6-0061 | Charlene Stevens | $46,530.00 | $0.00 |
| 6-0062 | Charles Andrew Homan, TTEE | $77,376.50 | $0.00 |
| 6-0063 | Charles Gillis | $39,039.50 | $0.00 |
| 6-0064 | Charles Nisley | $11,880.00 | $0.00 |
| 6-0066 | Christian Ebsen  & Dorothy | $98,640.50 | $0.00 |

| | | | |
|---|---|---|---|
| 6-0489 | Kim Fernandez | $23,760.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $56,888.00 | $0.00 |
| 6-0491 | Lawrence Elkind | $243,750.00 | $0.00 |
| 6-0492 | Leonard Kalina | $19,800.00 | $0.00 |
| 6-0493 | Lisa Bruno | $24,779.50 | $0.00 |
| 6-0494 | Liza Molinary | $20,827.50 | $0.00 |
| 6-0495 | Lori Staff | $13,865.50 | $0.00 |
| 6-0496 | Lydia Matthews | $3,960.00 | $0.00 |
| 6-0498 | Michael Czysz | $13,350.50 | $0.00 |
| 6-0499 | Monica Lambert | $32,950.50 | $0.00 |
| 6-0500 | Michelle Bolotin | $52,331.50 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $14,901.00 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $19,800.00 | $0.00 |
| 6-0504 | Ralph Garren | $245,278.00 | $0.00 |
| 6-0505 | Robert Hopper | $11,880.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $5,408.50 | $0.00 |
| 6-0508 | Samantha Rappoport | $2,580.00 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $159,654.00 | $0.00 |
| 6-0510 | Shirley Reisman | $2,607.00 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $5,206.50 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $179,260.00 | $0.00 |
| 6-0513 | Stephen Green | $29,636.00 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $21,676.00 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $11,880.00 | $0.00 |
| 6-0516 | Tammy Hill | $111,128.00 | $0.00 |
| 6-0517 | Terry Richey | $3,960.00 | $0.00 |
| 6-0520 | Tim Faracy | $35,640.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $26,739.00 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $107,397.00 | $0.00 |
| 6-0523 | Jeanine Anderson | $7,920.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $20,818.50 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $13,391.50 | $0.00 |
| 6-0528 | Sean Sullivan & Molly Robotti | $10,537.00 | $0.00 |
| 6-0530 | H.B.H., Inc. | $66,770.00 | $0.00 |
| 6-0532 | Rebecca Koblick | $13,224.00 | $0.00 |
| 6-0533 | Travis Henning | $23,760.00 | $0.00 |
| 6-0536 | D. Robert Lewis | $77,729.50 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $7,920.00 | $0.00 |
| 6-0539 | Andrea Byers Kaplan | $13,448.00 | $0.00 |
| 6-0540 | Andrea Kopald | $7,739.50 | $0.00 |
| 6-0541 | Anthony & Treva Lewis | $39,600.00 | $0.00 |
| 6-0542 | Joel Nelson, Trustee | $11,536.50 | $0.00 |
| 6-0543 | Ken & Shelly Schofield | $84,062.00 | $0.00 |
| 6-0544 | Beatrice Jaffe | $22,440.00 | $0.00 |
| 6-0545 | Beverly Rosenthal | $23,719.50 | $0.00 |
| 6-0546 | BONNIE LAMIE SCHULMAN | $5,236.50 | $0.00 |
| 6-0547 | Brian Chase&Heather Gravendaal | $37,657.00 | $0.00 |
| 6-0548 | Brian Nelson | $7,036.00 | $0.00 |
| 6-0549 | Bruce Brennan | $31,680.00 | $0.00 |
| 6-0551 | Carol Roles | $11,880.00 | $0.00 |
| 6-0554 | Clark Vautier | $11,880.00 | $0.00 |
| 6-0555 | Craig & Michelle Covello | $214,303.50 | $0.00 |
| 6-0556 | Deborah Alexander | $8,112.00 | $0.00 |
| 6-0561 | Ellen Jane Bright/BOYSTER KIM | $45,836.00 | $0.00 |
| 6-0562 | Al Checco | $36,390.50 | $0.00 |
| 6-0563 | Gail Balsillie | $17,598.00 | $0.00 |
| 6-0564 | George King | $5,297.50 | $0.00 |

## Summary Trial Balance

1/1/2014 To 7/31/2014

| Acct# | Account Name | Total Debit | Total Credit |
|-------|--------------|-------------|--------------|
| 6-0002 | Abby Gore | $3,918.00 | $0.00 |
| 6-0003 | Adriana Kapeller | $39,777.50 | $0.00 |
| 6-0005 | Albert Katz | $105,759.00 | $0.00 |
| 6-0006 | Alexander Bleecker | $1,430.50 | $0.00 |
| 6-0007 | Alfred Bonadies | $990.00 | $0.00 |
| 6-0008 | Alice Ward | $1,980.00 | $0.00 |
| 6-0011 | Amir Ghavami | $15,740.50 | $0.00 |
| 6-0012 | Amy Gale | $17,604.00 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $5,940.00 | $0.00 |
| 6-0015 | Ann Noel | $29,034.00 | $0.00 |
| 6-0016 | Janet Price | $7,920.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $27,065.00 | $0.00 |
| 6-0019 | Alice Vidor | $7,076.50 | $0.00 |
| 6-0020 | Ziba Daneshi | $69,134.00 | $0.00 |
| 6-0021 | Arlene Levand ttee | $6,950.00 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $28,016.00 | $0.00 |
| 6-0023 | Arnold Diamond | $25,590.00 | $0.00 |
| 6-0025 | Arshak Petrosyan | $14,145.00 | $0.00 |
| 6-0026 | Arthur Brownstein | $1,980.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $15,435.00 | $0.00 |
| 6-0029 | Barbara Adler | $32,101.50 | $0.00 |
| 6-0032 | Barbara Koun | $11,880.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $33,585.50 | $0.00 |
| 6-0034 | Barbara Robbins | $23,291.50 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $3,960.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $632,404.50 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $3,960.00 | $0.00 |
| 6-0043 | Bradley Turell | $12,814.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $5,940.00 | $0.00 |
| 6-0046 | David Polis | $48,494.00 | $0.00 |
| 6-0050 | Camille Lievense | $3,960.00 | $0.00 |
| 6-0051 | Carly Silliman | $1,358.00 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $9,900.00 | $0.00 |
| 6-0053 | Carole Angermeir | $1,980.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $60,810.00 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $22,130.00 | $0.00 |
| 6-0056 | Carolyn Maxwell | $1,980.00 | $0.00 |
| 6-0057 | Caryn Lucas | $16,037.00 | $0.00 |
| 6-0059 | Dennis Singer | $7,932.50 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $35,466.50 | $0.00 |
| 6-0061 | Charlene Stevens | $25,145.00 | $0.00 |
| 6-0062 | Charles Andrew Homan, TTEE | $37,543.50 | $0.00 |
| 6-0063 | Charles Gillis | $19,187.00 | $0.00 |
| 6-0064 | Charles Nisley | $5,940.00 | $0.00 |
| 6-0066 | Christian Ebsen  & Dorothy | $66,147.50 | $0.00 |
| 6-0067 | Christina Henteleff & Steven | $36,921.50 | $0.00 |
| 6-0068 | Christoph Kapeller | $15,840.00 | $0.00 |
| 6-0069 | Chuck Greenwood | $495.00 | $0.00 |
| 6-0070 | Clara Koszegi Irr. Tst. #1 | $16,499.50 | $0.00 |

| 6-0503 | Peter Glucklick & Helen Ross | $12,091.50 | $0.00 |
|--------|------------------------------|------------|-------|
| 6-0504 | Ralph Garren | $119,712.00 | $0.00 |
| 6-0505 | Robert Hopper | $5,940.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $2,806.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $1,029.50 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $106,328.00 | $0.00 |
| 6-0510 | Shirley Reisman | $1,240.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $2,530.50 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $88,843.00 | $0.00 |
| 6-0513 | Stephen Green | $18,588.50 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $10,616.50 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $5,940.00 | $0.00 |
| 6-0516 | Tammy Hill | $57,468.50 | $0.00 |
| 6-0517 | Terry Richey | $1,980.00 | $0.00 |
| 6-0520 | Tim Faracy | $17,820.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $13,489.50 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $64,029.50 | $0.00 |
| 6-0523 | Jeanine Anderson | $3,960.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $9,862.50 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $6,623.50 | $0.00 |
| 6-0528 | Sean Sullivan & Molly Robotti | $5,342.50 | $0.00 |
| 6-0530 | H.B.H., Inc. | $38,789.50 | $0.00 |
| 6-0532 | Rebecca Koblick | $6,439.00 | $0.00 |
| 6-0533 | Travis Henning | $11,880.00 | $0.00 |
| 6-0536 | D. Robert Lewis | $38,825.00 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $3,960.00 | $0.00 |
| 6-0539 | Andrea Byers Kaplan | $6,700.00 | $0.00 |
| 6-0540 | Andrea Kopald | $3,870.00 | $0.00 |
| 6-0541 | Anthony & Treva Lewis | $20,510.50 | $0.00 |
| 6-0542 | Joel Nelson, Trustee | $18,921.00 | $0.00 |
| 6-0543 | Ken & Shelly Schofield | $45,142.50 | $0.00 |
| 6-0544 | Beatrice Jaffe | $25,740.00 | $0.00 |
| 6-0545 | Beverly Rosenthal | $11,929.00 | $0.00 |
| 6-0546 | BONNIE LAMIE SCHULMAN | $2,805.00 | $0.00 |
| 6-0547 | Brian Chase&Heather Gravendaal | $20,447.00 | $0.00 |
| 6-0549 | Bruce Brennan | $18,564.50 | $0.00 |
| 6-0551 | Carol Roles | $5,940.00 | $0.00 |
| 6-0554 | Clark Vautier | $5,940.00 | $0.00 |
| 6-0555 | Craig & Michelle Covello | $119,657.00 | $0.00 |
| 6-0556 | Deborah Alexander | $4,620.00 | $0.00 |
| 6-0561 | Ellen Jane Bright/BOYSTER KIM | $22,444.00 | $0.00 |
| 6-0562 | Al Checco | $23,971.50 | $0.00 |
| 6-0563 | Gail Balsillie | $18,885.50 | $0.00 |
| 6-0564 | George King | $2,850.00 | $0.00 |
| 6-0565 | Alberta Batenburg | $3,960.00 | $0.00 |
| 6-0566 | Gregory Nelson | $6,336.00 | $0.00 |
| 6-0568 | Hideo & Iose Yanagita | $6,526.50 | $0.00 |
| 6-0570 | Ivory Smith | $1,980.00 | $0.00 |
| 6-0571 | Jay Mackey, TTEE | $7,920.00 | $0.00 |
| 6-0572 | Jeff Fiedler | $64,032.00 | $0.00 |
| 6-0575 | Pensco Jennifer Gealy IRA | $10,424.00 | $0.00 |
| 6-0576 | Jeremy Schwieger | $12,981.00 | $0.00 |
| 6-0577 | Joseph Wright | $2,596.00 | $0.00 |
| 6-0578 | Ken Whitman | $13,036.00 | $0.00 |
| 6-0579 | Kurt Jacobson | $3,960.00 | $0.00 |
| 6-0581 | Mary Alexander | $7,920.00 | $0.00 |
| 6-0582 | Milt Schuffman | $10,526.50 | $0.00 |

## Summary Trial Balance

### 8/1/2014 To 8/30/2014

| Acct# | Account Name | Total Debit | Total Credit |
|---|---|---|---|
| 6-0002 | Abby Gore | $675.50 | $0.00 |
| 6-0003 | Adriana Kapeller | $6,621.00 | $0.00 |
| 6-0005 | Albert Katz | $18,426.50 | $0.00 |
| 6-0006 | Alexander Bleecker | $242.50 | $0.00 |
| 6-0008 | Alice Ward | $330.00 | $0.00 |
| 6-0011 | Amir Ghavami | $2,693.00 | $0.00 |
| 6-0012 | Amy Gale | $3,060.00 | $0.00 |
| 6-0014 | Andrew Blaine Miller, TTEE | $990.00 | $0.00 |
| 6-0015 | Ann Noel | $4,600.00 | $0.00 |
| 6-0016 | Janet Price | $1,320.00 | $0.00 |
| 6-0017 | Arlene Levand family trust | $4,593.50 | $0.00 |
| 6-0019 | Alice Vidor | $2,183.00 | $0.00 |
| 6-0020 | Ziba Daneshi | $11,551.00 | $0.00 |
| 6-0021 | Arlene Levand ttee | $1,213.50 | $0.00 |
| 6-0022 | Arnold & Joan Wolfe | $4,366.50 | $0.00 |
| 6-0023 | Arnold Diamond | $4,631.50 | $0.00 |
| 6-0025 | Arshak Petrosyan | $2,453.50 | $0.00 |
| 6-0026 | Arthur Brownstein | $330.00 | $0.00 |
| 6-0028 | Avedis & Cristina Kundakjian | $2,955.00 | $0.00 |
| 6-0029 | Barbara Adler | $5,326.50 | $0.00 |
| 6-0032 | Barbara Koun | $1,980.00 | $0.00 |
| 6-0033 | Barbara Laven Trust-Steve gard | $6,849.00 | $0.00 |
| 6-0034 | Barbara Robbins | $4,165.00 | $0.00 |
| 6-0035 | Barbara Snyder, TTEE | $660.00 | $0.00 |
| 6-0038 | Berwyn L. Friedman, TTEE | $110,815.00 | $0.00 |
| 6-0039 | Bonnie Snyder Rubin | $660.00 | $0.00 |
| 6-0043 | Bradley Turell | $2,154.50 | $0.00 |
| 6-0045 | Brenda Jilajian | $990.00 | $0.00 |
| 6-0046 | David Polis | $8,231.50 | $0.00 |
| 6-0050 | Camille Lievense | $660.00 | $0.00 |
| 6-0051 | Carly Silliman | $233.00 | $0.00 |
| 6-0052 | Carol Wingate, TTEE | $1,650.00 | $0.00 |
| 6-0053 | Carole Angermeir | $330.00 | $0.00 |
| 6-0054 | Carole Bolotin, TTEE | $10,496.50 | $0.00 |
| 6-0055 | Carole Brill, TTEE | $3,944.00 | $0.00 |
| 6-0056 | Carolyn Maxwell | $330.00 | $0.00 |
| 6-0057 | Caryn Lucas | $2,816.00 | $0.00 |
| 6-0059 | Dennis Singer | $1,320.00 | $0.00 |
| 6-0060 | Chantal Roche-Cohen | $5,942.00 | $0.00 |
| 6-0061 | Charlene Stevens | $4,300.00 | $0.00 |
| 6-0062 | Charles Andrew Homan, TTEE | $6,263.00 | $0.00 |
| 6-0063 | Charles Gillis | $3,239.50 | $0.00 |
| 6-0064 | Charles Nisley | $990.00 | $0.00 |
| 6-0066 | Christian Ebsen  & Dorothy | $11,927.00 | $0.00 |
| 6-0067 | Christina Henteleff & Steven | $7,068.50 | $0.00 |
| 6-0068 | Christoph Kapeller | $2,640.00 | $0.00 |
| 6-0069 | Chuck Greenwood | $82.00 | $0.00 |
| 6-0070 | Clara Koszegi Irr. Tst. #1 | $2,768.00 | $0.00 |
| 6-0071 | Clayton Landey | $660.00 | $0.00 |
| 6-0072 | Clifford kahn | $1,637.00 | $0.00 |
| 6-0074 | Corrine S. Wishengrad | $12,433.00 | $0.00 |
| 6-0075 | Crescent Orpelli | $1,335.00 | $0.00 |
| 6-0076 | Cyndi Friedman | $3,401.50 | $0.00 |

| 6-0484 | Chicago Assoc - Joseph/Be Kahn | $9,014.50 | $0.00 |
|--------|--------------------------------|-----------|-------|
| 6-0485 | Judith Bailey | $1,744.00 | $0.00 |
| 6-0486 | Katherine Alyse Kolligian | $1,134.00 | $0.00 |
| 6-0487 | Ken Lee | $220.00 | $0.00 |
| 6-0489 | Kim Fernandez | $2,000.00 | $0.00 |
| 6-0490 | Larry Tarnol & Carole Tarnol | $5,552.50 | $0.00 |
| 6-0491 | Lawrence Elkind | $26,478.50 | $0.00 |
| 6-0492 | Leonard Kalina | $1,650.00 | $0.00 |
| 6-0493 | Lisa Bruno | $2,784.00 | $0.00 |
| 6-0496 | Lydia Matthews | $330.00 | $0.00 |
| 6-0498 | Michael Czysz | $2,189.00 | $0.00 |
| 6-0499 | Monica Lambert | $2,648.00 | $0.00 |
| 6-0500 | Michelle Bolotin | $4,643.50 | $0.00 |
| 6-0502 | Patricia A. Masaryk | $1,202.50 | $0.00 |
| 6-0503 | Peter Glucklick & Helen Ross | $3,059.00 | $0.00 |
| 6-0504 | Ralph Garren | $20,398.50 | $0.00 |
| 6-0505 | Robert Hopper | $990.00 | $0.00 |
| 6-0506 | Rochelle Goldsmith | $477.00 | $0.00 |
| 6-0508 | Samantha Rappoport | $210.00 | $0.00 |
| 6-0509 | Riviera Invesment, L.P. | $18,604.00 | $0.00 |
| 6-0510 | Shirley Reisman | $220.50 | $0.00 |
| 6-0511 | Spartan Ventures, Inc. | $456.50 | $0.00 |
| 6-0512 | Stan Grobelny or Judy Grobelny | $15,107.00 | $0.00 |
| 6-0513 | Stephen Green | $2,637.00 | $0.00 |
| 6-0514 | Steve or Tamara Wyland | $1,771.50 | $0.00 |
| 6-0515 | Strategy Consulting Grp. Inc. | $990.00 | $0.00 |
| 6-0516 | Tammy Hill | $10,003.50 | $0.00 |
| 6-0517 | Terry Richey | $330.00 | $0.00 |
| 6-0520 | Tim Faracy | $2,970.00 | $0.00 |
| 6-0521 | William Frankenstein, Trustee | $2,325.00 | $0.00 |
| 6-0522 | Zahi Faranesh & Abbey Faranesh | $12,212.50 | $0.00 |
| 6-0523 | Jeanine Anderson | $660.00 | $0.00 |
| 6-0524 | Laurie Moskowitz | $1,742.00 | $0.00 |
| 6-0526 | Sean Sullivan & Devin Sullivan | $1,121.50 | $0.00 |
| 6-0528 | Sean Sullivan & Molly Robotti | $919.50 | $0.00 |
| 6-0530 | H.B.H., Inc. | $7,634.00 | $0.00 |
| 6-0532 | Rebecca Koblick | $1,104.50 | $0.00 |
| 6-0533 | Travis Henning | $1,980.00 | $0.00 |
| 6-0536 | D. Robert Lewis | $6,639.50 | $0.00 |
| 6-0538 | Anbarasu Sanjeevi | $660.00 | $0.00 |
| 6-0539 | Andrea Byers Kaplan | $1,171.50 | $0.00 |
| 6-0540 | Andrea Kopald | $688.00 | $0.00 |
| 6-0541 | Anthony & Treva Lewis | $4,004.00 | $0.00 |
| 6-0542 | Joel Nelson, Trustee | $5,159.50 | $0.00 |
| 6-0543 | Ken & Shelly Schofield | $8,001.50 | $0.00 |
| 6-0544 | Beatrice Jaffe | $4,290.00 | $0.00 |
| 6-0546 | BONNIE LAMIE SCHULMAN | $481.00 | $0.00 |
| 6-0547 | Brian Chase&Heather Gravendaal | $3,361.00 | $0.00 |
| 6-0549 | Bruce Brennan | $3,309.00 | $0.00 |
| 6-0551 | Carol Roles | $990.00 | $0.00 |
| 6-0554 | Clark Vautier | $990.00 | $0.00 |
| 6-0555 | Craig & Michelle Covello | $20,266.50 | $0.00 |
| 6-0556 | Deborah Alexander | $990.00 | $0.00 |
| 6-0561 | Ellen Jane Bright/BOYSTER KIM | $3,672.00 | $0.00 |
| 6-0562 | Al Checco | $3,988.00 | $0.00 |
| 6-0563 | Gail Balsillie | $2,703.00 | $0.00 |
| 6-0564 | George King | $484.50 | $0.00 |
| 6-0565 | Alberta Batenburg | $660.00 | $0.00 |
| 6-0566 | Gregory Nelson | $1,099.00 | $0.00 |
| 6-0568 | Hideo & Iose Yanagita | $1,118.50 | $0.00 |

# EXHIBIT 44

**EXHIBIT 44**



SPERTUS
LANDES &
UMHOFER
LLP

Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
P 310.826.4700  F 310.826.4711
www.spertuslaw.com

June 2, 2015

<u>VIA EMAIL</u>

Ms. Ranee A. Katzenstein
Mr. Paul G. Stern
Assistant United States Attorneys
Major Frauds Section
United States Attorney's Office
312 N. Spring St., 11th Floor
Los Angeles, CA  90012
Ranee.Katzenstein@usdoj.gov
Paul.Stern@usdoj.gov

      Re:    <u>United States v. Joel Barry Gillis and Edward Wishner</u>, CR No. 14-712-SJO

Dear Counsel,

      We are in receipt of the spreadsheet containing the government's theory of loss sustained by investors in Nationwide Automated Systems, Inc. (NASI).  We write to seek clarification of the government's loss analysis and request additional information that will provide the Court with a more reliable, accurate and complete picture of the intended loss in this case.  We have made repeated requests for this information from the Receiver, but the Receiver has refused to provide it to us to date.

      It appears the government has attempted to calculate loss based on a bank records analysis beginning in September 2007, which purports to show the amount of money each investor gave to NASI and how much money NASI in turn paid out to each investor.  There are a number of issues with the government's theory of loss.  Since it is the government's burden to prove loss, *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997), the following information should both be provided to Mr. Gillis and Mr. Wishner and included in the government's loss analysis.

      First, please provide and account for the total payments NASI made to each investor listed in the spreadsheet, including amounts made prior to 2007.  Despite recognizing NASI's investor files date back to 1996, and recognizing that payments to losing investors must be credited against loss, *see United States v. Van Alstyne*, 585 F.3d 803, 818 (9th Cir. 2009), the

James W. Spertus | *jim@spertuslaw.com*
Ezra D. Landes | *ezra@spertuslaw.com*
Matthew Umhofer | *matthew@spertuslaw.com*

Rachel L. Fiset | *rachel@spertuslaw.com*
Julia Livingston | *julia@spertuslaw.com*
Suzanne S. Obeda | *suzie@spertuslaw.com*
Samuel A. Josephs | *sam@spertuslaw.com*

Dolly K. Hansen | *dolly@spertuslaw.com*
Luke Kuo | *luke@spertuslaw.com*
Diane Bang | *diane@spertuslaw.com*



SPERTUS
LANDES &
UMHOFER
LLP

June 2, 2015
Page 2 of 3

government's spreadsheet lists no payments prior to 2007 for the overwhelming majority of investors.

Second, please provide a breakdown of what percentage of each investor's total investment constituted re-investment of money previously paid to that investor. In other words, looking at the government's spread sheet it would appear that the "Deposits" column represents each investor's investment without accounting for the amount of money the investors profited from NASI and then re-invested back into NASI. Such reinvestment is critical to any loss calculation because an investor's original investment reflects the amount Mr. Gillis and Mr. Wishner understood that investor would lose at the conclusion of the Ponzi scheme. For example, an investor who invested $5,000 in 2001 and was paid 30% returns annually out of other investors' investments cannot be said to have lost $24,500 when the scheme ended in 2014. Both intended and actual loss would be no more than the $5,000 original investment. The government's current loss theory distorts this reality.

Third, the government's loss analysis does not include approximately $18M returned to investors from 2007 forward for "buy backs" of the machines. That number, as well as the number paid to investors prior to 2007 for "buy backs" must be credited against loss.

Finally, after viewing the government's spreadsheet, the Court would likely come away with the conclusion that Mr. Gillis and Mr. Wishner profited $127M from the scheme. However, that is obviously not true. Please provide the amounts that "net winners" profited to show what NASI paid to all investors, and how much of that $127M actually went to Mr. Gillis and Mr. Wishner. We have requested this data several times from the Receiver, who is pursuing investors' profits as part of its "clawback" efforts. Such information is critical to the Court understanding the nature and circumstances of the offense.

//
//



SPERTUS
LANDES &
UMHOFER
LLP

June 2, 2015
Page 3 of 3

   We appreciate your prompt attention to these requests, given the amount of analysis required prior to sentencing.  Please do not hesitate to contact us with any questions or if you would like to discuss any of these issues further.

Very truly yours,

James W. Spertus
Samuel A. Josephs

cc:  Reuven L. Cohen
   724 South Spring Street, Suite 903
   Los Angeles, CA 90014
   rcohen@dordiwilliamscohen.com

# EXHIBIT 45

**EXHIBIT 45**



SPERTUS
LANDES &
UMHOFER
LLP

Spertus, Landes & Umhofer, LLP
1990 South Bundy Drive, Suite 705
Los Angeles, CA 90025
P 310.826.4700  F 310.826.4711
www.spertuslaw.com

July 28, 2015

<u>VIA EMAIL</u>

Ms. Ranee A. Katzenstein
Mr. Paul G. Stern
Assistant United States Attorneys
Major Frauds Section
United States Attorney's Office
312 N. Spring St., 11th Floor
Los Angeles, CA  90012
Ranee.Katzenstein@usdoj.gov
Paul.Stern@usdoj.gov

  Re: <u>United States v. Joel Barry Gillis and Edward Wishner</u>, CR No. 14-712-SJO

Dear Counsel,

  I am writing in response to your letter dated July 23, 2015.  We have made several requests for information pertaining to the net winners both from the government as well as from the receiver.  We have not received anything in response to our requests, other than the government's conclusion that such information is not, in its view, relevant to the Court's sentencing analysis.  What is relevant to the Court's sentencing analysis is a matter for the Court to determine.  Since we are permitted an opportunity to present the Court with information we believe to be highly relevant under § 3553(a), we are once again requesting such information.[1]

  Thank you for your offer to assist in obtaining this information from the receiver.  Please request this information from the receiver on our behalf so that we are able to review it and present it to the Court.

---

[1] In addition, you write in your July 23 letter that the amount of restitution is not affected by any gain net winners received.  That is not true, since the goal of the receiver's clawback efforts is to make net losers whole through money received from net winners, thereby reducing net losers' actual loss and the restitution they are to be paid.

James W. Spertus | jim@spertuslaw.com Rachel L. Fiset | rachel@spertuslaw.com Dolly K. Hansen | dolly@spertuslaw.com
Ezra D. Landes | ezra@spertuslaw.com Julia Livingston | julia@spertuslaw.com Luke Kuo | luke@spertuslaw.com
Matthew Umhofer | matthew@spertuslaw.com Suzanne S. Obeda | suzie@spertuslaw.com Diane Bang | diane@spertuslaw.com
Samuel A. Josephs | sam@spertuslaw.com



**S P E R T U S**

**L A N D E S** &

**U M H O F E R**
LLP

July 28, 2015
Page 2 of 2

I appreciate your prompt attention to this request.  Please do not hesitate to contact me with any questions or if you would like to discuss any of these issues further.

Very truly yours,

Samuel A. Josephs

cc:     Reuven L. Cohen
        Marc Williams
        724 South Spring Street, Suite 903
        Los Angeles, CA 90014
        rcohen@dordiwilliamscohen.com
        mwilliams@dordiwilliamscohen.com

# EXHIBIT 46

**EXHIBIT 46**

1    SPERTUS, LANDES & UMHOFER, LLP
     James W. Spertus, Esq. (SBN 159825)
2    Dolly K. Hansen, Esq. (SBN 254026)
     1990 South Bundy Dr., Suite 705
3    Los Angeles, California 90025
     Telephone: (310) 826-4700
4    Facsimile:  (310) 826-4711

5    Attorneys for Defendant Joel Gillis

6

7

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11   SECURITIES AND EXCHANGE          CASE NO.  CV 14-07249-SJO
     COMMISSION,
12                                    **DEFENDANT JOEL GILLIS'S**
                   Plaintiff,         **ANSWER TO PLAINTIFF**
13                                    **SECURITIES AND EXCHANGE**
               v.                     **COMMISSION'S COMPLAINT**
14
     NATIONWIDE AUTOMATED
15   SYSTEMS, INC., JOEL GILLIS, and
     EDWARD WISHNER,
16
                   Defendants,
17
                   and
18
     OASIS STUDIO RENTALS, LLC, OASIS
19   STUDIO RENTALS #2, LLC, and OASIS
     STUDIO RENTALS #3, LLC,
20
     Relief Defendants
21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1    Defendant Joel Gillis ("Defendant") hereby answers the Complaint filed in

2    this action on September 17, 2014, by Plaintiff Securities and Exchange

3    Commission ("SEC") as follows:

4        1.    Defendant admits the allegations contained in Paragraph 1 of the

5    Complaint.

6        2.    Defendant admits the allegations contained in Paragraph 2 of the

7    Complaint.

8        3.    Defendant admits the allegations contained in Paragraph 3 of the

9    Complaint, except that Defendant denies that the Ponzi scheme is "ongoing."

10       4.    Defendant admits the allegations contained in Paragraph 4 of the

11   Complaint.

12       5.    Defendant admits the allegations contained in Paragraph 5 of the

13   Complaint, except that Defendant denies that the "vast majority of NASI's

14   revenue was comprised of new investor funds" because some revenue was

15   comprised of new funds from investors who had previously invested funds with

16   NASI and who, in some cases, had already received payments from NASI as a

17   return on prior investments.

18       6.    Defendant admits that he was involved in all aspects of the fraud, but

19   denies that the fraud is ongoing.  Defendant otherwise admits the allegations

20   contained in Paragraph 6 of the Complaint.

21       7.    Defendant admits that Wishner was a key actor in the fraudulent

22   scheme, but denies that the fraud is ongoing.  Defendant otherwise admits the

23   allegations contained in Paragraph 7 of the Complaint.

24       8.    Paragraph 8 of the Complaint argues legal conclusions that do not

25   require a response.

26       9.    Paragraph 9 of the Complaint alleges the relief Plaintiff is seeking in

27   this action.  Defendant admits that Plaintiff is seeking such relief.

28

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

*JOEL GILLIS'S ANSWER TO COMPLAINT*

10. Defendant admits the allegations contained in Paragraph 10 of the Complaint.

11. Defendant admits the allegations contained in Paragraph 11 of the Complaint.

12. Defendant admits the allegations contained in Paragraph 12 of the Complaint.

13. Defendant admits the allegations contained in Paragraph 13 of the Complaint, except that Defendant denies that Oasis Studio Rental, LLC is currently headquartered in Houston, Texas.

14. Defendant admits the allegations contained in Paragraph 14 of the Complaint.

15. Defendant admits the allegations contained in Paragraph 15 of the Complaint.

16. Defendant admits the allegations contained in Paragraph 16 of the Complaint.

17. No response is required to the legal conclusion contained in Paragraph 17 of the Complaint that "Defendants NASI and Gillis have offered securities." Defendant admits the remaining allegations contained in Paragraph 17 of the Complaint, except that Defendant denies that the offering of "securities" is "continuing to the present."

18. Defendant admits the allegations contained in Paragraph 18 of the Complaint.

19. Defendant admits the allegations contained in Paragraph 19 of the Complaint.

20. Defendant admits the allegations contained in Paragraph 20 of the Complaint.

21. Defendant admits the allegations contained in Paragraph 21 of the Complaint.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

2.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

22.     Defendant admits the allegations contained in Paragraph 22 of the Complaint.

23.     Defendant admits the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant admits the allegations contained in Paragraph 24 of the Complaint.

25.     Defendant admits the allegations contained in Paragraph 25 of the Complaint.

26.     Defendant admits the allegations contained in Paragraph 26 of the Complaint.

27.     No response is required to the legal conclusion in Paragraph 27 of the Complaint that "NASI's sale and leaseback agreements are securities in the form of investment contracts."  Defendant admits the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Defendant admits the allegations contained in Paragraph 28 of the Complaint.

29.     Defendant admits the allegations contained in Paragraph 29 of the Complaint.

30.     Defendant admits the allegations contained in Paragraph 30 of the Complaint.

31.     Defendant admits the allegations contained in Paragraph 31 of the Complaint, except that (a) Defendant denies that the vast majority of NASI's revenue was comprised of "new investor funds" because significant revenue was comprised of new funds from investors who had previously invested funds with NASI and who, in many cases, had already received payments from NASI, and (b) Defendant denies that the payments NASI made to investors were "funded by money received from new investors" because some payments were funded by new

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

3.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

1  money from old investors who had previously invested funds with NASI and who,

2  in most cases, had already received payments from NASI for prior investments.

3      32.    Defendant admits the allegations contained in Paragraph 32 of the

4  Complaint.

5      33.    Defendant admits the allegations contained in Paragraph 33 of the

6  Complaint.

7      34.    Defendant admits the allegations contained in Paragraph 34 of the

8  Complaint.

9      35.    Defendant admits the allegations contained in Paragraph 35 of the

10  Complaint, except that Defendant denies that NASI contracted with only two

11  ATM service providers.

12      36.    Defendant admits the allegations contained in Paragraph 36 of the

13  Complaint.

14      37.    Defendant admits the allegations contained in Paragraph 37 of the

15  Complaint.

16      38.    Defendant admits the allegations contained in Paragraph 38 of the

17  Complaint.

18      39.    Defendant admits the allegations contained in Paragraph 39 of the

19  Complaint, except that Defendant denies that the payments NASI made to

20  investors were "funded by cash from new investors" because some payments were

21  funded by new money from old investors who had previously invested funds with

22  NASI and who, in some cases, had already received payments from NASI.

23      40.    Defendant admits the allegations contained in Paragraph 40 of the

24  Complaint, except that Defendant denies that "NASI's April, May and June

25  investor payments" were funded by "cash raised from new investors" because

26  some payments were funded by new money from investors who had previously

27  invested funds with NASI and who, in some cases, had already received payments

28  from NASI.

4.

41. Defendant admits the allegations contained in Paragraph 41 of the Complaint.

42. Defendant admits the allegations contained in Paragraph 42 of the Complaint, except that Defendant denies that the "source of virtually all of NASI's incoming cash" during the period "was new investor funds" because some revenue was comprised of new funds from investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI.

43. Paragraph 43 of the Complaint argues legal conclusions that do not require a response.

44. Defendant denies that the fraud is "ongoing" as set forth in subheading "D." Defendant admits the allegations contained in Paragraph 44 of the Complaint.

45. Defendant admits the allegations contained in Paragraph 45 of the Complaint.

46. Defendant admits the allegations contained in Paragraph 46 of the Complaint.

47. Defendant admits the allegations contained in Paragraph 47 of the Complaint.

48. Defendant admits the allegations contained in Paragraph 48 of the Complaint.

49. Defendant admits the allegations contained in Paragraph 49 of the Complaint.

50. Defendant admits the allegations contained in Paragraph 50 of the Complaint.

51. Defendant admits the allegations contained in Paragraph 51 of the Complaint except Defendant denies that the "raising investor money" or "making Ponzi-like payments to existing investors" involved solely new investor funds

5.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

because some revenue was comprised of new funds from old investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI.

52.     Defendant admits the allegations contained in Paragraph 52 of the Complaint except that (a) Defendant denies that "$3.36 million in deposits during that period came from new NASI investors" because some deposits came from new funds from investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI, and (b) Defendant denies that "NASI's August and September investor payments" were funded from by "cash raised from new investors" because some payments were funded from new funds from investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI.

53.     Defendant admits the allegations contained in Paragraph 53 of the Complaint.

54.     Defendant admits the allegations contained in Paragraph 54 of the Complaint.

55.     Defendant admits that he was "a principal of NASI."  The remainder of Paragraph 55 of the Complaint sets forth legal conclusions as to which no response is required.

56.     Defendant admits the allegations contained in Paragraph 56 of the Complaint.

57.     Defendant admits the allegations contained in Paragraph 57 of the Complaint, except that Defendant denies that "NASI's revenue was almost all comprised of new investor finds," and that NASI's payments to investors were "made with other investors' money" because some revenue was comprised of new funds from investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

58.     Defendant admits the allegations contained in Paragraph 58 of the Complaint.

59.     Defendant admits the allegations contained in Paragraph 59 of the Complaint.

60.     Defendant admits the allegations contained in Paragraph 60 of the Complaint, except that Defendant denies that "NASI's revenue was almost all comprised of new investor finds," and that NASI's payments to investors were "made with other investors' money" because some revenue was comprised of new funds from investors who had previously invested funds with NASI and who, in some cases, had already received payments from NASI.

61.     Defendant admits the allegations contained in Paragraph 61 of the Complaint.

62.     Defendant admits that Wishner was a "principal of NASI." The remainder of Paragraph 62 of the Complaint sets forth legal conclusions to which no response is required.

63.     Defendant re-alleges and incorporates by reference his above answers to the allegations in Paragraphs 1 through 62 of the Complaint.

64.     Paragraph 64 of the Complaint sets forth legal conclusions as to which no response is required.

65.     Paragraph 65 of the Complaint sets forth legal conclusions as to which no response is required.

66.     Paragraph 66 of the Complaint sets forth legal conclusions as to which no response is required.

67.     Defendant re-alleges and incorporates by reference his above answers to the allegations in Paragraphs 1 through 62 of the Complaint.

68.     Paragraph 68 of the Complaint sets forth legal conclusions as to which no response is required.

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

7.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

69.  Paragraph 69 of the Complaint sets forth legal conclusions as to which no response is required.  Defendant denies any current risk of continuing violations.

70.  Defendant re-alleges and incorporates by reference his above answers to the allegations in Paragraphs 1 through 62 of the Complaint.

71.  Paragraph 71 of the Complaint sets forth legal conclusions as to which no response is required.

72.  Paragraph 72 of the Complaint sets forth legal conclusions as to which no response is required.  Defendant denies any current risk of continuing violations.

73.  Paragraph 73 of the Complaint sets forth legal conclusions as to which no response is required.

74.  Defendant re-alleges and incorporates by reference his above answers to the allegations in Paragraphs 1 through 62 of the Complaint.

75.  Paragraph 75 of the Complaint sets forth legal conclusions as to which no response is required.

76.  Paragraph 76 of the Complaint sets forth legal conclusions as to which no response is required.  Defendant denies any current risk of continuing violations.

77.  Defendant re-alleges and incorporates by reference his above answers to the allegations in Paragraphs 1 through 62 of the Complaint.

78.  Paragraph 78 of the Complaint sets forth legal conclusions as to which no response is required.

79.  Defendant admits that "[n]o registration statement has been filed with the SEC or has been in effect with respect to any of the offerings alleged herein." The remainder of Paragraph 79 of the Complaint sets forth legal conclusions as to which no response is required.

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

8.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

80.   Paragraph 80 of the Complaint sets forth legal conclusions as to which no response is required.  Defendant denies any current risk of continuing violations.

### DEFENSES

Without admitting that he carries the burden of proof as to any of the issues listed below, Defendant alleges the following separate and independent defenses, and reserves the right to amend this pleading to allege additional defenses as they become known through the course of discovery.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.   Some or all of the causes of action in the Complaint fail to state facts sufficient to constitute a cause of action against Defendant.

### SECOND AFFIRMATIVE DEFENSE
### (Waiver, Estoppel, Acquiescence)

2.   The Complaint is barred in whole or in part by the doctrines of waiver, estoppel, and acquiescence.

### THIRD AFFIRMATIVE DEFENSE
### (Statute of Limitations and Laches)

3.   Defendant alleges that Plaintiff's causes of action are barred by the doctrine of laches and/or by the applicable statutes of limitations, including without limitation 28 U.S.C. § 2462.

### FOURTH AFFIRMATIVE DEFENSE
### (Acts/Omissions of Others)

4.   The wrongdoing alleged in the Complaint, and resulting damages, if any, were fully or partially caused by the acts or omissions of persons other than Defendant.

Spertus, Landes & Umhofer, LLP
1990 S. BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TEL: 310-826-4700; FAX: 310-826-4711

*JOEL GILLIS'S ANSWER TO COMPLAINT*

## FIFTH AFFIRMATIVE DEFENSE

### (Reservation of Defenses and Right to Amend)

5. Defendant has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Defendant reserves the right to raise such additional defenses upon receiving more complete information regarding the matters alleged in the Complaint, through discovery or otherwise.

## SIXTH AFFIRMATIVE DEFENSE

### (No Injury)

6. The Complaint, and each and every purported cause of action contained therein, is barred in whole or in part because investors did not suffer any injury, or, in the alternative, suffered negligible damages because dendant will assist efforts to transfer gains from net investor winnors to losses by net investor losers in an effort to bring actual damages to zero.

## SEVENTH AFFIRMATIVE DEFENSE

### (Offset)

7. To the extent that Defendant is liable for any sum arising out of the allegations in the Complaint, said sum must be reduced by the amount of money and/or benefits of any kind received by NASI's investors after transfering gains from net investor winnors to losses sustained net investor losers.

## EIGHTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

8. The damages, if any, are speculative and uncertain and, therefore, are not compensable.

.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

**PRAYER**

WHEREFORE, Defendant prays that:

1.      Plaintiff takes nothing by reason of its Complaint;

2.      Plaintiff's Complaint be dismissed with prejudice;

3.      Defendant be awarded such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant Joel Gillis hereby demands a trial by jury of all issues so triable

Dated: December 4, 2014          Respectfully submitted,

/S_____
James W. Spertus
Dolly K. Hansen
Attorneys for Defendant Joel Gillis

Spertus, Landes & Umhofer, LLP
1990 S. Bundy Dr., Suite 705
Los Angeles, CA 90025
Tel: 310-826-4700; Fax: 310-826-4711

11.

*JOEL GILLIS'S ANSWER TO COMPLAINT*

# EXHIBIT 47

**EXHIBIT 47**







# EXHIBIT 49

**EXHIBIT 49**









